1  BUCHALTER
   A Professional Corporation
2  TRACY A. WARREN (SBN: 228013)
   ERIC KENNEDY (SBN:  228393)
3  1000 Wilshire Boulevard, Suite 1500
   Los Angeles, CA  90017-1730
4  Telephone: 213.891.0700
   Fax: 213.896.0400
5  Email:  ekennedy@buchalter.com

6  Attorneys for Defendant IA Lodging Napa First LLC, dba Andaz Napa

7

8             UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 PETER STROJNIK (SR.),                    Case No. 4:19-cv-03983-DMR

12          Plaintiff,                      **DEFENDANT IA LODGING NAPA
                                            FIRST LLC, DBA ANDAZ NAPA'S
13     vs.                                  REQUEST FOR JUDICIAL NOTICE
                                            IN SUPPORT OF MOTION TO
14 IA LODGING NAPA FIRST LLC, DBA           DISMISS AND MOTION FOR ORDER
   ANDAZ NAPA,                              DECLARING PLAINTIFF A
15                                          VEXATIOUS LITIGANT**

16          Defendant.                      **Pursuant to Fed. R. Evid. 201(b)**

17

18                                          Hearing Date:   September 12, 2019
                                            Time:           1:00 p.m.
19                                          Judge:          Donna M. Ryu

20

21

22

23

24

25

26

27

28

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION TO DISMISS AND MOTION
FOR ORDER DECLARING PLAINTIFF A VEXATIOUS
LITIGANT**                                   Case No. 4:19-cv-03983-DMR

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Evidence 201(b), Defendant IA Lodging Napa First LLC, dba Andaz Napa, hereby requests that the Court take judicial notice of the following documents and facts in support of its Motion to Dismiss pursuant to F. R. Civ. P. 12(b)(1) and Motion for Order Declaring Plaintiff Peter Strojnik Sr. a Vexatious Litigant and a Prefiling Order pursuant to 28 U.S.C. §1651, both of which are concurrently filed herewith.

Rule 201 permits the Court to take judicial notice of facts which are not subject to reasonable dispute.  Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it is either (1) "generally known within the trial court's territorial jurisdiction," or (2) capable of accurate and ready determination from "sources whose accuracy cannot reasonably be questioned." *Id*. If a party requests judicial notice of such a fact, the court "must take judicial notice." Fed. R. Evid. 201(c)(2). Public records available from reliable sources on the Internet, such as websites run by governmental agencies, are generally properly subject to judicial notice. *Ryan v. City of Lincoln*, No. 18-cv-00096-KJM-DB, 2018 6415640 at \*2 (E.D. Cal. Dec. 6, 2018); *see also Farina v. 700 Valencia St*., 2015 U.S. Dist. LEXIS 109076, \*12-13 (N.D. Cal. 2015) (taking judicial notice of Delaware and California Secretary of State websites); *Johnson v. Alhambra & O Associates, et al.*, No. 19-cv-00103-JAM-DB, Doc. No. 15, \*3-4 (E.D. Cal. June 24, 2019) (taking judicial notice of attorney profile on State Bar of California website and case query results); *Cty. Of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 510 n. 2 (N.D. Cal. 2017) (taking judicial notice of letter from Assistant Attorney General maintained on official government website), *recon. denied*, 267 F. Supp. 3d 1201 (N.D. Cal. 2017).

In addition, courts may consider matters that are proper subjects of judicial notice under Federal Rule of Evidence 201 when ruling on a 12(b)(1) motion. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1088-89 (C.D. Cal. 2015) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)).

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT**

Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Accordingly, Defendant Andaz Napa hereby respectfully requests that the Court take judicial notice of Exhibits 1 through 32, including but not limited to, the dockets for cases filed by Mr. Strojnik in the Northern District of California[1], in support of its motions to dismiss and for an order declaring plaintiff a vexatious litigant, which are concurrently filed herewith:

| Exhibit 1: | State of Arizona's Motion to Intervene, *Gastelum v. Canyon Hospital, LLC*, 9th Circuit Court of Appeals No. 18-16032 (June 22, 2018) |
|---|---|
| Exhibit 2: | State of Arizona's Motion to Intervene, *Advocates for Individuals With Disabilities LLC, v. MidFirst Bank*, No. 2:16-cv-01969-PHX-NVW, Docket 87 (D. Ariz. Dec. 5, 2017) |
| Exhibit 3: | Arizona State Bar's Order of Interim Suspension of Peter Strojnik, Case No. PDJ-2018-9018 (July 11, 2018) |
| Exhibit 4: | Arizona State Bar Complaint against Peter Strojnik, Case No. PDJ-2018-9105 (November 16, 2018) |
| Exhibit 5: | Arizona State Bar's Judgment of Disbarment of Plaintiff Peter Strojnik Sr., and Mr. Strojnik's corresponding consent, Case No. PDJ-2018-9105 (May 10, 2019) |
| Exhibit 6: | Arizona State Bar Attorney Profile for Peter Strojnik, available at https://azbar.legalserviceslink.com/attorneys-view/PeterStrojnik (Last visited August 6, 2019). A true and correct copy of the website and the findings provided therein re Mr. Strojnik's disbarment, is attached hereto. |
| Exhibit 7: | PACER search results for Plaintiff Peter Strojnik Sr., showing that Mr. Strojnik has filed 81 cases in pro per in federal courts in California, Oregon, Washington, New Mexico, Idaho, Hawaii, Texas, and Puerto Rico. The search results are available at https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited August 6, 2019). |
| Exhibit 8: | Courthouse News search results for Plaintiff Peter Strojnik Sr., showing that Mr. Strojnik has filed 29 cases in California state courts since April 2018. The search results are available at https://cnsplus.courthousenews.com/# (last visited August 6, 2019). |
| Exhibit 9: | Order Dismissing Case with Prejudice, *Peter Strojnik Sr. v. Singpoli Group, LLC*, No. 2:19-cv-00066-JLS-AGR (C.D. Cal. Feb. 14, 2019) |

---

[1] A few of the complaints have also been provided for the Court's reference. (*See* Exhs. 13-18). The rest of the complaints were withheld due to size and volume, but can be provided upon the Court's request.

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT**                    Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

| Exhibit 10: | *Advocates for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 893, 898 (D. Ariz. 2017) |
| Exhibit 11: | Order imposing sanctions, *AIDF v. Golden Rule Properties LLC*, No. CV-16-02412 (Doc. No. 19), 2017 WL 2417046, at *2 (D. Ariz. Mar. 20, 2017) |
| Exhibit 12: | *AIDF v. Golden Rule Properties LLC*, No. CV-16-02413, 2016 WL 5939468 (D. Ariz. Oct. 13, 2016) |
| Exhibit 13: | Docket and complaint for: *Strojnik v. Joie de Vivre Hospitality LLC*, No. 3:18-cv-06587-JSC (N.D. Cal. filed 10/29/2018) |
| Exhibit 14: | Docket and complaint for: *Strojnik v. Marriott International Inc.*, No. 3:18-cv-06586-EDL (N.D. Cal. filed 10/29/2018) |
| Exhibit 15: | Docket and complaint for: *Strojnik v. 574 Escuela*, No. 3:18-cv-06777-JD (N.D. Cal. filed 11/08/2018) |
| Exhibit 16: | Docket and complaint for: *Strojnik v. Benchmarck Conference Resorts of California, LLC*, No. 5:18-cv-07704-VKD (N.D. Cal. filed 12/24/2018) |
| Exhibit 17: | Docket and complaint for: *Strojnik v. ML San Jose Holding LLC*, No. 5:19-cv-00737-NC (N.D. Cal. filed 02/11/2019) |
| Exhibit 18: | Docket and complaint for: *Strojnik v. Ensemble Hotel Partners, LLC*, No. 5:19-cv-01844-VKD (N.D. Cal. filed 04/05/2019) |
| Exhibit 19: | Docket for: *Strojnik v. Bernardus LLC*, No. 5:19-cv-01875-NC (N.D. Cal. filed 04/08/2019) |
| Exhibit 20: | Docket for: *Strojnik v. JMA Ventures LLC*, No. 5:19-cv-01876-SVK (N.D. Cal. filed 04/08/2019) |
| Exhibit 21: | Docket for: *Strojnik v. Mirabel Hotel and Restaurant Group LLC*, No. 5:19-cv-02529-SVK (N.D. Cal. filed 05/10/2019) |
| Exhibit 22: | Docket and complaint for: *Strojnik v. VY Verasa Company LLC*, No. 3:19-cv-02566-WHO (N.D. Cal. filed 05/15/2019) |
| Exhibit 23: | Docket for: *Strojnik v. Hyatt International Corporation*, No. 5:19-cv-03006-NC (N.D. Cal. filed 05/31/2019) |
| Exhibit 24: | Docket for: *Strojnik v. Xenia Hotels & Resorts, Inc.*, No. 5:19-cv-03082-NC (N.D. Cal. filed 06/04/2019) |
| Exhibit 25: | Docket for: *Strojnik v. First & Mission Properties LLC*, No. 5:19-cv-03122-NC (N.D. Cal. filed 06/05/2019) |
| Exhibit 26: | Docket for: *Strojnik v. Wilson*, No. 3:19-cv-03377-SK (N.D. Cal. filed 06/13/0219) |

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT**

Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

| | |
|---|---|
| Exhibit 27: | Docket for: *Strojnik v. Madrona Manor Wine Country Inn & Restaurant Inc.*, No. 3:19-cv-03375-LB (N.D. Cal. filed 06/13/2019) |
| Exhibit 28: | Docket for: *Strojnik v. Fowler LLC*, No. 3:19-cv-03376-TSH (N.D. Cal. filed 06/13/2019) |
| Exhibit 29: | Docket for: *Strojnik v. Napa L W Hotel Associates, et al.*, No. 3:19-cv-03583-JSC (N.D. Cal. filed 06/20/2019) |
| Exhibit 30: | Docket for: *Strojnik v. WCH Napa LLC*, No. 4:19-cv-03968-KAW (N.D. Cal. filed 07/10/2019) |
| Exhibit 31: | Docket and complaint for: *Strojnik v. 539 Johnson Street, LLC*, No. 3:19-cv-03980-JCS (N.D. Cal. filed 07/10/2019) |
| Exhibit 32: | Docket and complaint for: *Strojnik v. Cypress Inn Investors*, No. 3:19-cv-03981-RS (N.D. Cal. filed 07/11/2019) |

DATED:  August 6, 2019                    BUCHALTER
                                          A Professional Corporation


                                   By:  */s/ Eric Kennedy*
                                          TRACY A. WARREN
                                          ERIC KENNEDY
                                   Attorneys for Defendant IA Lodging Napa
                                   First LLC, dba Andaz Napa

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION TO DISMISS AND MOTION
FOR ORDER DECLARING PLAINTIFF A VEXATIOUS
LITIGANT**                                Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1    CERTIFICATE OF SERVICE

2    I hereby certify that on August 6, 2019, I electronically filed the above document

3 with the Clerk of the Court using CM/ECF which will send electronic notification of such

4 filing to all registered counsel.

5

6    By:  */s/ Eric Kennedy* _____
         Eric Kennedy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT**                    Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

# EXHIBIT 1

Case 4:19-cv-03983-DMR   Document 1-1   Filed 08/06/19   Page 8 of 385
Case: 18-16032, 06/22/2018, ID: 10919409, DktEntry: 7-1, Page 1 of 23

(1 of 103)

No. 18-16032

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

FERNANDO GASTELUM,
Plaintiff-Appellant.
v.
CANYON HOSPITALITY LLC,
Defendant-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
Case No. 2:17-cv-02792-GMS

_____

**STATE OF ARIZONA'S MOTION TO INTERVENE**

_____

Mark Brnovich
  *Attorney General*
Drew C. Ensign
Robert J. Makar
2005 N. Central Avenue
Phoenix, AZ 85253
Telephone:  (602) 542-5025
Facsimile:  (602) 542-4377
*Counsel for Proposed-Intervenor*
*State of Arizona*


Dated:  June 22, 2018

(2 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 08/06/19 Page 2 of 385
Case 4:19-cv-03983-DMR Document 9-1 Filed 08/06/19 Page 2 of 385

# TABLE OF CONTENTS

PAGE(S)

BACKGROUND ........................................................................................3

LEGAL STANDARD...............................................................................8

ARGUMENT ...........................................................................................9

I.    THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION ..........9

    A.    This Motion Is Timely........................................................9

    B.    The State Will Advance Defenses That Raise Common
        Questions Of Law And Fact..............................................11

II.   ALTERNATIVELY, THIS COURT SHOULD GRANT
    INTERVENTION AS OF RIGHT ...............................................12

    A.    The State Has Significant Protectable Interests That Could Be
        Impaired By Plaintiffs' Multitudinous Suits ......................12

    B.    The State's Interests Are Not Adequately Represented By
        Existing Parties................................................................14

CONCLUSION ......................................................................................15

# INTRODUCTION

The State of Arizona (the "State")—which has special interest in, and experience with, this case, parties, and issues presented—respectfully moves to intervene in the above-captioned case, both permissively and as of right. For the reasons that follow, this motion should be granted.[1]

This motion arises from the State's ongoing efforts to ameliorate the abuse of Arizona state and federal courts perpetrated by Plaintiff's counsel, Peter Strojnik. For example, the State successfully intervened, consolidated and obtained dismissal of, *more than one thousand* state court actions filed by Strojnik against Arizona businesses in different plaintiffs' names. The State further has sought to intervene in the District of Arizona to obtain relief that would have prevented Strojnik from filing most of the instant actions on appeal.

Because the instant appeal provides an important avenue to meaningful relief for Arizonans improperly sued by Strojnik, the State respectfully seeks to intervene to defend the district court's judgment of dismissal—which may easily resolve dozens of cases currently pending and/or stayed in the District of Arizona once affirmed on appeal. The State respectfully submits that its participation will facilitate this Court's resolution of the issues raised and provide important insight on the practical consequences of this Court's decision here.

---

[1] Plaintiff will oppose this motion.

(4 of 103)

Case 4:19-cv-03083-DMR  Document 81  Filed 08/06/19  Page 11 of 385
Case 18-16083, 06/22/2018, ID: 10915405, DktEntry: 11-1, Page 4 of 21

The requirements for permissive and intervention as of right are both satisfied here.  As to the former, this motion is timely because it is filed within the deadline to appeal from the district court's original May 25, 2018 judgment, as well as the most recent June 15, 2018 final judgments now on appeal.  In addition the State will advance arguments concerning Gastelum's Article III standing, which is a common question of law and fact with the underlying action.

The requirements for intervention as of right are also satisfied.  The State has protectable interests in both (1) the economic well-being of its businesses subject to Strojnik's improper suits and related shakedown tactics and (2) the loss of tax revenue that occurs when businesses deduct from their taxable incomes settlement payments they make to Strojnik/Gastelum.  Both interests could easily be impaired if Gastelum's fundamentally flawed and improper suits are permitted to proceed beyond the motion to dismiss phase.  And existing parties do not adequately represent the State's interests—each private business has narrow economic interests, rather than the "broad public interest" that the State represents.[2]  Moreover, it is plainly not the case that existing parties "will undoubtedly make all the intervenor's arguments."[3]

---

[2]  *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc) ("'The government must present the broad public interest, not just the economic concerns of the [affected] industry.'").

[3] *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

(5 of 103)

Case 4:19-cv-03083-DMR  Document 81-1  Filed 08/06/19  Page 12 of 385
Case 18-16833, 08/22/2018, ID: 10981405, DktEntry: 9-1, Page 5 of 21

## BACKGROUND

This action is an important part of nearly two thousand cases filed by
Plaintiffs' counsel against Arizona businesses in the last 2½ years.  The State,
through its Attorney General, has played an important role in the resolution of
these cases and continues to be involved.  A brief overview of those suits and the
Attorney General's role is beneficial to understanding the State's interests here.

### *Round One:  Ritzenthaler/AID Cases*

This case arises from the second round of the one of the largest, and still
ongoing, abuses of Arizona state and federal courts in their history.  In the first
round, Plaintiffs' counsel, Peter Strojnik "pursued upwards of 160 cookie-cutter
lawsuits in federal court and, from early to later 2016, more than 1,700 such suits
in Arizona state court."  *Advocates for Individuals With Disabilities LLC v.
MidFirst Bank*, 279 F. Supp. 3d 891, 893 (D. Ariz. 2017).  Those complaints were
filed in the name of *inter alia* David Ritzenthaler and Advocates for Individuals
with Disabilities LLC ("AID"), and alleged violations of the Arizonans with
Disabilities Act ("AzDA") and the Americans with Disabilities Act ("ADA").  *Id.*
at 892.

The State successfully intervened in the state court actions, consolidated the
thousand-plus suits then pending, and obtained dismissal of virtually all of them
for lack of standing (essentially the same issue presented in this appeal).  *See*

3

(6 of 103)

Case 4:19-cv-03883-DMR Document 81 Filed 08/06/19 Page 13 of 385
Case 18-16683, 06/22/2018, ID: 10911405, DktEntry: 7-1, Page 6 of 21

Ex. A.  The State subsequently settled its motion for sanctions in those
consolidated actions, which resulted in a permanent injunction against the
*Ritzenthaler* plaintiffs from filing any new suit under AzDA or the ADA in
Arizona state courts.  *Id.* ¶ 4.  The settlement expressly "applie[d] solely to the
consolidated cases, and does not preclude the State from acting to protect the
public in other litigation," such as this case.  *See id.* ¶ 6.

The Ritzenthaler/AID cases in federal court were all dismissed for lack of
standing or due to settlement.  None resulted in a favorable contested judgment for
plaintiffs.  Numerous judges of the District of Arizona ultimately sanctioned and/or
rebuked Ritzenthaler and Strojnik.  Among other findings, those judges explained:

- Strojnik filed "cookie-cutter lawsuits" "right down to the same typographical
  errors."  *MidFirst Bank*, 279 F. Supp. at 893 (Wake, J.).

- Strojnik's "extortionate practice has become pervasive" and he engaged in
  "unethical extortion of unreasonable attorney's fees[.]"  *Id.* at 893, 898.

- Strojnik "misrepresented [plaintiffs'] intent to litigate [their] federal claim"
  and "misle[d] and manipulate[d] opposing counsel[.]"  *AIDF v. Golden Rule
  Properties, LLC*, CV-16-02412, 2017 WL 2417046, at *2 (D. Ariz. Mar. 20,
  2017) (Logan, J.) (imposing sanctions).

- Strojnik and his co-counsel "attempt[ed] to increase the costs of litigation to
  maximize Defendants' desire to settle the suit due to the cost of defense,"

(7 of 103)

Case 4:19-cv-02083-DMR   Document 81-1   Filed 08/06/19   Page 14 of 385
Case 18-16023, 04/22/2019, ID: 10819405, DktEntry: 71, Page 76 of 21

and engaged in "bad faith conduct." *AIDF v. Golden Rule Properties LLC*, No. CV-16-02413, 2016 WL 5939468, at *1, *6 (D. Ariz. Oct. 13, 2016) (Snow, J.) (imposing sanctions).

Concerned that Strojnik was abusing Arizona federal and state courts (particularly in light of the new *Gastelum* suits, *see infra* at 5-7), the State moved to intervene in one of the federal *Ritzenthaler* cases on December 5, 2017. *See MidFirst Bank* (Doc. 87) (attached hereto as Exhibit B). The State did so for the limited purpose of seeking a vexatious-litigant determination and requiring Strojnik to obtain pre-suit approval by a court before filing any new actions (such as these). *Id.* The district court has not acted on the State's motion to intervene, however, and more than 80 new *Gastelum* suits have been filed since the State's motion was filed. *See* Ex. C.

### Round Two:  Gastelum Cases

Following dismissal of the thousand-plus state court actions on April 24, 2017, Ex. D., Strojnik began filing new actions in federal court with a new plaintiff, Fernando Gastelum, on July 27, 2017. *See Gastelum v. MCPHX17 LLC*, No. CV-17-2536 (D. Ariz. filed July 27, 2017). Strojnik continued filing actions in

5

(8 of 103)

Case 4:19-cv-03083-DMR Document 81 Filed 08/06/19 Page 15 of 385
Case 4:18-cv-03083 08/22/2018 ID: 10819405 DktEntry: 71 Page 8 of 23

Gastelum's name, which presently number 143 (and counting).  Indeed, Strojnik

has filed *ten* new *Gastelum* actions since the original notice of appeal in this case.[4]

Each *Gastelum* suit generally comes in one of two templates.  All assert a

federal ADA claim and state law negligence claim (essentially negligent failure to

comply with disability laws).  *See, e.g.*, Ex. E.  And many of them also assert state

law negligent misrepresentation, failure to disclose and fraud claims (*i.e.*,

essentially misleading Gastelum about disability-law compliance).  *See*, *e.g*., Ex. F.

 "The complaints filed in all the cases … are substantially similar,

boilerplate complaints."  *Gastelum v. Canyon Hosp. LLC*, CV-17-02792-PHX-

GMS, 2018 WL 2388047, at *2 (D. Ariz. May 25, 2018).  In particular, all of the

*Gastelum* complaints contain the same essential allegations regarding Article III

standing, *i.e.* that "Mr. Gastelum 'intends to book a room at the Defendant's hotel

once Defendant has removed all accessibility barriers.'  No complaint contains

further detail on Mr. Gastelum's return plans."  *Id.* (citation omitted).

Strojnik has successfully obtained settlements in over 50 of the *Gastelum*

actions already.  For each settlement, Gastelum receives a flat $350 amount, with

Strojnik retaining the balance.  *Id.* at *3.  The State obtained and submitted a

redacted copy of one settlement agreement, which for provided for $18,750 in

---

[4]  *See* Ex. C.  Those cases are docketed in the District of Arizona as 2:18-cv-
01641-GMS, 2:18-cv-01659-GMS, 2:18-cv-01689-JJT, 2:18-cv-01725-DJH, 2:18-
cv-01816-DJH, 2:18-cv-01829-DMF, 2:18-cv-01922-DJH, 2:18-cv-01929-HRH,
2:18-cv-01941-ESW, and 2:18-cv-01958-MHB.

(9 of 103)

Case 4:19-cv-03083-DMR Document 81-1 Filed 08/06/19 Page 16 of 385
Case 2:18-cv-08663, 06/22/2018, ID: 10911405, DktEntry: 19-1, Page 9 of 23

recovery, of which $350 went to Gastelum and the remaining ~95% went to Strojnik.  *See MidFirst Bank* (Doc. 97).

### District Court Decision On Appeal

The district court in the cases on appeal here held an evidentiary hearing on defendants' motions to dismiss on May 4 and May 11, 2018.  *Canyon Hospitality*, 2018 WL 2388047, at *2.  Following these hearings, in which Gastelum testified, the court concluded that Gastelum "fail[ed] to meet the requirements for standing in every case," and therefore dismissed all of them.  *Id.* at *1.  The court's key findings were that:

> Because of the volume of cases he has brought, his limited reasons for staying in Phoenix, the proximity to Casa Grande to which he easily can, and frequently does, return for his overnight stays, the evident enterprise in conjunction with his attorney to sue many hotels in the Phoenix area for ADA compliance, his personal finances, his past travel habits, and his testimony that he could not return to all hotels he has sued, the Court finds that he has failed to establish a sufficient likelihood that he would return to any of the hotels that are the defendants in the cases in which this hearing is noticed….

> Mr. Gastelum and his counsel Mr. Strojnik are engaged in a joint enterprise in which they are filing multiple suits against any Phoenix area lodgings that they believe to be out of compliance with the ADA in some respect or respects.  They are filing such suits without reference to whether Mr. Gastelum actually had any intent to make future visits to those facilities for reasons not related to his pursuit of ADA claims against them.  Given the facts of this case Mr. Gastelum has failed to establish that he would have any likelihood of revisiting these facilities except to the extent it would be deemed necessary for him to do so to bring suit against each of the Defendants.

7

*Id.* at *4.

Gastelum filed his original notice of appeal on May 25—*i.e.*, the same day of the district court's judgment dismissing these cases. Judge Snow dismissed additional suits as recently as June 15, 2018, which have been consolidated into this appeal. *See* Doc. 6 (June 16, 2018 amended notice of appeal).

## LEGAL STANDARD

This Court's consideration of motions to intervene is governed by the standard of Federal Rule of Civil Procedure 24. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Scofield*, 382 U.S. 205, 216 n.10 (1965); *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517–18 (7th Cir. 2004) ("[A]ppellate courts have turned to … Fed.R.Civ.P. 24."); *Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997) (same); *Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007).

Under Rule 24(b)(1)(B), "all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common'" and a timely motion. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting Rule 24(b)(1)(B)).

A party may also intervene as of right under Rule 24(a). In *Wilderness Society v. U.S. Forest Service*, this Court set forth its four-part test for analyzing a motion to intervene of right under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).

This analysis is "guided primarily by practical considerations, not technical distinctions." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quotation marks and citation omitted); *see also Wilderness Soc'y*, 630 F.3d at 1179 (reiterating importance of "practical and equitable considerations" as part of judicial policy favoring intervention). Courts are "required to accept as true the non-conclusory allegations made in support of an intervention motion." *Berg*, 268 F.3d at 819.[5]

## ARGUMENT

## I.     THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION

### A.     This Motion Is Timely

This Court has repeatedly explained that "the 'general rule is that a post-judgment motion to intervene is timely if filed within the time allowed for the

---

[5]  This Court has held in an unpublished decision that filing of a notice of appeal "divest[s] the district court of its jurisdiction … to entertain [a] motion to intervene." *Bryant v. Crum & Forster Specialty Ins. Co.*, 502 Fed. Appx. 670, 671 (9th Cir. 2012).  The State accordingly has sought to intervene in this Court, which plainly has jurisdiction to consider the State's motion to intervene.

filing of an appeal.'" *U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (quoting *Yniguez v. Arizona*, 939 F.2d 727, 734 (9th Cir.1991) (alteration omitted)). The Supreme Court has similarly held that where a party "filed [its] motion within the time period in which the named plaintiffs could have taken an appeal … the [party's] motion to intervene was timely filed[.]" *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396 (1977).

This motion is filed within 28 days of the district court's first final judgment on May 25, 2018, and is thus within the time to file a notice of appeal. In addition, it is filed within 7 days of the most recent final judgments on appeal here—thus 24 days before a notice of appeal would be due in those cases.

More generally, this motion was filed within 45 days of the original filing date of the most recent case currently consolidated with this appeal. *See Gastelum v. Chandler HG LLC*, No. CV-18-1453 (filed D. Ariz. May 11, 2018); Doc. 6 (including case in amended notice of appeal). And this Court has held that a motion to intervene was timely when filed within *four months* of the suit being initiated—*i.e.*, nearly *three times* as long. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).

Importantly, the "requirement of timeliness is … a guard against prejudicing the original parties." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Here, Gastelum will suffer little prejudice by having to address the arguments of

(13 of 103)

Case 4:19-cv-03982-DMR Document 9-1 Filed 08/06/19 Page 20 of 385
Case 18-18982-DM2/2019-05-103-3405 (54tentry/19-1, Page 20 of 385

one additional appellee answering brief concerning the same issues of Article III

standing.  Indeed, given Strojnik and Gastelum's willingness to file *hundreds* of

suits against *hundreds* of businesses, they can hardly complain about having *one*

additional adverse party.  *See also Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C.

Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848

(2009) ("Post-judgment intervention is often permitted … where intervention

would not unduly prejudice the existing parties.").[6]

For all of these reasons, the State's motion to intervene on appeal is timely.

**B.    The State Will Advance Defenses That Raise Common Questions Of Law And Fact**

The other requirements of permissive intervention—*i.e.* that intervenor's

"'claim or defense and the main action have a question of law or fact in common,'"

*Kootenai Tribe*, 313 F.3d at 1108—is easily satisfied as well.  The State will raise

Article III standing as a defense supporting the dismissals, which involves

common questions of law and fact with arguments existing defendants will raise.

A favorable exercise of discretion is also warranted.  The State's

participation would "assist the court in its orderly procedures leading to the

resolution" of issues presented.  *Kootenai Tribe*, 313 F.3d at 1111.  In particular,

---

[6]  A finding of timeliness is also supported by the fact that the State has been attempting to address these suits through its proposed intervention in the *MidFirst Bank* case.  *See supra* at 5.

(14 of 103)

Case 4:19-cv-03983-DMR  Document 9-1  Filed 08/06/19  Page 21 of 385
Case: 18-15932  06/22/2020, ID: 10913409, DktEntry: 9-1, Page 14 of 23

the State can provide insight into the broader public interests at issue here, which

the existing private business defendants may not have equal insight into.

## II.  ALTERNATIVELY, THIS COURT SHOULD GRANT INTERVENTION AS OF RIGHT

Alternatively, this Court should grant intervention as of right.  As discussed

above, this motion is timely.  *See supra* at 9-11.  And the remaining requirements

of *Wilderness Society* are satisfied as well.

### A.  The State Has Significant Protectable Interests That Could Be Impaired By Plaintiffs' Multitudinous Suits

The State has at least two protectable interests that support intervention as of

right, both of which could easily be impaired if the district court's dismissals are

not affirmed on appeal.

*First*, the State has protectable "interest[s] in the health and well-being—

both physical and economic—of its residents in general."  *Zimmerman v. GJS

Group, Inc.*, No. 17-304, 2017 WL 4560136, at *5 (D. Nev. Oct. 11, 2017); *see

also Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) ("[T]he State has an

interest in protecting and promoting the state economy on behalf of all of its

citizens.").  Specifically, the State has important interests in ensuring that its

citizens and businesses are not unduly burdened by Strojnik's improper suits and

abusive litigation tactics.  That interest easily could be impaired if the district

court's dismissals for lack of Article III standing are not affirmed.

12

In *Zimmerman*, the court granted intervention as of right to the State of Nevada in one of "274 actions in the District of Nevada alleging similar violations of the ADA," so that Nevada could vindicate its "strong interest in protecting the public from malicious or premature [ADA] lawsuits that threaten Nevada business owners and adversely impact Nevada's general economy." 2017 WL 4560136, at *1, *3. The same result should obtain here for the State of Arizona facing a similarly vexatious ADA litigant.

*Second*, the State has significant interests in protecting tax flows into its treasury. Settlements extracted by Gastelum are generally tax deductible, thus often converting taxable business income into untaxed deductions. The State's interest in protecting its tax revenue could easily be impaired if Strojnik continues to extract settlements from Arizona businesses (which a reversal here plainly threatens). Indeed, Gastelum/Strojnik have already extracted more than 50 settlements.

The State's interests in protecting its tax revenues are thus sufficient to support intervention as of right. *See Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States,* 921 F.2d 924, 928 (9th Cir. 1990) (holding that potential that "the City will lose tax revenue" supported intervention as of right, and reversing district court's denial of same); *see also Robertson*, 960 F.2d at 86 ("[T]he State has an interest in protecting its tax revenues.").

13

**B.     The State's Interests Are Not Adequately Represented By Existing Parties**

Finally, the State's interests are not adequately represented by existing parties.  As this Court has explained, a movant's "burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties *'may be'* inadequate."  *Berg*, 268 F.3d at 823 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added).  In considering the adequacy of representation, this Court must consider *inter alia* "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments."  *Id.* at 822.

This requirement is easily met:  no private defendant (of the hundreds that Strojnik has sued) has ever raised the vexatious-litigant arguments that State has put forth in the *MidFirst Bank* case—thereby demonstrating that private defendants will not "undoubtedly make all of the [State's] arguments."  *Id.*  Moreover, none of the private defendants necessarily have sufficient economic interest in their individual cases to brief fully all pertinent issues and litigate them to completion.

More generally, this Court has recognized that while private defendants have narrower "economic concerns," the State "must present the broad public interest." *Forest Conservation Council*, 66 F.3d at 1499 (quoting *Sierra Club v. Espy*, 18 F.3d at 1208) (quotations omitted).  Those differing interests further satisfy the State's "minimal" burden here.  *Berg*, 268 F.3d at 823.

14

(17 of 103)

Case 4:19-cv-03983-DMR  Document 9-1  Filed 08/06/19  Page 24 of 385
Case 2:19-cv-05282-DMR  Document 1-3  Filed 06/11/... Entry/...-1, Page 17 of 385

# CONCLUSION

For the foregoing reasons, the State's motion to intervene should be granted.

Respectfully submitted,

s/ Drew C. Ensign
Mark Brnovich
  *Attorney General*
Drew C. Ensign
Robert J. Makar
2005 N. Central Avenue
Phoenix, AZ 85253
Telephone: (602) 542-5025
Facsimile: (602) 542-4377

*Counsel for Proposed-Intervenor*
*State of Arizona*

(18 of 103)

Case 4:19-cv-03982-DMR Document 9-1 Filed 08/06/19 Page 25 of 385
Case: 18-16982 06/22/2018 ID: 10913409 DktEntry: 11 Page 18 of 23

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case that are registered CM/ECF users and will be served by the appellate CM/ECF system.

I have also mailed the foregoing document by First-Class Mail, postage prepaid to the following Defendants' counsel that have not yet entered appearances in this case:

Michael A. Schern
Yusra Batool Bokhari
Schern Richardson Finter Decker PLC
1640 S Stapley Dr., Ste. 132
Mesa, AZ 85204
mike@srfdlaw.com
yusra@srfdlaw.com

Caroline Kathleen Larsen
Douglas Calvin Lynn, III
Ogletree Deakins Nash Smoak & Stewart PC
Phoenix, AZ
2415 E Camelback Rd., Ste. 800
Phoenix, AZ 85016
caroline.larsen@ogletreedeakins.com
Trey.lynn@ogletreedeakins.com

Jordan Schwartz
Conn Maciel Carey PLLC
5335 Wisconsin Ave. NW, Ste. 600
Washington, DC 20015
jschwartz@connmaciel.com

Kami Marie Hoskins
Gordon Rees Scully Mansukhani LLP
111 W Monroe St., Ste. 1600
Phoenix, AZ 85003-1736
khoskins@gordonrees.com

Jodi Lee Mullis
Mia T. Nguyen
Wood Smith Henning & Berman LLP
2525 E Camelback Rd., Ste. 450
Phoenix, AZ 85016
jlmullis@wshblaw.com
mianguyen@wshblaw.com

Aaron Thomas Lloyd
James M. Nelson
Greenberg Traurig LLP
2375 E Camelback Rd., Ste. 700
Phoenix, AZ 85016
lloyda@gtlaw.com
nelsonj@gtlaw.com

Lindsay G. Leavitt
Jennings, Strouss & Salmon PLC
1 E Washington St., Ste. 1900
Phoenix, AZ 85004-2554
lleavitt@jsslaw.com

John Alan Doran
Lori Wright Keffer
Sherman & Howard LLC
7033 E Greenway Pkwy., Ste. 250
Scottsdale, AZ 85254
jdoran@shermanhoward.com
LKeffer@shermanhoward.com

Case 4:19-cv-03982-DMR Document 9-1 Filed 08/06/19 Page 27 of 385
Case 2:18-cs-08932-DMR Document 103-1 Filed 06/22/20 Entry ID: 10513409, Page 20 of 23
(20 of 103)

Corey Israel Richter
Daxton Reese Watson
Lipson Neilson Cole Seltzer & Garin PC
5343 N 16th St., Ste. 140
Phoenix, AZ 85016
crichter@lipsonneilson.com
dwatson@lipsonneilson.com

Monica Marie Ryden
Robert Kendall Jones
Jackson Lewis LLP
2111 E Highland Ave., Ste. B250
Phoenix, AZ 85016
Monica.Ryden@jacksonlewis.com
jonesr@jacksonlewis.com

s/ Drew C. Ensign
Drew C. Ensign

*Counsel for Proposed-Intervenor*
*State of Arizona*

(21 of 103)

Case 4:19-cv-03982-DMR Document 9-1 Filed 08/06/19 Page 28 of 385
Case 2:18-cv-03982-DMR/2020-cv-10919409, Document 9-1, Page 228 of 385

# APPENDIX:  List of Exhibits

**Exhibit A:**  Order Approving Stipulation, *Advocates for Individuals with Disabilities v. Consolidated Defendants* (Ariz. Super. Ct. Nov. 13, 2017).

**Exhibit B:**  State's Motion to Intervene, *Advocates for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891 (D. Ariz. filed Dec. 5, 2017) (without exhibits).

**Exhibit C:**  District Of Arizona Cases Involving Fernando Gastelum As Plaintiff (June 22, 2018) (generated by PACER).

**Exhibit D:**  Judgment, *Advocates for Individuals with Disabilities v. Consolidated Defendants* (Ariz. Super. Ct. Apr. 24, 2017).

**Exhibit E:**  Complaint, *Gastelum v. Debaca Land & Cattle, LLC*, No. CV-18-1112 (D. Ariz. filed Apr. 11, 2018).

**Exhibit F:**  Complaint, *Gastelum v. Canyon Hospitality LLC*, No. CV-17-2792 (D. Ariz. filed Aug. 18, 2017).

# Exhibit A

COPY

1  **MARK BRNOVICH**
   **ATTORNEY GENERAL**
2  (Firm Bar No. 14000)
3  PAUL WATKINS (BAR NO. 32577)
   MATTHEW DU MÉE (BAR NO. 28468)
4  BRUNN (BEAU) W. ROYSDEN III (BAR NO. 28698)
   ORAMEL H. (O.H.) SKINNER (BAR NO. 32891)
5  EVAN G. DANIELS (BAR NO. 30624)
6  AARON M. DUELL (BAR. NO. 33450)
     *Assistant Attorneys General*
7  1275 West Washington Street
   Phoenix, Arizona 85007
8  Telephone: (602) 542-7731
9  Facsimile: (602) 542-4377
   Matthew.duMee@azag.gov
10 *Attorneys for State of Arizona*

11

12            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

13              IN AND FOR THE COUNTY OF MARICOPA

14  | ADVOCATES FOR INDIVIDUALS WITH | Case No: CV2016-090506 (consol.) |

15  DISABILITIES FOUNDATION, INC., a
    charitable non-profit foundation, *et al.*;          [~~PROPOSED~~] ORDER APPROVING
16                                                       STIPULATION BETWEEN PLAINTIFFS
17              Plaintiffs,                               AND DEFENDANT-INTERVENOR,
                                                         AWARDING SANCTIONS AGAINST
18      vs.                                              CERTAIN PLAINTIFFS, AND
                                                         RETURNING CASES TO ORIGINATING
19  Consolidated Defendants;                            DIVISIONS

20          Defendants,
                                                         (Assigned to the Hon. David M. Talamante)
21
        vs.
22
23  STATE OF ARIZONA, *ex rel.* Mark
    Brnovich;
24
25          Defendant-Intervenor.

26

Doc#6596022

1    These consolidated cases are before the Court on the State's pending motions for

2  sanctions against Plaintiffs—Advocates for Individuals with Disabilities Foundation, Inc.;

3  Advocates for Individuals with Disabilities, LLC f/k/a Advocates for American Disabled

4  Individuals, LLC; and David Ritzenthaler—and counsel for Plaintiffs Peter Strojnik

5  (collectively, "Plaintiffs and Strojnik").  Pursuant to the stipulation of Plaintiffs and Strojnik and

6  Defendant-Intervenor State of Arizona *ex rel.* Mark Brnovich (the "State"), and good cause

7  appearing, the Court ORDERS as follows:

8  1.    The Court previously consolidated the cases for the limited purposes of addressing

9        common issues related to standing and, if appropriate, sanctions.  On April 27, 2017, the

10       Court entered judgment pursuant to Arizona Rule of Civil Procedure 54(b), in which the

11       Court dismissed the consolidated cases for lack of standing.  This judgment was amended

12       *nunc pro tunc* by this Court on June 13, 2017 to attach the list of dismissed cases.  This

13       judgment with the attached exhibit (the "Rule 54(b) Standing Judgment") is incorporated

14       herein by reference.  Plaintiffs filed a notice of appeal of the Rule 54(b) Standing

15       Judgment on May 25, 2017, which is pending in the Arizona Court of Appeals as 1 CA-

16       CV-17-0365.

17 2.    The Court's dismissal of consolidated cases was on the basis of lack of standing and

18       never reached the merits of the allegations in the consolidated cases' complaints.

19 3.    On March 27, 2017, the State filed a Motion for Rule 11 Sanctions, Motion for Non-

20       Rule 11 Sanctions, Motion in Limine, and Motion for Evidentiary Hearing.  The Court

21       granted the State's motion for evidentiary hearing on the issue of sanctions against

22       Plaintiffs and Strojnik to be held on November 20 and 21, 2017.

23 4.    Pursuant to the stipulation of Plaintiffs and Strojnik and the State, Plaintiffs and all of

24       their affiliates and successors that have actual notice of this order are permanently

25       enjoined from filing as plaintiff any actions in the Superior Court of the State of Arizona

26       that allege violations of the Arizonans With Disabilities Act, A.R.S. § 41-1492 *et seq.*;

-2-

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*; or any regulations issued thereunder. For purposes of this paragraph, affiliate includes any entity or person directly or indirectly controlling, controlled by, or under common control with one or more Plaintiffs. For purposes of this paragraph, successor includes any entity controlled by one or more Plaintiffs, or by any person who was as of October 1, 2017 a manager, officer, or director of any Plaintiff or entity member of any Plaintiff. For avoidance of doubt, nothing in this paragraph limits the ability of Mr. Strojnik or any other attorney admitted to practice law by the Arizona Supreme Court to represent any party in any action.

5. Plaintiffs Advocates for Individuals with Disabilities Foundation, Inc. and Advocates for Individuals with Disabilities, LLC consent to the entry of judgment—as a sanction pursuant to Rule 11, A.R.S. § 12-349, and the inherent power of the Court—against them and in favor of the Consolidated Defendants in each of the consolidated cases for the defendant's reasonable attorneys' fees and costs (if any) in defending the case.

6. The State withdraws with prejudice its Motion(s) for sanctions pursuant to Rule 11, A.R.S. § 12-349, and the Court's inherent power, or otherwise, and for an award of attorney's fees and costs against Messrs. Ritzenthaler and Strojnik for the reason that a continuing pursuit of sanctions, costs and fees against Messrs. Ritzenthaler and Strojnik would not advance the cause of justice. This withdrawal applies solely to the consolidated cases, and does not preclude the State from acting to protect the public in other litigation.

7. Plaintiffs will cause to be paid on execution of this agreement by November 6, 2017 to the Arizona Attorney General's Office the amount of $25,000 for the sole purpose of establishing a fund to educate businesses regarding ADA and AzDA compliance and that businesses can apply for to obtain funds towards improvements to their parking lots to comply with the ADA and AzDA.

8.    Upon payment of money described in the preceding paragraph, the State is dismissed as a party to these consolidated cases other than CV2016-090506 for the purpose of enforcing this order (if necessary).

9.    Plaintiffs agree to dismiss their appeal of the Rule 54(b) Standing Judgment in the Arizona Court of Appeals, and to forego any appeal of the issues addressed in this Order.

10.    Plaintiffs further agree to dismiss their separate mandamus action against the Arizona Attorney General, Case No. CV2016-011532.

11.    The evidentiary hearing set for November 20 and 21, 2017 is vacated.

12.    This Court retains jurisdiction of case number CV2016-090506 for the purpose of enforcing this Order.

13.    The consolidated cases are returned to their originating divisions for the defendant(s) in each case to file, if they choose, an application for reasonable attorneys' fees and costs (if any) against Plaintiffs in defending their case.

DATED this _13th_ day of _November_, 2017.


DAVID M. TALAMANTE
_____
The Honorable David M. Talamante
Judge of the Superior Court

-4-

# CONSENT TO ENTRY OF ORDER

1.      Plaintiffs and Strojnik and the State have fully read and understand this Order, understand the legal consequences of signing it, and affirm that this is the entire agreement between them, no other representations or agreements between them exist, and no force, threats, or coercion of any kind have been used to obtain their agreement and signatures.

2.      Plaintiffs and Strojnik acknowledge that the State's agreement to the entry of this Order is solely for the purpose of settling the consolidated cases and mandamus action described above, and does not preclude the State, or any other agency, officer, or subdivision of this State, from instituting other civil or criminal proceedings as may be appropriate now or in the future.

3.      Plaintiffs Advocates for Individuals with Disabilities Foundation, Inc. and Advocates for Individuals with Disabilities, LLC represent that the person signing below on each's behalf is duly appointed and authorized to do so.

4.      This Consent to Entry of Order may be executed in counterpart, and may be executed by way of facsimile or electronic signature, and if so, shall be considered an original.

ADVOCATES FOR INDIVIDUALS WITH DISABILITIES FOUNDATION, INC.

Dated: _11/3/17_

By: _Alex Callan_
Title: _Authorized Agent_

ADVOCATES FOR INDIVIDUALS WITH DISABILITIES, LLC F/K/A ADVOCATES FOR AMERICAN DISABLED INDIVIDUALS, LLC

Dated: _1/3/17_

By: _Alex Callan_
Title: _Authorized Agent_

DAVID RITZENTHALER

Dated: _1/3/17_

-5-

1    PETER STROJNIK

2    ___ _____ ____            Dated: _11/3/17_

3

4    **Approved as to Form**

5    HORNE SLATON, PLLC

6    By: ___Tom Horne___       Dated: _11/8/17_

7    Thomas Horne
     6720 N. Scottsdale Rd., Suite 285
8    Scottsdale, AZ 85253
     horne@horneslaton.com
     *Attorney for Plaintiffs Peter Strojnik*

9

10   **Approved as to Form and Content**

11   MARK BRNOVICH
     ATTORNEY GENERAL
12
     By: _____           Dated: _11/3/2017_
13   Paul Watkins
     Matthew du Mée
14   Brunn (Beau) W. Roysden III
     Oramel H. (O.H.) Skinner
15   Evan G. Daniels
     Aaron M. Duell
16      *Assistant Attorneys General*
     1275 West Washington Street
17   Phoenix, Arizona 85007
     Telephone: (602) 542-7731
18   Facsimile: (602) 542-4377
     Matthew.duMee@azag.gov
19   *Attorneys for State of Arizona*

20

21

22

23

24

25

26

# Exhibit B

MARK BRNOVICH
Arizona Attorney General (Firm Bar No. 014000)
DREW C. ENSIGN (Bar No. 25462)
MATTHEW DU MEE (Bar No. 28468)
  Assistant Attorneys General
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-5200
Facsimile: (602) 542-4377
Drew.Ensign@azag.gov

*Attorneys for Proposed Intervenor-Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals With Disabilities LLC, and David Ritzenthaler, <br><br> Plaintiffs, <br><br> vs. <br><br> MidFirst Bank, <br><br> Defendant, <br><br> and <br><br> State of Arizona and Mark Brnovich, in his official capacity as Attorney General, <br><br> Proposed Intervenor-Defendants | Case No. 2:16-cv-01969-PHX-NVW <br><br> **STATE'S MOTION TO INTERVENE** |

Case 4:19-cv-03882-DMR   Document 9-7   Filed 08/06/19   Page 38 of 385
Case 2:16-cv-03662-DWL   Document 370   Filed 12/06/17   Page 31 of 73
(31 of 103)

1    Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the State of Arizona

2    and Mark Brnovich, in his official capacity as Attorney General of Arizona,

3    (collectively, the "State") move to intervene in this action.  The State seeks intervention

4    for the limited and sole purpose of requesting that, as part of its pending sanctions

5    proceedings, this Court hold appropriate proceedings and make a determination that a

6    pre-filing order and related relief against Plaintiffs' counsel Peter Strojnik is necessary to

7    protect the District Court for the District of Arizona and the public from Mr. Strojnik's

8    abusive and bad-faith litigation practices in this Court.

9                                    **INTRODUCTION**

10   Plaintiffs and their counsel, Peter Strojnik, have engaged in a sweeping abuse of

11   Arizona state and federal courts.  As this Court has previously observed, Plaintiffs and

12   Strojnik "pursued upwards of 160 cookie-cutter lawsuits in federal court and, from early

13   to later 2016, more than 1,700 such suits in Arizona state court."  Doc. 49 (hereinafter

14   "Dismissal Order") at 3.  Indeed, "[t]emplate complaints filled with non-specific

15   allegations have become the stock-in-trade of … Peter Strojnik."  *Id.* at 2.  And the State

16   obtained dismissals of hundreds of state court proceedings in light of similar behavior

17   and related standing failings.  *See* Exs. B-C.

18   On December 12, 2016, this Court held a hearing at which it heard testimony

19   regarding whether remand of this case to state court would be futile.  The State

20   participated as an amicus at that hearing and contended that remand would be futile.  *See*

21   Ex. A at 40:1-41:9.  The State also expressed its concerns with Strojnik's practice of

22   charging an illusory, unreasonable fee to his client solely for the purpose of extracting

23   more money from defendants.  *Id.* at 57:23-58:14.  The State also noted that Strojnik

24   swore under penalty of perjury in a default case that $5,000 was a reasonable fee.  *Id.* at

25   58:15-59:8.

26   This Court dismissed the instant action alleging violations of the federal

27   Americans with Disabilities Act ("ADA") and the state Arizonans with Disabilities Act

28   ("AzDA") on September 5, 2017.  In its Dismissal Order, this Court strongly suggested

Case 4:19-cv-03992-BMR   Document 9-1   Filed 08/06/19   Page 39 of 385
Case 2:16-cv-08293-RCJ-VCL   Document 37-9   Filed 12/05/12   Page 33 of 77
(32 of 103)

that sanctions were appropriate, concluding that Strojnik's "extortionate practice ha[d] become pervasive," and that he had engaged in "ethically suspect tactics" and "unethical extortion of unreasonable attorney's fees." Dismissal Order at 3, 9-10. This Court further explained that Strojnik had made "demand[s] without legal basis" by "demanding a minimum of $5,000 in attorney's fees" in each of the cases. *Id.* at 10.

While this case was pending in this Court, the State successfully intervened in the cases filed by AID and Ritzenthaler pending in state court. The State did so for the limited purpose of challenging Plaintiffs' standing and obtained a dismissal of virtually all of the state court actions. *See* Ex. C. The State then sought sanctions based on the vexatious conduct of Plaintiffs and their counsel.

The State and Plaintiffs have reached a settlement regarding the State's motion for sanctions in the consolidated cases, which has been approved by the Superior Court. *See* Ex. B. That settlement permanently enjoins Plaintiffs from filing any new suit under AzDA or the ADA in Arizona state courts. *Id.* ¶ 4. That settlement expressly provided that nothing in it prevents Mr. Strojnik from representing other parties in other litigation, however, and it likewise makes clear that nothing prevents the State from acting to protect the public. *See id.* ¶¶ 4, 6. The settlement thus expressly "applie[d] solely to the consolidated cases, and does not preclude the State from acting to protect the public in other litigation," such as this case. *Id.* ¶ 6.

The State had hoped that this Court's order, along with an order dismissing all the state court actions and the settlement barring future state court suits by Plaintiffs, might have halted Strojnik's abuses. But Plaintiffs' counsel is nothing if not persistent—he has resumed filing new suits in this Court with a new plaintiff, Fernando Gastelum. To date, Strojnik has filed over 55 cases in this Court with Gastelum as plaintiff, and over 25 since this Court's Dismissal Order.[1] It thus appears that the lesson that Strojnik took

---

[1] These new cases each begin with the prefix 2:17-CV, and are -2536, -2560, -2567, -2619, -2621, -2622, -2623, -2674, -2700, -2704, -2728, -2729, -2732, -2759, -2768, -2786, -2792, -2802, -2849, -2855, -2857, -2887, -2888, -2903, -2914, -2957, -2969, -3006, -3007, -3017, -3024, -3118, -3120, -3184, -3212, -3213, -3235, -3236, -3269,

Case 4:19-cv-03992-DMR Document 9-1 Filed 08/06/19 Page 40 of 385
Case 2:19-cv-02901-RJ-JWR Document 3-9 Filed 12/09/19 Page 40 of 93

(33 of 103)

1   from this Court's Dismissal Order was to change his nominal plaintiff and state-law

2   claims, rather than cease his vexatious and unethical tactics.

3       Defendant has quite reasonably sought attorneys' fees here as sanctions for

4   Plaintiffs' conduct. But, understandably reflecting its narrower interests as a private

5   party, Defendant has not sought relief to prevent Plaintiffs or Strojnik from filing

6   additional suits against other businesses.

7       The State, however, has broader interests and has concluded that such relief is

8   warranted and necessary. It therefore seeks intervention for the limited and narrow

9   purpose of addressing these issues. Specifically, the State seeks a determination that

10  Strojnik is a "vexatious litigant" and appropriate resulting relief. Such relief should

11  include a requirement that Strojnik:

12      1) Obtain approval from this Court before filing any new suit under the ADA

13          and/or relating to disability law compliance in this Court;

14      2) When seeking approval from this court, provide a copy of the complaint to the

15          potential defendant; and

16      3) When serving a complaint described in the previous sub-paragraph or after a

17          state-court complaint is removed to this Court by a defendant, serve and file with

18          the district court an itemized list, verified under penalty of perjury, of the dates

19          and amounts actual attorney time spent on the particular case, filing costs, other

20          recoverable expenses, and all out-of-pocket damages by plaintiff(s) for that

21

22  _____

22  -3282, -3534, -3535, -3606, -3607, -3626, -3627, -3718, -3719, -3815, -3816, -3834,
23  -3842, -4081, -4084, -4089, -4090, -4119, -4150, -4151, -4378 and -4379. Each of those
    cases include an ADA claim, along with one or more state law claims. Consistent with
24  Strojnik's propensity for "template complaints," each new complaint appears to fall
    within one of two templates: (1) either asserting a federal ADA claim with a negligence
25  claim or (2) asserting a ADA claim along with state law negligence, negligent
    misrepresentation, failure to disclose and fraud claims. The state claim claims are
26  presumably included to make damages available and thereby increase settlement
    leverage (much as AzDA claims were for the AID actions, until the legislature amended
27  AzDA to make it less susceptible to Strojnik's vexatious tactics). These new cases do
28  not assert claims under AzDA.

3

(34 of 103)

Case 4:19-cv-03982-DMR   Document 9-1   Filed 08/06/19   Page 41 of 385
Case 2:19-cv-02929-RVW-JZB   Document 9-9   Filed 12/05/12   Page 33 of 57

1    particular case.  The itemized list must also explain at that time the good-faith

2    basis for all damages claims other than out-of-pocket expenses.

3         To obtain such relief, the State seeks to intervene here for the sole purpose of

4    seeking vexatious-litigant determinations and appropriate related relief.[2]  Intervention

5    here is appropriate on three independent bases:  (1) permissively under Rule 24(b)(2),

6    because Proposed-Intervenor Brnovich is charged with administering AzDA, under

7    which Plaintiffs asserted a claim in this case; (2) permissively under Rule 24(b)(1),

8    because the State seeks to advance a "claim ... that shares with the main action a

9    common question of law or fact"—*i.e.*, that Plaintiffs' and their counsel's conduct

10   warrants sanctions, and (3) as of right under Rule 24(a)(2), because the State has

11   protectable interests that might be impaired and the existing parties do not adequately

12   represent the State's interests.[3]

13        For the reasons set forth below, this Court should grant the State intervention

14   limited to the sanctions/vexatious-litigant issues, either permissively or as of right.  If

15   intervention is granted, the State also requests that the Court set a briefing schedule and

16   hearing for the State's request, and provide notice to Plaintiffs and their counsel that this

17   Court will be considering vexatious-litigant relief.[4]

18   _____

19   [2]  While the State seeks to intervene for purposes of all potential vexatious-litigation
     issues, the State at present intends only to seek vexatious-litigant relief against Strojnik.

20   [3]  The State requests intervention only as to the narrow issues identified.  These

21   proceedings have already been narrowed to the question of sanctions; no broader
     participation is warranted or needed, nor does the State consent to broader participation

22   in this action (and thus broader waiver of its sovereign immunity).  If this Court is
     unwilling to limit intervention solely to the sanctions/vexatious-litigant issues, the State

23   respectfully requests that the Court deny intervention.

24   [4]  The State has not attached a pleading (such as a proposed answer) to this motion.
     Notably, none of the types of pleadings permitted by Rule 7 would seemingly apply in

25   this context where judgment has already been entered.  The State believes that the
     preview of its vexatious-litigant arguments in Section IV, *infra*, should provide Plaintiffs

26   and their counsel with more than sufficient notice of the types of arguments that the State

27   intends to make.  This preview is far beyond what Rule 8's "notice pleading" standard
     reviews and fulfills the intent of Rule 24(c).  The State is also attaching its motions for

28   sanctions in state court and supporting exhibits.  *See* Exs. D-F.

4

(35 of 103)

Case 4:19-cv-03982-DMR   Document 9-17   Filed 08/06/19   Page 42 of 385
Case 2:19-cv-02989-RV   Document 9-09   Filed 12/05/12   Page 5 of 25

1

## LEGAL STANDARDS

2       Rule 24 provides for intervention both permissively and as-of right.  Rule

3 24(b)(2) is a governmental officer-specific rule, and provides in relevant part that "[o]n

4 timely motion, the court may permit a federal or state governmental officer or agency to

5 intervene if a party's claim or defense is based on ... a statute ... administered by the

6 officer or agency."  Rule 24(b)(2) thus "allow[s] intervention liberally to governmental

7 agencies and officers seeking to speak for the public interest."  5C Charles Alan Wright

8 & Arthur R. Miller, *Federal Practice and Procedure* § 1912 (3d ed. 2008).  "[P]ermissive

9 intervention is available when sought because an aspect of the public interest with which

10 [the governmental officer] is officially concerned is involved in the litigation." *Nuesse v.*

11 *Camp*, 385 F.2d 694, 706 (D.C. Cir. 1967).

12       More generally, Rule 24(b)(1)(B) provides that "the court may permit anyone to

13 intervene who … has a claim or defense that shares with the main action a common

14 question of law or fact."  Along with timeliness, "all that is necessary for permissive

15 intervention is that intervenor's 'claim or defense and the main action have a question of

16 law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108

17 (9th Cir. 2002) (quoting 24(b)(1)(B).[5]

18       In addition, a party may intervene as of right under Rule 24(a).  In *Wilderness*

19 *Society v. U.S. Forest Service*, the Ninth Circuit set forth its four-part test for analyzing a

20 motion to intervene of right under Rule 24(a)(2):

21         (1) the motion must be timely; (2) the applicant must claim a
"significantly protectable" interest relating to the property or

22 transaction which is the subject of the action; (3) the
applicant must be so situated that the disposition of the action

23 may as a practical matter impair or impede its ability to
protect that interest; and (4) the applicant's interest must be

24 inadequately represented by the parties to the action.

25 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).

26

27   [5]  *Kootenai Tribe* also has language regarding intervention as of right that was overruled

28 in *Wilderness Society*.  *Wilderness Society* does not undermine *Kootenai Tribe*'s holding
regarding permissive intervention, however.

Case 4:19-cv-03982-DMR  Document 9-7  Filed 08/06/19  Page 43 of 385
Case 2:16-cv-08529-RZ-AGR  Document 349  Filed 12/06/12  Page 73 of 135
(36 of 103)

1    This analysis is "guided primarily by practical considerations, not technical

2  distinctions." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th

3  Cir. 2001) (quotation marks and citation omitted); *see also Wilderness Soc'y*, 630 F.3d at

4  1179 (reiterating importance of "practical and equitable considerations" as part of

5  judicial policy favoring intervention).  "[A] district court is required to accept as true the

6  non-conclusory allegations made in support of an intervention motion."  *Berg*, 268 F.3d

7  at 819.

8                                   **ARGUMENT**

9    Intervention here is appropriate under three distinct bases: (1) because the

10  Attorney General administers AzDA, which Plaintiffs have asserted claims under, (2)

11  because the State seeks to advance common legal and factual arguments already at issue

12  and (3) because the State satisfies the requirements for intervention as of right.

13  Intervention should be granted on any or all of these grounds.

14  **I.    THIS MOTION IS TIMELY**

15    The State's motion is timely.  The State's intervention is unrelated to the merits of

16  this case, making intervention earlier unwarranted.[6]  The Court's Dismissal Order, which

17  was issued three months ago, provides the foundation for the State's motion.  And

18  briefing on sanctions issues that flow from the Court's dismissal order has only recently

19  completed and briefing on other post-judgment matters is ongoing.  The motion is

20  therefore well within the contours of timeliness.  *Cf. Idaho Farm Bureau Fed'n v.*

21  *Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion to intervene as plaintiff and

22  participate in adjudication of merits of suit was timely when filed four months after suit

23  was initiated).

24

25

---

26  [6]  The State did submit a 2-page letter brief as *amicus curiae* informing the Court of state
    court filings and points raised by the State in state court proceedings, and attorneys for
27  the State appeared at a prior show cause proceeding to address questions from the Court
    relating to that letter brief.  That letter brief neither addressed standing under federal law
28  nor the merits of Plaintiffs' ADA and AzDA claims.  *See* Doc. 42.

(37 of 103)

Case 4:19-cv-03992-DMR Document 9-17 Filed 08/06/19 Page 44 of 385
Case 2:16-cv-00829-D-WAV Document 347-09 Filed 12/05/12 Page 36 of 57

1    Indeed, the Ninth Circuit has concluded a district court abused its discretion in

2    finding a motion to intervene untimely despite being filed "approximately twenty years

3    after [the suit's] commencement" because intervention was sought within a reasonable

4    time after a "change of circumstance" meant that there was a new stage of proceedings.

5    *See Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) ("Where a

6    change of circumstances occurs, and that change is the 'major reason' for the motion to

7    intervene, the stage of proceedings factor should be analyzed by reference to the change

8    in circumstances, and not the commencement of the litigation.").  Here the State's

9    motion to intervene is brought within a reasonable time of this Court's Dismissal Order,

10   which was a change in circumstances giving rise to a new stage in the litigation.

11   Similarly, "Post-judgment intervention is often permitted … where the

12   prospective intervenor's interest did not arise until the appellate stage or where

13   intervention would not unduly prejudice the existing parties." *Acree v. Republic of Iraq*,

14   370 F.3d 41, 50 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v.*

15   *Beaty*, 556 U.S. 848 (2009).  Here, the State's interest in seeking appropriate relief under

16   this Court's Dismissal Order did not arise until that Order was issued.

17   Moreover, the necessity of seeking vexatious-litigant relief became apparent only

18   once Strojnik continued to file new ADA actions notwithstanding this Court's Dismissal

19   Order, which extensively criticized Plaintiffs' conduct.  Plaintiffs' counsel has now filed

20   more than 25 additional actions since that Dismissal Order, including seven in November

21   alone (2:17-CV-4081, -0484, 4089, -4090, -4119, -4378, and -4379).  The State

22   reasonably waited a short period to see if this Court's Dismissal Order would deter new

23   suits with similar tactics; this motion comes shortly after it became clear there was little

24   (if any) deterrent effect or change in his conduct.

25   Importantly, the "requirement of timeliness is … a guard against prejudicing the

26   original parties."  *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).  Because the

27   issue of the appropriate sanctions for misconduct is still being litigated in this action,

28   Plaintiffs will not suffer material prejudice by the State also participating in resolution of

7

Case 4:19-cv-03992-DMR Document 9-1 Filed 08/06/19 Page 45 of 385
Case 2:16-cv-08829-DWR-vw Document 37-09 Filed 12/06/12 Page 37 of 57
(38 of 103)

that issue.  In addition, given Strojnik's conduct, it is simply a matter of time before a court considers whether he is a vexatious litigant. Strojnik will suffer little prejudice from answering the inevitable questions about his conduct in this case, rather than a different one.

## II.    THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

### A.    Permissive Intervention Is Appropriate Under Rule 24(b)(2)

Rule 24(b)(2) permits permissive intervention by a governmental official "if a party's claim or defense is based on … a statute ... administered by the officer or agency."  That is plainly the case here.  Plaintiffs asserted a claim under AzDA.  Dismissal Order at 1.  The Attorney General, one of the proposed intervenors, is charged with administering AzDA.  *See*, *e.g.*, A.R.S. § 41-1492.06(A) ("The attorney general shall adopt rules … to carry out the intent of this article."); § 41-1492.09(A) ("The attorney general shall investigate all alleged violations of this article.").  All of the requirements for intervention under Rule 24(b)(2) are thus satisfied.

A favorable exercise of discretion is also warranted.  The State's participation could "assist the court in its orderly procedures leading to the resolution" of the remaining issues.  *Kootenai Tribe*, 313 F.3d at 1111.  In particular, the State has already expended significant resources in (1) discovering and compiling evidence of the wide variety of improper litigation tactics that Plaintiffs' counsel has engaged in and (2) briefing many of the pertinent sanctions issues in state court.  *See*, *e.g.*, Exs. D-F.  The State can thus assist the Court in understanding conduct of Plaintiffs and their counsel and the scope of sanctions that may be warranted.

Granting permissive intervention would also address a collective action problem.  Specifically, the costs of seeking broad vexatious litigant relief against Plaintiffs and their counsel are concentrated and substantial for whatever party might make such a request, but the benefits are diffused:  flowing to the hundreds or *thousands* of individuals and businesses that would otherwise be targeted by Strojnik and subjected to his "extortionate practice[s]."  Because the State represents the interests of all Arizonans,

8

however, it is well-positioned to seek the broad relief that is both thoroughly warranted but also excessively costly for any individuals.

### B. Permissive Intervention Is Also Appropriate Under Rule 24(b)(1)

Permissive intervention is similarly warranted under Rule 24(b)(1), which permits timely permissive intervention where the proposed intervenors "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Here, the State seeks to advance an argument in common with Defendant: that Plaintiffs and their counsel have engaged in abusive litigation conduct that warrants sanctions. The State's arguments will necessarily involve common issues of fact (*i.e.*, what Plaintiffs and their counsel have done) and law (*i.e.*, what legal remedies are appropriate based on that conduct). Rule 24(b)(1) is thus satisfied. *See Kootenai Tribe*, 313 F.3d at 1108.

## III. ALTERNATIVELY, THE STATE SHOULD BE GRANTED INTERVENTION AS OF RIGHT.

In the alternative, the State also satisfies the requirements for intervention as of right. As explained above, this motion is timely. In addition, the State (1) has significant protectable interests that might be impaired by resolution of the remaining sanctions issues and (2) is not adequately represented by existing parties.

### A. The State Has Significant Protectable Interests That Could Be Impaired Absent The Relief It Seeks Being Issued

The State has at least two protectable interests that can support intervention as of right, both of which could be impaired if the Court does not award the relief that the State intends to seek.

*First*, the State has protectable "interest[s] in the health and well-being—both physical and economic—of its residents in general." *Zimmerman v. GJS Group, Inc.*, No. 17-304, 2017 WL 4560136, at *5 (D. Nev. Oct. 11, 2017); *see also Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) ("[T]he State has an interest in protecting and promoting the state economy on behalf of all of its citizens.").

9

Case 4:19-cv-03283-DMR   Document 47   Filed 02/06/19   Page 47 of 385
Case 2:18-cv-02323-DMR-JZB   Document 34   Filed 12/05/17   Page 11 of 13
(40 of 103)

Specifically, the State has interests in ensuring that its citizens and businesses are not unduly burdened by Strojnik's abusive litigation tactics. That interest easily could be impaired if appropriate vexatious litigant relief is not issued, as Strojnik begins a new round of vexatious suits.

In *Zimmerman*, the court granted intervention as of right to the State of Nevada in one of "274 actions in the District of Nevada alleging similar violations of the ADA," so that the State could vindicate its "strong interest in protecting the public from malicious or premature [ADA] lawsuits that threaten Nevada business owners and adversely impact Nevada's general economy." 2017 WL 4560136, at *1, *3. The same result should obtain here for the State of Arizona facing similarly vexatious ADA litigants. Indeed, while the *Zimmerman* plaintiffs filed a "mere" 274 suits, Plaintiffs and their counsel here have filed a substantial multiple of that number.

*Second*, the State has significant interests in protecting tax flows into its treasury. Settlements under the ADA and AzDA are generally tax deductible, thus often converting taxable business income into untaxed deductions.[7] The State's interest in protecting its tax revenue could easily be impaired if Strojnik again begins extracting settlements from Arizona businesses and draining their taxable revenue. Indeed, Strojnik has already obtained at least *three* settlements from his new wave of litigation in Gastelum's name.[8] The State's interests in protecting its tax revenues is thus sufficient to support intervention as of right. *See Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States,* 921 F.2d 924, 928 (9th Cir. 1990) (holding that

---

[7] Although some of that transferred wealth might ordinarily be taxable income for Plaintiffs' counsel, this Court has already noted that Plaintiffs' counsel purportedly donates his fees to a charity, which is not taxable income.

[8] *See* Notice of Settlement, *Galestum v. Phoenix SP Hilton, LLC*, No. 2:17-CV-2728-DKD (Oct. 3, 2017) (Doc. 23); Notice of Settlement, *Galestum v. 2536 W. Beryl Phoenix, LLC d/b/a Homewood Suites by Hilton, Phoenix Metro North*, No. 2:17-CV-2914-JJT (Oct. 9, 2017) (Doc. 12); Notice of Settlement, *Galestum v. BRE/LQ Properties, L.L.C. d/b/a La Quinta Inn Phoenix North*, No. 2:17-CV-2802-DGC (Nov. 2, 2017) (Doc. 23).

(41 of 103)

Case 4:19-cv-02983-DMR v. Document 9-17 Filed 08/06/19 Page 48 of 385
Case 2:18-cv-02328-NVW Document 37-9 Filed 12/05/19 Page 14 of 135

potential that "the City will lose tax revenue" supported intervention as of right, and reversing district court's denial of same); *see also Robertson*, 960 F.2d at 86 ("[T]he State has an interest in protecting its tax revenues.").

### B.    The State's Interests Are Not Adequately Represented

Finally, the State's interests are not adequately represented by existing parties. As the Ninth Circuit has explained, a movant's "burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties *'may be'* inadequate." *Berg*, 268 F.3d at 823 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added). In considering the adequacy of representation, this Court must consider *inter alia* "whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments." *Id.* at 822.

This requirement is easily met: Defendant has not made some of the vexatious litigant arguments that the State intends to make and has not sought all of the relief the State intends to request. It is thus clear that existing parties will not "undoubtedly make all the intervenor's arguments."

## IV.    THE RELIEF SOUGHT BY THE STATE IS SUPPORTED BY NINTH CIRCUIT PRECEDENTS

The vexatious litigant determination and relief that the State intends to seek is well-supported by Ninth Circuit precedent, including *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007). In *Molski*, the Ninth Circuit affirmed a vexatious litigant determination against both the plaintiff and his counsel where they had "filed about 400 lawsuits" alleging violations of the ADA. *Id.* at 1050, 1065. Those numbers pale in comparison to the conduct here.

In this case, the State believes that a vexatious litigant determination against Strojnik is appropriate under several possible bases. By way of preview, the grounds for vexatious litigant determinations include that Strojnik:

11

(42 of 103)
Case 4:19-cv-03083-BMR Document 47 Filed 02/06/19 Page 49 of 385
Case 2:18-cv-02082-GMS Document 37-0 Filed 12/05/19 Page 23 of 23

1.    Misrepresented (and drastically exaggerated) his actual and/or reasonable fees by demanding a minimum of $5,000 in each one of his cookie-cutter complaints.

2.    Misrepresented Plaintiffs' actual damages in several suits, seeking $5,000 or more without any good-faith basis for doing so.

3.    Entered into an agreement with Plaintiffs where he would charge (but never collect) an illusory $5,000 fee in order to extract more money from defendants, and then donate to Plaintiffs any settlement money paying the supposed fee.

4.    Misrepresented Plaintiffs' intent to litigate their federal ADA claims, forcing defendants to incur needless and avoidable costs of removal.

5.    Filed numerous suits to extort settlements from defendants, improperly relying on the costs of litigation to coerce settlements.

6.    Electronically affixed Plaintiff Ritzenthaler's signature to hundreds of verified complaints he appears not to have ever read.

*Molski* notably explained that "[f]rivolous litigation is not limited to cases in which a legal claim is entirely without merit. It is also frivolous for a claimant who has some measure of a legitimate claim to make false factual assertions." *Id.* at 1060. Indeed, the Ninth Circuit affirmed vexatious litigant relief even while "acknowledg[ing] that Molski's numerous suits were probably meritorious in part—many of the establishments he sued were likely not in compliance with the ADA." *Id.* at 1062. Thus, even if some of Plaintiffs' targets were actually in violation of the ADA and AzDA, it does not immunize Strojnik's misconduct from judicial scrutiny and sanction.

Many of the requisite findings that would support vexatious litigant determinations have already been made by this Court. Specifically, this Court has already made three such relevant determinations.

*First*, this Court has already found that Strojnik misrepresented his fees when demanding $5,000 in each and every suit they filed. *See* Dismissal Order at 10 ("In a

Case 4:19-cv-02983-EMR   Document 17   Filed 02/06/19   Page 50 of 385
Case 2:18-cv-02356-MR-JZB   Document 34-9   Filed 12/05/22   Page 43 of 103
(43 of 103)

1    simple form complaint case like this, it is impossible that the fee for preparing and filing
2    the complaint could be $5,000…. A demand for a fee beyond what is reasonable is a
3    demand without legal basis under the ADA."). That alone could support a vexatious
4    litigant filing.

5       *Second*, other judges on this Court have found that Plaintiffs' counsel has falsely
6    represented their intent to litigate their federal ADA claims, forcing parties to incur the
7    costs of removal only for Plaintiffs to dismiss those ADA claims voluntarily and seek
8    remand to state court. This Court thus found Strojnik's conduct sanctionable on separate
9    occasions for *inter alia,* "misrepresent[ing] its intent to litigate its federal claim" and
10   "mislead[ing] and manipulat[ing] opposing counsel,"[9] as well as "attempt[ing] to
11   increase the costs of litigation to maximize Defendants' desire to settle the suit due to the
12   cost of defense," and engaging in "bad faith conduct."[10]

13      *Third*, this Court has already concluded that Strojnik's intent was to extort
14   settlements from Defendants, rather than litigate meritorious claims. Indeed, this Court
15   found Strojnik's "extortionate practice has become pervasive," and that Strojnik filed
16   "cookie-cutter lawsuits" "right down to the same typographical errors." Dismissal Order
17   at 3. This Court further concluded that Strojnik had engaged in "unethical extortion of
18   unreasonable attorney's fees from defendants." *Id.* at 10.[11]

19                                    * * * * *

20      This preview is intended to provide notice of the types of arguments that the State
21   intends to raise if intervention is granted. As set forth above, there are ample bases for

22

23   _____

24   [9]  *AIDF v. Golden Rule Properties LLC*, No. CV-16-02412, Doc. 19 at 4 (D. Ariz. March
     20, 2017).
25   [10] *AIDF v. Golden Rule Properties LLC*, No. CV-16-02413, Doc. 28 at 2, 10-11 (D. Ariz.
     Oct. 13, 2016).
26   [11] Notably, *Molski* similarly relied on Molski's intent "to extract cash settlements from
     defendants," noting that "Molski had tried on the merits only one of his approximately
27   400 suits and had settled all the others." *Id.* at 1052. But Strojnik has yet to try even a
     single case here. Instead, there is ample indication that extracting settlements was his
28   overwhelming intent in filing their numerous suits.

                                        13

(44 of 103)

Case 4:19-cv-03283-DMR Document 17 Filed 08/06/19 Page 51 of 385
Case 2:18-cv-02689-NVW Document 34 Filed 12/05/17 Page 14 of 15

this Court to at least consider the possibility that Strojnik is a vexatious litigant and that appropriate relief should therefore be issued. Such relief could include (1) a pre-filing order against Strojnik requiring court approval before filing any new ADA or AzDA suits or suits related to disability law compliance in federal court and (2) an award of attorneys' fees to the State for this motion and its motion to seek vexatious litigant relief, as well as other appropriate relief.

If this Court is inclined to consider vexatious litigant relief, the State respectfully requests that the Court give notice to both Plaintiffs and Strojnik that such relief is being considered. Such notice is required under *Molski*. *See* 500 F.3d at 1057 ("[T]he litigant must be given notice and a chance to be heard before the order is entered."). The State further requests that the Court set a briefing schedule and hearing for the State's request for vexatious litigant relief. As part of that briefing schedule, the State respectfully requests at least 30 days from the grant of intervention to its initial brief in support of its request for vexatious litigant relief.

## CONCLUSION

For the foregoing reasons, the State's motion to intervene for the limited purpose of addressing (1) whether Plaintiffs and their counsel are "vexatious litigants" and (2) the appropriate relief for such determinations, should be granted. In addition, this Court should issue notice to Plaintiffs and their counsel that it is considering vexatious litigant determination and appropriate relief and set a briefing schedule and hearing for the same.

14

(45 of 103)

Case 4:19-cv-03983-BMR Document 9-17 Filed 02/06/19 Page 52 of 385
Case 2:18-cv-02386-MR-JZB Document 37-0 Filed 12/05/17 Page 16 of 16

1    Respectfully submitted this 5th day of December, 2017.

2                                    Mark Brnovich
                                     Attorney General
3

4                                     s/ Drew C. Ensign

5                                    Drew C. Ensign
                                     Matthew du Mee
6

7                                    *Attorneys for Proposed Intervenor-
                                     Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                 15

(46 of 103)

Case 4:19-cv-03083-BMR Document 9-17 Filed 08/06/19 Page 53 of 285
Case 2:16-cv-03665-MW Document 37-09 Filed 12/05/17 Page 23 of 13

1

**CERTIFICATE OF SERVICE**

2

3        I certify that I electronically transmitted the attached document to the Clerk's

Office using the CM/ECF System for filing and transmittal of a Notice of Electronic

4   Filing to the following, if CM/ECF registrants, and mailed a copy of same if non-

registrants, this 5th day of December, 2017:

5

6   Peter Strojnik
Fabian Zazueta
7   Strojnik PC
8   2375 E Camelback Rd., Ste. 600
Phoenix, AZ 85016
9   602-524-6602
10  602-296-0135 (fax)
ps@strojnik.com
11

12  John Alan Doran
Matthew Albert Kerketh
13  Lori Wright Keffer
14  Sherman & Howard LLC - Scottsdale, AZ
7033 E Greenway Pkwy., Ste. 250
15  Scottsdale, AZ 85254
480-624-2710
16  480-624-2029 (fax)
17  jdoran@shermanhoward.com

18

19  Joshua David R Bendor
Mark I. Harrison
20  Geoffrey MT Sturr
Osborn Maledon PA
21  P.O. Box 36379
Phoenix, AZ 85067-6379
22  602-640-9000
23  jbendor@omlaw.com

24

25    s/ Drew C. Ensign

26  *Attorney for Proposed Intervenor-Defendants*

27

28

# Exhibit C

# Select A Case

### Fernando Gastelum is a plaintiff in 143 cases.

| | | | |
|---|---|---|---|
| [2:17-cv-02536-DGC](#) | Gastelum v. MCPHX17 LLC | filed 07/29/17 | closed 02/06/18 |
| [2:17-cv-02560-JAT](#) | Gastelum v. New Crescent Investments LLC | filed 08/01/17 | closed 01/18/18 |
| [2:17-cv-02567-ESW](#) | Gastelum v. Imara Holdings Incorporated | filed 08/02/17 | closed 01/19/18 |
| [2:17-cv-02619-DGC](#) | Gastelum v. Sin et al | filed 08/04/17 | closed 02/20/18 |
| [2:17-cv-02621-JJT](#) | Gastelum v. G6 Hospitality Property LLC | filed 08/05/17 | closed 01/11/18 |
| [2:17-cv-02622-JJT](#) | Gastelum v. TP & SS Heritage Inn of Phoenix Incorporated | filed 08/06/17 | closed 01/24/18 |
| [2:17-cv-02623-DJH](#) | Gastelum v. Vedanta Resources LLC | filed 08/06/17 | |
| [2:17-cv-02674-DLR](#) | Gastelum v. 8617 Black Canyon Highway LLC | filed 08/08/17 | |
| [2:17-cv-02700-JJT](#) | Gastelum v. Phoenix-Metrocenter Lodging LLC | filed 08/10/17 | closed 12/08/17 |
| [2:17-cv-02704-DJH](#) | Gastelum v. Metro Hospitality LLC | filed 08/10/17 | |
| [2:17-cv-02728-JAT](#) | Gastelum v. Phoenix SP Hilton LLC | filed 08/13/17 | closed 10/26/17 |
| [2:17-cv-02729-GMS](#) | Gastelum v. TP & SS Heritage Inn of Phoenix Incorporated | filed 08/13/17 | closed 01/22/18 |
| [2:17-cv-02732-](#) | Gastelum v. W2005/Fargo Hotels (Pool C) Realty LP | filed 08/14/17 | closed 01/23/18 |

[DGC](#)

| | | | |
|---|---|---|---|
| [2:17-cv-02759-DMF](#) | Gastelum v. Trimark-Park Place LLC | filed 08/15/17 | closed 12/15/17 |
| [2:17-cv-02768-JJT](#) | Gastelum v. DW CL VII LLC | filed 08/16/17 | closed 12/22/17 |
| [2:17-cv-02786-SPL](#) | Gastelum v. W2005 New Century Hotel Portfolio LP | filed 08/17/17 | closed 01/23/18 |
| [2:17-cv-02792-GMS](#) | Gastelum v. Canyon Hospitality LLC | filed 08/18/17 | closed 05/25/18 |
| [2:17-cv-02802-DGC](#) | Gastelum v. BRE/LQ Properties LLC | filed 08/18/17 | closed 11/15/17 |
| [2:17-cv-02849-SPL](#) | Gastelum v. A and D Hospitality 1 LLC | filed 08/23/17 | closed 02/16/18 |
| [2:17-cv-02855-DGC](#) | Gastelum v. HPT CW Properties Trust | filed 08/24/17 | closed 12/15/17 |
| [2:17-cv-02857-JJT](#) | Gastelum v. Crown Hotels LLC | filed 08/24/17 | closed 01/18/18 |
| [2:17-cv-02887-DGC](#) | Gastelum v. C2 Land Limited Partnership | filed 08/26/17 | closed 11/14/17 |
| [2:17-cv-02888-DJH](#) | Gastelum v. Summit Hotel OP Limited Partnership | filed 08/27/17 | |
| [2:17-cv-02903-GMS](#) | Gastelum v. Brixton Metro Plaza LLC | filed 08/29/17 | closed 05/25/18 |
| [2:17-cv-02914-JJT](#) | Gastelum v. 2536 W Beryl Phoenix LLC | filed 08/29/17 | closed 10/24/17 |
| [2:17-cv-02957-DGC](#) | Gastelum v. Bryce Jay LLC | filed 08/31/17 | closed 10/30/17 |
| [2:17-cv-02969-DJH](#) | Gastelum v. G6 Hospitality Property LLC | filed 08/31/17 | closed 01/11/18 |

| [2:17-cv-03006-DGC](#) | Gastelum v. BRE/LQ Properties LLC | filed 09/04/17 | closed 12/05/17 |
|---|---|---|---|
| [2:17-cv-03007-SPL](#) | Gastelum v. Great West Inns Incorporated | filed 09/04/17 | |
| [2:17-cv-03017-GMS](#) | Gastelum v. 11111 North 7th Street Property De LLC | filed 09/05/17 | closed 05/25/18 |
| [2:17-cv-03024-DLR](#) | Gastelum v. Phoenix Extend-A-Suites LLC | filed 09/06/17 | |
| [2:17-cv-03118-DLR](#) | Gastelum v. Shivani SSS LLC | filed 09/12/17 | closed 01/26/18 |
| [2:17-cv-03120-JJT](#) | Gastelum v. JIVAN LLC | filed 09/12/17 | |
| [2:17-cv-03184-DJH](#) | Gastelum v. Bel Aire Hospitality LLC | filed 09/14/17 | |
| [2:17-cv-03212-JJT](#) | Gastelum v. East Side Hotel Associates Limited Partnership | filed 09/16/17 | closed 12/19/17 |
| [2:17-cv-03213-DJH](#) | Gastelum v. 2310 East Highland Avenue LLC | filed 09/17/17 | closed 01/23/18 |
| [2:17-cv-03235-DJH](#) | Gastelum v. H & A Group LLC | filed 09/19/17 | |
| [2:17-cv-03236-JAT](#) | Gastelum v. RRI III LLC | filed 09/19/17 | closed 12/04/17 |
| [2:17-cv-03269-BSB](#) | Gastelum v. Bell Road Lodge LLC | filed 09/21/17 | closed 03/13/18 |
| [2:17-cv-03282-SPL](#) | Gastelum v. Jai Ambe Phoenix LLC | filed 09/21/17 | closed 01/16/18 |
| [2:17-cv-03534-DJH](#) | Gastelum v. MMP Deer Valley Incorporated | filed 10/05/17 | closed 02/15/18 |

| [2:17-cv-03535-DLR](#) | Gastelum v. G6 Hospitality Property LLC | filed 10/05/17 | closed 01/11/18 |
| [2:17-cv-03606-DGC](#) | Gastelum v. DW CL VII LLC | filed 10/08/17 | closed 12/11/17 |
| [2:17-cv-03607-GMS](#) | Gastelum v. Pride Hospitality Incorporated | filed 10/08/17 | closed 01/08/18 |
| [2:17-cv-03626-GMS](#) | Gastelum v. Drury Southwest Incorporated | filed 10/10/17 | closed 05/25/18 |
| [2:17-cv-03627-DJH](#) | Gastelum v. PCH North Phoenix I LLC | filed 10/10/17 | closed 01/31/18 |
| [2:17-cv-03718-DGC](#) | Gastelum v. Apple Ten Hospitality Ownership Incorporated et al | filed 10/12/17 | closed 04/12/18 |
| [2:17-cv-03719-MHB](#) | Gastelum v. Apple Ten Hospitality Ownership Incorporated et al | filed 10/12/17 | closed 04/16/18 |
| [2:17-cv-03815-GMS](#) | Gastelum v. S & H Hospitality LLC | filed 10/17/17 | closed 01/08/18 |
| [2:17-cv-03816-DJH](#) | Gastelum v. Thunderbird School of Global Management | filed 10/17/17 | closed 04/30/18 |
| [2:17-cv-03834-DJH](#) | Gastelum v. Champion Hotel Investment of Phoenix LLC | filed 10/19/17 | |
| [2:17-cv-03842-DGC](#) | Gastelum v. Woodspring Suites Phoenix I-10 West LLC | filed 10/20/17 | closed 03/21/18 |
| [2:17-cv-04081-DJH](#) | Gastelum v. SH Holdings LLC | filed 11/04/17 | |
| [2:17-cv-04082-DLR](#) | Gastelum v. BW RRI III LLC | filed 11/04/17 | closed 12/04/17 |
| [2:17-cv-04089-DJH](#) | Gastelum v. Chandler & Kyrene Hotel Group LLC | filed 11/06/17 | closed 02/20/18 |
| [2:17-cv-04090-](#) | Gastelum v. Teshara Investments LLC | filed 11/06/17 | |

| | | | |
|---|---|---|---|
| 2:17-cv-04119-SPL | Gastelum v. G6 Hospitality Property LLC | filed 11/08/17 | closed 01/10/18 |
| 2:17-cv-04150-DKD | Gastelum v. PJJ Bros LLC | filed 11/11/17 | closed 01/18/18 |
| 2:17-cv-04151-DJH | Gastelum v. JC Hotel Management LLC | filed 11/11/17 | |
| 2:17-cv-04378-GMS | Gastelum v. Clarendon Hotel Group LLC | filed 11/29/17 | closed 03/13/18 |
| 2:17-cv-04379-DJH | Gastelum v 3600 North Second Avenue Holdings LLC | filed 11/29/17 | |
| 2:17-cv-04542-DJH | Gastelum v. Midtown Hotel Group LLC | filed 12/07/17 | closed 03/01/18 |
| 2:17-cv-04544-DLR | Gastelum v. AG-POP CS 3838 Owner LLC | filed 12/07/17 | |
| 2:17-cv-04562-DKD | Gastelum v. BRE Select Hotels AZ LLC | filed 12/08/17 | closed 03/22/18 |
| 2:17-cv-04563-SPL | Gastelum v. BRE/ESA P Portfolio LLC | filed 12/10/17 | closed 03/21/18 |
| 2:17-cv-04611-MHB | Gastelum v. Cityscape Hotel 22 LLC | filed 12/13/17 | closed 03/05/18 |
| 2:17-cv-04613-JJT | Gastelum v. Phoenix FFIS LLC | filed 12/13/17 | closed 01/31/18 |
| 2:17-cv-04667-GMS | Gastelum v. Marriott International Incorporated | filed 12/17/17 | closed 05/25/18 |
| 2:17-cv-04695-DJH | Gastelum v. Tempe/Phoenix Airport Resort LLC | filed 12/19/17 | closed 05/29/18 |
| 2:17-cv-04728-DJH | Gastelum v. Day & Sam Incorporated | filed 12/21/17 | closed 03/13/18 |

6/22/2018

Case 4:19-cv-03983-DMR   Document 9-1   Filed 09/06/19   Page 60 of 385
Case 2:18-cv-03932-DMR/22/2018, to. 18:33-4097 DateEntry: 7-2, Page 60 of 62

(53 of 103)

| | | | |
|---|---|---|---|
| [2:17-cv-04734-DJH](#) | Gastelum v. World Travel Inns LPV | filed 12/21/17 | closed 04/18/18 |
| [2:18-cv-00023-GMS](#) | Gastelum v. Vantage Commercial Properties Incorporated | filed 01/04/18 | closed 02/21/18 |
| [2:18-cv-00035-JAT](#) | Gastelum v. Allred's Hermosa Inn LLC | filed 01/04/18 | closed 03/28/18 |
| [2:18-cv-00052-SPL](#) | Gastelum v. Kuber-Patel Properties LLC | filed 01/08/18 | closed 02/20/18 |
| [2:18-cv-00068-GMS](#) | Gastelum v. CPX Phoenix Airport Gateway Opag LLC | filed 01/08/18 | closed 05/25/18 |
| [2:18-cv-00104-GMS](#) | Gastelum v. AUM Hospitality Ventures LLC | filed 01/11/18 | closed 02/23/18 |
| [2:18-cv-00119-SPL](#) | Gastelum v. S & J Investments LLC | filed 01/12/18 | closed 04/24/18 |
| [2:18-cv-00143-DLR](#) | Gastelum v. Kalisha LLC | filed 01/14/18 | closed 02/20/18 |
| [2:18-cv-00158-SRB](#) | Gastelum v. BRE/LQ Properties LLC | filed 01/16/18 | closed 04/10/18 |
| [2:18-cv-00192-DGC](#) | Gastelum v. Ashford Phoenix Airport North GP LLC | filed 01/19/18 | |
| [2:18-cv-00210-DKD](#) | Gastelum v. HPTWN Corporation | filed 01/21/18 | closed 05/14/18 |
| [2:18-cv-00262-DGC](#) | Gastelum v. Shreeji Hospitality Incorporated | filed 01/24/18 | |
| [2:18-cv-00264-DGC](#) | Gastelum v. Ashford Phoenix Airport LP | filed 01/25/18 | |
| [2:18-cv-00293-DGC](#) | Gastelum v. RR Hotels Phoenix LLC | filed 01/29/18 | |

| | | | |
|---|---|---|---|
| [2:18-cv-00332-DGC](#) | Gastelum v. V & P LLC | filed 01/30/18 | closed 03/02/18 |
| [2:18-cv-00388-DJH](#) | Gastelum v. HPT Suite Properties Trust | filed 02/03/18 | closed 05/14/18 |
| [2:18-cv-00412-DKD](#) | Gastelum v. Verizon Wireless(VAW) LLC | filed 02/05/18 | closed 06/04/18 |
| [2:18-cv-00439-DLR](#) | Gastelum v. GTI Phoenix LLC | filed 02/07/18 | closed 04/20/18 |
| [2:18-cv-00452-JJT](#) | Gastelum v. Tempe Hospitality Ventures LLC | filed 02/08/18 | closed 05/01/18 |
| [2:18-cv-00470-GMS](#) | Gastelum v. Kuber-Rambdas Investments LLC | filed 02/12/18 | closed 05/25/18 |
| [2:18-cv-00471-DKD](#) | Gastelum v. MLEM Properties Incorporated | filed 02/12/18 | closed 06/04/18 |
| [2:18-cv-00512-GMS](#) | Gastelum v. CGD Tempe L P | filed 02/14/18 | closed 05/25/18 |
| [2:18-cv-00551-JAT](#) | Gastelum v. Kang Mesa Estates LLC | filed 02/19/18 | |
| [2:18-cv-00559-JZB](#) | Gastelum v. Mesa Hospitality LLC | filed 02/20/18 | |
| [2:18-cv-00583-DLR](#) | Gastelum v. HPTMI II Properties Trust | filed 02/22/18 | closed 05/15/18 |
| [2:18-cv-00697-DLR](#) | Gastelum v. Tempe Town Lake Inn LLC | filed 03/03/18 | closed 04/06/18 |
| [2:18-cv-00699-SRB](#) | Gastelum v. Residence Inn by Marriott LLC | filed 03/05/18 | closed 05/21/18 |
| [2:18-cv-00747-DJH](#) | Gastelum v. VRE Holding II LLC | filed 03/07/18 | |
| [2:18-cv-00749-](#) | Gastelum v. Tempe 202 Hotel LLC | filed 03/08/18 | closed 04/06/18 |

6/22/2018 (55 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 09/06/19 Page 62 of 385
Case 3:18-18982-DM 06/22/2018, ID: 1893454097 DktEntry: 7-2, Page 384 of 03

DLR

| | | | |
|---|---|---|---|
| [2:18-cv-00799-SPL](#) | Gastelum v. Summit Hospitality 133 LLC | filed 03/12/18 | closed 04/20/18 |
| [2:18-cv-00820-GMS](#) | Gastelum v. Hilton Garden Inns Management LLC | filed 03/13/18 | closed 05/25/18 |
| [2:18-cv-00869-DGC](#) | Gastelum v. PHG Tempe LLC | filed 03/18/18 | closed 06/19/18 |
| [2:18-cv-00887-SPL](#) | Gastelum v. Homewood Suites Management LLC | filed 03/20/18 | |
| [2:18-cv-00900-SPL](#) | Gastelum v. Tempe Hotel Properties LLC | filed 03/21/18 | |
| [2:18-cv-00901-ESW](#) | Gastelum v. OM Hotels LP | filed 03/21/18 | |
| [2:18-cv-00940-GMS](#) | Gastelum v. CP Buttes LLC | filed 03/26/18 | closed 06/15/18 |
| [2:18-cv-00943-DJH](#) | Gastelum v. Gurkirpa Hotel Group LLC | filed 03/27/18 | closed 05/09/18 |
| [2:18-cv-00974-HRH](#) | Gastelum v. EST 2011 LP | filed 03/29/18 | closed 05/07/18 |
| [2:18-cv-01014-SPL](#) | Gastelum v. HPT CW II Properties Trust | filed 03/31/18 | closed 05/14/18 |
| [2:18-cv-01026-SPL](#) | Gastelum v. HPTRI Corporation | filed 04/03/18 | closed 05/14/18 |
| [2:18-cv-01035-DJH](#) | Gastelum v. Drury Development Corporation | filed 04/03/18 | |
| [2:18-cv-01048-DGC](#) | Gastelum v. ETC10PHX LLC | filed 04/05/18 | |
| [2:18-cv-01053-SPL](#) | Gastelum v. Tempe Hotel Group LLC | filed 04/05/18 | closed 05/08/18 |

6/22/2018

(56 of 103)

Case 4:19-cv-03983-DMR   Document 9-1   Filed 09/06/19   Page 63 of 385
Case 3:19-cv-03932   Document 213-4-cv-Filed Entry: 7-2, Page 33 of 63

| 2:18-cv-01070-HRH | Gastelum v. Rishabh Investment LLC | filed 04/08/18 | |
| 2:18-cv-01071-SRB | Gastelum v. GIPHX10 LLC | filed 04/08/18 | |
| 2:18-cv-01073-JJT | Gastelum v. MCRT Tempe 2 LLC | filed 04/09/18 | |
| 2:18-cv-01095-DJH | Gastelum v. BRE LQ Properties LLC | filed 04/10/18 | |
| 2:18-cv-01101-DJH | Gastelum v. MCRT Tempe 1 LLC | filed 04/11/18 | |
| 2:18-cv-01112-GMS | Gastelum v. Debaca Land & Cattle LLC | filed 04/11/18 | closed 05/25/18 |
| 2:18-cv-01271-DGC | Gastelum v. Pacific Heritage Inn of Chandler LLC | filed 04/25/18 | |
| 2:18-cv-01283-GMS | Gastelum v. DHILLON Properties & Investments LLC | filed 04/25/18 | closed 06/15/18 |
| 2:18-cv-01316-DGC | Gastelum v. Greens Chandler LLC | filed 04/30/18 | |
| 2:18-cv-01341-DLR | Gastelum v. Chandler Hospitality LLC | filed 05/01/18 | |
| 2:18-cv-01365-DLR | Gastelum v. Correa Lodging LLC | filed 05/02/18 | |
| 2:18-cv-01366-JJT | Gastelum v. W2005 New Century Hotel Portfolio LP | filed 05/02/18 | |
| 2:18-cv-01429-GMS | Gastelum v. Concord CS Chandler LLC | filed 05/09/18 | closed 06/15/18 |
| 2:18-cv-01453-GMS | Gastelum v. Chandler HG LLC | filed 05/11/18 | closed 06/15/18 |

| [2:18-cv-01455-JJT](#) | Gastelum v. Loves Country Stores Incorporated | filed 05/14/18 |
| [2:18-cv-01456-DLR](#) | Gastelum v. W2005/Fargo Hotels (Pool C) Realty LP | filed 05/14/18 |
| [2:18-cv-01523-JAT](#) | Gastelum v. W2005/Fargo Hotels (Pool C) Realty LP | filed 05/21/18 |
| [2:18-cv-01525-JZB](#) | Gastelum v. Met Hotel LLC | filed 05/21/18 |
| [2:18-cv-01542-JJT](#) | Gastelum v. OCI Chandler of Delaware I LLC | filed 05/22/18 |
| [2:18-cv-01557-DGC](#) | Gastelum v. Apple Nine Hospitality Ownership Incorporated | filed 05/23/18 |
| [2:18-cv-01641-GMS](#) | Gastelum v. Asha Ram LLC | filed 05/30/18 |
| [2:18-cv-01659-GMS](#) | Gastelum v. Amin Family Trust | filed 05/31/18 |
| [2:18-cv-01689-JJT](#) | Gastelum v. San Marcos Hotel LLC | filed 06/04/18 |
| [2:18-cv-01725-DJH](#) | Gastelum v. 3XM LLC et al | filed 06/05/18 |
| [2:18-cv-01816-DJH](#) | Gastelum v. Gosai and Grandsons LLC | filed 06/11/18 |
| [2:18-cv-01829-DMF](#) | Gastelum v. Chandler Continuum Lodging Investors LLC | filed 06/12/18 |
| [2:18-cv-01922-DJH](#) | Gastelum v. ESA Properties LLC | filed 06/19/18 |
| [2:18-cv-01929-HRH](#) | Gastelum v. Paramount Investor Group LLC | filed 06/19/18 |
| [2:18-cv-01941-](#) | Gastelum v. Canyon Hospitality LLC et al | filed 06/20/18 |

6/22/2018

Case 4:19-cv-03983-DMR   Document 1-1   Filed 08/06/19   Page 65 of 385
Case 18-16932, 06/22/2018, ID: 10923409, DktEntry: 7-2, Page 395 of 385

(58 of 103)

ESW

2:18-cv-01958-
MHB        Gastelum v. Ashford Scottsdale LP              filed 06/21/18

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/22/2018 10:17:07 | | | |
| **PACER Login:** | Drewensign1979:5324118:4012087 | **Client Code:** | |
| **Description:** | Search | **Search Criteria:** | Last Name: Gastelum |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

(59 of 103)

Case 4:19-cv-03982-DMR   Document 1-1   Filed 08/06/19   Page 66 of 385
Case: 18-16932, 06/22/2019, ID: 10919409, DktEntry: 7-2, Page 58 of 82

# Exhibit D

(60 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 08/06/19 Page 67 of 385
Case 2:18-cv-16932, 06/22/2020, ID: 10913409, DktEntry: 7-2, Page 39 of 83

FILED
APR 27 2017 10:23 am
MICHAEL K. JEANES, Clerk
By_____
M. Kay, Deputy

1  **MARK BRNOVICH**
   **ATTORNEY GENERAL**
2  (Firm Bar No. 14000)
3  PAUL WATKINS (BAR NO. 32577)
   MATTHEW DU MÉE (BAR NO. 28468)
4  BRUNN (BEAU) W. ROYSDEN III (BAR NO. 28698)
5  ORAMEL H. (O.H.) SKINNER (BAR NO. 32891)
   EVAN G. DANIELS (BAR NO. 30624)
6  JOHN HEYHOE-GRIFFITHS (BAR. NO. 31807)
7  AARON M. DUELL (BAR. NO. 33450)
   ASSISTANT ATTORNEYS GENERAL
8  1275 West Washington Street
   Phoenix, Arizona 85007
9  Telephone: (602) 542-7731
10 Facsimile: (602) 542-4377
   Matthew.duMee@azag.gov
11 *Attorneys for State of Arizona*

12         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

13         **IN AND FOR THE COUNTY OF MARICOPA**

14
   ADVOCATES FOR INDIVIDUALS WITH         Case No: CV2016-090506 consol.
15 DISABILITIES FOUNDATION, INC., a
   charitable non-profit foundation, *et al.*;
16
                                           [~~PROPOSED~~] JUDGMENT
17         Plaintiffs,
                                           (Assigned to the Hon. David M. Talamante)
18    vs.

19 CONSOLIDATED DEFENDANTS;

20         Defendants,

21
      and
22
23 STATE OF ARIZONA, *ex rel.* MARK
   BRNOVICH;
24
25         Defendant-Intervenor.

26

1     The Court has before it the non-dismissed cases it consolidated for the purposes of

2     adjudicating common issues related to dismissal and any sanctions, with the exception of

3     CV2016-090543 (collectively, "Consolidated Cases"). A list of the Consolidated Cases is

4     attached hereto as Exhibit A.[1] In particular, the Court has before it the verified complaints (as

5     amended, if applicable) in the Consolidated Cases (collectively, "Consolidated Complaints"), in

6     which some combination of plaintiffs—Advocates for Individuals with Disabilities Foundation,

7     Inc. ("AIDF"); Advocates for Individuals with Disabilities, LLC; Advocates for American

8     Disabled Individuals, LLC; and David Ritzenthaler (collectively, "Consolidated Plaintiffs")—

9     brought claims against one or more defendants (collectively, "Consolidated Defendants").[2]

10    The Consolidated Complaints assert claims under the federal Americans with Disabilities

11    Act and the state Arizonans with Disabilities Act ("AzDA"). The Consolidated Complaints'

12    allegations pertain to the location of and signage for handicapped parking spaces at places

13    alleged to be public accommodations owned and/or operated by Consolidated Defendants. The

14    Consolidated Complaints demand injunctive and declaratory relief, costs, attorneys' fees of at

15    least $5,000 per case, and damages (in many cases specified as at least $5,000 per case).

16    In its September 8, 2016 order and September 9, 2016 minute entry, the Court permitted

17    the State of Arizona *ex rel.* Mark Brnovich (the "State") to intervene in the earliest-filed non-

18    dismissed case as a limited purpose defendant pursuant to Rule 24(a) and (b) of the Rules of

19    Civil Procedure. The Court entered a series of orders on consolidation, which resulted in the

20    Consolidated Cases being consolidated for the limited purposes of adjudicating common issues

21    related to dismissal and any sanctions. *See* note 1, *supra*. The State filed a Motion to Dismiss

22    _____

23    [1] For purposes of this judgment, Consolidated Cases does not include cases for which a valid
      voluntary or stipulated dismissal has been entered on or before this judgment's date of entry.

24    The minute entries and orders in this matter relating to consolidation include those filed on
      September 6, September 23, and November 8, 2016 and March 1, 2017.

25    [2] Advocates for Individuals with Disabilities, LLC and Advocates for American Disabled
      Individuals, LLC are the same legal entity, which is currently named Advocates for Individuals

26    with Disabilities, LLC.

and Motion for Judgment on the Pleadings (the "Motion") challenging, among other things, Consolidated Plaintiffs' standing to bring the Consolidated Cases. The Court granted the Motion in an unsigned minute entry entered on March 2, 2017.

Now, having considered all proceedings in this action to date—including all pleadings, other papers, status conferences, oral arguments, orders, and minute entries—the Court hereby ORDERS, ADJUDGES, AND DECREES as follows:

1. Based on the allegations in the Consolidated Complaints, the Consolidated Plaintiffs lack standing, and therefore the Motion is granted under Rule 12 of the Rules of Civil Procedure. The Arizona Supreme Court has established a rigorous standing requirement that requires a plaintiff to allege a "distinct and palpable injury." *Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998); *see also Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 16 (2005); *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, 140 ¶ 6 (2005). No allegations in the Consolidated Complaints support the tester argument raised by Consolidated Plaintiffs in their opposition to the Motion. The Consolidated Complaints do not allege that Mr. Ritzenthaler or another member of AIDF (1) patronized or attempted to patronize any of the Consolidated Defendants' places of public accommodation; (2) encountered an actual barrier to his or her access; and (3) experienced a denial of access to the place of public accommodation based on his or her disability.

2. The Consolidated Complaints also fail to meet the additional standing requirements necessary for injunctive and declaratory relief. Consolidated Plaintiffs fail to allege any intent to patronize the Consolidated Defendants' places of public accommodation in the future. Consolidated Plaintiffs also fail to allege actual controversies between them and the persons they are suing, as is required for declaratory relief.

3. The Court further concludes that the Legislature did not waive generally-applicable standing requirements when enacting the AzDA, including A.R.S. § 41-1492.08. And the Court declines to waive standing in these cases. Arizona courts have waived standing only in "exceptional circumstances," and the "paucity of cases" in which they have done so

-3-

"demonstrates both [their] reluctance to do so and the narrowness of this exception." *Sears*, 192 Ariz. at 71 ¶ 25.  Cases in which the Arizona courts have waived standing involved either disputes "at the highest levels of state government" or challenges, in cases brought by or against a governmental entity, to the lawfulness of an Arizona statute or government action.  *Id.* ¶¶ 26-28 (internal quotation marks omitted).  The Consolidated Complaints—involving private claims against private defendants—do not come within those categories, let alone present exceptional circumstances.

4.      Leave to amend the Consolidated Complaints is denied.  Although leave to amend shall "be freely given when justice requires," Ariz. R. Civ. P. 15(a), the Court may deny leave because of "undue delay, bad faith or dilatory motive on the party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment," *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 597 (App. 1991) (quotation omitted).  For the reasons set forth in the Motion, the State's Reply in Support of the Motion, and by the State and the Court at oral argument on the Motion, the Court concludes that all five *Walls* factors for denying leave exist here and support denying any request for leave to amend.

5.      In addition, in its November 28, 2016 minute entry, the Court exercised its discretion to deny Consolidated Plaintiffs' motion for leave to amend with respect to a proposed universal amended complaint ("UAC").  The Court concluded that the motion sought leave to file a supplemental pleading to add a new party, Mr. Fernando Gastelum, and allege transactions, occurrences, or events after the dates of the Consolidated Complaints.  The Court reaffirms that denial.  Even if Plaintiffs were permitted amendment only as to the alleged transactions, occurrences, or events in the UAC that pre-date the Consolidated Complaints, those allegations fail to establish standing for the reasons set forth in paragraphs 1-3, *supra*.

6.      For the foregoing reasons, as well as all other reasons set forth in the Motion, the State's Reply in Support of the Motion, and by the State and the Court at oral argument on the

-4-

1   Motion, the Consolidated Complaints are dismissed with prejudice based on lack of standing,

2   except one or more Consolidated Plaintiffs may pursue a complaint for mandamus against the

3   State in a separate action. The State has not sought its costs or attorneys' fees with respect to its

4   participation in these Consolidated Cases. Claims for sanctions, as well as claims for attorneys'

5   fees and costs by parties other than the State, will be addressed in further proceedings before this

6   Court.

7        7.     There is no just reason for delay, and this judgment is entered under Rule 54(b) of

8   the Rules of Civil Procedure.

9   DATED this _24_ day of _APRIL_, 2017.

11                    The Honorable David M. Talamante

12                    Judge of the Superior Court

# Exhibit E

(66 of 103)

Case 4:19-cv-03988-DMR Document 9-1 Filed 08/06/19 Page 73 of 385
Case 2:19-cv-03922-DLR-MHB Document 1 Filed 08/09/19 Page 1 of 29

1  Peter Strojnik, State Bar No. 6464
   **STROJNIK P.C.**
2  2375 East Camelback Road Suite 600
3  Phoenix, Arizona 85016
   Telephone:  (602) 524-6602
4  ADA@strojnik.com
   Attorneys for Plaintiff
5

6              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF ARIZONA**
7

8  |  | Case No: |
9  | FERNANDO GASTELUM, | **VERIFIED COMPLAINT** |
10 |                    Plaintiff, | **1. Americans with Disabilities Act** |
11 |  | **2. Negligence** |
12 | vs. | **JURY TRIAL REQUESTED** |
13 |  |  |
14 | DEBACA LAND & CATTLE, LLC, |  |
15 |                    Defendant. |  |
16

17              **INTRODUCTION**

18 1. Plaintiff brings this action pursuant to the Americans with Disabilities Act, 42

19    U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and

20
21    Department of Justice Standards for Accessible Design ("ADA").

22 2. Plaintiff's left leg is amputated below the knee. Plaintiff moves with the aid of

23    a wheelchair or a prosthetic leg. Plaintiff suffers from a disability as this term

24
25    is defined in 42 U.S.C. 12102 and 28 CFR §36.105 (c)(1)(i) which includes,

26    inter alia, "walking, standing, sitting, reaching, lifting [and] bending" and other

27
28

(67 of 103)

Case 4:19-cv-03988-DMR Document 9-1 Filed 08/06/19 Page 74 of 385
Case 3:19-cv-03988-DMR Document 1-10 Filed 04/09/19 Page 26 of 29

activities. A partial missing limb "substantially limit[s] musculoskeletal function" as a matter of law. 28 CFR § 36.105 (d)(2)(iii)(D).

3.  Plaintiff is constantly and relentlessly segregated and discriminated against, excluded, denied equal services, or otherwise treated differently than other individuals because of his disability, and has been denied the opportunity to participate in or benefit from services, facilities and opportunities available people without disabilities.

4.  Plaintiff incorporates herein Congressional Findings and Purpose set forth in 42 U.S.C. §12-101 and 28 CFR §36.101.

5.  Plaintiff is being subjected to discrimination on the basis of disability in violation of Subchapter III of the Americans with Disabilities Act or has reasonable ground to believe that that he is about to be subjected to discrimination in violation of 42 U.S.C. §12183.

6.  Plaintiff alleges that he has actual notice that Defendant has failed to comply with Subchapter III of the ADA, 28 CFR 36 and the 2010 Standards of Accessibility Design ("2010 Standards") as more fully alleged below.

7.  Plaintiff alleges that he has no obligation to engage in futile gestures as referenced in 42 U.S.C. §12188(A)(1) and 28 C.F.R. Subpart E

8.  Defendant has discriminated against Plaintiff by the following actions and failures to act –

Case 4:19-cv-03988-DMR Document 9-1 Filed 08/06/19 Page 75 of 385
Case 2:18-cv-03921-DMR Document 10 Filed 04/09/18 Page 3 of 29
(68 of 103)

a.  Failing to make reasonable modifications in policies, practices, or procedures which are necessary to afford Plaintiff and others similarly situated accessibility to Defendant's place of public accommodation, thus violating 42 U.S.C. §12182(b)(2)(A)(ii) and 28 C.F.R. §36.302(a); and

b.  Failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, thus violating 42 U.S.C. §12182(b)(2)(A)(iii); and

c.  Failing to remove architectural barriers where such removal is readily achievable, thus violating 42 U.S.C. §12182(b)(2)(A)(iii), 28 CFR 36 and the 2010 Standards..

**PARTIES**

9.  Plaintiff is a disabled person and a committed individual to advance the time when places of public accommodations will be compliant with the ADA. Plaintiff resides in Casa Grande, Arizona.

10. Plaintiff's disability includes the amputation of the left leg below the knee. Plaintiff moves with the use of a wheelchair, walker and/or a prostethis.

11. Defendant, DEBACA LAND & CATTLE, LLC, D/B/A Ramada Tempe/At Arizona Mills Mall owns and/or operates hotel at 1701 W. Baseline Rd., Phoenix, AZ 85283 which is a public accommodation pursuant to 42 U.S.C. §

(69 of 103)

Case 4:19-cv-03989-DMR Document 9-1 Filed 08/06/19 Page 76 of 385
Case 2:18-cv-08992-DMR Document 1 Filed 04/09/19 Page 4 of 23

12181(7)(A) which offers public lodging services *See* 28 CFR §36.104 and a

listing of public accommodations in 42 U.S.C. §12181(7).

## JURISDICTION

12. District Court has jurisdiction over this case or controversy by virtue of 28

U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

13. Plaintiff brings this action as a private attorney general who has been personally

subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188

and 28 CFR §36.501.

14. Venue is proper pursuant to 28 U.S.C. § 1391.

## STANDING TO SUE JURISDICTION

15. Plaintiff reviewed 3rd party and 1st party lodging websites to book an

ambulatory and wheelchair accessible room. Plaintiff was denied equal

opportunity to use and enjoyment of a critical public accommodation through

Defendant's acts of discrimination and segregation alleged below.

16. Plaintiff intends to book a room at the Defendant's hotel once Defendant has

removed all accessibility barriers, including the ones not specifically referenced

herein, and has fully complied with the ADA.

17. Because of Defendant's denial of Plaintiff's use and enjoyment of a critical

public accommodation through Defendant's acts of discrimination and

segregation, he is deterred from visiting that accommodation by accessibility

barriers and other violations of the ADA.

4

(70 of 103)
Case 4:19-cv-03989-DMR Document 9-1 Filed 08/06/19 Page 77 of 385
Case 2:18-cv-09921-DMR-JCG Document 40 Filed 04/10/19 Page 9 of 29

18. Defendant has denied Plaintiff -

    a. The opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations at its hotel.

    b. The right to be included in the population at large who benefits from Defendant's hotel without being segregated because his disability.

19. Plaintiff intends to book a room at Defendant's hotel in the future but he will likely suffer repeated injury unless and until the barriers of accessibility and ambulatory and wheelchair accessibility barriers have been removed.

**CONTINUING JURISDICTION**

20. ADA violations which form the subject matter of this Verified Complaint change frequently due to regular maintenance, remodels, repairs, and normal wear and tear.

21. Defendant's ADA Violations are of the type that can reasonably be expected to start up again, allowing Defendant to be free to return to the old ways' after the threat of a lawsuit had passed.

22. If one or more ADA violation are cured, Plaintiff alleges that they were cured and timed to anticipate the current lawsuit, and not as a good faith effort to comply with the ADA.

23. To remedy the violations of 28 CFR 36.302(e), Defendant would be required not only to modify all 1st and 3rd party lodging websites, but would be required to do so truthfully and accurately.

5

(71 of 103)

Case 4:19-cv-03989-DMR Document 9-1 Filed 08/06/19 Page 78 of 385
Case 2:18-cv-02921-DLR-MSC Document 1 Filed 04/09/18 Page 6 of 29

**COUNT ONE**

Violation of Plaintiff's Civil Rights under the ADA

24. Plaintiff realleges all allegations heretofore set forth.

25. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

26. On or about April 8, 2018 Plaintiff intended to visit Phoenix and spend the night there. He visited a 3rd party website www.expedia.com to book a room.

27. 3rd party website disclosed general availability and description of Defendant's hotel.

28. 3rd party website states, "Accessibility. If you have requests for specific accessibility needs, please note them at check-out when you book your room.

- Accessible bathroom
- In-room accessibility"

29. 3rd party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel meets his accessibility needs.

30. 3rd party website failed to disclose the following accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel and guest rooms meets his accessibility needs:

6

(72 of 103)

Case 4:19-cv-03989-DMR Document 1-1 Filed 08/06/19 Page 79 of 385
Case 2:18-cv-08953-DMR-MJ Document 1-1 Filed 04/09/19 Page 56 of 185

a. Whether accessible routes comply with § 206 of the 2010 Standards; and

b. Whether operable parts on accessible elements, accessible routes and accessible rooms comply with §§205 and 803 of the 2010 Standards; and

c. Whether any accessible means of egress comply with §207 of the 2010 Standards.

d. Whether parking spaces comply with §§208 and 502 of the 2010 Standards; and

e. Whether passenger loading zones comply with §§209 and 503 of the 2010 Standards; and

f. Whether any drinking fountains comply with §211 of the 2010 Standards; and

g. Whether any kitchens, kitchenettes and sinks comply with §§212 and 804 of the 2010 Standards; and

h. Whether toilet facilities and bathing facilities comply with §213 of the 2010 Standards; and

i. Whether any washing machines and clothes dryers comply with §§214 and 611 of the 2010 Standards; and

j. Whether accessible hotel rooms comply with §224 of the 2010 Standards; and

k. Whether dining surfaces and work surfaces comply with §§226 and 902 of the 2010 Standards; and

l.  Whether sales and service elements comply with §227 of the 2010 Standards; and

m. Whether any saunas and steam rooms comply with §§241 and 612 of the 2010 Standards; and

n.  Whether any swimming pools, wading pools and spas comply with §§242 and 1009 of the 2010 Standards; and

o.  Whether floor and ground surfaces comply with §302 of the 2010 Standards; and

p.  Whether changes in level comply with §303 of the 2010 Standards; and

q.  Whether turning spaces comply with § 304 of the 2010 Standards; and

r.  Whether floor and ground spaces comply with §305 of the 2010 Standards; and

s.  Whether knee and toes clearances comply with §306 of the 2010 Standards; and

t.  Whether protruding objects comply with §307 of the 2010 Standards; and

u.  Whether the reach ranges comply with §308 of the 2010 Standards; and

v.  Whether the operating parts on accessible features comply with §309 of the 2010 Standards; and

w. Whether accessible routes comply with §402 of the 2010 Standards; and

x.  Whether walking surfaces comply with §403 of the 2010 Standards; and

y. Whether doors, doorways and gates comply with §404 of the 2010 Standards; and

z. Whether ramps comply with § 405 of the 2010 Standards; and

aa. Whether curb ramps comply with §406 of the 2010 Standards; and

bb. Whether any elevators comply with §407 of the 2010 Standards; and

cc. Whether any platform lifts comply with §410 of the 2010 Standards; and

dd. Whether any stairways comply with §504 of the 2010 Standards; and

ee. Whether handrails on elements requiring handrails comply with §505 of the 2010 Standards; and

ff. Whether the plumbing facilities comply with Chapter 6 of the 2010 Standards with respect to all the following subchapters of Chapter 6: §§ 602 (drinking fountains), 603 (toilets and bathing rooms), 604 (water closets and toilet compartments, 605 (urinals), 606 (lavatories and sinks), 607 (bathtubs), 607 (shower compartments), 608 (grab bars), 610 (seats in bathtubs and shower compartments), and

gg. Whether service counters comply with 904 of the 2010 Standards.

31. Thereafter, Plaintiff consulted Defendant's 1st party website www.wyndhamhotels.com to determine the information unavailable from the third-party website.

32. 1st party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough

9

(75 of 103)

Case 4:19-cv-03983-DMR Document 1-1 Filed 08/06/19 Page 82 of 385
Case 2:18-cv-08021-GW-JC Document 140 Filed 04/10/19 Page 45 of 53

detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel meets his accessibility needs.

33. In particular, 1st party website failed to disclose the following accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel and guest rooms meets his accessibility needs:

a. Whether accessible routes comply with § 206 of the 2010 Standards; and

b. Whether operable parts on accessible elements, accessible routes and accessible rooms comply with §§205 and 803 of the 2010 Standards; and

c. Whether any accessible means of egress comply with §207 of the 2010 Standards.

d. Whether parking spaces comply with §§208 and 502 of the 2010 Standards; and

e. Whether passenger loading zones comply with §§209 and 503 of the 2010 Standards; and

f. Whether any drinking fountains comply with §211 of the 2010 Standards; and

g. Whether any kitchens, kitchenettes and sinks comply with §§212 and 804 of the 2010 Standards; and

h. Whether toilet facilities and bathing facilities comply with §213 of the 2010 Standards; and

(76 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 09/06/19 Page 83 of 385
Case 2:18-cv-09821-DMG-GWS Document 140 Filed 04/19/18 Page 83 of 385

i.  Whether any washing machines and clothes dryers comply with §§214 and 611 of the 2010 Standards; and

j.  Whether accessible hotel rooms comply with §224 of the 2010 Standards; and

k.  Whether dining surfaces and work surfaces comply with §§226 and 902 of the 2010 Standards; and

l.  Whether sales and service elements comply with §227 of the 2010 Standards; and

m. Whether any saunas and steam rooms comply with §§241 and 612 of the 2010 Standards; and

n.  Whether any swimming pools, wading pools and spas comply with §§242 and 1009 of the 2010 Standards; and

o.  Whether floor and ground surfaces comply with §302 of the 2010 Standards; and

p.  Whether changes in level comply with §303 of the 2010 Standards; and

q.  Whether turning spaces comply with § 304 of the 2010 Standards; and

r.  Whether floor and ground spaces comply with §305 of the 2010 Standards; and

s.  Whether knee and toes clearances comply with §306 of the 2010 Standards; and

t.  Whether protruding objects comply with §307 of the 2010 Standards; and

(77 of 103)

Case 4:19-cv-03983-DMR Document 1-1 Filed 08/06/19 Page 84 of 385
Case 2:18-cv-02165-GMS Document 140 Filed 04/19/18 Page 260 of 385

u.  Whether the reach ranges comply with §308 of the 2010 Standards; and

v.  Whether the operating parts on accessible features comply with §309 of the 2010 Standards; and

w.  Whether accessible routes comply with §402 of the 2010 Standards; and

x.  Whether walking surfaces comply with §403 of the 2010 Standards; and

y.  Whether doors, doorways and gates comply with §404 of the 2010 Standards; and

z.  Whether ramps comply with § 405 of the 2010 Standards; and

aa. Whether curb ramps comply with §406 of the 2010 Standards; and

bb. Whether any elevators comply with §407 of the 2010 Standards; and

cc. Whether any platform lifts comply with §410 of the 2010 Standards; and

dd. Whether any stairways comply with §504 of the 2010 Standards; and

ee. Whether handrails on elements requiring handrails comply with §505 of the 2010 Standards; and

ff. Whether the plumbing facilities comply with Chapter 6 of the 2010 Standards with respect to all the following subchapters of Chapter 6: §§ 602 (drinking fountains), 603 (toilets and bathing rooms), 604 (water closets and toilet compartments, 605 (urinals), 606 (lavatories and sinks), 607 (bathtubs), 607 (shower compartments), 608 (grab bars), 610 (seats in bathtubs and shower compartments), and

gg. Whether service counters comply with 904 of the 2010 Standards.

12

(78 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 08/06/19 Page 85 of 385
Case 2:18-cv-09821-DSF-GJS Document 140 Filed 04/19/18 Page 78 of 103

34. Thereafter Plaintiff called Defendant's hotel to inquire whether it was compliant with the ADA and suitable for Plaintiff's accessibility needs.

35. Plaintiff spoke with hotel reservations clerk, Chris. Plaintiff specifically inquired whether Defendant's hotel was compliant with the Americans with Disabilities Act and compliant with the specific requirements of accessibility.

36. Reservations clerk responded that he was pretty sure the hotel was compliant with the Americans with Disabilities Act, but he would need to check with a manager the following day.

37. Reservations clerk also informed Plaintiff that the accessible room costs more than a non accessible room.

38. Plaintiff subsequently visited the hotel to independently verify that it was, at least on the outside, suitable to accommodate his disability.

39. Plaintiff noted that the hotel was not compliant with the ADA and was replete with accessibility barriers in the details which include, without limitation, the following areas of non-compliance:

   a. 208.3.1. The accessible parking is not dispersed to all entrances.

   b. 305.7.2. The alcove containing the ice and vending machines has an insufficient clear floor space for a parallel approach.

   c. 309.4. The restroom near the lobby requires a twisting of the wrist motion and more than 5 pounds of force to open.

   d. 309.4. The fitness center door requires a twisting of the wrist motion to open.

(79 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 08/06/19 Page 86 of 385
Case 2:18-cv-09821-GW-JC Document 140 Filed 04/19/18 Page 86 of 385

e. 309.4. The accessible guest rooms require a twisting of the wrist motion to enter.

f. 309.4. The pool gates require a twisting of the wrist motion to open.

g. 403.3. Multiple accessible routes have a walking surface with a running slope steeper than 1:20 inches.

h. 403.3. Multiple accessible routes have a walking surface cross sloped steeper than 1:48 inches.

i. 502.2. The van accessible parking space has a clear width of less than 132 inches.

j. 502.3. Multiple access aisles do not adjoin an accessible route.

k. 502.3.1. Multiple access aisles have a clear width of less than 60 inches

l. 502.4. At least one accessible parking space has a running slope steeper than 1:48 inches.

m. 503.3. The passenger loading zone does not have an access aisle.

n. 504.3. The stairways have open risers at the bottom step and;

o. Other ADA violations to be discovered through a discovery process.

40. As a result of the deficiencies described above, Plaintiff declined to book a room at the hotel.

41. The removal of accessibility barriers listed above is readily achievable.

14

(80 of 103)

Case 4:19-cv-03983-DMR Document 1-1 Filed 08/06/19 Page 87 of 385
Case 2:18-cv-08121-GMS Document 140 Filed 04/01/18 Page 59 of 85

42. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A.  Relief described in 42 U.S.C. §2000a – 3; and

    B.  Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C.  Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E.  Equitable nominal damages in the amount of $1.00; and

    F.  For costs, expenses and attorney's fees; and

    G.  All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT TWO**
Negligence

43. Plaintiff realleges all allegations heretofore set forth.

44. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

15

(81 of 103)

Case 4:19-cv-03903-DMR Document 1-1 Filed 08/06/19 Page 88 of 385
Case 2:18-cv-08021-JAK-GJS Document 140 Filed 04/19/18 Page 88 of 103

45. Defendant breached this duty.

46. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

47. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

48. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

49. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

50. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

---

[1] 42 U.S.C. § 12101(a)(2)

[2] 42 U.S.C. §12101(a)(3)

[3] 42 U.S.C. §12101(a)(5)

(82 of 103)

Case 4:19-cv-03983-DMR Document 9-1 Filed 08/06/19 Page 89 of 385
Case 2:18-cv-02121-JAM-CMS Document 140 Filed 04/19/18 Page 89 of 385

51. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

52. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

53. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

54. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

55. Defendant's knowing and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

56. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[6].

---

[4] 42 U.S.C. §12101(a)(6)

[5] 42 U.S.C. §12101(a)(7)

[6] 42 U.S.C. §12101(a)(8)

17

(83 of 103)

Case 4:19-cv-03883-DMR Document 9-1 Filed 08/06/19 Page 90 of 103
Case 2:18-cv-09921-JAK-GWS Document 140 Filed 04/10/18 Page 26 of 385

57. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

58. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

59. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

60. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

61. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

62. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

18

(84 of 103)

Case 4:19-cv-03203-DMR Document 9-1 Filed 08/06/19 Page 91 of 385
Case 2:18-cv-02181-GMS Document 1-40 Filed 04/19/18 Page 19 of 385

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.


<b>REQUEST FOR TRIAL BY JURY</b>

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 11th day of April, 2018.

<b>STROJNIK, P.C.</b>

_____

Peter Strojnik, 6464
Attorneys for Plaintiff

<b>VERIFICATION</b>

Plaintiff verifies that he has read the forgoing and that the factual allegations stated above are true and correct to the best of his knowledge, information and belief. Plaintiff makes this verification under the penalty of perjury.


/s/ Fernando Gastelum
Authorized Electronically

19

# Exhibit F

(86 of 103)

Case 4:19-cv-03988-DMR Document 9-1 Filed 08/06/19 Page 93 of 385
Case 2:17-cv-03922-DGC Document 1-101 Filed 08/09/17 Page 86 of 26

Peter Strojnik, State Bar No. 6464
**STROJNIK P.C.**
2375 East Camelback Road Suite 600
Phoenix, Arizona 85016
Telephone: (602) 524-6602
ADA@strojnik.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| | Case No: |
| FERNANDO GASTELUM, | **VERIFIED COMPLAINT** |
| Plaintiff, | **1. Americans with Disabilities Act** |
| | **2. Negligence** |
| vs. | **3. Negligent Misrepresentation** |
| CANYON HOSPITALITY LLC | **4. Failure to Disclose** |
| Defendant. | **5. Fraud / Consumer Fraud** |
| | **JURY TRIAL REQUESTED** |

### INTRODUCTION

1. Plaintiff brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department of Justice Standards for Accessible Design ("ADA").

2. Plaintiff's left leg is amputated below the knee. Plaintiff moves with the aid of a wheelchair or a prosthetic leg. Plaintiff suffers from a disability as this term is defined in 42 U.S.C. 12102 and 28 CFR §36.105 (c)(1)(i) which includes, inter alia, "walking, standing, sitting, reaching, lifting [and] bending" and other

activities. A partial missing limb "substantially limit[s] musculoskeletal function" as a matter of law. 28 CFR § 36.105 (d)(2)(iii)(D).

3. Plaintiff is constantly and relentlessly segregated and discriminated against, excluded, denied equal services, or otherwise treated differently than other individuals because of his disability, and has been denied the opportunity to participate in or benefit from services, facilities and opportunities available people without disabilities.

4. Plaintiff incorporates herein Congressional Findings and Purpose set forth in 42 U.S.C. §12-101 and 28 CFR §36.101.

5. Plaintiff is being subjected to discrimination on the basis of disability in violation of Subchapter III of the Americans with Disabilities Act or has reasonable ground to believe that that he is about to be subjected to discrimination in violation of 42 U.S.C. §12183.

6. Plaintiff alleges that he has actual notice that Defendant has failed to comply with Subchapter III of the ADA, 28 CFR 36 and the 2010 Standards of Accessibility Design ("2010 Standards") as more fully alleged below.

7. Plaintiff alleges that he has no obligation to engage in futile gestures as referenced in 42 U.S.C. §12188(A)(1) and 28 C.F.R. Subpart E

8. Defendant has discriminated against Plaintiff by the following actions and failures to act –

Case 4:19-cv-03988-DMR Document 9-1 Filed 08/06/19 Page 95 of 385
Case 2:17-cv-03932-JJT-MHB Document 1 Filed 08/09/17 Page 3 of 8
(88 of 103)

a. Failing to make reasonable modifications in policies, practices, or procedures which are necessary to afford Plaintiff and others similarly situated accessibility to Defendant's place of public accommodation, thus violating 42 U.S.C. §12182(b)(2)(A)(ii) and 28 C.F.R. §36.302(a); and

b. Failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, thus violating 42 U.S.C. §12182(b)(2)(A)(iii); and

c. Failing to remove architectural barriers where such removal is readily achievable, thus violating 42 U.S.C. §12182(b)(2)(A)(iii), 28 CFR 36 and the 2010 Standards..

## PARTIES

9. Plaintiff is a disabled person and a committed individual to advance the time when places of public accommodations will be compliant with the ADA.

10. Plaintiff's disability includes the amputation of the left leg below the knee. Plaintiff moves with the use of a wheelchair, walker and/or a prostethis.

11. Defendant Canyon Hospitality LLC owns and/or operates Grand Canyon University Hotel, at 5115 North 27th Avenue, Phoenix, Arizona which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A) which offers public lodging services *See* 28 CFR §36.104 and a listing of public accommodations in 42 U.S.C. §12181(7).

## JURISDICTION

12. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

3

Case 4:19-cv-03988-DMR Document 11 Filed 08/06/19 Page 96 of 385
Case 2:17-cv-09922-PA-GJS Document 1-10 Filed 08/09/17 Page 68 of 83
(89 of 103)

13. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28 CFR §36.501.

14. Venue is proper pursuant to 28 U.S.C. § 1391.

## STANDING TO SUE JURISDICTION

15. Plaintiff reviewed 3rd party and 1st party lodging websites to book an ambulatory and wheelchair accessible room. Plaintiff was denied equal opportunity to use and enjoyment of a critical public accommodation through Defendant's acts of discrimination and segregation alleged below.

16. Plaintiff intends to book a room at the Defendant's hotel once Defendant has removed all accessibility barriers, including the ones not specifically referenced herein, and has fully complied with the ADA.

17. Because of Defendant's denial of Plaintiff's use and enjoyment of a critical public accommodation through Defendant's acts of discrimination and segregation, he is deterred from visiting that accommodation by accessibility barriers and other violations of the ADA.

18. Defendant has denied Plaintiff -
   a. The opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations at its hotel.
   b. The right to be included in the population at large who benefits from Defendant's hotel without being segregated because his disability.

19. Plaintiff intends to book a room at Defendant's hotel in the future but he will likely suffer repeated injury unless and until the barriers of accessibility and ambulatory and wheelchair accessibility barriers have been removed.

## CONTINUING JURISDICTION

20. ADA violations which form the subject matter of this Verified Complaint change frequently due to regular maintenance, remodels, repairs, and normal wear and tear.

4

(90 of 103)

Case 4:19-cv-03982-DMR Document 9-1 Filed 08/06/19 Page 97 of 385
Case 2:17-cv-02622-RCM-MSC Document 34 Filed 08/09/17 Page 97 of 385

21. Defendant's ADA Violations are of the type that can reasonably be expected to start up again, allowing Defendant to be free to return to the old ways' after the threat of a lawsuit had passed.

22. If one or more ADA violation are cured, Plaintiff alleges that they were cured and timed to anticipate the current lawsuit, and not as a good faith effort to comply with the ADA.

23. To remedy the violations of 28 CFR 36.302(e), Defendant would be required not only to modify all 1st and 3rd party lodging websites, but would be required to do so truthfully and accurately.

### COUNT ONE
#### Violation of Plaintiff's Civil Rights under the ADA

24. Plaintiff realleges all allegations heretofore set forth.

25. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

26. On or about August 17, 2017 Plaintiff visited a 3rd party website www.expedia.com to book a room.

27. 3rd party website disclosed general availability and description of Defendant's hotel.

28. 3rd party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel meets his accessibility needs.

29. 3rd party website failed to disclose the following accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel and guest rooms meets his accessibility needs:

    a. Whether accessible routes comply with § 206 of the 2010 Standards; and

5

(91 of 103)

Case 4:19-cv-03938-DMR Document 9-1 Filed 08/06/19 Page 98 of 385
Case 2:17-cv-09222-RGK-MRW Document 14-11 Filed 08/19/22 Page 7 of 103

b. Whether operable parts on accessible elements, accessible routes and accessible rooms comply with §§205 and 803 of the 2010 Standards; and

c. Whether any accessible means of egress comply with §207 of the 2010 Standards.

d. Whether parking spaces comply with §§208 and 502 of the 2010 Standards; and

e. Whether passenger loading zones comply with §§209 and 503 of the 2010 Standards; and

f. Whether any drinking fountains comply with §211 of the 2010 Standards; and

g. Whether any kitchens, kitchenettes and sinks comply with §§212 and 804 of the 2010 Standards; and

h. Whether toilet facilities and bathing facilities comply with §213 of the 2010 Standards; and

i. Whether any washing machines and clothes dryers comply with §§214 and 611 of the 2010 Standards; and

j. Whether accessible hotel rooms comply with §224 of the 2010 Standards; and

k. Whether dining surfaces and work surfaces comply with §§226 and 902 of the 2010 Standards; and

l. Whether sales and service elements comply with §227 of the 2010 Standards; and

m. Whether any saunas and steam rooms comply with §§241 and 612 of the 2010 Standards; and

n. Whether any swimming pools, wading pools and spas comply with §§242 and 1009 of the 2010 Standards; and

o. Whether floor and ground surfaces comply with §302 of the 2010 Standards; and

6

(92 of 103)

Case 4:19-cv-03988-DMR Document 1-1 Filed 08/06/19 Page 99 of 385
Case 2:17-cv-03222-DMG-MAA Document 34-1 Filed 08/08/17 Page 7 of 103

p. Whether changes in level comply with §303 of the 2010 Standards; and

q. Whether turning spaces comply with § 304 of the 2010 Standards; and

r. Whether floor and ground spaces comply with §305 of the 2010 Standards; and

s. Whether knee and toes clearances comply with §306 of the 2010 Standards; and

t. Whether protruding objects comply with §307 of the 2010 Standards; and

u. Whether the reach ranges comply with §308 of the 2010 Standards; and

v. Whether the operating parts on accessible features comply with §309 of the 2010 Standards; and

w. Whether accessible routes comply with §402 of the 2010 Standards; and

x. Whether walking surfaces comply with §403 of the 2010 Standards; and

y. Whether doors, doorways and gates comply with §404 of the 2010 Standards; and

z. Whether ramps comply with § 405 of the 2010 Standards; and

aa. Whether curb ramps comply with §406 of the 2010 Standards; and

bb. Whether any elevators comply with §407 of the 2010 Standards; and

cc. Whether any platform lifts comply with §410 of the 2010 Standards; and

dd. Whether any stairways comply with §504 of the 2010 Standards; and

ee. Whether handrails on elements requiring handrails comply with §505 of the 2010 Standards; and

ff. Whether the plumbing facilities comply with Chapter 6 of the 2010 Standards with respect to all the following subchapters of Chapter 6: §§ 602 (drinking fountains), 603 (toilets and bathing rooms), 604 (water closets and toilet compartments, 605 (urinals), 606 (lavatories and sinks), 607 (bathtubs), 607 (shower compartments), 608 (grab bars), 610 (seats in bathtubs and shower compartments), and

gg. Whether service counters comply with 904 of the 2010 Standards.

7

(93 of 103)

Case 4:19-cv-02885-DMR Document 8-1 Filed 08/06/19 Page 100 of 385
Case 2:14-cv-09332-CAS-MRW Document 107 Filed 03/19/12 Page 361 of 385

30. Thereafter, Plaintiff consulted Defendant's 1st party website www.gcuhotel.com to determine the information unavailable from the third-party website.

31. 1st party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel meets his accessibility needs.

32. In particular, 1st party website failed to disclose the following accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's hotel and guest rooms meets his accessibility needs:

   a. Whether accessible routes comply with § 206 of the 2010 Standards; and

   b. Whether operable parts on accessible elements, accessible routes and accessible rooms comply with §§205 and 803 of the 2010 Standards; and

   c. Whether any accessible means of egress comply with §207 of the 2010 Standards.

   d. Whether parking spaces comply with §§208 and 502 of the 2010 Standards; and

   e. Whether passenger loading zones comply with §§209 and 503 of the 2010 Standards; and

   f. Whether any drinking fountains comply with §211 of the 2010 Standards; and

   g. Whether any kitchens, kitchenettes and sinks comply with §§212 and 804 of the 2010 Standards; and

   h. Whether toilet facilities and bathing facilities comply with §213 of the 2010 Standards; and

   i. Whether any washing machines and clothes dryers comply with §§214 and 611 of the 2010 Standards; and

8

(94 of 103)

Case 4:19-cv-02033-DMR Document 81-1 Filed 08/06/19 Page 101 of 385
Case 2:14-cv-09323-GW-MRW Document 105 Filed 08/19/12 Page 91 of 385

j.   Whether accessible hotel rooms comply with §224 of the 2010 Standards; and

k.   Whether dining surfaces and work surfaces comply with §§226 and 902 of the 2010 Standards; and

l.   Whether sales and service elements comply with §227 of the 2010 Standards; and

m.  Whether any saunas and steam rooms comply with §§241 and 612 of the 2010 Standards; and

n.   Whether any swimming pools, wading pools and spas comply with §§242 and 1009 of the 2010 Standards; and

o.   Whether floor and ground surfaces comply with §302 of the 2010 Standards; and

p.   Whether changes in level comply with §303 of the 2010 Standards; and

q.   Whether turning spaces comply with § 304 of the 2010 Standards; and

r.   Whether floor and ground spaces comply with §305 of the 2010 Standards; and

s.   Whether knee and toes clearances comply with §306 of the 2010 Standards; and

t.   Whether protruding objects comply with §307 of the 2010 Standards; and

u.   Whether the reach ranges comply with §308 of the 2010 Standards; and

v.   Whether the operating parts on accessible features comply with §309 of the 2010 Standards; and

w.  Whether accessible routes comply with §402 of the 2010 Standards; and

x.   Whether walking surfaces comply with §403 of the 2010 Standards; and

y.   Whether doors, doorways and gates comply with §404 of the 2010 Standards; and

z.   Whether ramps comply with § 405 of the 2010 Standards; and

aa. Whether curb ramps comply with §406 of the 2010 Standards; and

9

(95 of 103)

Case 4:19-cv-02982-DMR Document 1-1 Filed 08/06/19 Page 102 of 385
Case 2:17-cv-08982-DMG-GJS Document 140 Filed 08/06/19 Page 146 185

bb. Whether any elevators comply with §407 of the 2010 Standards; and

cc. Whether any platform lifts comply with §410 of the 2010 Standards; and

dd. Whether any stairways comply with §504 of the 2010 Standards; and

ee. Whether handrails on elements requiring handrails comply with §505 of the 2010 Standards; and

ff. Whether the plumbing facilities comply with Chapter 6 of the 2010 Standards with respect to all the following subchapters of Chapter 6: §§ 602 (drinking fountains), 603 (toilets and bathing rooms), 604 (water closets and toilet compartments, 605 (urinals), 606 (lavatories and sinks), 607 (bathtubs), 607 (shower compartments), 608 (grab bars), 610 (seats in bathtubs and shower compartments), and

gg. Whether service counters comply with 904 of the 2010 Standards.

33. Thereafter Plaintiff called Defendant's hotel to inquire whether it was compliant with the ADA and suitable for Plaintiff's accessibility needs.

34. Plaintiff spoke with hotel reservations clerk, Rena. Plaintiff specifically inquired whether Defendant's hotel was compliant with the Americans with Disabilities Act and compliant with the specific requirements of accessibility.

35. Reservations clerk responded that the hotel was compliant with the Americans with Disabilities Act.

36. Plaintiff subsequently visited the hotel to independently verify that it was, at least on the outside, suitable to accommodate his disability.

37. Plaintiff noted that the hotel was not compliant with the ADA and was replete with accessibility barriers in the details which include, without limitation, the following areas of non-compliance with the 2010 Standards of Accessibility Design:

a. Passenger Loading Zones in front of the building is unmarked; and

b. Passenger loading zone in the back of the building is unmarked; and

c. Accessible parking is not dispersed properly; and

10

(96 of 103)

Case 4:19-cv-02983-DMR Document 81-1 Filed 08/06/19 Page 103 of 385
Case 2:17-cv-03982-DMG-JEM Document 140 Filed 08/06/19 Page 11 of 383

d.  Multiple access points to accessible routes are not served with curb ramps; and

e.  Multiple stairways have open risers; and

f.  Multiple stair treads have improper nosings; and

g.  Multiple stairways have non-continuous handrails between flights; and

h.  Some parts of the accessible routes have a cross slope greater than 1:48; and

i.  Some accessible parking spaces have a cross slope greater than 1:48; and

j.  Some access aisles have improper cross slope; and

k.  Accessible route from accessible parking is impeded by drainage gate; and

l.  Ramp at rear entrance has a running slope is greater than 1:12; and

m. Curb ramp on accessible route has a running slope greater than 1:12; and

n.  A curb ramp has a missing landing; and

o.  Pet waste station by the pool is inaccessible; and

p.  Outside smoking area is inaccessible; and

q.  Elevator is non-compliant; and

r.  South lobby bathroom sink is non-compliant (no knee and toe clearance); and

s.  Washing machines have improper reach ranges; and

t.  Pool latch is too high and requires 2 hands to use; and

u.  Pool shower controls are not operable at shower point; and

v.  Other non-compliance items to be discovered during the discovery process.

(97 of 103)

Case 4:19-cv-02993-DMR Document 81-1 Filed 08/06/17 Page 104 of 385
Case 2:17-cv-08982-FMO-GJS Document 140 Filed 03/06/17 Page 104 of 385

38. As a result of the deficiencies described above, Plaintiff declined to book a room at the hotel.

39. The removal of accessibility barriers listed above is readily achievable.

40. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A.  Relief described in 42 U.S.C. §2000a – 3; and

    B.  Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C.  Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E.  For costs, expenses and attorney's fees; and

    F.  All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT TWO**
Negligence

41. Plaintiff realleges all allegations heretofore set forth.

42. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

43. Defendant breached this duty.

44. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements,

(98 of 103)

Case 4:19-cv-03083-DMR Document 81-1 Filed 08/06/19 Page 105 of 385
Case 2:17-cv-09082-AA-GWS-DC Document 140 Filed 08/06/17 Page 3 of 113

such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

45. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

46. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

47. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

48. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

49. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

50. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

51. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

---

[1] 42 U.S.C. § 12101(a)(2)

[2] 42 U.S.C. §12101(a)(3)

[3] 42 U.S.C. §12101(a)(5)

[4] 42 U.S.C. §12101(a)(6)

52. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

53. Defendant's knowing and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

54. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[6].

55. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

56. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

57. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

58. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

---

[5] 42 U.S.C. §12101(a)(7)

[6] 42 U.S.C. §12101(a)(8)

14

(100 of 103)

Case 4:19-cv-02993-DMR Document 81-1 Filed 08/06/19 Page 107 of 385
Case 2:17-cv-03982-JAK-GJS Document 140 Filed 08/06/17 Page 1 of 283

59. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

60. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

### COUNT THREE
Negligent Misrepresentation

61. Plaintiff realleges all allegations heretofore set forth.

62. Defendant failed to exercise reasonable care or competence in obtaining or communicating the information regarding ADA compliance to Plaintiff both on the websites and telephonically.

63. Defendant hotel supplied false information to Plaintiff for guidance in Plaintiff's business transaction, to wit: the renting of a hotel room.

64. Defendant's false statement was made in the course of Defendant's business in which Defendant has a pecuniary interest, to wit: renting of rooms.

65. Plaintiff justifiably relied on Defendant's false information.

66. Plaintiff has suffered pecuniary losses as a result of his reliance on Defendant's false information regarding ADA compliance, to wit: he spent time, effort and resources.

15

Case 4:19-cv-02983-DMR Document 81-1 Filed 08/06/19 Page 108 of 385
Case 2:17-cv-03982-DMR-GMS Document 140 Filed 08/06/19 Page 16 of 103

(101 of 103)

67. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

68. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligent misrepresentation; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

**COUNT FOUR**
Failure to Disclose

69. Plaintiff realleges all allegations heretofore set forth.

70. Defendant was under a duty to Plaintiff to exercise reasonable care to disclose matters required to be disclosed pursuant to 28 CFR 36.302(e) as more fully alleged above.

71. Defendant was under a duty to disclose matters to Plaintiff that Defendant knew were necessary to be disclosed to prevent Plaintiff to be misled by partial disclosures of ADA compliance as more fully alleged above.

72. The compliance with the ADA is a fact basic to the transaction.

73. Defendant failed to make the necessary disclosures.

74. As a direct consequence of Defendant's failure to disclose, Plaintiff visited the hotel, but did not book a room because of its non-compliance with the ADA.

75. Plaintiff has been damaged by Defendant's non-disclosure.

(102 of 103)

Case 4:19-cv-02882-DMR Document 81-1 Filed 08/06/17 Page 109 of 385
Case 2:17-cv-03982-DMR-GMS Document 140 Filed 08/06/17 Page 1 of 103

76. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

77. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of that Defendant failed to disclose information; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

**COUNT FIVE**
Fraud
Common Law and Consumer

78. Plaintiff realleges all allegations heretofore set forth.

79. Defendant made a representation as alleged above.

80. The representation was material.

81. The representation was false.

82. Defendant knew that the representation was false or was ignorant to the truth or falsity thereof.

83. Defendant intended that Plaintiff rely on the false representation.

84. Plaintiff reasonably relied on the misrepresentation.

85. Plaintiff has a right to rely on the misrepresentation.

86. Plaintiff was consequently and proximately damaged by Defendant's misrepresentation.

87. Defendant's misrepresentation was made in connection with the sale or advertisement of merchandise with the intent that Plaintiff rely on it.

(103 of 103)

Case 2:17-cv-03022-DMR Document 1-1 Filed 08/06/19 Page 110 of 385
Case 2:17-cv-03022-JWS-JZB Document 40 Filed 08/18/17 Page 18 of 18

88. Renting of hotel rooms is "merchandise" as this term is defined in A.R.S. §44-1521(5).

89. Plaintiff relied on the misrepresentation.

90. Plaintiff suffered an injury resulting from the false misrepresentation

91. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

92. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

      A. For finding of that Defendant failed to disclose information; and

      B. For damages in an amount to be proven at trial; and

      C. For punitive damages to be proven at trial; and

      D. For such other and further relief as the Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 18th day of August 2017.

**STROJNIK, P.C.**

Peter Strojnik, 6464
Attorneys for Plaintiff

## VERIFICATION

Plaintiff verifies that he has read the forgoing and that the factual allegations stated above are true and correct to the best of his knowledge, information and belief. Plaintiff makes this verification under the penalty of perjury.

/s/ Fernando Gastelum
Authorized Electronically

18

# EXHIBIT 2

1   MARK BRNOVICH
    Arizona Attorney General (Firm Bar No. 014000)
2   DREW C. ENSIGN (Bar No. 25462)
    MATTHEW DU MEE (Bar No. 28468)
3     Assistant Attorneys General
4   2005 N. Central Avenue
    Phoenix, AZ 85004
5   Telephone: (602) 542-5200
    Facsimile: (602) 542-4377
6   Drew.Ensign@azag.gov
7
8   *Attorneys for Proposed Intervenor-Defendants*

9                  **UNITED STATES DISTRICT COURT**

10                     **DISTRICT OF ARIZONA**

11
    Advocates for Individuals With
12  Disabilities LLC, and David              Case No: 2:16-cv-01969-PHX-NVW
    Ritzenthaler,
13                  Plaintiffs,              **STATE'S MOTION TO INTERVENE**
14  vs.
15
    MidFirst Bank,
16                  Defendant,
17          and
18
    State of Arizona and Mark Brnovich, in
19  his official capacity as Attorney General,
20                  Proposed Intervenor-
                    Defendants
21
22
23
24
25
26
27
28

1    Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the State of Arizona

2 and Mark Brnovich, in his official capacity as Attorney General of Arizona,

3 (collectively, the "State") move to intervene in this action. The State seeks intervention

4 for the limited and sole purpose of requesting that, as part of its pending sanctions

5 proceedings, this Court hold appropriate proceedings and make a determination that a

6 pre-filing order and related relief against Plaintiffs' counsel Peter Strojnik is necessary to

7 protect the District Court for the District of Arizona and the public from Mr. Strojnik's

8 abusive and bad-faith litigation practices in this Court.

9                              **INTRODUCTION**

10    Plaintiffs and their counsel, Peter Strojnik, have engaged in a sweeping abuse of

11 Arizona state and federal courts. As this Court has previously observed, Plaintiffs and

12 Strojnik "pursued upwards of 160 cookie-cutter lawsuits in federal court and, from early

13 to later 2016, more than 1,700 such suits in Arizona state court." Doc. 49 (hereinafter

14 "Dismissal Order") at 3. Indeed, "[t]emplate complaints filled with non-specific

15 allegations have become the stock-in-trade of … Peter Strojnik." *Id.* at 2. And the State

16 obtained dismissals of hundreds of state court proceedings in light of similar behavior

17 and related standing failings. *See* Exs. B-C.

18    On December 12, 2016, this Court held a hearing at which it heard testimony

19 regarding whether remand of this case to state court would be futile. The State

20 participated as an amicus at that hearing and contended that remand would be futile. *See*

21 Ex. A at 40:1-41:9. The State also expressed its concerns with Strojnik's practice of

22 charging an illusory, unreasonable fee to his client solely for the purpose of extracting

23 more money from defendants. *Id.* at 57:23-58:14. The State also noted that Strojnik

24 swore under penalty of perjury in a default case that $5,000 was a reasonable fee. *Id.* at

25 58:15-59:8.

26    This Court dismissed the instant action alleging violations of the federal

27 Americans with Disabilities Act ("ADA") and the state Arizonans with Disabilities Act

28 ("AzDA") on September 5, 2017. In its Dismissal Order, this Court strongly suggested

that sanctions were appropriate, concluding that Strojnik's "extortionate practice ha[d] become pervasive," and that he had engaged in "ethically suspect tactics" and "unethical extortion of unreasonable attorney's fees." Dismissal Order at 3, 9-10. This Court further explained that Strojnik had made "demand[s] without legal basis" by "demanding a minimum of $5,000 in attorney's fees" in each of the cases. *Id.* at 10.

While this case was pending in this Court, the State successfully intervened in the cases filed by AID and Ritzenthaler pending in state court. The State did so for the limited purpose of challenging Plaintiffs' standing and obtained a dismissal of virtually all of the state court actions. *See* Ex. C. The State then sought sanctions based on the vexatious conduct of Plaintiffs and their counsel.

The State and Plaintiffs have reached a settlement regarding the State's motion for sanctions in the consolidated cases, which has been approved by the Superior Court. *See* Ex. B. That settlement permanently enjoins Plaintiffs from filing any new suit under AzDA or the ADA in Arizona state courts. *Id.* ¶ 4. That settlement expressly provided that nothing in it prevents Mr. Strojnik from representing other parties in other litigation, however, and it likewise makes clear that nothing prevents the State from acting to protect the public. *See id.* ¶¶ 4, 6. The settlement thus expressly "applie[d] solely to the consolidated cases, and does not preclude the State from acting to protect the public in other litigation," such as this case. *Id.* ¶ 6.

The State had hoped that this Court's order, along with an order dismissing all the state court actions and the settlement barring future state court suits by Plaintiffs, might have halted Strojnik's abuses. But Plaintiffs' counsel is nothing if not persistent—he has resumed filing new suits in this Court with a new plaintiff, Fernando Gastelum. To date, Strojnik has filed over 55 cases in this Court with Gastelum as plaintiff, and over 25 since this Court's Dismissal Order.[1] It thus appears that the lesson that Strojnik took

---

[1] These new cases each begin with the prefix 2:17-CV, and are -2536, -2560, -2567, -2619, -2621, -2622, -2623, -2674, -2700, -2704, -2728, -2729, -2732, -2759, -2768, -2786, -2792, -2802, -2849, -2855, -2857, -2887, -2888, -2903, -2914, -2957, -2969, -3006, -3007, -3017, -3024, -3118, -3120, -3184, -3212, -3213, -3235, -3236, -3269,

from this Court's Dismissal Order was to change his nominal plaintiff and state-law claims, rather than cease his vexatious and unethical tactics.

Defendant has quite reasonably sought attorneys' fees here as sanctions for Plaintiffs' conduct. But, understandably reflecting its narrower interests as a private party, Defendant has not sought relief to prevent Plaintiffs or Strojnik from filing additional suits against other businesses.

The State, however, has broader interests and has concluded that such relief is warranted and necessary. It therefore seeks intervention for the limited and narrow purpose of addressing these issues. Specifically, the State seeks a determination that Strojnik is a "vexatious litigant" and appropriate resulting relief. Such relief should include a requirement that Strojnik:

> 1) Obtain approval from this Court before filing any new suit under the ADA and/or relating to disability law compliance in this Court;
>
> 2) When seeking approval from this court, provide a copy of the complaint to the potential defendant; and
>
> 3) When serving a complaint described in the previous sub-paragraph or after a state-court complaint is removed to this Court by a defendant, serve and file with the district court an itemized list, verified under penalty of perjury, of the dates and amounts actual attorney time spent on the particular case, filing costs, other recoverable expenses, and all out-of-pocket damages by plaintiff(s) for that

---

-3282, -3534, -3535, -3606, -3607, -3626, -3627, -3718, -3719, -3815, -3816, -3834, -3842, -4081, -4084, -4089, -4090, -4119, -4150, -4151, -4378 and -4379. Each of those cases include an ADA claim, along with one or more state law claims. Consistent with Strojnik's propensity for "template complaints," each new complaint appears to fall within one of two templates: (1) either asserting a federal ADA claim with a negligence claim or (2) asserting a ADA claim along with state law negligence, negligent misrepresentation, failure to disclose and fraud claims. The state claim claims are presumably included to make damages available and thereby increase settlement leverage (much as AzDA claims were for the AID actions, until the legislature amended AzDA to make it less susceptible to Strojnik's vexatious tactics). These new cases do not assert claims under AzDA.

3

particular case.  The itemized list must also explain at that time the good-faith basis for all damages claims other than out-of-pocket expenses.

To obtain such relief, the State seeks to intervene here for the sole purpose of seeking vexatious-litigant determinations and appropriate related relief.[2]  Intervention here is appropriate on three independent bases:  (1) permissively under Rule 24(b)(2), because Proposed-Intervenor Brnovich is charged with administering AzDA, under which Plaintiffs asserted a claim in this case; (2) permissively under Rule 24(b)(1), because the State seeks to advance a "claim ... that shares with the main action a common question of law or fact"—*i.e.*, that Plaintiffs' and their counsel's conduct warrants sanctions, and (3) as of right under Rule 24(a)(2), because the State has protectable interests that might be impaired and the existing parties do not adequately represent the State's interests.[3]

For the reasons set forth below, this Court should grant the State intervention limited to the sanctions/vexatious-litigant issues, either permissively or as of right.  If intervention is granted, the State also requests that the Court set a briefing schedule and hearing for the State's request, and provide notice to Plaintiffs and their counsel that this Court will be considering vexatious-litigant relief.[4]

---

[2]  While the State seeks to intervene for purposes of all potential vexatious-litigation issues, the State at present intends only to seek vexatious-litigant relief against Strojnik.

[3]  The State requests intervention only as to the narrow issues identified.  These proceedings have already been narrowed to the question of sanctions; no broader participation is warranted or needed, nor does the State consent to broader participation in this action (and thus broader waiver of its sovereign immunity).  If this Court is unwilling to limit intervention solely to the sanctions/vexatious-litigant issues, the State respectfully requests that the Court deny intervention.

[4]  The State has not attached a pleading (such as a proposed answer) to this motion.  Notably, none of the types of pleadings permitted by Rule 7 would seemingly apply in this context where judgment has already been entered.  The State believes that the preview of its vexatious-litigant arguments in Section IV, *infra*, should provide Plaintiffs and their counsel with more than sufficient notice of the types of arguments that the State intends to make.  This preview is far beyond what Rule 8's "notice pleading" standard reviews and fulfills the intent of Rule 24(c).  The State is also attaching its motions for sanctions in state court and supporting exhibits.  *See* Exs. D-F.

4

**LEGAL STANDARDS**

Rule 24 provides for intervention both permissively and as-of right.  Rule 24(b)(2) is a governmental officer-specific rule, and provides in relevant part that "[o]n timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on ... a statute ... administered by the officer or agency."  Rule 24(b)(2) thus "allow[s] intervention liberally to governmental agencies and officers seeking to speak for the public interest."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1912 (3d ed. 2008).  "[P]ermissive intervention is available when sought because an aspect of the public interest with which [the governmental officer] is officially concerned is involved in the litigation."  *Nuesse v. Camp*, 385 F.2d 694, 706 (D.C. Cir. 1967).

More generally, Rule 24(b)(1)(B) provides that "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."  Along with timeliness, "all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'"  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting 24(b)(1)(B).[5]

In addition, a party may intervene as of right under Rule 24(a).  In *Wilderness Society v. U.S. Forest Service*, the Ninth Circuit set forth its four-part test for analyzing a motion to intervene of right under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).

---

[5] *Kootenai Tribe* also has language regarding intervention as of right that was overruled in *Wilderness Society*.  *Wilderness Society* does not undermine *Kootenai Tribe*'s holding regarding permissive intervention, however.

1    This analysis is "guided primarily by practical considerations, not technical

2 distinctions." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th

3 Cir. 2001) (quotation marks and citation omitted); *see also Wilderness Soc'y*, 630 F.3d at

4 1179 (reiterating importance of "practical and equitable considerations" as part of

5 judicial policy favoring intervention). "[A] district court is required to accept as true the

6 non-conclusory allegations made in support of an intervention motion." *Berg*, 268 F.3d

7 at 819.

8                                  **ARGUMENT**

9    Intervention here is appropriate under three distinct bases: (1) because the

10 Attorney General administers AzDA, which Plaintiffs have asserted claims under, (2)

11 because the State seeks to advance common legal and factual arguments already at issue

12 and (3) because the State satisfies the requirements for intervention as of right.

13 Intervention should be granted on any or all of these grounds.

14 **I.    THIS MOTION IS TIMELY**

15    The State's motion is timely. The State's intervention is unrelated to the merits of

16 this case, making intervention earlier unwarranted.[6] The Court's Dismissal Order, which

17 was issued three months ago, provides the foundation for the State's motion. And

18 briefing on sanctions issues that flow from the Court's dismissal order has only recently

19 completed and briefing on other post-judgment matters is ongoing. The motion is

20 therefore well within the contours of timeliness. *Cf. Idaho Farm Bureau Fed'n v.*

21 *Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion to intervene as plaintiff and

22 participate in adjudication of merits of suit was timely when filed four months after suit

23 was initiated).

24

25

---

26 [6] The State did submit a 2-page letter brief as *amicus curiae* informing the Court of state
court filings and points raised by the State in state court proceedings, and attorneys for
27 the State appeared at a prior show cause proceeding to address questions from the Court
relating to that letter brief. That letter brief neither addressed standing under federal law
28 nor the merits of Plaintiffs' ADA and AzDA claims. *See* Doc. 42.

1    Indeed, the Ninth Circuit has concluded a district court abused its discretion in

2    finding a motion to intervene untimely despite being filed "approximately twenty years

3    after [the suit's] commencement" because intervention was sought within a reasonable

4    time after a "change of circumstance" meant that there was a new stage of proceedings.

5    *See Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) ("Where a

6    change of circumstances occurs, and that change is the 'major reason' for the motion to

7    intervene, the stage of proceedings factor should be analyzed by reference to the change

8    in circumstances, and not the commencement of the litigation.").  Here the State's

9    motion to intervene is brought within a reasonable time of this Court's Dismissal Order,

10   which was a change in circumstances giving rise to a new stage in the litigation.

11   Similarly, "Post-judgment intervention is often permitted … where the

12   prospective intervenor's interest did not arise until the appellate stage or where

13   intervention would not unduly prejudice the existing parties."  *Acree v. Republic of Iraq*,

14   370 F.3d 41, 50 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v.*

15   *Beaty*, 556 U.S. 848 (2009).  Here, the State's interest in seeking appropriate relief under

16   this Court's Dismissal Order did not arise until that Order was issued.

17   Moreover, the necessity of seeking vexatious-litigant relief became apparent only

18   once Strojnik continued to file new ADA actions notwithstanding this Court's Dismissal

19   Order, which extensively criticized Plaintiffs' conduct.  Plaintiffs' counsel has now filed

20   more than 25 additional actions since that Dismissal Order, including seven in November

21   alone (2:17-CV-4081, -0484, 4089, -4090, -4119, -4378, and -4379).  The State

22   reasonably waited a short period to see if this Court's Dismissal Order would deter new

23   suits with similar tactics; this motion comes shortly after it became clear there was little

24   (if any) deterrent effect or change in his conduct.

25   Importantly, the "requirement of timeliness is … a guard against prejudicing the

26   original parties."  *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).  Because the

27   issue of the appropriate sanctions for misconduct is still being litigated in this action,

28   Plaintiffs will not suffer material prejudice by the State also participating in resolution of

7

that issue.  In addition, given Strojnik's conduct, it is simply a matter of time before a court considers whether he is a vexatious litigant. Strojnik will suffer little prejudice from answering the inevitable questions about his conduct in this case, rather than a different one.

## II.  THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

### A.  Permissive Intervention Is Appropriate Under Rule 24(b)(2)

Rule 24(b)(2) permits permissive intervention by a governmental official "if a party's claim or defense is based on … a statute ... administered by the officer or agency."  That is plainly the case here.  Plaintiffs asserted a claim under AzDA. Dismissal Order at 1.  The Attorney General, one of the proposed intervenors, is charged with administering AzDA.  *See*, *e.g.*, A.R.S. § 41-1492.06(A) ("The attorney general shall adopt rules … to carry out the intent of this article."); § 41-1492.09(A) ("The attorney general shall investigate all alleged violations of this article.").  All of the requirements for intervention under Rule 24(b)(2) are thus satisfied.

A favorable exercise of discretion is also warranted.  The State's participation could "assist the court in its orderly procedures leading to the resolution" of the remaining issues.  *Kootenai Tribe*, 313 F.3d at 1111.  In particular, the State has already expended significant resources in (1) discovering and compiling evidence of the wide variety of improper litigation tactics that Plaintiffs' counsel has engaged in and (2) briefing many of the pertinent sanctions issues in state court.  *See*, *e.g.*, Exs. D-F.  The State can thus assist the Court in understanding conduct of Plaintiffs and their counsel and the scope of sanctions that may be warranted.

Granting permissive intervention would also address a collective action problem. Specifically, the costs of seeking broad vexatious litigant relief against Plaintiffs and their counsel are concentrated and substantial for whatever party might make such a request, but the benefits are diffused:  flowing to the hundreds or *thousands* of individuals and businesses that would otherwise be targeted by Strojnik and subjected to his "extortionate practice[s]."  Because the State represents the interests of all Arizonans,

8

however, it is well-positioned to seek the broad relief that is both thoroughly warranted but also excessively costly for any individuals.

### B. Permissive Intervention Is Also Appropriate Under Rule 24(b)(1)

Permissive intervention is similarly warranted under Rule 24(b)(1), which permits timely permissive intervention where the proposed intervenors "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Here, the State seeks to advance an argument in common with Defendant: that Plaintiffs and their counsel have engaged in abusive litigation conduct that warrants sanctions. The State's arguments will necessarily involve common issues of fact (*i.e.*, what Plaintiffs and their counsel have done) and law (*i.e.*, what legal remedies are appropriate based on that conduct). Rule 24(b)(1) is thus satisfied. *See Kootenai Tribe*, 313 F.3d at 1108.

## III. ALTERNATIVELY, THE STATE SHOULD BE GRANTED INTERVENTION AS OF RIGHT.

In the alternative, the State also satisfies the requirements for intervention as of right. As explained above, this motion is timely. In addition, the State (1) has significant protectable interests that might be impaired by resolution of the remaining sanctions issues and (2) is not adequately represented by existing parties.

### A. The State Has Significant Protectable Interests That Could Be Impaired Absent The Relief It Seeks Being Issued

The State has at least two protectable interests that can support intervention as of right, both of which could be impaired if the Court does not award the relief that the State intends to seek.

*First*, the State has protectable "interest[s] in the health and well-being—both physical and economic—of its residents in general." *Zimmerman v. GJS Group, Inc.*, No. 17-304, 2017 WL 4560136, at *5 (D. Nev. Oct. 11, 2017); *see also Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) ("[T]he State has an interest in protecting and promoting the state economy on behalf of all of its citizens.").

9

Specifically, the State has interests in ensuring that its citizens and businesses are not unduly burdened by Strojnik's abusive litigation tactics. That interest easily could be impaired if appropriate vexatious litigant relief is not issued, as Strojnik begins a new round of vexatious suits.

In *Zimmerman*, the court granted intervention as of right to the State of Nevada in one of "274 actions in the District of Nevada alleging similar violations of the ADA," so that the State could vindicate its "strong interest in protecting the public from malicious or premature [ADA] lawsuits that threaten Nevada business owners and adversely impact Nevada's general economy." 2017 WL 4560136, at *1, *3. The same result should obtain here for the State of Arizona facing similarly vexatious ADA litigants. Indeed, while the *Zimmerman* plaintiffs filed a "mere" 274 suits, Plaintiffs and their counsel here have filed a substantial multiple of that number.

*Second*, the State has significant interests in protecting tax flows into its treasury. Settlements under the ADA and AzDA are generally tax deductible, thus often converting taxable business income into untaxed deductions.[7] The State's interest in protecting its tax revenue could easily be impaired if Strojnik again begins extracting settlements from Arizona businesses and draining their taxable revenue. Indeed, Strojnik has already obtained at least *three* settlements from his new wave of litigation in Gastelum's name.[8] The State's interests in protecting its tax revenues is thus sufficient to support intervention as of right. *See Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States,* 921 F.2d 924, 928 (9th Cir. 1990) (holding that

---

[7] Although some of that transferred wealth might ordinarily be taxable income for Plaintiffs' counsel, this Court has already noted that Plaintiffs' counsel purportedly donates his fees to a charity, which is not taxable income.

[8] *See* Notice of Settlement, *Galestum v. Phoenix SP Hilton, LLC,* No. 2:17-CV-2728-DKD (Oct. 3, 2017) (Doc. 23); Notice of Settlement, *Galestum v. 2536 W. Beryl Phoenix, LLC d/b/a Homewood Suites by Hilton, Phoenix Metro North*, No. 2:17-CV-2914-JJT (Oct. 9, 2017) (Doc. 12); Notice of Settlement, *Galestum v. BRE/LQ Properties, L.L.C. d/b/a La Quinta Inn Phoenix North*, No. 2:17-CV-2802-DGC (Nov. 2, 2017) (Doc. 23).

10

1    potential that "the City will lose tax revenue" supported intervention as of right, and

2    reversing district court's denial of same); *see also Robertson*, 960 F.2d at 86 ("[T]he

3    State has an interest in protecting its tax revenues.").

4    **B.     The State's Interests Are Not Adequately Represented**

5        Finally, the State's interests are not adequately represented by existing parties.  As

6    the Ninth Circuit has explained, a movant's "burden of showing inadequacy is

7    'minimal,' and the applicant need only show that representation of its interests by

8    existing parties *'may be'* inadequate."  *Berg*, 268 F.3d at 823  (quoting *Trbovich v.*

9    *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added). In considering

10   the adequacy of representation, this Court must consider *inter alia* "whether the interest

11   of a present party is such that it will undoubtedly make all the intervenor's arguments."

12   *Id.* at 822.

13       This requirement is easily met:  Defendant has not made some of the vexatious

14   litigant arguments that the State intends to make and has not sought all of the relief the

15   State intends to request.  It is thus clear that existing parties will not "undoubtedly make

16   all the intervenor's arguments."

17   **IV.    THE RELIEF SOUGHT BY THE STATE IS SUPPORTED BY NINTH**
         **CIRCUIT PRECEDENTS**
18

19       The vexatious litigant determination and relief that the State intends to seek is

20   well-supported by Ninth Circuit precedent, including *Molski v. Evergreen Dynasty*

21   *Corp.*, 500 F.3d 1047 (9th Cir. 2007).  In *Molski*, the Ninth Circuit affirmed a vexatious

22   litigant determination against both the plaintiff and his counsel where they had "filed

23   about 400 lawsuits" alleging violations of the ADA.  *Id.* at 1050, 1065.  Those numbers

24   pale in comparison to the conduct here.

25       In this case, the State believes that a vexatious litigant determination against

26   Strojnik is appropriate under several possible bases.  By way of preview, the grounds for

27   vexatious litigant determinations include that Strojnik:

28

11

1.  Misrepresented (and drastically exaggerated) his actual and/or reasonable fees by demanding a minimum of $5,000 in each one of his cookie-cutter complaints.

2.  Misrepresented Plaintiffs' actual damages in several suits, seeking $5,000 or more without any good-faith basis for doing so.

3.  Entered into an agreement with Plaintiffs where he would charge (but never collect) an illusory $5,000 fee in order to extract more money from defendants, and then donate to Plaintiffs any settlement money paying the supposed fee.

4.  Misrepresented Plaintiffs' intent to litigate their federal ADA claims, forcing defendants to incur needless and avoidable costs of removal.

5.  Filed numerous suits to extort settlements from defendants, improperly relying on the costs of litigation to coerce settlements.

6.  Electronically affixed Plaintiff Ritzenthaler's signature to hundreds of verified complaints he appears not to have ever read.

*Molski* notably explained that "[f]rivolous litigation is not limited to cases in which a legal claim is entirely without merit. It is also frivolous for a claimant who has some measure of a legitimate claim to make false factual assertions." *Id.* at 1060. Indeed, the Ninth Circuit affirmed vexatious litigant relief even while "acknowledg[ing] that Molski's numerous suits were probably meritorious in part—many of the establishments he sued were likely not in compliance with the ADA." *Id.* at 1062. Thus, even if some of Plaintiffs' targets were actually in violation of the ADA and AzDA, it does not immunize Strojnik's misconduct from judicial scrutiny and sanction.

Many of the requisite findings that would support vexatious litigant determinations have already been made by this Court. Specifically, this Court has already made three such relevant determinations.

*First*, this Court has already found that Strojnik misrepresented his fees when demanding $5,000 in each and every suit they filed. *See* Dismissal Order at 10 ("In a

simple form complaint case like this, it is impossible that the fee for preparing and filing the complaint could be $5,000.…. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA."). That alone could support a vexatious litigant filing.

*Second*, other judges on this Court have found that Plaintiffs' counsel has falsely represented their intent to litigate their federal ADA claims, forcing parties to incur the costs of removal only for Plaintiffs to dismiss those ADA claims voluntarily and seek remand to state court. This Court thus found Strojnik's conduct sanctionable on separate occasions for *inter alia,* "misrepresent[ing] its intent to litigate its federal claim" and "mislead[ing] and manipulat[ing] opposing counsel,"[9] as well as "attempt[ing] to increase the costs of litigation to maximize Defendants' desire to settle the suit due to the cost of defense," and engaging in "bad faith conduct."[10]

*Third*, this Court has already concluded that Strojnik's intent was to extort settlements from Defendants, rather than litigate meritorious claims. Indeed, this Court found Strojnik's "extortionate practice has become pervasive," and that Strojnik filed "cookie-cutter lawsuits" "right down to the same typographical errors." Dismissal Order at 3. This Court further concluded that Strojnik had engaged in "unethical extortion of unreasonable attorney's fees from defendants." *Id.* at 10.[11]

* * * * *

This preview is intended to provide notice of the types of arguments that the State intends to raise if intervention is granted. As set forth above, there are ample bases for

---

[9] *AIDF v. Golden Rule Properties LLC*, No. CV-16-02412, Doc. 19 at 4 (D. Ariz. March 20, 2017).

[10] *AIDF v. Golden Rule Properties LLC*, No. CV-16-02413, Doc. 28 at 2, 10-11 (D. Ariz. Oct. 13, 2016).

[11] Notably, *Molski* similarly relied on Molski's intent "to extract cash settlements from defendants," noting that "Molski had tried on the merits only one of his approximately 400 suits and had settled all the others." *Id.* at 1052. But Strojnik has yet to try even a single case here. Instead, there is ample indication that extracting settlements was his overwhelming intent in filing their numerous suits.

13

this Court to at least consider the possibility that Strojnik is a vexatious litigant and that appropriate relief should therefore be issued. Such relief could include (1) a pre-filing order against Strojnik requiring court approval before filing any new ADA or AzDA suits or suits related to disability law compliance in federal court and (2) an award of attorneys' fees to the State for this motion and its motion to seek vexatious litigant relief, as well as other appropriate relief.

If this Court is inclined to consider vexatious litigant relief, the State respectfully requests that the Court give notice to both Plaintiffs and Strojnik that such relief is being considered. Such notice is required under *Molski*. *See* 500 F.3d at 1057 ("[T]he litigant must be given notice and a chance to be heard before the order is entered."). The State further requests that the Court set a briefing schedule and hearing for the State's request for vexatious litigant relief. As part of that briefing schedule, the State respectfully requests at least 30 days from the grant of intervention to its initial brief in support of its request for vexatious litigant relief.

## CONCLUSION

For the foregoing reasons, the State's motion to intervene for the limited purpose of addressing (1) whether Plaintiffs and their counsel are "vexatious litigants" and (2) the appropriate relief for such determinations, should be granted. In addition, this Court should issue notice to Plaintiffs and their counsel that it is considering vexatious litigant determination and appropriate relief and set a briefing schedule and hearing for the same.

Respectfully submitted this 5th day of December, 2017.

Mark Brnovich
Attorney General

 s/ Drew C. Ensign

Drew C. Ensign
Matthew du Mee

*Attorneys for Proposed Intervenor-Defendants*

# CERTIFICATE OF SERVICE

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same if non-registrants, this 5th day of December, 2017:

Peter Strojnik
Fabian Zazueta
Strojnik PC
2375 E Camelback Rd., Ste. 600
Phoenix, AZ 85016
602-524-6602
602-296-0135 (fax)
ps@strojnik.com

John Alan Doran
Matthew Albert Kerketh
Lori Wright Keffer
Sherman & Howard LLC - Scottsdale, AZ
7033 E Greenway Pkwy., Ste. 250
Scottsdale, AZ 85254
480-624-2710
480-624-2029 (fax)
jdoran@shermanhoward.com

Joshua David R Bendor
Mark I. Harrison
Geoffrey MT Sturr
Osborn Maledon PA
P.O. Box 36379
Phoenix, AZ 85067-6379
602-640-9000
jbendor@omlaw.com


  s/ Drew C. Ensign
*Attorney for Proposed Intervenor-Defendants*

16

**EXHIBIT 3**

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ-2018-9018** |
| | **ORDER OF INTERIM SUSPENSION** |
| **PETER STROJNIK,**<br>**Bar No. 006464** | [State Bar No. 18-0615] |
| Respondent. | **FILED JULY 11, 2018** |

## PROCEDURAL HISTORY

On March 6, 2018, the State Bar of Arizona moved for Interim Suspension (Motion) of Respondent, Peter Strojnik, Bar No. 006464 under Rule 61, Ariz. R. Sup. Ct.[1]  The allegations were verified and additionally supported by attached Exhibits 1-14.  On March 27, 2018, Mr. Strojnik filed his response, arguing among other things that there was no emergency because "the state and federal courts in which Mr. Strojnik has made those filings are fully capable of dealing with them according to law." [Respondent Response 1:22-24.] See also 6:7-12. The response concludes that there is no risk of injury to the public when compared to the damage Mr. Strojnik would suffer from an interim suspension. This Court disagrees. The

_____

[1] Unless stated otherwise, all Rule references are to the Ariz. R. Sup. Ct.

testimony of Mr. Strojnik gives this judge little assurance that he will not continue to file or make claims against members of the public.

In conceding that interim suspension is warranted for "egregious" misconduct, Mr. Strojnik cited an article by Francis M. Dougherty (citations omitted). He also claims that interim suspension is also warranted for conduct "which cannot be easily corrected by other courts." Similarly, the response supports that interim suspension should be reserved for "the most extreme cases of lawyer misconduct" citing the West Virginia Supreme Court, (citations omitted). An evidentiary hearing was scheduled for April 11, 2018.

On April 3, 2018, Mr. Strojnik moved to continue the hearing because his health was greatly imperiled, and he would be unable to proceed. He was to undergo arterial embolization for kidney cancer which was scheduled for April 11, 2018 and would be unable to reasonably participate in the hearing due to his health. The hearing was continued.

On May 3, 2018, a hearing on the State Bar's Motion for Interim Suspension was held. Shauna Miller appeared on behalf of the State Bar of Arizona. Mr. Strojnik appeared, represented by Geoffrey Sturr and Joshua Bendor, *Osborn Maledon, P.A.*

## GENERAL FINDINGS

Any lawyer admitted to practice law in Arizona is subject to the disciplinary jurisdiction of the Arizona Supreme Court. Rule 46(a). Discipline proceedings are

*sui generis*, neither civil nor criminal. Rule 48(a). An attorney may be disciplined for any of the grounds stated in Rule 54. A discipline proceeding commences upon receipt by the State Bar of a charge against a respondent. Rule 55(a). Bar counsel conducts an initial evaluation of the information that comes to the State Bar's attention alleging lawyer lack of professionalism or misconduct. It is undisputed that the State Bar has received multiple charges from members of the public regarding the conduct of Mr. Strojnik.

If "the alleged conduct may warrant the imposition of a sanction" the matter is referred for a screening investigation. Rule 55(a)(2)(C).  Mr. Strojnik has acknowledged various charges have been in a screening investigation and thereby that the State Bar has long held the view that the conduct of Mr. Strojnik may warrant the imposition of a sanction. [Respondent Closing Argument 3:5-7.]

Rule 61 is the governing rule regarding interim suspension. The State Bar may move for interim suspension at any time after a charge is received. Under Rule 61(a), an interim suspension may be entered upon a showing of probable cause that a lawyer "is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice."

Rule 61(c)(2) sets forth the required procedural grounds by which an interim suspension may be sought. The procedural requirements were followed. The 339-page motion with attachments was supported by separate affidavits which were

based upon personal knowledge. The motion was timely served upon Mr. Strojnik. He timely filed a 112-page response to the motion.

Under Rule 61(c)(2)(B), "The State Bar shall have the burden of establishing probable cause that the basis of the requested relief exists and that interim suspension is appropriate." In conducting the hearing, "The presiding disciplinary judge is not bound by common law or rules of evidence or by technical or formal rules of procedure and may conduct the hearing in any manner that will achieve substantial justice." Probable cause exists.

## FINDINGS OF FACTS

Mr. Strojnik has filed over 1,700 complaints in State Court and over 160 complaints in District Court alleging violations of the Americans with Disabilities Act (ADA) and the Arizonans with Disabilities Act (AzDA). The cases filed were all very similar, alleging vague and non-specific violations. In cases brought in District Court, Mr. Strojnik represented plaintiff Fernando Gastelum where they targeted hotels. Mr. Strojnik represented the plaintiffs, generally referred to as AID (Advocates of Individuals with Disabilities, LLC) and David Ritzenthaler in the State Court cases which involved parking lot violations.

In each case, Mr. Strojnik would demand $5,000 in attorney's fees, regardless if the business had remedied the violation. [SBA Exhibits 4-6.] Mr. Strojnik testified that he has collected, in the parking lot cases, approximately $1.2 million in

settlements, which mainly consisted of attorney's fees. [Tr. 186:18-187:10.] In the Gastelum cases, as of the date of the hearing, Mr. Strojnik swore he had received "$384,000 net to me." [Id. 186:1-5.] After reflection that number increased by another $288,000. [Id. 187:8-10.] He plans to continue his pattern of conduct as he has always done. [Id. 188:25-189:10.]

Beau Roysden, an attorney with the Attorney General's office Civil Litigation Division, testified that the Attorney General's office became involved in these matters because of complaints by the public of the lawsuits being filed by Mr. Strojnik. In each suit, large attorney fees were claimed "and in some cases, potentially suing things like dirt lots or businesses that were not subject to the ADA." [Transcript, p. 73:13-23.] He also testified the suits were "copy and paste" and that some of the suits claimed they involved public lodging when it did not. Regardless, demands for $5,000 in attorney's fees and "some complaints claimed $5000 in damages as well." [Id. 76:8-20.]

Early in his testimony Mr. Strojnik acknowledged that with his method of "review" of the "investigative reports" he made errors and brought suit against dirt lots. [Id. 160:16-19.] Later when asked about the testimony of Mr. Roysden, Mr. Strojnik conceded that this had happened but claimed "rarely." He then claimed there was only one situation where this occurred as referred to by Mr. Roysden and

agreed it had occurred despite what he claimed to be a thorough investigation. [Tr. p. 196:9-14.]

Mr. Strojnik acknowledged he had a direct hand in this thorough investigation. He swore that he personally supervised the "investigators" that would go to the properties and ultimately their photographs would be delivered to him for review. [Id. 146:11-14.] Relying upon those "investigative reports" he personally determined if there were ADA violations. However, he later conceded he "did not know who the people were who actually went out to work." [Id. 148:10-11.] He testified he did not know how the instruments they used to take the photographs worked and that he had no expertise regarding this. He would rely on these "investigators" that he supervised, but never met, and for which he had no expertise of their methodology of the alleged violations in filing his lawsuits.

He also knew that this thorough investigation of the properties included simply hiring people from Craigslist to go take pictures of businesses that might be non-compliant. [Id. 144:11-17.] Throughout the hearing he called these individuals "investigators." They forwarded to him "approximately 10,000 violations filed on the businesses that were visited by these investigators." [Id. 145:1-6.] "Every case that was filed, I would review the investigative report given by the investigators." [Id 146:18-19.]

He swore he checked their work through the photographs that they provided to him. He swore he personally reviewed 10,000 of these "reports" by investigators certifying their accuracy to the court when suits were filed on any of them. Some days he would receive 150 such reports that he would look over to make sure they were accurate. [Id. 152:24-153:1.] Mr. Strojnik, in justifying this and his attorney fees, claimed he worked, at times, 24 hours a day.

Q: 24 hours a day?

A: Yeah.

Q. You wouldn't go to sleep?

A. No.

Q. Okay.

A. And I would, you know, for a year and a half, that's all I did. [164:16-22.]

He was later asked to verify these answers.

Q. You said you were doing the 24/7 for about a year, year and a half?

A. That's about a year and a half. 165:10-12.]

Mr. Roysden swore that a number of these suits involved "newer regulations" that altered the height for handicapped parking signs. These governmental changes caused once compliant businesses to fall out of compliance. Mr. Strojnik summarized his viewpoint that "non-compliance with disability law is rampant in

Arizona." It is apparent Mr. Strojnik believes these business owners violate the ADA without restraint. Even if there was no actual access issue, Mr. Strojnik claimed a violation that the 2010 standards were not in place at the time were "irrelevant under the ADA" even if a person had complete and unfettered access to the property. [Tr. 157:1-14.]

The time Mr. Strojnik spent on each case was minimal. For example, in the parking lot cases, Mr. Strojnik would review the investigative report prepared by the employees of AID. Then, if Mr. Strojnik determined that there was a violation, he might prepare a complaint, sign it, and file it. Mr. Strojnik would review photographs submitted. [Id. 192:21-194:5 and Ex. 31, vol. 1, Tab 5, Exhibit B, appendix B.] The preparation and review of the complains was under thirty minutes. He is a "one-man show" that does his own typing, has his investigators upload pictures of properties that he claims to review and charges $650 per hours for "everything I do that an attorney should do." [Id. p. 183:21-184:7.]

His state of mind was clarified by his response to questioning by his attorney. He was asked whether all his other cases had factual support. Mr. Strojnik attempted to testify about a hearing on standing. [Id. 199:24-25.] His attorney asked him, "Why are you so thorough and careful in the preparatory work for the lawsuits that you are filing on Mr. Gastelum's behalf?" He seethed, "I have learned in the last year and a half that there is a clear subliminal, just under the surface, dislike of society against

people with disabilities. If you drive off the freeway and there is a guy in a wheel chair asking for money, how many drivers actually look at him and make eye contact? Nobody. The reason why I didn't do that…"  The non-responsive answer was interrupted by the court. [Id. 208:13-21.]

In fact, Mr. Strojnik worked for free, under an arrangement with AID, he would demand attorney fees and those attorney fees were paid directly to AID and given to other individuals unknown to Mr. Strojnik. [158:7-18.] He swore he was never paid or given anything for attorney fees. Instead he testified, "The attorney fees were assigned to AID." He then added "I never saw the check." When pressed regarding this, he contradicted himself and swore the checks would either be written directly to his client or he would sign the check over. [167:6-168:12.]

In the hotel cases, Mr. Strojnik would pay Mr. Gastelum $350 per case to participate as the plaintiff.  As of November 17, 2017, Mr. Gastelum had been paid a total of $1,500 by Mr. Strojnik. The fee agreement between Mr. Gastelum and Mr. Strojnik gave Mr. Strojnik the authority to accept settlements and keep all money offered without Mr. Gastelum's approval. [SB Exhibit 19-28.]

In these fee applications filed by Mr. Strojnik in the Gastelum federal lawsuits, each had identical terms including: 1) Strojnik's hourly rate is $650.00 per hour, based on several factors; 2) Strojnik would represent Plaintiff pro bono, but can seek the recovery of attorney's fees from the Defendant at the rate of $650 per hour; 3)

Strojnik has the unfettered discretion in all settlements, but the client's consent is required if the settlement amount is less than $350; and 4) an expense under "client expenses" is paying Mr. Gastelum $350 for mileage, time effort, reviews, collection of evidence, and other expenses as required.

Mr. Strojnik testified that he never had an application for attorney fees denied where he had provided no pre-suit notification. [Id. 192:7-10.] This relevant testimony introduced by Mr. Strojnik was undermined by the recent denials of his attorney fees. Under examination by his attorney, Mr. Strojnik testified he had never had a lawsuit involuntarily dismissed. Such testimony was acknowledged as relevant and material by Mr. Strojnik. [Id. 210:20-23.] Recent rulings are likewise relevant, material and undermine his position.

The District Court has held that Strojnik's tactics are "extortionate" stating in part, "[no] fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA." *Advocates for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 898 (D. Ariz. 2017). Although most of the lawsuits filed have been dismissed, Mr. Strojnik stated that he wanted to file 10,000 ADA compliance lawsuits, and then file a million nationwide.[2]

---

[2] Stated in meeting with Lyndsay Leavitt who represented many defendants in the ADA/AzDA lawsuits. [Tr 18:12-19:25]

On May 25, 2018, Judge G. Murray Snow ordered a consolidated hearing to consider Mr. Gastelum's standing in the hotel cases. Judge Snow stated that Mr. Gastelum failed to meet the requirements for standing in every case. The Court concluded that Mr. Gastelum and Mr. Strojnik are engaged in a joint enterprise to file suits against Phoenix area lodgings that they believe to be out of compliance with ADA standards. The suits are filed without reference to whether Mr. Gastelum actually had intended to make future visits to those facilities or even if he potentially might be deterred from future visits by the type of non-compliance. Based on the lack of standing, Judge Snow dismissed all of the consolidated cases before him. However, since this ruling, Mr. Strojnik has filed an additional four ADA lawsuits in District Court. [SB Notice Supplementing the Record Re: *Gastelum v. Canyon Hospitality*.]

Judge David M. Talamante consolidated additional cases for the purpose of addressing issues of standing and possible sanctions. Judge Talamante also dismissed the consolidated cases based on a lack of standing. [SB Motion for Interim Suspension, Exhibit 8.] Shortly thereafter, Mr. Strojnik began filing Rule 60 Ariz. Civ. R. Pro. Motions for Relief from the Judgment in the cases dismissed with a lack of standing. On April 9, 2017, Judge Talamante issued an order directing Mr. Strojnik not to file any additional Rule 60 motions. Judge Talamante found that Strojnik committed a "serious due process violation" by failing to provide notice or

copies of the Motions for Relief from Judgment to the State. Judge Talamante also denied all relief sought by Strojnik. [SB Notice Supplementing the Record Re: Judge Talamante.]

## ANALYSIS

Mr. Strojnik argues on one hand that Rule 61 mandates that a Respondent must be actively engaging in case-specific litigation because, "The Bar cannot rely on past, completed conduct to support its request for interim suspension." [Respondent Closing Argument, p. 1:22-26.] Yet on the other hand he argued in the hearing and in his response that interim suspension should not be sought because the cases "should be handled by the court with jurisdiction over those cases." [Respondent Response, p. 3:7-9.] Presumably he means until the case is concluded, at which time that cannot be relied upon in seeking interim suspension.

Mr. Strojnik argued interim suspension should not issue because some of the matters have been in screening too long. [Respondent Closing, p. 2:5-7.] He also seems to argue interim suspension should not issue because some of the matters have not been in screening long enough. [Respondent Closing, p. 6:23-7:2.] Such circular arguments appear disingenuous and ignore the language of Rule 61. It is a course of conduct, not whether case specific motions have been resolved, that are at issue.

He also claims that this judge must make a definitive ruling of which ethical rules(s) were violated. "To suspend Mr. Strojnik, this Court would have to determine

that the Rule 60 motions violate some rule of professional conduct." [Id. 6:12-13.] This court determines whether there is probable cause that a respondent "is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice." If the State Bar meets its burden of proof of establishing probable cause that the basis of the requested relief exists and that interim suspension is appropriate, the PDJ may, but is not required to, order either interim suspension or interim probation.

The determination of probable cause for interim suspension is not substantially different from that of the Attorney Discipline Probable Cause Committee, ("ADPCC"). Under Rule 55, that Committee "shall first determine whether probable cause exists." Neither Rule 55 nor Rule 61 require a definitive finding regarding an ER.

Mr. Strojnik initially emphasized that this Court should defer to the State or Federal Court rulings as he expressed a concern that this Court "could reach inconsistent conclusions about the merits of the motions." [Id. 6:16-18.] The argument that the PDJ must specify which ERs were violated would do precisely what Respondent initially argued against regarding the other courts. It would preset the State Bar to prosecute specific ERs and preset the ADPCC to find probable cause regarding those ERs, potentially resulting in conflicting orders. Rule 61 does not

require findings of fact and conclusions of law. It requires that the PDJ determine, if probable cause is established, whether interim suspension "is appropriate."

The response criticized the State Bar for claiming future harm, as being based on unsupported speculation. "[I]t is not clear how the Bar came to this belief or satisfied its obligation to make a reasonable inquiry. It did not, for example, ask Mr. Strojnik what he intended to do." Regarding the multiple lawsuits filed, the response asserts that Mr. Strojnik and his client Mr. Gastelum, "engage in a rigorous investigative process" and often file lawsuits when infractions are discovered. This is questionable. The response also emphasizes that only Judge Wake was critical of Mr. Strojnik and that case involved his representation of a different client. That argument has been severely undercut.

Based on the foregoing facts, the State Bar contends Mr. Strojnik is engaging in conduct that is likely to cause immediate and substantial harm to clients, the public, or the administration of justice.

## **RULE 61 ANALYSIS**

### *Ethical Rules Violated*

Rule 61 does not explicitly state that violation of specific ethical rules must be found for an interim suspension.  However, the State Bar has the burden of establishing that there is a reasonable belief that the basis of the requested relief exists, and that interim suspension is appropriate, i.e. Mr. Strojnik must be engaging

in unethical conduct and that interim suspension is appropriate. Further, interim suspension is like a preliminary injunction in that it requires the State Bar to show that it is likely to obtain a serious sanction after a full hearing on the merits. *In re Discipline of Trujillo*, 24 P.3d 972 (Utah 2001).

In its closing argument, the State Bar alleges that Mr. Strojnik has violated ERs 1.2, 1.4, 1.5(a), 3.3(a), 8.4(c), and 8.4(d).[3] Violation of these Rules would result in a significant sanction at the conclusion of the disciplinary process. One of the applicable standards for imposing sanctions, *Standard 7.2*, provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system.

Viewing Mr. Strojnik's conduct in its entirety, he has filed 1,700 complaints in State Court and over 160 complaints in District Court. Virtually all of the State Court lawsuits were dismissed.

*Immediate and Substantial Harm*

Mr. Strojnik has demonstrated that without action by this Court, he will continue to file ADA/AzDA lawsuits. [SB's Supplement Re: *Gastelum v. Canyon*

---

[3] The alleged ethical violations are not necessarily inclusive of what will be charged in the disciplinary complaint but are at the least sufficient to show that Mr. Strojnik has violated the Rules of Professional Conduct, that at the least will result in a long-term suspension.

*Hospitality*.] US District Court Judge Neil V. Wake issued an order in *Advocates for Individuals With Disabilities LLC, and David Ritzenthaler, vs. MidFirst Bank*, 2:16-cv-01969-PHX-NVW suggesting that sanctions were appropriate and that Mr. Strojnik's "extortionate practice ha[d] become pervasive," [SB Motion for Interim Suspension, Exhibit 11.] The District Court stated that "it is certain that Arizona courts would not waive the standing requirement and empower [Respondent's] unethical extortion of unreasonable attorney's fees from defendants" when Mr. Strojnik requested to remand the case to state court. [Exhibit 11 at pg. 10.]

The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

## CONCLUSION

The State Bar has met its burden demonstrating Mr. Strojnik is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice. Mr. Strojnik has demonstrated that he will continue filing lawsuits, and has filed lawsuits, irrespective of rulings by other Courts.

Therefore:

**IT IS ORDERED** finding probable cause Peter Strojnik has engaged in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice.

**IT IS FURTHER ORDERED Peter Strojnik, Bar No. 006464**, is suspended from the practice of law effective immediately on an interim basis and until further order of this Court.

**IT IS FURTHER ORDERED** such suspension shall continue in force until final disposition of all pending disciplinary proceedings against Peter Strojnik, unless vacated or modified.

**IT IS FURTHER ORDERED** under Rule 72(a) Peter Strojnik shall notify all his clients of the terms of this order within ten (10) days and shall timely file with the Disciplinary Clerk and the Court, notice of compliance with this Order as provided by Rule 72(e).

**IT IS FURTHER ORDERED** that the State Bar shall promptly prosecute this matter and it is set for telephonic status review on **Tuesday, January 15, 2019 at 10:00 a.m.**

     **DATED** this 11th day of July, 2018.

 

*William J. O'Neil*

**William J. O'Neil, Presiding Disciplinary Judge**

17

Copies of the foregoing e-mailed
this 11th day of July, 2018, and
mailed July 12, 2018, to:

Shauna R. Miller
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, AZ  85016-6288
Email:  lro@staff.azbar.org

Geoffrey M.T. Sturr
Joshua D. Bendor
*Osborn Maledon, PA*
2929 N. Central Ave., Suite 2100
Phoenix, AZ 85012-2793
Emails: gsturr@omlaw.com,
 jbendor@omlaw.com
Respondent's Counsel

by: AMcQueen

# EXHIBIT 5

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA,<br><br>PETER STROJNIK,<br>  Bar No. 006464<br><br>        Respondent. | **PDJ 2018-9105**<br><br>[State Bar Nos. 16-0334, 16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751.]<br><br>**JUDGMENT OF DISBARMENT**<br><br>**FILED MAY 10, 2019** |

Pursuant to Arizona Rule of Supreme Court 57, the parties filed with the disciplinary clerk a Consent to Disbarment ("Consent") dated May 8, 2019. The Consent complies with Rule 57(a)(5) and is accepted by the Presiding Disciplinary Judge. The acceptance of a consent to disbarment constitutes a final disposition of all pending proceedings. Under Rule 57(a)(5)(A), any future application for reinstatement "will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the . . . complaint . . . ."

Mr. Strojnik has been under the force of an interim suspension order. Under Arizona Rule of Supreme Court 61(d), that order of interim suspension continued in force until final disposition of all pending proceedings against him. This judgment is the final disposition of these proceedings and the force of that order is lifted.

1

Now therefore,

**IT IS ORDERED** disbarring Respondent, **PETER STROJNIK, Bar No. 006464,** from the State Bar of Arizona effective immediately. His name is stricken from the roll of lawyers, and he is no longer entitled to the rights and privileges of a lawyer but remains subject to the jurisdiction of the court.

**IT IS FURTHER ORDERED** Respondent shall immediately comply with the requirements of Arizona Rule of Supreme Court 72, which include, but are not limited to, notification of clients and others and filing all notices and affidavits required.

**IT IS FURTHER ORDERED** vacating the hearing of May 20, 2019, as under Rule 57(a)(5)(C), no further disciplinary action shall be taken regarding the matters that are the subject of the charges upon which the Consent and this judgment of disbarment are based.

**IT IS FURTHER ORDERED** Respondent shall pay costs and expenses as approved by the Presiding Disciplinary Judge to the State Bar of Arizona.

**IT IS FURTHER ORDERED** lifting the force of the Order of Interim Suspension dated July 11, 2018 in File No. PDJ 2018-9018.

**DATED** this 10th day of May 2019.

_William J. O'Neil_
**William J. O'Neil, Presiding Disciplinary Judge**

Copies of the foregoing mailed/emailed
this 10th day of May 2019.

2

Shauna R. Miller
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Email: LRO@staff.azbar.org

Peter Strojnik
2375 E Camelback Rd Ste 600
Phoenix, AZ  85016-3493
Telephone: 602-524-6602
Email: ps@strojnik.com
Respondent

by: MSmith

OFFICE OF THE
PRESIDING DISCIPLINARY JUDGE
SUPREME COURT OF ARIZONA

MAY 0 8 2019

FILED

BY _____

Peter Strojnik
7847 N. Central Ave.
Phoenix, Arizona 85020
ps@strojnik.com
602-524-660

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ 2018-9105**<br>[State Bar No. 16-0334 et al.[1]] |
| **PETER STROJNIK,**<br>**Bar No. 006464,** | **CONSENT TO DISBARMENT** |
| Respondent. | |

I, PETER STROJNIK, 7847 North Central Avenue, Phoenix, Arizona 85020,

voluntarily consent to disbarment as a member of the State Bar of Arizona and

consent to the removal of my name from the roster of those permitted to practice

before this court, and from the roster of the State Bar of Arizona.

I acknowledge that a formal complaint has been made against me and that I

have read the complaint and the charges made against me.  I further acknowledge

that I do not desire to contest or defend the charges, but wish to consent to

---

[1] 16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751.

1

disbarment. I have been advised of and have had an opportunity to exercise my right to be represented in this matter by a lawyer. I consent to disbarment freely and voluntarily and not under coercion or intimidation. I am aware of the rules of the Supreme Court with respect to discipline, disability, resignation and reinstatement, and I understand that any future application by me for admission or reinstatement as a member of the State Bar of Arizona will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the charges made against me. I have previously denied the allegations of any impropriety and enter this Consent as a consequence of my ailing health and desire for peace.

The State Bar has advised it will not file an objection to this consent. A proposed form of judgment of disbarment is attached. Exhibit A.

**DONE** this 8th day of May, 2019.

_____
Peter Strojnik

**SUBSCRIBED AND SWORN TO** before me this ___8th___ day of May, 2019, Peter Strojnik who satisfactorily proved his identity to me.

_____
Notary Public

KAREN E. CALCAGNO
Notary Public - Arizona
Maricopa County
My Commission Expires
February 28, 2022

2/28/2022

My Commission expires:

Nov. 28, 2022

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 8th day of May, 2019.

Copy of the foregoing emailed/hand delivered
this 8th day of May, 2019, to:

The Honorable William J. O'Neil
Presiding Disciplinary Judge
Supreme Court of Arizona
1501 West Washington Street, Suite 102
Phoenix, Arizona 85007
E-mail:  officepdj@courts.az.gov

Copy of the foregoing mailed/emailed
this 8th day of May, 2019, to:

Shauna Miller, Senior Bar Counsel
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

by:_____
      PS

Peter Strojnik
7847 N. Central Ave.
Phoenix, Arizona 85020
ps@strojnik.com
602-524-660

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ 2018-9105**<br>[State Bar No. 16-0334 et al.[1]] |
| **PETER STROJNIK,**<br>**Bar No. 006464,** | **CONSENT TO DISBARMENT** |
| Respondent. | |

     I, PETER STROJNIK, 7847 North Central Avenue, Phoenix, Arizona 85020, voluntarily consent to disbarment as a member of the State Bar of Arizona and consent to the removal of my name from the roster of those permitted to practice before this court, and from the roster of the State Bar of Arizona.

     I acknowledge that a formal complaint has been made against me and that I have read the complaint and the charges made against me. I further acknowledge that I do not desire to contest or defend the charges, but wish to consent to

---

[1] 16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751.

disbarment. I have been advised of and have had an opportunity to exercise my right to be represented in this matter by a lawyer. I consent to disbarment freely and voluntarily and not under coercion or intimidation. I am aware of the rules of the Supreme Court with respect to discipline, disability, resignation and reinstatement, and I understand that any future application by me for admission or reinstatement as a member of the State Bar of Arizona will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the charges made against me. I have previously denied the allegations of any impropriety and enter this Consent as a consequence of my ailing health and desire for peace.

The State Bar has advised it will not file an objection to this consent. A proposed form of judgment of disbarment is attached. Exhibit A.

**DONE** this 8th day of May, 2019.

_____
Peter Strojnik

**SUBSCRIBED AND SWORN TO** before me this 8th day of May, 2019, Peter Strojnik who satisfactorily proved his identity to me.

KAREN E. CALCAGNO
Notary Public - Arizona
Maricopa County
My Commission Expires
February 28, 2022

Notary Public

2/28/2022

2

My Commission expires:

Nov. 28, 2022

Original filed with the Disciplinary Clerk of
the Office of the Presiding Disciplinary Judge
of the Supreme Court of Arizona
this 8th day of May, 2019.

Copy of the foregoing emailed/hand delivered
this 8th day of May, 2019, to:

The Honorable William J. O'Neil
Presiding Disciplinary Judge
Supreme Court of Arizona
1501 West Washington Street, Suite 102
Phoenix, Arizona 85007
E-mail: officepdj@courts.az.gov

Copy of the foregoing mailed/emailed
this 8th day of May, 2019, to:

Shauna Miller, Senior Bar Counsel
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

Lawyer Regulation Records Manager
State Bar of Arizona
4201 N. 24th St., Suite 100
Phoenix, Arizona 85016-6266

by: _____
      PS

## EXHIBIT A

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A SUSPENDED MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ 2018-9105** [State Bar No. 16-0334 et al.[2]] |
| **PETER STROJNIK** **Bar No. 006464** | **JUDGMENT OF DISBARMENT** |
| Respondent. | |

Pursuant to Rule 57, Ariz. R. Sup. Ct., the parties filed with the disciplinary clerk a Consent to Disbarment (Consent) dated _____. The Consent being compliance with Rule 57(a)(5) and the Presiding Disciplinary Judge having considered it,

Now therefore,

**IT IS ORDERED** accepting the Consent and disbarring Respondent Peter Strojnik, Bar No. 006464, from the State Bar of Arizona effective _____. His name is stricken from the roll of lawyers and he is no longer entitled to the rights and privileges of a lawyer.

---

[2] 16-1309, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751.

**IT IS FURTHER ORDERED** Respondent shall immediately comply with the requirements of Rule 72, Ariz. R. Sup. Ct. which include but are not limited to notification of clients and others and filing all notices and affidavits required.

**IT IS FURTHER ORDERED** under Rule 57(a)(5)(C), no further disciplinary action shall be taken regarding the matters that are the subject of the charges upon which the Consent and this judgment of disbarment are based.

**IT IS FURTHER ORDERED** that the Order of Interim Suspension dated July 11, 2018, is null and void.

**DATED** this _____ day of _____, 2019.

_____
**William J. O'Neil, Presiding Disciplinary Judge**

Copies of the foregoing mailed/emailed
this _____ day of May 2019.

Peter Strojnik
2375 E. Camelback Rd., Ste. 600
Phoenix, AZ  85016-3493
Email: ps@strojnik.com
Respondent

Shauna R Miller

5

Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Email: LRO@staff.azbar.org


by:_____

# EXHIBIT 6



### 16-0334

Respondent: Peter Strojnik

State Bar File Nos.: 16-0334, 16-1369, 16-1987, 16-2069, 16-2209, 16-2346, 16-2595, 16-2602, 16-2604, 16-2667, 16-2741, 16-2788, 16-2793, 16-2800, 16-2919, 16-3689, 17-3925, 18-1751

Court File No.: PDJ 2018-9105

The Presiding Disciplinary Judge of the Arizona Supreme Court accepted a consent to disbarment filed by Peter Strojnik and effective May 10, 2019. Mr. Strojnik had been suspended on an interim basis since July 11, 2018, while the Bar conducted its investigation. Strojnik was assessed $1,263.92 in costs and expenses for the disciplinary proceeding.

Beginning in 2016, Strojnik filed thousands of lawsuits against small businesses alleging minor violations of the Americans with Disabilities Act (ADA) and the Arizonans with Disabilities Act (AzDA) in state and federal courts. Typically, he demanded approximately $5,000 in attorney's fees regardless if the business remedied the purported violations. In all cases Strojnik alleged vague violations.

Strojnik's "extortionate" and "ethically suspect" misconduct led the Arizona Attorney General's Office ("AG") to intervene in the suits. The Court granted intervention, consolidated the cases, and eventually dismissed most of them for lack of standing. The AG's office moved to intervene in one federal case to have Strojnik declared a vexatious litigant.

The State Bar alleged that Strojnik engaged in conduct that caused immediate and substantial harm to clients, the public, and the administration of justice, making illusory claims for attorney fees and monetary damages. One District Court said his tactics were extortionate. The State Bar alleged that Strojnik violated Rule 42, Ariz. R. Sup. Ct., ERs 1.2, 1.4, 1.5(a), 1.15(a) 3.1, 3.3(a), 3.4(c), 4.1(a), 4.4(a), 8.1, 8.4(c) and (d), Rules 43 and 54(d), Ariz. R. Sup. Ct. Strojnik did not contest the allegations and consented to his disbarment.

Close

Case 4:19-cv-03983-DMR    Document 8-1    Filed 08/06/19    Page 163 of 385
HOW IT WORKS       FAQ       LOG IN | SIGN UP       FOR ATTORNEYS (/HOW-IT-WORKS/ATTORNEY)

Powered by Legal Services Link

(/)



## Peter Strojnik

✉ Message

*To message attorneys, please create an account here (/accounts/signup_as_client/PeterStrojnik).

## Contact Information

No Contact Information Published

## Discipline

| Date | Activity | Detail |
|------|----------|--------|
| 05/10/2019 | Disbarment ❓ | Case: 16-0334, Charges: 18 |
| 07/11/2018 | Suspension - interim ❓ | Case: 18-0615, Charges: 1 |
| 01/03/2012 | Reinstatement Granted ❓ | Case: 10-1223-R |
| 12/03/2011 | Suspension - short term ❓ | Case: 10-1223, Charges: 1 |
| 05/02/2011 | Reprimand ❓ | Case: 09-0314, Charges: 2 |
| 04/05/1990 | Censure ❓ | Case: 86-0658, Charges: 1 |

This website does not display all lawyer sanctions, such as admonitions/informal reprimands, or any pending formal proceedings. Contact the State Bar of Arizona at 602.340.7384 or use the lawyer history form to confirm the lawyer's entire record.

## Miscellaneous

Status: Disbarred ❓

Board Certified Specialization: None ❓

Professional Liability Insurance: Not applicable ❓

Admitted to Practice Law: 1980

Admitted to State Bar of Arizona: October 4, 1980

Other Language(s): None

## Biography

No Information added

## Areas of Law and Practice

No Information

## Jurisdictions

9th Circuit (Active), Arizona (Disbarred), Colorado (Active), Illinois (Active), New Mexico (Active)

## Law School

Arizona State

**EXHIBIT 7**

 # Party Search Results

**Search Criteria:** Party Search; Date Filed (On or After): [12/01/2017]; Court ID: [CA, HI, ID, NM, OR, PR, TX, WA]; Last Name: [strojnik]; Party Role: [PLA]
**Result Count:** 81
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 2:2018cv10237 | Peter Strojnik v. Marriott International, Inc. | California Central District Court | 12/10/2018 | 03/18/2019 |
| Strojnik, Peter (pla) | 2:2018cv10493 | Peter Strojnik Sr. v. Best Western Hotels and Resorts | California Central District Court | 12/18/2018 | 04/03/2019 |
| Strojnik, Peter (pla) | 2:2018cv10494 | Peter Strojnik Sr. v. Zislis Boutique Hotels, LLC | California Central District Court | 12/18/2018 | 02/06/2019 |
| Strojnik, Peter (pla) | 2:2018cv10495 | Peter Strojnik Sr. v. Second Street Corporation | California Central District Court | 12/18/2018 | 01/02/2019 |
| Strojnik, Peter (pla) | 2:2019cv00066 | Peter Strojnik Sr. v. Singpoli Group, LLC | California Central District Court | 01/03/2019 | 02/14/2019 |
| Strojnik, Peter (pla) | 2:2019cv01148 | Peter Strojnik Sr. v. Hyatt Hotels Corp. | California Central District Court | 02/14/2019 | 04/29/2019 |
| Strojnik, Peter (pla) | 2:2019cv01199 | Peter Strojnik, Sr. v. Burton Way Hotels LLC | California Central District Court | 02/15/2019 | |
| Strojnik, Peter (pla) | 2:2019cv01146 | Peter Strojnik, Sr. v. Georgian Hotel, Inc. | California Central District Court | 02/14/2019 | 06/25/2019 |
| Strojnik, Peter (pla) | 2:2019cv01174 | Peter Strojnik v. Dole Food Company, Inc. | California Central District Court | 02/15/2019 | 08/02/2019 |
| Strojnik, Peter (pla) | 2:2019cv02078 | Peter Strojnik v. Urban Commons Cordova, LLC | California Central District Court | 03/20/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02067 | Peter Strojnik Sr v. Pasadena Robles Acquisition, LLC | California Central District Court | 03/20/2019 | |
| Strojnik, Peter (pla) | 8:2019cv00930 | Peter Strojnik v. Ayres-Orange, L.P. | California Central District Court | 05/16/2019 | |
| Strojnik, Peter (pla) | 8:2019cv00946 | Peter Strojnik Sr. v. Orangewood LLC | California Central District Court | 05/17/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02533 | Peter Strojnik v. Aung Solvang LLC | California Central District Court | 04/03/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02743 | Peter Strojnik v. Pacifica Hotel Company, Inc. | California Central District Court | 04/10/2019 | |
| Strojnik, Peter (pla) | 2:2019cv02991 | Peter Strojnik v. Four Sisters Inns, Inc | California Central District Court | 04/18/2019 | |
| Strojnik, Peter (pla) | 8:2019cv00944 | Peter Strojnik v. Landmark Marriott Suites LLC | California Central District Court | 05/17/2019 | |
| Strojnik, Peter (pla) | 2:2019cv04614 | Peter Strojnik, Sr. v. Bent Olsen et al | California Central District Court | 05/28/2019 | 07/29/2019 |
| Strojnik, Peter (pla) | 2:2019cv04615 | Peter Strojnik Sr. v. King Frederick Motel, LLC | California Central District Court | 05/28/2019 | |
| Strojnik, Peter (pla) | 8:2019cv01045 | Peter Strojnik Sr. v. Khanna Enterprises, LTD | California Central District Court | 05/30/2019 | |
| Strojnik, Peter (pla) | 1:2018cv01522 | Strojnik v. Evergreen Destination Holdings, LLC | California Eastern District Court | 11/02/2018 | 01/07/2019 |
| Strojnik, Peter (pla) | 1:2018cv01520 | Strojnik v. 574 Escuela, LLC | California Eastern District Court | 11/02/2018 | 11/06/2018 |
| Strojnik, Peter (pla) | 1:2018cv01621 | Strojnik v. Ravensbrook Inn Yosemite | California Eastern District Court | 11/09/2018 | 06/14/2019 |
| Strojnik, Peter (pla) | 1:2018cv01619 | Strojnik v. Griffin et al | California Eastern District Court | 11/08/2018 | |
| Strojnik, Peter (pla) | 1:2018cv01620 | Strojnik v. The Victus Group, Inc. | California Eastern District Court | 11/08/2018 | |
| Strojnik, Peter (pla) | 3:2018cv06587 | Strojnik v. Joie de Vivre Hospitality LLC | California Northern District Court | 10/29/2018 | |
| Strojnik, Peter (pla) | 3:2018cv06586 | Strojnik v. Marriott International Inc | California Northern District Court | 10/29/2018 | 12/10/2018 |
| Strojnik, Peter (pla) | 3:2018cv06777 | Strojnik v. 574 Escuela, LLC | California Northern District Court | 11/08/2018 | |
| Strojnik, Peter (pla) | 5:2018cv07704 | Strojnik v. Benchmarck Conference Resorts of California, LLC | California Northern District Court | 12/24/2018 | 04/11/2019 |
| Strojnik, Peter (pla) | 5:2019cv00737 | Strojnik v. ML San Jose Holding LLC | California Northern District Court | 02/11/2019 | 05/20/2019 |
| Strojnik, Peter (pla) | 5:2019cv01844 | Strojnik v. Ensemble Hotel Partners, LLC | California Northern District Court | 04/05/2019 | |

PACER Case Locator Search Results

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 5:2019cv01875 | Strojnik v. Bernardus LLC | California Northern District Court | 04/08/2019 | |
| Strojnik, Peter (pla) | 5:2019cv01876 | Strojnik v. JMA Ventures LLC | California Northern District Court | 04/08/2019 | 07/01/2019 |
| Strojnik, Peter (pla) | 5:2019cv02529 | Strojnik v. Mirabel Hotel and Restaurant Group LLC | California Northern District Court | 05/10/2019 | |
| Strojnik, Peter (pla) | 3:2019cv02556 | Strojnik v. VY Verasa Commercial Company LLC et al | California Northern District Court | 05/15/2019 | |
| Strojnik, Peter (pla) | 5:2019cv03006 | Strojnik v. Hyatt International Corporation | California Northern District Court | 05/31/2019 | |
| Strojnik, Peter (pla) | 5:2019cv03082 | Strojnik v. Xenia Hotels & Resorts, Inc. | California Northern District Court | 06/04/2019 | |
| Strojnik, Peter (pla) | 5:2019cv03122 | Strojnik, Sr. v. First & Mission Properties LLC | California Northern District Court | 06/05/2019 | |
| Strojnik, Peter (pla) | 3:2019cv03377 | Strojnik v. Wilson | California Northern District Court | 06/13/2019 | |
| Strojnik, Peter (pla) | 3:2019cv03375 | Strojnik v. Madrona Manor Wine Country Inn & Restaurant Inc. | California Northern District Court | 06/13/2019 | |
| Strojnik, Peter (pla) | 3:2019cv03376 | Strojnik v. Fowler LLC | California Northern District Court | 06/13/2019 | 07/17/2019 |
| Strojnik, Peter (pla) | 3:2019cv03583 | Strojnik v Napa LW Hotel Associates et al | California Northern District Court | 06/20/2019 | |
| Strojnik, Peter (pla) | 4:2019cv03968 | Strojnik v. WCH Napa LLC | California Northern District Court | 07/10/2019 | |
| Strojnik, Peter (pla) | 4:2019cv03983 | Strojnik v. IA Lodging Napa First LLC | California Northern District Court | 07/10/2019 | |
| Strojnik, Peter (pla) | 3:2019cv03980 | Strojnik v. 539 Johnson Street, LLC | California Northern District Court | 07/10/2019 | |
| Strojnik, Peter (pla) | 3:2019cv00305 | Strojnik v. Pendry San Diego, LLC | California Southern District Court | 02/12/2019 | 05/21/2019 |
| Strojnik, Peter (pla) | 3:2019cv00650 | Strojnik v. Torrey Pines Club Corporation | California Southern District Court | 04/08/2019 | |
| Strojnik, Peter (pla) | 3:2019cv00909 | v. Strojnik et al | California Southern District Court | 05/14/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01186 | Strojnik v. La Jolla Bed & Breakfast Inc. | California Southern District Court | 06/24/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01187 | Strojnik v. GHALP Parnership, L.P. | California Southern District Court | 06/24/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01381 | Strojnik v. CWi 2 La Jolla Hotel, LP | California Southern District Court | 07/24/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01390 | Strojnik v. Lizerbram | California Southern District Court | 07/24/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01386 | Strojnik v. Prospect Hospitality, LP. | California Southern District Court | 07/24/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01391 | Strojnik v. Bartell Hotels Management Company | California Southern District Court | 07/24/2019 | |



# Party Search Results

**Search Criteria:** Party Search; Date Filed (On or After): [12/01/2017]; Court ID: [CA, HI, ID, NM, OR, PR, TX, WA]; Last Name: [strojnik]; Party Role: [PLA]
**Result Count:** 81
**Current Page:** 3

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Strojnik, Peter (pla) | 3:2019cv01445 | Strojnik v. RNM Hospitality, Inc et al | California Southern District Court | 08/01/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01446 | Strojnik v. Marla K Hicks Trust | California Southern District Court | 08/01/2019 | |
| Strojnik, Peter (pla) | 1:2019cv00135 | Strojnik v. Granite Fund IV LLC | Hawaii District Court | 03/14/2019 | 04/08/2019 |
| Strojnik, Peter (pla) | 1:2019cv00136 | Strojnik v. HRR AMW LLC dba Andaz Maui at Wailea Resort | Hawaii District Court | 03/14/2019 | |
| Strojnik, Peter (pla) | 1:2018cv00403 | Strojnik v. Green Tea. LLC | Hawaii District Court | 10/22/2018 | 01/03/2019 |
| Strojnik, Peter (pla) | 1:2018cv00409 | Strojnik v. Island Acquisitions Kapalua LLC | Hawaii District Court | 10/24/2018 | 12/06/2018 |
| Strojnik, Peter (pla) | 1:2019cv00077 | Strojnik v. Kapalua Land Company LTD et al | Hawaii District Court | 02/13/2019 | |
| Strojnik, Peter (pla) | 1:2018cv00556 | Strojnik v. Block 22 LLC | Idaho District Court | 12/17/2018 | |
| Strojnik, Peter (pla) | 1:2019cv00515 | Strojnik v. Heritage Hotels and Resorts, Inc. | New Mexico District Court | 06/05/2019 | |
| Strojnik, Peter (pla) | 3:2018cv01869 | Strojnik v. Provenance Fund Acquisition, LLC | Oregon District Court | 10/24/2018 | 12/11/2018 |
| Strojnik, Peter (pla) | 3:2018cv02171 | Strojnik v. Elmer | Oregon District Court | 12/17/2018 | 04/18/2019 |
| Strojnik, Peter (pla) | 3:2018cv02172 | Strojnik v. Live McMinnville, LLC | Oregon District Court | 12/17/2018 | 04/18/2019 |
| Strojnik, Peter (pla) | 3:2018cv02173 | Strojnik v. Park Avenue Fine Wines LLC | Oregon District Court | 12/17/2018 | 02/27/2019 |
| Strojnik, Peter (pla) | 6:2019cv00041 | Strojnik v. VIP's Hotels, Inc. | Oregon District Court | 01/10/2019 | 04/17/2019 |
| Strojnik, Peter (pla) | 3:2019cv01714 | Strojnik v. Paulson & Co. Inc. et al | Puerto Rico District Court | 07/25/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01712 | Strojnik v. International Hospitality Enterprises, Inc. | Puerto Rico District Court | 07/25/2019 | |
| Strojnik, Peter (pla) | 3:2019cv00870 | Strojnik v. Extel Development Company | Texas Northern District Court | 04/09/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01326 | Strojnik v. Dunhill 1530 Main GP Inc | Texas Northern District Court | 06/03/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01325 | Strojnik v. Dallas Convention Center Hotel Development Corporation | Texas Northern District Court | 06/03/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01336 | Strojnik v. Hamilton Properties Corporation Inc | Texas Northern District Court | 06/04/2019 | |
| Strojnik, Peter (pla) | 3:2019cv01369 | Strojnik v. HRI Lodging Inc | Texas Northern District Court | 06/07/2019 | |
| Strojnik, Peter (pla) | 4:2019cv01169 | Strojnik v. Granduca Territorial Houston LP | Texas Southern District Court | 03/29/2019 | |
| Strojnik, Peter (pla) | 4:2019cv01170 | Strojnik v. Landry's | Texas Southern District Court | 03/29/2019 | |
| Strojnik, Peter (pla) | 3:2018cv05912 | Strojnik v. Geiger Victoria, Inc | Washington Western District Court | 11/07/2018 | 03/06/2019 |
| Strojnik, Peter (pla) | 2:2018cv01831 | Strojnik v. Swantown Inn & Spa LLC | Washington Western District Court | 12/18/2018 | 03/12/2019 |
| Strojnik, Peter (pla) | 2:2018cv01832 | Strojnik v. Seattle Hotel Group LLC | Washington Western District Court | 12/18/2018 | 01/22/2019 |
| Strojnik, Sr, Peter (pla) | 3:2019cv03981 | Strojnik, Sr v. Cypress Inn Investors | California Northern District Court | 07/11/2019 | |

| PACER Service Center | | |
|---|---|---|
| | | Receipt 08/06/2019 14:02:08 1763032347 |
| User | ashleymilnes | |
| Client Code | h9374-12 | |
| Description | All Court Types Party Search | |
| | All Courts; Name strojnik; Role pla; Court ID CA, HI, ID, NM, OR, PR, TX, WA; Date Filed on or after 12/01/2017; | |
| Billable Pages | 1 ($0.10) | |

# EXHIBIT 8

▲ Courthouse News Service

## Search Complaints

Video Tutorial

Search published reports only ☐

Search

| All Fields | | Courts | California State Courts | X |

From Date

To Date

◄◄◄
California

☐ All  ☐ Federal
☑ State

Summary Words

Summary / NOS Exclude

☑ Alameda County Superior Court
☑ Alpine County Superior Court
☑ Amador County Superior Court
☑ Butte County Superior Court
☑ Calaveras County Superior Court
☐ Colusa County Superior Court
☐ Contra Costa County Superior Court
☑ Daily Ledger Court

Case Number

Plaintiffs   Peter Strojnik

Defendants

Plaintiff Lawyers

Defendant Lawyers

Judges

NOS ✚   All

**Feedback**

**Admin** ▾
  Account
  Members ▾

**Reports** ▾
  CNS Reports
  My Reports

**Search** ▾
  Complaints
  Bankruptcy
  Daily Ledger
  Written Tutorial
  Law Library

**Dinger** ▾
  Past Dings
  My Dingers
  Export
  New
  RSS
  Written Tutorial

**Tracker** ▾

**Daily Brief** ▾

Clear   Tips     See results in   Columns ▾    Search

*Number of results returned: 29*

**Filing Date** ▲▼   **Case Number** ▲▼   **Court Name** ▲▼   **Plaintiffs** ▲▼   **Defendants** ▲▼   **Summary** ▲▼

**Almanac** ▼

**About Us** ▼

**Privacy Policy**

| Filing Date ▲▼ | Case Number ▲▼ | Court Name ▲▼ | Plaintiffs ▲▼ | Defendants ▲▼ | Summary ▲▼ | | |
|---|---|---|---|---|---|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Central Coast Ventura County Superior Court 56-2018-00520816-CU-CR-VTA 11/28/2018 | | | **Peter Strojnik** v. Inn on the Beach, LLC dba Inn on the Beach  Judge: Guasco | | Civil rights. Plaintiff suffers from physical impairments and requires mobility features. Defendants' third party and first party booking sites failed to make reservations for accessible guest rooms available in the same manner as individuals who did not need accessible rooms. Defendants' third party and first party agents failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service to permit plaintiff to assess whether its hotel meets his needs. Plaintiff declined to book a room there. | P: In pro per | |
| Central Valley Kern County Superior Court BCV-18-102672 10/23/2018 | | | **Peter Strojnik** v. Suman Bhakta; Nutan Bhakta, both dba Caprice Motel  Judge: Clark | | ADA. Defendants lack disabled-accessible facilities. | P: In pro per | |
| North and East Bay Sonoma County Superior Court SCV263384 10/18/2018 | | | **Peter Strojnik** v. Hotel Azura LLC | | Civil rights. Plaintiff, who is a disabled senior, was unable to stay at defendant's hotel after defendant failed to "identify and describe mobility-related accessibility issues through its reservation services." | P: In pro per | |

| Filing Date ▲▼ | Case Number ▲▼ Court Name ▲▼ Defendants ▲▼ Summary ▲▼ | Plaintiffs | | |
|---|---|---|---|---|
| San Diego Federal and State Branch San Diego Superior Court Branches 37-2018-52164-CU-CR-NC 10/15/2018 Vista | Peter Strojnik v. Pipeline Ventures Inc., dba The Fin Boutique Hotel Judge: Maas | ADA. Defendant's first and third party booking websites to book hotel reservations failed to fully identify and describe mobility related accessibility features and guest rooms offered through its reservations service. | P: In pro per | |
| San Diego Superior San Diego County Superior Court 37-2018-51960-CU-CR-CTL 10/12/2018 | Peter Strojnik v. Siry Investments LP dba Porto Vista Hotel Judge: Bacal | ADA. Defendant's third party booking websites failed to identify and describe mobility-related accessibility features and guest rooms offered through its online reservation service. | P: In pro per | |
| San Diego Superior San Diego County Superior Court 37-2018-51611-CU-CR-CTL 10/11/2018 | Peter Strojnik v. Merritt Hospitality LLC dba Hotel Republic Judge: Medel | ADA. Defendant's first and third party booking websites to book hotel reservations failed to fully identify and describe mobility related accessibility features and guest rooms offered through its reservations service. | P: In pro per | |
| San Diego Superior San Diego County Superior Court 37-2018-51438-CU-CR-CTL 10/10/2018 | Peter Strojnik v. The Keating Hotel Group LLC dba The Keating Hotel Judge: Hayes | ADA. Defendant's third party website to book hotel reservations failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service. | P: In pro per | |
| San Diego Superior San Diego County Superior Court 37-2018-51249-CU-CR-CTL 10/09/2018 | Peter Strojnik v. Pacifica Hotels LLC Judge: Meyer | ADA. Defendant's website failed to properly make reservations for accessible guest rooms available. | P: In pro per | |

Complaint

| Filing Date ▲▼ | Case Number ▲▼ | Court Name ▲▼ | Plaintiffs ▲▼ Defendants ▲▼ Summary ▲▼ | | |
|---|---|---|---|---|---|

| Filing Date / Court | Case Number | Summary | Plaintiffs |
|---|---|---|---|
| San Diego Superior San Diego County Superior Court 37-2018-50712-CU-CR-CTL 10/09/2018 | Peter Strojnik v. Eat Drink and Sleep Inc. dba Tower 23 Judge: Strauss | ADA. Defendant's third party booking service for reserving hotel rooms fails to identify and describe mobility-related accessibility features and guest rooms offered through its reservations service. | P: In pro per |
| Central Coast Santa Barbara County Superior Court 18cv04869 10/02/2018 Santa Maria | Peter Strojnik v. Paul B & Mable I Shults 1992 Trust dba Inn on Summer Hill Judge: Beebe | Civil rights. Plaintiff is disabled senior veteran and requires lodging facilities that are accessible to him. Third party booking websites and defendants' first party booking website failed to identify and describe mobility related accessibility features and guest rooms at defendants' hotel. Third party booking websites and defendants' first party booking website failed to make reservations for accessible guest rooms available in the same manner as for individuals who do not need accessible rooms. Plaintiff declined to book a room because he was unable to assess whether it met his needs. | P: In pro per |
| Central Valley Kern County Superior Court BCV-18-102561 10/02/2018 | Peter Strojnik v. Padre Hotel LP dba The Padre Hotel Judge: Clark | ADA. Defendant lacks disabled-accessible facilities. | P: In pro per |

| Filing Date ▲ ▼ | Case Number ▲ ▼ | Court Name ▲ ▼ | Plaintiffs ▲ ▼ | Defendants ▲ ▼ | Summary ▲ ▼ |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Central Coast Ventura County Superior Court 56-2018-00517464-CU-CR-VTA 09/10/2018 | Peter Strojnik v. Cliff House Inn, LLC Judge: Kellegrew | Civil rights. Plaintiff is disabled senior veteran and requires lodging facilities that are accessible to him. Third party booking websites and defendants' first party booking website failed to identify and describe mobility related accessibility features and guest rooms at defendants' hotel. Third party booking websites and defendants' first party booking website failed to make reservations for accessible guest rooms available in the same manner as for individuals who do not need accessible rooms. Plaintiff declined to book a room because he was unable to assess whether it met his needs | P: In pro per | |
| Central Coast Ventura County Superior Court 56-2018-00517462-CU-CR-VTA 09/10/2018 | Peter Strojnik v. BMN Hospitality Group dba Clocktower Inn Hotel Judge: DeNoce | Civil rights. Plaintiff is disabled senior veteran and requires lodging facilities that are accessible to him. Third party booking websites and defendants' first party booking website failed to identify and describe mobility related accessibility features and guest rooms at defendants' hotel. Third party booking websites and defendants' first party booking website failed to make reservations for accessible guest rooms available in the same manner as for individuals who do not need accessible rooms. Plaintiff declined to book a room because he was unable to assess whether it met his needs. | P: In pro per | |

| Filing Date ▲ ▼ | Case Number ▲ ▼ | Court Name ▲ ▼ | Plaintiffs ▲ ▼ |
| Defendants ▲ ▼ | Summary ▲ ▼ | | |

| Los Angeles Branch Los Angeles County Superior Court Branches YC073135 09/07/2018 Torrance | Peter Strojnik v. Kintetsu Enterprises Company Of America; Miyako Hybrid Hotel Torrance | Civil Rights (General Jurisdiction) | P: Pro Per |
| Central Coast Santa Barbara County Superior Court 18cv04240 08/27/2018 Santa Barbara | Peter Strojnik v. Hersha Hospitality Management LP dba Hotel Milo<br><br>Judge: Anderle | Civil rights. Plaintiff is disabled and requires lodging facilities that are accessible to him. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms at defendants' hotel. Defendants' first party booking website also failed to identify and describe mobility related accessibility features at defendants' hotel. Plaintiff declined to book a room because he was unable to assess whether it met his needs. | P: In pro per |
| Los Angeles Branch Los Angeles County Superior Court Branches EC069072 07/30/2018 Glendale | Peter Strojnik v. Langham Hotels Pacific Corporation | Civil Rights (General Jurisdiction) | P: Not Listed |

| Filing Date ▲▼ | Case Number ▲▼ | Court Name ▲▼ | Plaintiffs ▲▼ | | |
|---|---|---|---|---|---|
| Defendants ▲▼ | Summary ▲▼ | | | | |

| Court Name / Case Number / Filing Date | Plaintiffs v. Defendants | Summary | Plaintiffs | |
|---|---|---|---|---|
| Los Angeles Branch Los Angeles County Superior Court Branches SC129601 07/27/2018 Santa Monica | Peter Strojnik v. The Edward Thomas Hospitality Corp. dba Shutters on the Beach | ADA Violations. Defendant's hotel has numerous ADA violations and which make it inaccessible to Plaintiff in a wheelchair. NOS: 446 - Amer w/Disabilities - Other | P: Pro Per | |
| Inland Counties San Bernardino County Superior Court CIVDS1819135 07/25/2018 | Peter Strojnik v. Saddleback Inn Inc.; Does | ADA. Defendant does not offer ADA accessible rooms in their hotel. | P: Pro per | |
| Inland Counties Riverside County Superior Court RIC1815140 07/24/2018 Riverside | Peter Strojnik v. Historic Mission Inn Corp.; Does | Americans with Disabilities Act. Defendant operates a business without compliant disabled-accessible facilities. | P: Pro se | |
| Orange County Orange County Superior Court 30-2018-01006888-CU-CR-CJC 07/20/2018 | Peter Strojnik v. Laguna Beach Lodge LLC Judge: Fell | Americans With Disabilities Act. Defendant operates a business without compliant disabled-accessible facilities. | P: Pro se | |
| Orange County Orange County Superior Court 30-2018-01006511-CU-CR-CJC 07/18/2018 | Peter Strojnik v. Aliso Creek Properties LLC Judge: Glass | Americans With Disabilities Act. Defendant's website fails to provide information about the features of its accessible rooms, leaving plaintiff unable to make an online reservation. | P: Pro se | |

| Filing Date ▲▼ | Case Number ▲▼ Court Name ▲▼ Plaintiffs ▲▼ Defendants ▲▼ Summary ▲▼ | | | |
|---|---|---|---|---|
| San Diego Superior San Diego County Superior Court 37-2018-34632-CU-CR-CTL 07/12/2018 | Peter Strojnik v. La Salle Hotel Properties dba L'Auberge Del Mar  Judge: Hayes | ADA. Disabled plaintiff was denied access to defendant's hotel in Del Mar, California. | P: In pro per | |
| San Diego Federal and State Branch San Diego Superior Court Branches 37-2018-34235-CU-CR-NC 07/11/2018 Vista | Peter Strojnik v. Rancho Valencia Resort Partners LLC  Judge: Maas | ADA. Disabled plaintiff was denied access to defendant's hotel. | P: In pro per | |
| Inland Counties Riverside County Superior Court MCC1800736 07/05/2018 Murrieta | Peter Strojnik v. Carter Estate Winery and Resort LLC | Americans with Disabilities Act. Defendant's premises is not accessible to disabled persons, such as plaintiff. | P: Pro se | |
| Inland Counties Riverside County Superior Court PSC1803913 07/05/2018 Riverside | Peter Strojnik v. Colony Palms Hotel LLC dba Colony Palms Hotel | Americans with Disabilities Act. Defendant's premises has barriers which makes it unaccessible to persons with disabilities, such as plaintiff. | P: Pro se | |
| Inland Counties Riverside County Superior Court PSC1803715 06/25/2018 Palm Springs | Peter Strojnik v. Steve Hermann Hotels LLC | Americans with Disabilities Act. Defendant's premises has barriers which made it unaccessible to plaintiff. | P: Pro se | |

| Filing Date ▲ ▼ | Case Number ▲ ▼ | Court Name ▲ ▼ | Plaintiffs |
| Defendants ▲ ▼ | Summary ▲ ▼ | | |
|---|---|---|---|
| Inland Counties Riverside County Superior Court PSC1803681 06/22/2018 Palm Springs | Peter Strojnik v. Parker Palm Springs II LLC | Americans with Disabilities Act. Defendant's premises has barriers which made it unaccessible to plaintiff. | P: Pro se |
| Inland Counties Riverside County Superior Court MCC1800568 05/25/2018 Murrieta | Peter Strojnik v. South Coast Winery Inc. | Americans with Disabilities Act. Defendant's premises has barriers which made it unaccessible to plaintiff. | P: Pro se |
| Inland Counties Riverside County Superior Court PSC1801993 04/09/2018 Palm Springs | Peter Strojnik v. Welk Resort Vacation Rentals Inc. | Americans with Disabilities Act. | P: Pro se |

# EXHIBIT 9

JS-6

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  LACV 19-00066 JLS (AGR)                              Date:  February 14, 2019
Title:   Peter Strojnik Sr. v. Singpoli Group, LLC

_____

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

   Terry Guerrero                                               N/A
Deputy Clerk                                                    Court Reporter

Attorneys Present for Plaintiff:                     Attorneys Present for Defendant:

Not Present                                                    Not Present

**Proceedings:**          **(In Chambers) ORDER DISMISSING CASE WITH
                          PREJUDICE**

This matter is before the Court on the response of pro se Plaintiff Peter Stronjnik
to the Court's Order to Show Cause ("OSC") why it should not dismiss this case in light
of Plaintiff's failure to comply with the Court's Order to serve the ADA packet on
Defendant.  (*See* Doc. 12.)  Plaintiff responded to the OSC, stating that the proof of
service attached to his response evidenced service of the ADA packet.  (Doc. 13, Pltf.
Resp. at 1.)  Plaintiff also represents that his failure to obey the Court's Order was "due
to [his] unfamiliarity with the requirements of the Central District Rules."  (*Id.*)

Plaintiff's response is insufficient.  First, the proof of service attached to Plaintiff's
response does not evidence service of the ADA packet. Instead, the document, executed
by a registered process server, evidences service of the summons only.  This is a copy of
the Proof of Service already on the docket, which was filed before the Court issued its
OSC.  (*See* Doc. 8 (Proof of Service of Summons); Doc. 12 (OSC); *cf.* Doc. 13 at 2-3
(attaching copies of Doc. 8 as evidence of proof of service of the ADA packet).)

Next, as to Plaintiff's professed reason for his failure to comply with the Court's
Order, pro se litigants are not excused from compliance with Court procedure.
Compliance with all relevant rules of procedure is expected, including the Federal Rules
of Civil Procedure, the Federal Rules of Evidence, this Court's Local Rules, Judge
Staton's procedures web page (http://www.cacd.uscourts.gov/honorable-josephine-l-
staton), the Court's Initial Standing Order, and the Court's Civil Trial Order.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  LACV 19-00066 JLS (AGR)                    Date:  February 14, 2019
Title:   Peter Strojnik Sr. v. Singpoli Group, LLC
_____

Moreover, Plaintiff need not have been familiar with the rules of procedure to
understand his obligation to serve Defendant with the ADA packet.  His obligation was
printed on the first page of the packet.  This first page is entitled "Notice to Parties," and
under the heading of "Instructions to Plaintiff," the second paragraph reads:

> Plaintiff is directed to serve the ADA Packet on
> Defendant(s) at the same time the summons and complaint
> are served, if possible. If, upon receipt of this Notice to
> Parties, Plaintiff has already served Defendant(s), Plaintiff
> must serve the ADA Packet no later than fourteen (14) days
> after this Notice to Parties is filed with the Court. Within
> three (3) days of serving Defendant(s), Plaintiff must file with
> the Court a proof of service indicating that the ADA Packet
> was served on Defendant(s).

(Doc. 7 at 1.)  Thus, Plaintiff's explanation for his failure to comply with the Court's
Order is disingenuous.

Finally, Plaintiff's professed ignorance and implication that he did not understand
his obligation to familiarize himself with court procedure is simply not credible.
Although Plaintiff is a pro se litigant in this forum, he is also an Arizona lawyer with
extensive experience litigating ADA access cases.[1]  Plaintiff's Arizona law license is
currently suspended.  A search of pacer.gov, sorted by date, reveals that three months
after Plaintiff's law license was suspended, he began filing ADA access cases as a pro se
litigant instead of filing them on behalf of clients.  *See, e.g., Gastelum v. Canyon Hosp.
LLC*, No. CV-17-02792-PHX-GMS, 2018 WL 2388047, at *10 (D. Ariz. May 25, 2018)
(dismissing for lack of standing eight ADA access cases Plaintiff filed on behalf of the
same client).  Indeed, in less than four months, Plaintiff has filed twenty-six ADA actions
as a pro se litigant.[2]  Rather than being a befuddled pro se litigant who erroneously

_____

[1] The Court takes judicial notice of information found at pacer.gov and
azbar.legalserviceslink.com.  Plaintiff's name, address, and telephone number match that of Peter
Strojnik, Arizona Bar No. 006464, whose current status is "suspended" as of July 11, 2018.

[2] The Court recognizes that such serial litigation is prohibited and does not intend to discourage
the filing of suits similar to the present one.  *See* Molski v. Evergreen Dynasty Corp., 500 F.3d
1047, 1062 (9th Cir. 2007) ("For the ADA to yield its promise of equal access for the disabled, it

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  LACV 19-00066 JLS (AGR)                    Date:  February 14, 2019
Title:   Peter Strojnik Sr. v. Singpoli Group, LLC

_____

believes that he has complied with the Court's Order, Plaintiff is an experienced litigator
who appears to have altered his business model to work around the loss of his license.

Against this background, the Court considers the relevant factors regarding
whether to dismiss the present action for failure to obey the Court's Order:

> Courts are to weigh five factors in deciding whether to
> dismiss a case for failure to comply with a court order: (1) the
> public's interest in expeditious resolution of litigation; (2) the
> court's need to manage its docket; (3) the risk of prejudice to
> the defendants; (4) the public policy favoring disposition of
> cases on their merits; and (5) the availability of less drastic
> sanctions.

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir.
2006).

The first factor favors dismissal.  Plaintiff's failure to comply with the Court's
Order to serve the ADA packet has delayed the litigation.  Moreover, the purpose of the
ADA packet is to introduce all parties to the availability of an alternative dispute
resolution process implemented by the Court to facilitate early resolution of ADA access
cases.  As to the second factor, where possible, the process is meant to allow for
resolution of these cases with minimal Court involvement.  Thus, second factor also
favors dismissal.  The third factor favors dismissal as Defendant was not alerted to the
existence of an alternative dispute resolution process that can lead to early resolution of
the action and cost savings.

The fourth factor, as it always does, weighs against dismissal.

_____

may indeed be necessary and desirable for committed individuals to bring serial litigation
advancing the time when public accommodations will be compliant with the ADA.").  The Court
instead requires that all counsel and all parties comply with easily ascertainable Court procedures
and with all Court orders.

_____

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  LACV 19-00066 JLS (AGR)                    Date:  February 14, 2019
Title:   Peter Strojnik Sr. v. Singpoli Group, LLC

_____

The fifth factor also weighs in favor of dismissal.  The Court ordered Plaintiff, an experienced attorney appearing pro se, to serve a packet of documents on Defendant.  He failed to do so.  The Court issued the OSC, alerting Plaintiff of his failure to serve the ADA packet, and specifically warning him of the consequences of the failure to comply.  Instead of availing himself of the second chance to comply with the Court's order, he provided "evidence" that was already part of the Court record, and that did not support his assertion that he had served the ADA packet.  He also responded that he was unfamiliar with the Court's procedures and that he hoped the Court would be satisfied with his late compliance.  As an experienced ADA litigator, Plaintiff clearly understood that the Court has specific procedures he must follow, and Plaintiff would have understood his obligation to serve the ADA packet had he reviewed the Notice to Parties.  Plaintiff was warned that his failure to comply would result in dismissal; nevertheless, he failed to comply, preferring to hide behind the implication that he was an inexperienced pro se litigant.  Under these circumstance, the Court finds that no lesser sanction will compel Plaintiff to comply with the Court's Order.

On balance, the Court finds that four of the five factors support dismissal of this action.  The Court hereby DISMISSES this case with prejudice.

**IT IS SO ORDERED.**

Initials of Preparer:  tg

_____

# EXHIBIT 10

⚠️ Caution
As of: July 31, 2019 3:03 PM Z

# *Advocates for Individuals with Disabilities LLC v. MidFirst Bank*

United States District Court for the District of Arizona

September 1, 2017, Decided; September 5, 2017, Filed

No. CV-16-01969-PHX-NVW

**Reporter**
279 F. Supp. 3d 891 *; 2017 U.S. Dist. LEXIS 142783 **; 2017 WL 3872419

Advocates for Individuals With Disabilities LLC, and David Ritzenthaler, Plaintiffs, v. MidFirst Bank, Defendant.

**Subsequent History:** Motion granted by, Motion denied by *Advocates for Individuals with Disabilities, LLC v. MidFirst Bank, 2018 U.S. Dist. LEXIS 123795 (D. Ariz., July 24, 2018)*

## Core Terms

disability, cases, state court, courts, lack of standing, entity, attorney's fees, state law claim, federal court, lawsuit, futile, standing requirement, superior court, civil action, parking lot, allegations, aggrieved, demanded

**Counsel:** [**1] For Advocates for Individuals With Disabilities LLC, David Ritzenthaler, dealing with Plaintiff's sole and separate claim, Plaintiffs: Fabian Zazueta, LEAD ATTORNEY, Advocates for Individuals with Disabilities, Phoenix, AZ; Peter Strojnik, LEAD ATTORNEY, Strojnik PC, Phoenix, AZ.

For MidFirst Bank, Defendant: John Alan Doran, Lori Wright Keffer, Matthew Albert Hesketh, LEAD ATTORNEYS, Sherman & Howard LLC - Scottsdale, AZ, Scottsdale, AZ.

For Arizona, State of, Amicus: Brunn Wall Roysden , III, Matthew Benjamin du Mee, Oramel Horace Skinner, LEAD ATTORNEYS, Office of the Attorney General - Phoenix, Phoenix, AZ; Evan Guy Daniels, John Rudd Heyhoe-Griffiths, Paul Nathan Watkins, LEAD ATTORNEYS, Office of the Attorney General - Phoenix - Civil, Phoenix, AZ.

**Judges:** Neil V. Wake, Senior United States District Judge.

**Opinion by:** Neil V. Wake

## Opinion

[*892] WO

## ORDER

Can a Tibetan Sherpa who has never set foot in Arizona sue an Arizona business for disability discrimination? The question bears on whether plaintiffs David Ritzenthaler and Advocates for Individuals with Disabilities LLC (collectively "AID"), both Arizona residents, can sue defendant MidFirst Bank ("MidFirst"), an Arizona business, for noncompliance with state and federal [**2] disability laws. AID insists they can despite never having visited MidFirst's business location and alleging no injury beyond Ritzenthaler's awareness that MidFirst may have failed to conform its parking lot to the precise requirements of both the *Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 through 12189*, and the *Arizonans with Disabilities Act ("AZDA"), A.R.S. §§ 41-1492 through 41-1492.12*. The federal claims are being dismissed for lack of standing, but AID asks this Court to remand its state claims to Arizona state court, where they believe even a Tibetan Sherpa would have standing to bring them. Before the Court is their Motion to Remand the state law claims. (Doc. 24.) For the reasons that follow, the Motion to Remand the state law claims will be denied, and this case will be dismissed in its entirety.

## I. BACKGROUND

On May 17, 2016, AID filed a civil complaint in Maricopa County Superior Court alleging that MidFirst, located in Gilbert, Arizona, violated both the ADA and the AZDA. (Doc. 1-1 at 7.) MidFirst removed the case to federal court. (Doc. 1.) The [*893] allegations state no unique facts about MidFirst or its facilities but simply recite generalized allegations that MidFirst failed to maintain various parking lot specifications (adequate [**3]

279 F. Supp. 3d 891, *893; 2017 U.S. Dist. LEXIS 142783, **3

spaces and proper signage) required by state and federal disability laws. What's more, rather than alleging particular harm to Ritzenthaler (or anyone else), the complaint only states, "On or about Tuesday, March 15 2016 [sic], Plaintiff became aware" of various purported insufficiencies involving parking spot size and signage. (Doc. 1-1 at 7.) It is never asserted that Ritzenthaler, who the complaint characterizes as legally disabled, personally visited MidFirst's business. (The complaint never specifies what Ritzenthaler's disability is or how the MidFirst parking lot's purported deficiencies denied him access to any facilities. The Court assumes for the purpose of this order that Ritzenthaler does in fact have a disability recognized under both the ADA and the AZDA.) The complaint merely says he will avoid visiting MidFirst in the future unless it comes into compliance with the law. (Doc. 1-1 at 8.)

Template complaints filled with non-specific allegations have become the stock-in-trade of attorneys Peter Strojnik and Fabian Zazueta. As in many of their cases, the discrepancies in parking signage and striping here were minor, even trivial. MidFirst immediately corrected them, as it **[\*\*4]** would have if Strojnik and Zazueta had written a demand letter or just made a phone call. Though the minor discrepancies are often corrected immediately, Strojnik and Zazueta generally refuse to dismiss the cases they bring unless the defendants pay them attorney's fees, in this case "no less than $5,000." (Doc. 1-1 at 11.) They worry that just fixing the minor discrepancies will jeopardize their fee claim, as their template complaint seeks award of fees "[i]rrespective of Defendants' 'voluntary cessation' of the AzDA [sic] and ADA violation." (*Id.*) That then forces the defendants to retain counsel to resist the fee claim—or to pay Strojnik and Zazueta their fee demands to avoid retaining and paying their own attorneys.

This extortionate practice has become pervasive. With Ritzenthaler listed as the aggrieved co-plaintiff, AID has pursued upwards of 160 cookie-cutter lawsuits in federal court and, from early to later 2016, more than 1,700 such suits in Arizona state court. They come under the heading of different organizations with closely related names: "Advocates for Individuals with Disabilities Foundation," "Advocates for Individuals with Disabilities LLC," and "American Advocates for Disabled **[\*\*5]** Individuals." (Doc. 42-1 at 4.) (Some have also been filed under the name "Advocates for American Disabled Individuals LLC." *See, e.g., Advocates for American Disabled Individuals LLC v. Price Company, No. CV-16-02141-PHX-GMS, 2016 U.S. Dist. LEXIS 141936, 2016 WL 5939467, at \*1 (D. Ariz. Oct. 13, 2016)*.) The

pleadings here follow the same script recited in other complaints right down to the same typographical errors. *See, e.g.,* Doc. 42-2 at 4 (complaint in separate case alleging, among other things, that "Plaintiff suffers from disability [sic]" and that MidFirst's parking lot suffers from "inadequacy of handicapped parking spaces, insufficient designation or signage and or [sic] insufficient disbursement of such parking spaces").

On September 8, 2016, the Court ordered AID to show cause why this case should not be dismissed for lack of standing. (Doc. 20.) The Court also permitted AID to file an amended complaint if that would cure any standing defects. (Doc. 23.) AID did not file an amended complaint but instead asked that the case be remanded to state court. (Doc. 24.) Having previously found that AID failed to establish standing requisite for federal jurisdiction (Doc. 26), **[\*894]** this Court determined MidFirst was entitled to have a federal court adjudicate that AID lacks **[\*\*6]** standing to bring the federal claims. The Court ruled at a hearing on the Order to Show Cause that the ADA claims should be dismissed outright rather than remanded. (Doc. 45 at 81.) However, AID demanded that the state law claim be remanded for further consideration in the state court, not dismissed by this Court. The sole state law question is whether AID's lack of standing requires dismissal of the identical Arizona statutory claims, too. If not, then AID intends to litigate its state law claims in state court for which it has no standing and no injury. The state law issue of standing is nearly the same question this Court has already decided in dismissing the federal claims for lack of standing.

Shortly before the Show Cause Hearing, on request of the Arizona Attorney General, more than 1,000 identical cases filed by Strojnik and Zazueta were consolidated in Arizona superior court. By written order of March 2, 2017, the superior court dismissed all the consolidated cases with prejudice for lack of standing, except one. (Doc. 48-1 at 5-6.) The judge's ruling contained the following findings:

THE COURT FINDS that there are no allegations in the [consolidated] Complaint that would support **[\*\*7]** the tester argument raised by Plaintiffs in their memorandum. Plaintiff has failed to show a distinct and palpable injury in these cases. The Court previously found that the Complaints are substantially similar for purposes of the standing issue.

(Doc. 48-1 at 6.) That court exempted only one case

Case 4:19-cv-03983-DMR    Document 8-1    Filed 08/06/19    Page 186 of 385    Page 3 of 6

279 F. Supp. 3d 891, *894; 2017 U.S. Dist. LEXIS 142783, **7

from its blanket dismissal order. (*Id.*) In that one case, *Advocates for American Disabled Individuals, LLC, et al. v. Tartan Properties*, a different judge had previously ruled the complaint was "sufficient to withstand a Motion to Dismiss based on lack of standing." (Doc. 47-1 at 2.) The court declined to overturn that aberrant ruling, probably under the Arizona courts' strong admonition against "horizontal appeals," a rare and disfavored practice in which a superior court judge revisits rulings previously made in the same case by a prior judge. *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II, 176 Ariz. 275, 278-79, 860 P.2d 1328, 1331-32 (Ct. App. 1993)* ("We criticize horizontal appeals because they waste judicial resources by asking two judges to consider identical motions and because they encourage 'judge shopping.'"). (Unlike federal court where cases remain assigned to the same judge, in superior court cases are routinely reassigned to different judges, who rotate departments every few years.) [**8]

## II. LEGAL STANDARDS

Federal statute requires that, where a case has been removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *28 U.S.C. § 1447(c)*. The Ninth Circuit has recognized an exception to this requirement where there is "absolute certainty that remand would prove futile." *Bell v. City of Kellogg, 922 F.2d 1418, 1425 (9th Cir. 1991)* (internal quotation marks omitted). The *Bell* court premised this "futility doctrine" on the assumption that Congress did not "intend[] to ignore the interest of efficient use of judicial resources." *Id. at 1424-25*. Some courts have questioned the legitimacy of *Bell*, noting the statutory language that "the case shall be remanded." *See, e.g., Polo v. Innoventions Int'l, LLC, 833 F.3d 1193, 1197-98 (9th Cir. 2016)* (questioning *Bell* but declining to overrule it despite circuit split on the futility doctrine).

## [*895] III. ANALYSIS

The *Bell* standard for dismissing rather than remanding the state law claim is whether there is "absolute certainty that remand would prove futile." *Bell, 922 F.2d at 1425*. In *Bell* the Ninth Circuit affirmed the trial court's decision to dismiss rather than remand a remaining state law claim because a state law requirement of posting a bond was defaulted. As the court explained:

The state election statute provided [**9] the only

state cause of action for the plaintiffs. The state court would have simply dismissed the action on remand due to the fatal failure to comply with the bond posting requirement. Because we are certain that a remand to state court would be futile, no comity concerns are involved.

*Id.* The federal court's decision to dismiss the case rather than remand it for the inevitable dismissal in state court "prevent[ed] any further waste of valuable judicial time and resources," not to mention waste of the parties' legal fees. *Id.* This is even a better case for the futility doctrine than *Bell*. The standing question to be decided under state law here is the same question this Court has already decided under federal law.[1]

Despite having effectively conceded that Ritzenthaler suffered no particularized injury, AID argues that this [**10] Court cannot say with absolute certainty this case would be dismissed in Arizona state court. The basis for its argument is twofold. First, Arizona has no "case or controversy" requirement like the one found in the U.S. Constitution binding the federal courts. (Doc. 24 at 4.) Even if Ritzenthaler did not suffer an injury cognizable under federal standing requirements, AID contends he could still have litigated in Arizona state court despite lack of standing. Second, and related, AID contends he has standing under the AZDA's enforcement provision, which at the time this action was filed permitted "[a]ny person who believes" an entity has violated or will imminently violate the AZDA to "institute a civil action for preventive or mandatory relief." *A.R.S. § 41-1492.08(A)* (2011). "Any person," says AID, is so broad a standard that essentially anyone on the planet, including—in Strojnik's words—"the Sherpa [in] Tibet,

---

[1] The doubts AID raises about *Bell* are overstated. They are grounded in the circumstance that the direction to remand is unqualified. But statutory construction often finds narrow exceptions in circumstances where the main purpose is ill served or unfairness could arise from too literal a reading (e.g., implied equitable tolling doctrines). *Section 1447(c)* is set in a matrix of jurisdictional statutes:

> But these statutes were themselves passed against the backdrop of a large body of standing law on matters of substance, remedy, and jurisdiction. As is true of all legislation, it is a major problem of *interpretation* how to fit the new enactment into this preexisting texture. No statute recreates the entire legal universe.

Paul M. Bator, *The State Courts and Federal Constitutional Litigation*, 22 Wm. & Mary L. Rev. 605, 622 n. 49 (1981) (emphasis in original).

279 F. Supp. 3d 891, *895; 2017 U.S. Dist. LEXIS 142783, **10

would have standing if he had knowledge of a violation." (Doc. 45 at 34.)

The superior court has now decided that in more than 1,000 "substantively similar" cases AID and Ritzenthaler do not have standing because they "failed to show a distinct and palpable injury." (Doc. 48-1 at 6.) The Court has not [**11] examined every such case, but in one, *Advocates for American Disabled Individuals, LLC v. 1639 40th Street LLC*, the complaint is virtually identical to the complaint in this case save for the dates, the name of the defendant, and the particular parking lot insufficiencies alleged. *See* Doc. 42-2 at 3-10. Every allegation pertinent to standing is word-for-word [*896] the same. That case "failed to show a distinct and palpable injury." (Doc. 48-1 at 6.) It has been adjudicated that under state law in those thousand-plus cases, AID and Ritzenthaler do not have standing.

## A. The AZDA Does Not Give Standing to the Whole World

AID nonetheless points to *Tarian Properties*, the single case among those consolidated that was not dismissed, and insists that in light of its resilience, one cannot be "absolutely certain" that this action against MidFirst would be dismissed if remanded. (Doc. 47 at 2.) AID in essence asks the Court to find uncertainty in the fact that out of more than 1,000 cases it has filed in state court, a single one was not dismissed. But the obvious reason that *Tarian Properties* was excluded from the otherwise blanket dismissal was that an earlier judge in the same case had already and [**12] erroneously denied dismissal. Though an erroneous interlocutory ruling is not final under Arizona procedure, any more than it is under federal procedure, the Arizona courts strongly counsel newly assigned superior court judges not to revisit prior rulings by different judges, lest the courts be swamped with such judge-shopping motions. *See Powell-Cerkoney, 176 Ariz. at 278-79, 860 P.2d at 1331-32*. That earlier aberrant ruling does not detract from the certainty of Arizona law now.

As noted, Strojnik originally argued that AID, and anyone else in the world, would have standing under the AZDA because the statute read:

> *Any person who believes* that any covered person or entity has engaged in, or that there are reasonable grounds to believe that any covered person or entity is about to engage in, any act or practice prohibited by *sections 41-1492.01 through*

*41-1492.05* or that any covered entity has not performed an act required by this article and its implementing rules *may institute a civil action* for preventive or mandatory relief, including an application for a permanent or temporary injunction, restraining order or other order.

*A.R.S. § 41-1492.08(A)* (2011) (emphasis added). Hence his argument: "Any person" means anyone on the planet and "the Sherpa [in] Tibet, would have standing if he had knowledge [**13] of a violation." (Doc. 45 at 34.) This Court was prepared to reject that interpretation as hopeless. But by statutory amendment that took effect on August 9, 2017, this section now reads:

> *Any aggrieved person* who is subjected to discrimination in violation of *§ 41-1492.01*, *41-1492.02*, *41-1492.03*, *41-1492.04*, *41-1492.05* or *41-1492.11* of this article's implementing rules *may institute a civil action* for preventive or mandatory relief, including an application for a permanent or temporary injunction, restraining order or other order.

*A.R.S. § 41-1492.08(A)* (2017) (emphasis added); *2017 Ariz. Sess. Laws, ch. 175, § 2*. Now only an "aggrieved person" has Arizona standing, and that excludes AID. The Legislature has spared us the need for any trip to the Himalayas.

But there is more. The recent statutory amendment also shuts down Strojnik's business model of running up fees before a defendant can avoid a lawsuit by "voluntary cessation." A new subsection now adds:

> Before filing a civil action pursuant to this section that alleges a public accommodation that is operated by a private entity has a building, facility or parking lot that violates this article and except as provided by subsection F of this section, the aggrieved person or the person's attorney *shall provide written notice* [**14] *with sufficient detail to allow the* [*897] *private entity to identify and cure the violation or comply with the law*. If the private entity does not cure the violation or comply with the law within thirty days after receiving the notice, the aggrieved person may file the civil action.

*A.R.S. § 41-1492.08(E)* (emphasis added). In light of this provision, it is more than certain that Arizona law would not accord standing to AID for this lawsuit.

Case 4:19-cv-03983-DMR    Document 8-1    Filed 08/06/19    Page 188 of 385   Page 5 of 6

279 F. Supp. 3d 891, *897; 2017 U.S. Dist. LEXIS 142783, **14

## B. It Is Certain that the Arizona Courts Would Not Allow this Case to Proceed Without Standing

Arizona has "established a rigorous standing requirement." *Fernandez v. Takata Seat Belts, Inc., 210 Ariz. 138, 140, 108 P.3d 917, 919 (2005)*. "[A] litigant seeking relief in the Arizona courts must first establish standing to sue," as the standing issue is a "threshold question[]." *Bennett v. Napolitano, 206 Ariz. 520, 525, 81 P.3d 311, 316 (2003)*. "The requirement is important: the presence of standing sharpens the legal issues presented by ensuring that true adversaries are before the court . . . ." *Sears v. Hull, 192 Ariz. 65, 71, 961 P.2d 1013, 1019 (1998)*. That is especially pertinent in lawyers' lawsuits where the fee becomes the primary goal and the claim is the means to the goal.

AID argues that the Arizona courts might elect to hear this case without standing. Article VI of the Arizona Constitution, the judiciary article, has no case or controversy requirement, such as *Article III, Section 2 of the United States Constitution* does. Arizona courts can waive the standing [**15] requirement "as a matter of discretion," but do so "only in exceptional circumstances, generally in cases involving issues of great public importance that are likely to recur. The paucity of cases in which we have waived the standing requirement demonstrates both our reluctance to do so and the narrowness of this exception." *Sears, 192 Ariz. at 71, 961 P.2d at 1019*. None of the rare cases where the Arizona courts have done so is even remotely similar to this case. In no case have the Arizona courts waived standing to enforce a private statutory right for which there is a plethora of injured potential plaintiffs to enforce the right for their own injury. The Arizona courts otherwise generally follow federal principles of standing. *Id. at 69, 961 P.2d at 1017* (citing federal cases).

Moreover, it is certain that Arizona law would not wink at standing to allow AID and Strojnik to bring these injury-free lawsuits in light of the ethically suspect tactics Strojnik employs. When this suit was filed, AID demanded, among other things, "payment of attorneys' fees . . . in an amount no less than $5,000." (Doc. 1-1 at 11.) As discussed above, that fee demand appears in virtually all of AID's template complaints.

The Arizona Rules of Professional Conduct, as provided [**16] in *Rule 42* of the Rules of the Arizona Supreme Court, require that a fee charged to a client be reasonable. ER 1.5(a). This does not mean that an unreasonable fee may be charged so long as the opposing party ultimately foots the bill through an attorney's fee award or a settlement. On the contrary, the Arizona Supreme Court has held, "The profession's ethical requirements do not permit an attorney to extract unreasonable fees simply because those who must bear the ultimate loss are not in a lawyer/client relationship with the attorney." *Matter of Swartz, 141 Ariz. 266, 274, 686 P.2d 1236, 1244 (1984)*.

Strojnik also maintains that all of the fees collected in his cases are donated to charity, though no details are given. (Doc. 45 at 50-51.) Non-binding guidance from the Arizona State Bar Association states that an otherwise unreasonable fee is not made permissible by the fact it is being donated to charity. *See* State Bar of Arizona **[*898]** Ethics Opinion No. 94-14: Donating Fee to Charity; Advertising Donation (December 1994) ("Regardless of who may or may not get a portion of the fee, the ultimate consideration in fee issues is that the total fee charged to a client must be reasonable."). That is obvious, as the beneficiary of an attorney's duty not to charge [**17] or demand an unreasonable fee is the person from who the fee is taken or demanded. It is irrelevant to the ethical rule what the lawyer does with the fees wrongfully taken.

In this case, the complaint demanded a minimum of $5,000 in attorney's fees. In a simple form complaint case like this, it is impossible that the fee for preparing and filing the complaint could be $5,000. Moreover, the federal disability statute allows the award of only "a reasonable attorney's fee," not any fee the attorney may demand. No fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA.

For these reasons also, it is certain that Arizona courts would not waive the standing requirement and empower Strojnik's unethical extortion of unreasonable attorney's fees from defendants.

IT IS THEREFORE ORDERED that AID's Motion to Remand (Doc. 24) is denied.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action and all claims therein for lack of standing.

The Clerk shall terminate this case.

Dated: September 1, 2017.

/s/ Neil V. Wake

Neil V. Wake

Senior United States District **[**18]**  Judge

---

End of Document

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals with Disabilities Foundation, Inc., | No. CV-16-02412-PHX-SPL |
| Plaintiff, | **ORDER** |
| vs. | |
| Golden Rule Properties, LLC, | |
| Defendant. | |

Before the Court is Defendant Golden Rule Properties, LLC's Application for Award of Attorney fees and Related Non-Taxable Expenses (Doc. 15). As follows, the application will be granted.

On June 9, 2016, Plaintiff Advocates for Individuals with Disabilities Foundation Incorporated ("AID") filed suit against Defendant Golden Rule Properties, LLC ("Golden Rule") in the Maricopa County Superior Court, Case No. CV2016-006898. In Count One of the Complaint, AID claims violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and in Count Two, AID claims violations of the Arizonans with Disabilities Act, Ariz. Rev. Stat. § 41-1492 *et seq.* (Doc. 1-1.)

On July 18, 2017, counsel for Golden Rule informed AID and its counsel in writing that it intended to remove four cases in which AID pleaded federal ADA claims, including the instant. (Doc. 12 at 11-17.) A series of discussions ensued, during which Golden Rule sought to confirm whether AID intended to litigate both federal and state

law claims, and requested that should AID intend to dismiss its federal claim on removal, that it instead voluntarily dismiss the claim in state court in order to avoid the unnecessary expense and delay of removal and remand.[1] AID ultimately advised that it intended to pursue its federal claim.[2] Golden Rule promptly removed the case to federal court on July 19, 2016. (Doc. 1.) And, in spite of its representation that it intended to pursue its federal claim, eight days later, on July 28, 2016, AID moved to dismiss its federal claim and to remand this case to state court. (Doc. 7.)

The Court granted AID's motion to dismiss and remand, and Golden Rule moved for reconsideration, seeking attorneys' fees and costs. (Doc. 12.) AID was called to respond to the motion (Doc. 13), but no response was filed. Reconsidering its prior order, the Court granted the request to recover fees and costs incurred as a result of removal, and directed Golden Rule to file a statement of attorneys' fees and costs. (Doc. 14.) Golden Rule did so (Doc. 15), and AID filed a response (Doc. 16) opposing the amount

---

[1]     Golden Rule's letter stated in part:

> As you know, this letter follows your prior actions in numerous other cases of dismissing the federal claim immediately upon removal, a decision that has wasted significant time and money. You stated that, for strategic reasons, you intend to dismiss the federal claim in all other lawsuits to remain in state court. In reliance on this representation, we will tentatively forego removing the above-referenced cases to avoid unnecessary fees and costs. However, if you do not soon prepare the stipulations or if we do not hear from you shortly, we will understand such action/inaction as indication you intend to pursue the federal claim - and we will remove the cases in reliance on such.

(Doc. 12 at 11.)

[2]     In an email to defense counsel, counsel for AID stated:

> This email is to confirm our conversation. Outside counsel and my client cannot dismiss the federal claims for your new cases. They will address this issue at some later date, but as of now, we intend on pursing our causes of action under AzDA and ADA.

(Doc. 12 at 14.)

2

of recovery requested, and objecting to the award itself.[3] Golden Rule filed a reply. (Docs. 17, 18.)

Section 1447(c) permits district courts to assign "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" against either party if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). *See Micrometl Corp. v. Tranzact Technologies, Inc.*, 656 F.3d 467, 470 (7th Cir. 2011) ("we see no party-based limitation in § 1447(c) on a district court's discretion to award fees and costs"); *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 490 n. 2 (9th Cir. 1995) (section 1447(c) authorizes an award of fees or costs against a plaintiff). The statute provides district courts with limited discretionary authority to assign payment in instances where "such an award is just." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005). In exercising its "discretion to consider whether unusual circumstances warrant" an award under § 1447(c), the Court looks to the "reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). This determination is guided by the purpose of the provision - to deter removals that are pursued for the purpose of "prolonging litigation and imposing costs on the opposing party." *Martin*, 546 U.S. at 140-141. It must observe plaintiffs' rights to strategically "choose between federal claims and a state forum" without fear of being penalized, while also avoiding deterring defendants from proper removals. *Baddie*, 64 F.3d at 491. *See also Martin,* 546 U.S. at 140.

Here, an award is just. AID's decision to dismiss its federal claim following removal was not a "straight-forward tactical decision" of choosing the state forum over its federal claim following removal. *Baddie*, 64 F.3d at 491. Rather, the decision of AID and its counsel to advise defense counsel that it intended to pursue its ADA claim, only to then promptly move to dismiss it after removal, was a bait-and-switch maneuver aimed at

---

[3]     To the extent AID challenges whether fees and costs should be awarded under § 1447(c), as observed by Golden Rule, those arguments should have been presented in response to the motion to reconsider as called for by the Court, but were not - apparently due to some unspecified "clerical error." Given the limited application of § 1447(c) however, the Court addresses those objections.

"prolonging litigation and imposing costs on the opposing party." *Martin*, 546 U.S. at 140.[4] The finding that AID intended to mislead and manipulate opposing counsel is reinforced by the fact that this is not an isolated instance; AID has an established practice of misleading opposing counsel. *See e.g., Advocates for Individuals with Disabilities Foundation Incorporated v. Golden Rule Properties LLC,* Case No. CV-16-02413-PHX-GMS, 2016 WL 5939468 at \*4-6 (D. Ariz. Oct. 13, 2016). Thus, if it wasn't already abundantly clear from the record of the parties' communications, history mandates that despite its representation to the contrary, AID knew it would dismiss its federal claim immediately after this case was removed to federal court.

AID's actions caused Golden Rule to unnecessarily incur costs and fees as a result of removal. Golden Rule removed this case because AID misrepresented its intent to litigate its federal claim rather than elect the state forum. *Cf. Baddie,* 64 F.3d at 490 (finding expenses were not a result of removal where they were "proximately caused by the plaintiffs' subsequent action rather than by the removal itself"). AID had the initial right to choose the forum in which to litigate its case, and Golden Rule had the right to remove this action to federal court. AID's right to decide whether to pursue its federal claim or litigate in state court in the face of likely removal did not confer it with authority to discourage, inhibit, or manipulate the exercise of the right of removal by Golden Rule. AID's actions however, did just that. This is the exact sort of behavior that § 1447(c) serves to deter. Therefore, AID's objections to recovery are rejected.

The Court has considered AID's remaining objections with regard to the amount of recovery requested, and finds they lack merit. Having reviewed the parties' filings, the Court concludes that $4,105.00 is the total amount of fees and costs incurred as a result of removal. Accordingly,

**IT IS ORDERED** that the Application for Award of Attorney fees and Related

---

[4]      Contrary to AID's reading, *Baddie* is inapposite; the Ninth Circuit specifically distinguished its holding from "the question of whether a plaintiff who intentionally misleads the defendant into thinking that the case is subject to federal removal jurisdiction when it is not may be forced to bear the costs of such imprudence." *Baddie* 64 F.3d at 490 n.1.

Non-Taxable Expenses (Doc. 15) is **granted**.

  **IT IS FURTHER ORDERED** that Golden Rule Properties, LLC is awarded **$3,699.00** in fees and **$406.00** in costs pursuant to 28 U.S.C. § 1447(c).

  Dated this 20th day of March, 2017.

Honorable Steven P. Logan
United States District Judge

# EXHIBIT 12

WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals with Disabilities Foundation Incorporated, | No. CV-16-02413-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Golden Rule Properties LLC, | |
| Defendant. | |

On August 25, 2016, this Court issued an Order for the Plaintiffs to Show Cause as to why this case should not be dismissed for lack of standing. (Doc. 22.) For the following reasons, the Court remands the case to state court, awards fees to the Defendant pursuant to 18 U.S.C. § 1447, and issues sanctions against the Plaintiff's counsel pursuant to 28 U.S.C. § 1927.

## BACKGROUND

Plaintiff Advocates for Individuals with Disabilities ("AID") is a non-profit charitable organization that advocates for disabled individuals. It is represented by attorneys Peter Strojnik and Fabian Zazueta, who also make the decisions on behalf of the client. Part of AID's strategy involves filing law suits against local businesses that violate the Americans with Disabilities Act ("ADA") and similar state statutes. To date, 162 of these claims have been filed in or removed to this Court, and approximately one thousand of such claims have been filed in state court. Each claim's complaint contains the same general language alleging that the local business violated the ADA by having

inadequate signage or parking spaces for disabled individuals.

AID filed a complaint against Defendant Golden Rule Properties LLC ("Golden Rule") on June 9, 2016 in Maricopa County Superior Court. (Doc.1.) The complaint stated that Defendant Golden Rule's parking lot failed to comply with the ADA and the Arizona Disability Act because it failed to "identify car parking spaces by the designation 'van accessible' and or fails to maintain the minimum height of 60 inches" above the floor. (Doc. 1, Ex. 1 at 5.)

The complaint does not allege that any disabled individual encountered the Defendant's defective signage. Rather, it asserts that "Plaintiff, who is known to have a relationship or association with individuals with disabilities," (Doc. 1, Ex. 1 at 5), investigated the Defendant's business and found that it "was not accessible to persons with disabilities." (*Id.*) Because these general allegations do not illustrate that AID has a "concrete and particularized" injury that affects it "in a personal and individual way," the Court ordered AID to show cause why this case should not be dismissed for lack of standing.

Furthermore, AID's pre- and post- removal conduct demonstrates an attempt to increase the costs of litigation to maximize Defendants desire to settle the suit due to the cost of defense. Because Golden Rule's counsel had represented other defendants in cases brought by the Plaintiff and had defendants dismiss the federal claim immediately upon removal to federal court to require remand of the remaining state law disability claim to state court, Golden Rule reached out to AID and its counsel to determine their intent to proceed with the federal claim prior to initiating the removal process. (Doc. 22 at 13.) Defense counsel suggested a willingness to stipulate to a dismissal of the federal court claim to avoid the incurred expense and time of removal, dismissal and remand. AID assured Golden Rule and its counsel that it intended to proceed with the federal claim. (*Id.*) Yet immediately following removal, AID moved to dismiss the federal claim. (*Id.*) In light of these events, the Court also ordered AID to show cause why AID should not bear the costs of removal and why its counsel should not be sanctioned for their

1  actions pursuant to 28 U.S.C. § 1927.

2  **DISCUSSION**

3  **I.     Plaintiff Lacks Article III Standing, and Thus This Case is Remanded to**
4  **State Court.**

5          "To invoke the jurisdiction of the federal courts, a disabled individual claiming

6  discrimination must satisfy the case or controversy requirement of Article III by

7  demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports*

8  *(U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). After reviewing Plaintiff's

9  response to the Order to Show Cause, hearing oral arguments, and reviewing the

10 supplemental briefings, the Court finds that AID does not have standing to pursue this

11 suit.

12         An association may sue on behalf of one of its injured members if "(a) its

13 members would otherwise have standing to sue in their own right; (b) the interests it

14 seeks to protect are germane to the organization's purpose; and (c) neither the claim

15 asserted nor the relief requested requires the participation of individual members in the

16 lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This

17 analysis also applies to situations where the organization does not have traditional

18 "members," provided that the purported constituency "possess[es] all of the indicia of

19 membership" in an organization. *Id.* at 344.

20         **A.      Plaintiff does not Allege Sufficient Facts to Assert that Either Ms.**
21         **Puckett or Mr. Ritzenthaler is a Member of AID.**

22         Nonprofit corporations may file lawsuits on behalf of their members even if it

23 does not have members in the traditional sense. *See Sierra Ass'n for Env't v. F.E.R.C.*,

24 744 F.2d 661, 662 (9th Cir. 1984) (allowing a California corporation to file suit as an

25 unincorporated association due to the presence of federal question jurisdiction). However,

26 in these situations, a nonprofit must still allege sufficient facts to show that a purported

27 member "possess[es] many indicia of membership—enough to satisfy the purposes that

28 undergird the concept of associational standing: that the organization is sufficiently

- 3 -

identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (internal quotations and citations omitted).

The Supreme Court provided examples of relevant "indicia of membership" in *Hunt*. 432 U.S. at 344–45. Key factors include whether the proposed constituency maintained control over who was elected to leadership of the association, if the proposed constituency was the only group that could service on the leadership board, and whether the proposed constituency financed the association's activities (including litigation). *Id.* The analysis turns on whether the association "provides the means by which they express their collective views and protect their collective interests." *Id.*

The Plaintiff's complaint does not mention a single individual member of AID by name. (Doc. 1, Ex. 1.) Rather, the complaint attempts to allege that the Plaintiff has a "close relationship" with all "former, current and future disabled individuals" due to its "charitable acts." (Doc. 1, Ex. 1 at 3.) There is a total absence of specific facts to support these conclusory assertions. (*Id.*) Nothing in the complaint alleges that any of the indicia listed by the *Hunt* Court are present in this case. (*Id.*)

In its Response to the Order to Show Cause, the Plaintiff mentions two purported members, Ms. Shannon Puckett and Mr. David Ritzenthaler. However, the Plaintiff failed to assert a basis of membership for either individual. Instead, AID argued that any individual that tests a location for ADA compliance in connection with its serial lawsuits exerts influence over the litigation, and is thus a member. (Doc. 22 at 5.) Even if the Court could agree that participation as a tester amounts to exerting influence over litigation, this alone cannot be said to grant the tester "many indicia" of membership. *Oregon Advocacy Ctr.*, 322 F.3d at 1111. The Plaintiff again dodged the question in its Reply to the Order to Show Cause, stating that the question of membership "is not germane to the proceedings." (Doc. 24 at 5.)

In the absence of demonstrating that either Ms. Puckett or Mr. Ritzenthaler have any indicia of membership, there is no basis on which AID may assert standing based on

their alleged injury. Further, as discussed below, even if Ms. Puckett and Mr. Ritzenthaler were members, AID may not rely on them to provide associational standing in this lawsuit.

**B.      Neither Ms. Puckett nor Mr. Ritzenthaler Suffered an Injury-in-Fact, Thus Neither Can Provide AID with Associational Standing.**

An association may only assert standing on behalf of a member if the member has standing. *Hunt*, 432 U.S. at 343. For an individual member to have standing under Article III, he must satisfy three elements: 1) an injury-in-fact, 2) causation between the injury and the allegedly wrongful conduct, and 3) the injury is likely redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden is on the plaintiff to establish that standing exists. *See id.* ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

An injury-in-fact must be "(a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' '" *Lujan*, 504 U.S at 560 (internal quotations and citations omitted). This requires that "the party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). In ADA cases, a plaintiff experiences an injury-in-fact when "a disabled person *encounters an accessibility barrier* violating its provisions." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (emphasis added). The barrier does not need to completely hinder the plaintiff's ability to enter or use the facility, but it must "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42 U.S.C. § 12182(a)).

AID cannot assert standing on behalf of Ms. Puckett or Mr. Ritzenthaler because neither suffered an injury-in-fact. Nothing in AID's complaint alleges that Ms. Puckett, Mr. Ritzenthaler, or any other member ever personally encountered the barrier in question. (Doc. 1, Ex. 1.) In fact, the complaint does not mention Ms. Puckett or Mr. Ritzenthaler at all. (*Id.*) The complaint merely alleges that "Plaintiff has actual knowledge of at least one barrier related to third party disabled individuals" on the

Defendant's property. (*Id.* at 6.) Likewise, a declaration filed by the Plaintiff establishes that Ms. Puckett was "informed" of the defective signage, but does not state that she ever actually encountered the defective signage. (Doc. 21-1 at 18.)

Contrary to Plaintiff's assertions, mere knowledge of the Defendant's lack of signage is insufficient to show injury-in-fact. In *Pickern v. Holiday Quality Foods Inc.*, the Ninth Circuit found that a plaintiff who had visited the defendant's grocery store in the past had standing to bring an ADA claim based on the barriers he personally encountered as well as the barriers that he did not have the chance to encounter during his visit. 293 F.3d 1133, 1138 (9th Cir. 2002). That case did not involve a situation where, as here, the plaintiff never frequented the defendant's establishment prior to filing suit. *Id.* In fact, none of the cases cited by the Plaintiff hold that an injury-in-fact occurs by virtue of the plaintiff's knowledge of a potential barrier. *See Pickern*, 293 F.3d at 1135 (plaintiff visited the store in question multiple times); *Chapman*, 631 F.3d at 943 (plaintiff frequented the defendant's store and personally encountered barriers that deprived him of "full and equal enjoyment of the facility."); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013) (plaintiff visited and encountered barriers to entry at a grocery store). Therefore, AID's vague assertions that it had "knowledge of at least one barrier" at the Defendant's parking lot is insufficient to establish that its members suffered an injury-in-fact, and thus AID does not have standing to pursue this case.

## II.    Leave to Amend or Supplement the Pleadings

The Plaintiff's Response to the Order to Show Cause states that the "Plaintiff wishes to file for leave to amend the Complaint or file a Rule 15(d) supplemental pleading." As of this moment, the Plaintiff has not yet filed any such motion for leave. If the Plaintiff did, this request would be denied.

District courts are permitted to deny leave when it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S.

178, 182 (1962).

AID's counsel has more than 160 ADA cases currently pending in this Court. The complaints are largely identical. None of the complaints contain any specific factual allegations. (Doc. 1, Ex. 1.) Instead, they each contain the same boilerplate language and assert vague, conclusory allegations. (*Id.*) Counsel relies on the use of clauses such as "and/or" to ensure that the form complaint may be used in multiple situations. (Doc. 1, Ex. 1 at 6.)  The complaint filed in this case even refers to the Defendant as a hotel, which it is not. (*Id.*) Given these facts alone, the Court would not grant leave to file an amendment.

However, permitting leave to file an amendment would also be futile in this case. As noted in the Defendant's Response to Show Cause, the Defendant remedied the alleged ADA violations and is now ADA compliant. (Doc. 22 at 12.) Apparently, neither Ms. Puckett nor Mr. Ritzenthaler visited the Defendant's property during the time that it was noncompliant. (Doc. 21-1 at 18.) Thus, they never encountered any barrier. Permitting an amendment to the complaint at this point would be futile. Neither purported member was injured by the noncompliance when it existed, and now that the noncompliance is remedied, no injury can occur. Therefore, the Plaintiff will not be granted leave to supplement or amend their complaint.

## III.    Remand to State Court is Proper in This Case

The removal statute instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has implied that where a plaintiff would lack standing in state court as well, a district court may dismiss the entire suit without remand. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) ("Where the remand to state court would be futile, however, the desire to have state courts resolve state law issues is lacking. We do not believe Congress intended to ignore the interest of efficient use of judicial resources.") However, this should be applied only "where there is absolute certainty that remand would prove futile." *Id.* at 1425 (internal citations and quotations

- 7 -

omitted).

Arizona law does not impose the same standing requirements on parties that the federal Constitution does. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985).

Due to Arizona's flexible standing requirements, the Court cannot say that there is "absolute certainty" that AID's claims would be dismissed if they were remanded to state court. *Bell*, 922 F.2d at 1425. Therefore, remand to the state court is the appropriate action in this case. Furthermore, the Court will not dismiss the federal claims on remand because the state courts have concurrent jurisdiction to hear the claims. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("[W]e conclude that Congress did not divest the state courts of their concurrent authority to adjudicate federal claims.").

## IV.    Defendant is Awarded Fees Incurred Between Removal and Remand

If an attorney "multiplies the proceedings in any case unreasonably and vexatiously," he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Attorneys may only be held personally liable for fees under Section 1927 if the attorney acted in bad faith. *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf v. Winkler,* 792 F.2d 858, 860 (9th Cir. 1986) (internal citations omitted).

In a similar fashion, Section 1447(c) permits district courts to assign "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" against a party if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447. Assigning fees to a party is not the norm, but it is an available option in instances where "such an award is just." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005).

/ / /

The standard for awarding fees against a party under Section 1447(c) does not require a finding of bad faith. Rather, the analysis in Section 1447(c) generally turns on the "reasonableness of the removal." *Id.* at 141. The Supreme Court noted in *Martin* that district courts "retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."[1] *Id.* However, "discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin*, 546 U.S. at 139. The test for "awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party" while also recognizing that parties make strategic decisions in litigation. *Id.* at 140.

In *Baddie v. Berkeley Farms, Inc.* the Ninth Circuit held that the plaintiffs should not have been sanctioned under the removal statute for dismissing their federal claims to ensure remand to the state court. 64 F.3d 487, 491 (9th Cir. 1995). There was no bad faith present in that case, as "there was nothing manipulative about that straight-forward tactical decision." *Id. Baddie* stands for the proposition that a plaintiff is entitled to strategically "choose between federal claims and a state forum" without fear of being sanctioned. *Id.*

AID and its counsel cannot seek refuge under *Baddie*. Unlike the plaintiffs in *Baddie*, AID and its counsel affirmatively told opposing counsel that they had no intention of dismissing the federal claims if the Defendant removed the case. Furthermore, unlike the plaintiffs in *Baddie*, AID and its counsel have an established practice of misleading opposing counsel.

AID and its counsel have filed more than 1,000 lawsuits in the past year asserting identical state and federal claims in state court. (Doc. 22 at 11.) As expected from this high level of activity, this is not the first encounter Defendant's counsel has had with

---

[1] Notably, nothing in the *Martin* case stands for the proposition that a district court must leave the decision to sanction counsel for the state court to consider on remand. Thus, Plaintiff's argument that a situation-specific footnote in *Baddie* appoints state court as the only appropriate forum for this determination is rejected. (Doc. 21 at 8.)

AID, Mr. Strojnik, and Mr. Zazueta. In both this case as well as *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, Mr. Anderson sent a letter to AID's counsel inquiring whether they intended to pursue their federal claims. *Compare* (Doc. 10 at 10) *with Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8 at 10. If not, Mr. Anderson inquired as to whether AID would be interested in stipulating to the dismissal of the federal claims to save both parties the costs of removal. *Id.* In both instances, AID's counsel assured Mr. Anderson that they had no intention of dismissing their federal claims. (Doc. 10 at 13–16); *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8 at 13–16. And in both instances, AID's counsel promptly moved for dismissal of its federal claims upon notice of removal. AID had costs imposed against it for its behavior in *Sun West Dental Properties* two weeks prior to the hearing for the same behavior in this case. *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 26.

AID and its counsel's decisions to dismiss its federal claims under these circumstances are not "straight-forward tactical decision[s]." Rather, these decisions reflect expensive bait-and-switch maneuvers aimed at "prolonging litigation and imposing costs on the opposing party." *Martin*, 546 U.S. at 140. Per Mr. Zazueta's testimony at oral argument, these decisions are ultimately made by Mr. Zazueta and Mr. Strojnik. In this case the Court finds that the refusal to seek dismissal until after counsel had filed their motions for remand evinces a bad faith desire to "argue a meritorious claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf*, 792 F.2d at 860. Therefore, the Court finds that counsel's behavior justifies imposing "the excess costs, expenses, and attorneys' fees reasonably incurred" due to counsel's bad faith conduct. 28 U.S.C. § 1927.

Likewise, the Court finds that costs should be imposed against AID pursuant to Section 1447(c). AID is a serial litigant in these cases. It had to know that removal to

federal court would risk the dismissal of its claims unless it found a way to remand this case back to state court. The only certain route to state court involved a motion to dismiss AID's federal claims. Thus, AID knew when defense counsel approached that it would file a motion to dismiss the federal claims immediately after removal to federal court. AID knew, and yet its counsel intentionally told the Defendant that AID would not file such a motion if the case was removed. Defense counsel relied on that statement and incurred expenses to remove this case to federal court. AID's behavior was aimed at "imposing costs on the opposing party," and it is the exact sort of behavior that the *Martin* Court sought to deter. *Martin*, 546 U.S. at 140. Therefore, AID, Mr. Strojnik, and Mr. Zazueta are ordered jointly and severally to reimburse the Defendant for attorney's fees incurred between the removal and remand of this case. The Court will determine the amount of such reasonable fees upon submission by the attorney of an affidavit outlining his expenses for this period.

## CONCLUSION

The Plaintiff cannot assert that any individual suffered an injury-in-fact, and thus AID lacks the requisite standing to pursue this claim in federal court. Because there is a chance that these claims will be heard in state court, remand is the appropriate remedy. Furthermore, AID, Mr. Strojnik, and Mr. Zazueta will reimburse the Defendant's fees due to their bad faith behavior.

**IT IS THEREFORE ORDERED** directing the Clerk of Court to remand this action back to Maricopa County Superior Court.

**IT IS FURTHER ORDERED** that AID, Mr. Strojnik, and Mr. Zazueta shall reimburse the Defendant for attorney's fees acquired between the removal and remand of this case.

Dated this 13th day of October, 2016.

Honorable G. Murray Snow
United States District Judge

- 11 -

# EXHIBIT 13

CONSENT,E-ProSe

## U.S. District Court
### California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:18-cv-06587-JSC

Strojnik v. Joie de Vivre Hospitality LLC
Assigned to: Magistrate Judge Jacqueline Scott Corley
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 10/29/2018
Jury Demand: Both
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik**

represented by **Peter Kristofer Strojnik**
The Strojnik Firm LLC
A Limited Liability Company
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, AZ 85016
(602) 510-9409
Fax: (602) 773-0370
Email: pstrojnik@strojniklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Joie de Vivre Hospitality LLC**
*doing business as*
Laurel Inn

represented by **Mark S. Posard**
Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
(415) 986-5900
Fax: (415) 986-8054
Email: mposard@grsm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexandra M. Louderback**
Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825
916-565-2900
Fax: 916-920-4402
Email: alouderback@grsm.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/29/2018 | 1 | COMPLAINT against Joie de Vivre Hospitality LLC (Filing fee $ 400; receipt #3461437758). Filed by Peter Strojnik. Consent/Declination due by 11/13/2018. (Attachments: # 1 Civil Cover Sheet)(rcsS, COURT STAFF) (Filed on 10/29/2018) (Additional attachment(s) added on 11/13/2018: # 2 Receipt) (slhS, COURT STAFF). (Entered: 10/30/2018) |
| 10/29/2018 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (rcsS, COURT STAFF) (Filed on 10/29/2018) (Entered: 10/30/2018)** |
| 10/29/2018 | | Summons Issued as to Joie de Vivre Hospitality LLC. (rcsS, COURT STAFF) (Filed on 10/29/2018) (Entered: 10/30/2018) |
| 11/08/2018 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik. (slhS, COURT STAFF) (Filed on 11/8/2018) (Entered: 11/13/2018) |
| 11/08/2018 | 4 | MOTION for Permission for Electronic Case Filing filed by Peter Strojnik. (Attachments: # 1 Proposed Order)(slhS, COURT STAFF) (Filed on 11/8/2018) (Entered: 11/13/2018) |
| 11/15/2018 | 5 | **ORDER by Magistrate Judge Jacqueline Scott Corley granting 4 Motion for Permission for Electronic Case Filing. (Attachments: # 1 Certificate of Service)(ahmS, COURT STAFF) (Filed on 11/15/2018) (Entered: 11/15/2018)** |
| 11/16/2018 | 6 | AFFIDAVIT of Service for Summons, Complaint, Civil Cover Sheet, Notice of Case Assignment, Scheduling Order served on Joie de Vivre Hospitality LLC on 11/7/2018, filed by Peter Strojnik. (slhS, COURT STAFF) (Filed on 11/16/2018) (Entered: 11/27/2018) |
| 12/17/2018 | 7 | ANSWER to Complaint with Jur Demand byJoie de Vivre Hospitality LLC. (Louderback, Alexandra) (Filed on 12/17/2018) (Entered: 12/17/2018) |
| 12/17/2018 | 8 | CLERK'S NOTICE Re: Consent or Declination: **Defendant** shall file a consent or declination to proceed before a magistrate judge by **12/31/2018.** Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (ahm, COURT STAFF) (Filed on 12/17/2018) (Entered: 12/17/2018) |
| 02/28/2019 | 9 | CLERK'S SECOND NOTICE Re: Consent or Declination: **Defendants** shall file a consent or declination to proceed before a magistrate |

| | | |
|---|---|---|
| | | judge by **3/14/2019.** Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (ahm, COURT STAFF) (Filed on 2/28/2019) (Entered: 02/28/2019) |
| 04/03/2019 | [10](#) | NOTICE of Appearance by Peter Kristofer Strojnik (Strojnik, Peter) (Filed on 4/3/2019) (Entered: 04/03/2019) |
| 04/03/2019 | [11](#) | CLERK'S THIRD NOTICE Re: Consent or Declination: **Defendant** shall file a consent or declination to proceed before a magistrate judge by **4/17/2019.** Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (ahm, COURT STAFF) (Filed on 4/3/2019) (Entered: 04/03/2019) |
| 04/03/2019 | [12](#) | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Joie de Vivre Hospitality LLC.. (Louderback, Alexandra) (Filed on 4/3/2019) (Entered: 04/03/2019) |
| 04/18/2019 | [13](#) | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Joie de Vivre Hospitality LLC.. (Louderback, Alexandra) (Filed on 4/18/2019) (Entered: 04/18/2019) |
| 07/29/2019 | [14](#) | **ORDER TO PLAINTIFF FOR STATUS UPDATE. Signed by Magistrate Judge Jacqueline Scott Corley on 7/29/2019. (ahm, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/29/2019)** |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:39:00 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** 3:18-cv-06587-JSC |
| **Billable Pages:** | 2 | **Cost:** 0.20 |

FILED

OCT 29 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Peter Strojnik,
2  2375 East Camelback Road Suite 600
   Phoenix, Arizona 85016
3  Telephone: (602) 524-6602
   ps@strojnik.com
4  *pro se*

5

6

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JSC

7

8

9

CV Case No: 18 6587

| Peter Strojnik (Sr.), | **VERIFIED COMPLAINT** |
|---|---|
| Plaintiff, | **1. Americans with Disabilities Act** |
| vs. | **2. Discrimination in Public Accommodations (State Law)** |
| Joie de Vivre Hospitality LLC dba the Laurel Inn | **3. Negligence** |
| | **JURY TRIAL REQUESTED** |
| Defendant. | |

10

11

12

13

14

15

16

17  1. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42

18  U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department

19  of Justice Standards for Accessible Design ("ADA"), (2) California Unruh Civil

20  Rights Act, California Civil Code § 51, 52 ("Unruh") (3) the California Disabled

21  Persons Act ("DPA") and (4) common law of negligence per se.

## PARTIES

22

23  2. Plaintiff Peter Strojnik is a veteran and a disabled person as defined by the ADA and

24  DPA.

25  3. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is

26  and, at all times relevant hereto has been, legally disabled by virtue of a severe right-

27  sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer

28

1    and renal cancer, degenerative right knee and is therefore a member of a protected
2    class under the ADA and Unruh.

3  4. Plaintiff suffers from physical impairments described above which impairments
4    substantially limit his major life activities.  Plaintiff walks with difficulty and pain
5    and requires compliant mobility accessible features at places of public
6    accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic
7    ranging from dull and numbing pain to extreme and excruciating agony.

5. Defendant, owns, operates leases or leases to a lodging business ("Hotel") located at
8    221 Cypress Ave., Moss Beach, CA which is a public accommodation pursuant to 42
9    U.S.C. § 12181(7)(A) and Unruh.

10                                **JURISDICTION**

11 6. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§
12   28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

13 7. Plaintiff brings this action as a private attorney general who has been personally
14   subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28
15   CFR §36.501.

16 8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,*
17   Plaintiff's claim for equitable nominal damages.

18 9. Venue is proper pursuant to 28 U.S.C. § 1391.

19 10. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs
20   mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn,
21   constitutes discrimination satisfying the "injury in fact" requirement of Article III of
22   the United States Constitution.

23 11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the
24   Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's
25   disability.

25 12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's
26   noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled
27   individual who intends to return to a noncompliant facility suffers an imminent injury
28   from the facility's existing or imminently threatened noncompliance with the ADA, a

2

plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

## COUNT ONE
### Violation of Plaintiff's Civil Rights under the ADA

13. Plaintiff realleges all allegations heretofore set forth.

14. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

15. Plaintiff intended to visit the San Francisco Area and therefore, reviewed vacation booking websites as documented in Addendum A.

16. Plaintiff became aware that third party booking websites disclosed general availability and description of Defendant's Hotel. Third Party booking websites referenced here are more fully documented in Addendum A which is by this reference incorporated herein.

17. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented in Addendum A.

18. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

19. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented. *See* Addendum A.

20. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

3

21. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.

22. Online information relating to accessibility or lack thereof disclosed architectural barriers to accessibility as more fully documented in Addendum A.

23. Defendant has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and as outlined in Addendum A.

24. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

25. As a result of the deficiencies described above, Plaintiff declined to book a room at Defendant's Hotel and did no travel to San Francisco.

26. The removal of accessibility barriers listed above is readily achievable.

27. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

## COUNT TWO
### (Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)

28. Plaintiff realleges all allegations heretofore set forth.

29. Plaintiff intended to visit the San Francisco area and spend several nights there.

30. Plaintiff became aware that 3rd party booking websites disclosed general availability and description of Defendant's Hotel. 3rd Party booking website referenced here is more fully discussed in Addendum A which is by this reference incorporated herein.

31. 3rd party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

32. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

33. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

34. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

35. Plaintiff subsequently declined to book a room at the Hotel.

36. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

37. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

38. Plaintiff has been damaged by the Defendant's non-compliance with Unruh and is thereby aggrieved.

5

39. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

40. Pursuant to Unruh, Plaintiff is entitled to costs and expenses in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its accommodation into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the Hotel facilities are fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

e. For damages in an amount no less than $4,000.00 per encounter with barrier; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

6

## COUNT TWO
### (Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)

41. Plaintiff realleges all allegations heretofore set forth.

42. Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

43. The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

44. Plaintiff has been aggrieved by the Defendant's non-compliance with the DPA.

45. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

46. Pursuant to the DPA, Plaintiff is entitled to costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its facilities into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

e. For damages in an amount no less than $1,000.00 per violation per encounter; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## COUNT FOUR
### Negligence

47. Plaintiff realleges all allegations heretofore set forth.

48. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

49. Defendant breached this duty.

50. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

51. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

52. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

53. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

54. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects

---

[1] 42 U.S.C. § 12101(a)(2)
[2] 42 U.S.C. §12101(a)(3)

8

of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

55. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

56. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

57. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

58. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

59. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

60. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[6].

61. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

62. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

---

[3] 42 U.S.C. §12101(a)(5)
[4] 42 U.S.C. §12101(a)(6)
[5] 42 U.S.C. §12101(a)(7)
[6] 42 U.S.C. §12101(a)(8)

63. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

64. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

65. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

66. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

<strong>REQUEST FOR TRIAL BY JURY</strong>

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

<strong>VERIFICATION</strong>

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and/or belief.

RESPECTFULLY SUBMITTED this 25th day of October, 2018.

**PETER STROJNIK**

Plaintiff

# ADDENDUM A

## ADA VIOLATIONS
### 3RD PARTY BOOKING WEBSITE - EXPEDIA.COM



Laurel Inn, a Joie de Vivre
Boutique Hotel ★★★
San Francisco
🛏 Breakfast Included
1-866-264-5744 • Expedia Rate
✔ Free Cancellation

4.0/5 Very good!
(638 reviews)
In high demand!
We have 1 left at
**$339**
nightly price

### Accessibility

If you have requests for specific accessibility needs, please note them at check-out when you book your room.

- Accessible bathroom
- In-room accessibility
- Roll-in shower

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**Room, 2 Double Beds, Accessible (Presidio)**
5.00 guest room score
**Room with view**
350 square feet
2 Double Beds
(Extra beds available: Crib)
Room sleeps 4 guests
(up to 3 children)
ℹ More details

| | Option 1 Expedia Split Rate Details about this rate | Recommended for you We have 1 room left **$339** | Reserve It only takes 2 minutes |
|---|---|---|---|
| | Option 2 ✔ Free Cancellation until Sat, Nov 10 ✔ Reserve now, pay when you stay 🛏 Breakfast Included 📶 Free Internet ✔ No surprises! No hidden Expedia fees | We have 1 room left **$379** | Reserve It only takes 2 minutes |

Room cleanliness: very good! 4.2

2 Double Beds
350-sq-foot (33-sq-meter) room with city views

Internet - Free WiFi
Entertainment - 32-inch flat-screen TV, cable channels, and DVD player
Food & Drink - Minibar
Bathroom - Private bathroom, shower/tub combination, free toiletries, and a hair dryer
Practical - Safe, iron/ironing board, and desk; rollaway/extra beds and free cribs/infant beds available on request
Comfort - Air conditioning and daily housekeeping
Accessibility - Wheelchair accessible
Non-Smoking
Connecting/adjoining rooms can be requested subject to availability

Close ✕

| | Option 1 Expedia Split Rate Details about this rate | We have 5 rooms left **$339** | Reserve It only takes 2 minutes |
|---|---|---|---|
| | Option 2 ✔ Free Cancellation until Sat, Nov 10 ✔ Reserve now, pay when you stay 🛏 Breakfast Included 📶 Free Internet ✔ No surprises! No hidden Expedia fees | We have 5 rooms left **$379** | Reserve It only takes 2 minutes |

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

11

| | Option 1<br>Expedia Split Rate<br>Details about this rate | We have 5 rooms<br>left<br>**$339** | **Reserve**<br>It only takes 2<br>minutes |

**Room, 2 Double Beds (Presidio)**
4.83 guest room score
**Room with view**
350 square feet
2 Double Beds
(Extra beds available. Crib)
Room sleeps 4 guests
(up to 3 children)
ⓘ More details

| | Option 2<br>✔ Free Cancellation<br>until Sat, Nov 10<br>✔ Reserve now, pay when you stay<br>🍽 Breakfast Included<br>📶 Free Internet<br>✔ No surprises! No hidden Expedia<br>fees | We have 5 rooms<br>left<br>**$379** | **Reserve**<br>It only takes 2<br>minutes |

Room cleanliness: very good! 4.2

2 Double Beds
350-sq-foot (33-sq-meter) room with city views

Internet - Free WiFi
Entertainment - 32-inch flat-screen TV, cable channels, and DVD player
Food & Drink - Minibar
Bathroom - Private bathroom, shower/tub combination, free toiletries, and a hair dryer
Practical - Safe, iron/ironing board, and desk; rollaway/extra beds and free cribs/infant beds available on request
Comfort - Air conditioning and daily housekeeping
Non-Smoking
Connecting/adjoining rooms can be requested, subject to availability

Close ✕

| | Option 1<br>Expedia Split Rate<br>Details about this rate | We have 3 rooms<br>left<br>**$374** | **Reserve**<br>It only takes 2<br>minutes |

| | Option 2<br>✔ Free Cancellation<br>until Sat, Nov 10<br>✔ Reserve now, pay when you stay<br>🍽 Breakfast Included<br>📶 Free Internet<br>✔ No surprises! No hidden Expedia<br>fees | We have 3 rooms<br>left<br>**$419** | **Reserve**<br>It only takes 2<br>minutes |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.

**1ST PARTY BOOKING WEBSITE**
**www.jdvhotels.com**

12



Boutique Hotel Amenities

Like the charming Pacific Heights neighborhood that surrounds it, the Laurel Inn is a boutique hotel near Golden Gate Park, Golden Gate Bridge, and the Presidio that exudes warmth and sophistication in San Francisco. Sit back and unwind in the heart of the city.

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



AMENITIES OVERVIEW

• Lemonade and cookies in the lobby, 3 p.m. - 6 p.m. daily
• All-day coffee and tea service in the lobby
• Complimentary newspaper
• Complimentary luggage storage
• Covered parking ($35 + tax, per night)
• Concierge services
• Laundry/dry cleaning
• Pet-friendly accommodations

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and

13

guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



ROOM

- Kitchenette available
- City views available
- 32" flat-screen TV
- Blu-ray player
- Work desk and small writing table
- Iron/ironing board
- Linens laundered with green cleaning products

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



**JDV GIVES**

Joie de Vivre strives to have a positive impact on our community. Each of our boutique hotels is dedicated to donating a minimum of $200 per hotel room per year to organizations in their communities.

As an extension of JDV Gives, each hotel participates in the You Can Make a Difference program, launched in April 2008. The primary objective is to engage our guests by giving them the option to add an additional $1 to their total bill for each night they stay with us.

The Laurel Inn's philanthropic partners in the You Can Make a Difference program are Rocket Dog Rescue, where dedicated volunteers save homeless and abandoned animals from euthanasia in overcrowded shelters and find them loving, happy homes; and Koret Family House, where children with cancer and other life-threatening illnesses go with their families to find physical comfort and emotional support, free from financial concerns.

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.

# Joy of Life Club

Enjoy exclusive benefits with our signature rewards program.
If you're not already a member, sign up now to start earning
points toward incredible Joie de Vivre experiences and free air
miles with your very next stay at one of our boutique hotels—
each with its own unique brand and personality. It only takes
a few minutes to join and it's free!

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.

## Hotel Rooms

Feel at home in the heart of it all when you stay in one of our guest rooms near the Presidio and Golden Gate Bridge. Each spacious hotel room is designed to feel like a sophisticated San Francisco studio apartment, albeit one with an uncommonly beautiful view of Pacific Heights.

### ALL HOTEL ROOMS INCLUDE:

32" flat-screen TV with HD programming and HBO
Mini fridge
Telephone with two lines, data port and voicemail
Iron/ironing board
Hair dryer
Writing desk or table
Nonsmoking
Pet-friendly lodging accommodations
Complimentary high-speed Wi-Fi

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and

16

guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



PRESIDIO KING          PRESIDIO DOUBLE DOUBLE          CITY VIEW KING

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



CITY VIEW DOUBLE DOUBLE          PRESIDIO KITCHENETTE KING          PRESIDIO KITCHENETTE DOUBLE DOUBLE

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.

17



CITY VIEW KITCHENETTE KING     CITY VIEW KITCHENETTE DOUBLE DOUBLE     CITY VIEW KITCHENETTE KING - ACCESSIBLE

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



PRESIDIO DOUBLE DOUBLE - ACCESSIBLE

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 30, 2018.



**ADA Deficiency:** Non-compliant sink cabinet.

**3rd PARTY PHOTOS – GOOGLE.COM/MAPS – OYSTER.COM – ETC.**



**ADA Deficiency:** Non-compliant accessible route – slope, step.

19



**ADA Deficiency:** Non-compliant accessble route – slope.



**ADA Deficiency:** Non-compliant bathtub and toilet.



**ADA Deficiency:** Non-compliant bar.



**ADA Deficiency:** Non-compliant toilet and dispenser.

21

1
2
3
4
5
6
7
8
9
10
11
12



**ADA Deficiency:** Non-compliant stais – open risers.

13
14
15
16
17
18
19
20
21
22
23
24



25

**ADA Deficiency:** Non-compliant shower facility.

26
27
28

22



**ADA Deficiency:** Non-compliant kitchen setup.



**ADA Deficiency:** Non-compliant toilet.



**ADA Deficiency:** Non-compliant stairs.



**ADA Deficiency:** Non-compliant showe enclosure.



**ADA Deficiency:** Non-compliant shower enclosure.



**ADA Deficiency:** Non-compliant toilet.

**END**

# EXHIBIT 14

CLOSED,E-ProSe,ProSe

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:18-cv-06586-EDL**

Strojnik v. Marriott International Inc
Assigned to: Magistrate Judge Elizabeth D. Laporte
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 10/29/2018
Date Terminated: 12/10/2018
Jury Demand: Plaintiff
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik**
*Sr.*

represented by   **Peter Strojnik**
2375 E. Camelback Rd. Suite 600
Phoenix, AZ 85016
602-524-6602
Email: ps@strojnik.com
PRO SE

V.

**Defendant**

**Marriott International, Inc.**
*doing business as*
Palace Hotel, a Luxury Collection Hotel, San Francisco

| Date Filed | # | Docket Text |
|---|---|---|
| 10/29/2018 | 1 | VERIFIED COMPLAINT; 1. AMERICANS WITH DISABILITIES ACT; 2. UNRUH & DPA; 3. NEGLIGENCE; JURY TRIAL DEMANDED; (NO PROCESS); (IFP PENDING); against Marriott International, Inc. (Filing fee $ 400.00 PAID; Receipt Number 34611137756). Filed byPeter Strojnik. Consent/Declination due by 11/13/2018. (aaaS, COURT STAFF) (Filed on 10/29/2018) (Additional attachment(s) added on 10/30/2018: # 1 Civil Cover Sheet) (aaaS, COURT STAFF). (Additional attachment(s) added on 10/30/2018: # 2 Receipt) (aaaS, COURT STAFF). (Entered: 10/30/2018) |
| 10/29/2018 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act.** Signed by the Executive Committee on 10/29/18. (aaaS, COURT STAFF) (Filed on 10/29/2018) (Entered: 10/30/2018) |
| 11/08/2018 | 3 | MOTION for Permission for Electronic Case Filing; filed by Peter Strojnik. (aaaS, COURT STAFF) (Filed on 11/8/2018) (Additional attachment(s) added on 11/9/2018: # 1 Proposed Order) (aaaS, COURT STAFF). (Entered: 11/09/2018) |
| 11/08/2018 | 4 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge; by Peter Strojnik. (aaaS, COURT STAFF) (Filed on 11/9/2018) (Entered: 11/09/2018) |
| 11/08/2018 | 5 | Received Document: Proposed Summons; by Peter Strojnik. (aaaS, COURT STAFF) (Filed on 11/8/2018) (Entered: 11/09/2018) |
| 11/14/2018 | 6 | **ORDER Granting Motion for Permission for Electronic Case Filing signed by Magistrate Judge Elizabeth D. Laporte: granting 3 Motion. The deputy clerk hereby certifies that on 11/14/2018 a copy of this order was served by sending it via first-class mail to the address of each non-CM/ECF user listed on the Notice of Electronic Filing. (shyS, COURT STAFF) (Filed on 11/14/2018) (Entered: 11/14/2018)** |
| 12/10/2018 | 7 | NOTICE of Voluntary Dismissal by Peter Strojnik (Strojnik, Peter) (Filed on 12/10/2018) (Entered: 12/10/2018) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 08/05/2019 17:39:40 | | |
| PACER Login: | ashleymilnes:5620455:4376970 | Client Code: | h9374-12 |
| Description: | Docket Report | Search Criteria: | 3:18-cv-06586-EDL |
| Billable Pages: | 2 | Cost: | 0.20 |

FILED

OCT 29 2018

SUSAN Y. SOO
CLERK, U.S. DISTRICT
NORTHERN DISTRICT OF CALIFORNIA

EDL

1  Peter Strojnik,
2  2375 East Camelback Road Suite 600
   Phoenix, Arizona 85016
3  Telephone: (602) 524-6602
   ps@strojnik.com
4  *pro se*

5

6                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
7
                                    Case No: **18  6586**
8
   Peter Strojnik (Sr.),                    **VERIFIED COMPLAINT**
9
10                        Plaintiff,        **1. Americans with Disabilities**
                                               **Act**
11                                          **2. Unruh & DPA**
                                            **3. Negligence**
12              vs.

13  Marriott International, Inc. dba Palace  **JURY TRIAL REQUESTED**
    Hotel, a Luxury Collection Hotel, San
14  Francisco

15

16                        Defendant.

17
18  1. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42
       U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department
19     of Justice Standards for Accessible Design ("ADA"), (2) California Unruh Civil
20     Rights Act, California Civil Code § 51, 52 ("Unruh") (3) the California Disabled
21     Persons Act ("DPA") and (4) common law of negligence per se.
22                                  **PARTIES**
23  2. Plaintiff Peter Strojnik is a veteran and a disabled person as defined by the ADA and
24     DPA.
25  3. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is
26     and, at all times relevant hereto has been, legally disabled by virtue of a severe right-
27     sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer
28

1    and renal cancer, degenerative right knee and is therefore a member of a protected

2    class under the ADA and Unruh.

3  4. Plaintiff suffers from physical impairments described above which impairments

4    substantially limit his major life activities. Plaintiff walks with difficulty and pain

5    and requires compliant mobility accessible features at places of public

6    accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic

7    ranging from dull and numbing pain to extreme and excruciating agony.

8  5. Defendant, owns, operates leases or leases to a lodging business ("Hotel") located at

9    2 Montgomery Street, San Francisco CA 94105 which is a public accommodation

10   pursuant to 42 U.S.C. § 12181(7)(A) and Unruh.

**JURISDICTION**

11  6. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§

12   28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

13  7. Plaintiff brings this action as a private attorney general who has been personally

14   subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28

15   CFR §36.501.

16  8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,*

17   Plaintiff's claim for equitable nominal damages.

18  9. Venue is proper pursuant to 28 U.S.C. § 1391.

19  10. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs

20   mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn,

21   constitutes discrimination satisfying the "injury in fact" requirement of Article III of

22   the United States Constitution.

23  11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the

24   Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's

25   disability.

26  12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's

27   noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled

28   individual who intends to return to a noncompliant facility suffers an imminent injury

    from the facility's existing or imminently threatened noncompliance with the ADA, a

plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the Hotel.

### COUNT ONE
### Violation of Plaintiff's Civil Rights under the ADA

13. Plaintiff realleges all allegations heretofore set forth.

14. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

15. Plaintiff intended to visit the San Francisco Area and therefore, reviewed vacation booking websites as documented in Addendum A.

16. Plaintiff became aware that third party booking websites disclosed general availability and description of Defendant's Hotel. Third Party booking websites referenced here are more fully documented in Addendum A which is by this reference incorporated herein.

17. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented in Addendum A.

18. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

19. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented. *See* Addendum A.

20. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

3

21. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.

22. Online information relating to accessibility or lack thereof disclosed Defendant's non-compliance with architectural barriers to accessibility as more fully documented in Addendum A.

23. Defendant has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and as outlined in Addendum A.

24. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

25. As a result of the deficiencies described above, Plaintiff declined to book a room at Defendant's Hotel and did no travel to San Francisco.

26. The removal of accessibility barriers listed above is readily achievable.

27. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

## COUNT TWO
### (Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)

28. Plaintiff realleges all allegations heretofore set forth.

29. Plaintiff intended to visit the San Francisco area and spend several nights there.

30. Plaintiff became aware that 3rd party booking websites disclosed general availability and description of Defendant's Hotel. 3rd Party booking website referenced here is more fully discussed in Addendum A which is by this reference incorporated herein.

31. 3rd party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

32. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

33. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

34. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

35. Plaintiff subsequently declined to book a room at the Hotel.

36. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

37. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

38. Plaintiff has been damaged by the Defendant's non-compliance with Unruh and is thereby aggrieved.

5

39. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

40. Pursuant to Unruh, Plaintiff is entitled to costs and expenses in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its accommodation into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the Hotel facilities are fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

e. For damages in an amount no less than $4,000.00 per encounter with barrier; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

6

## COUNT TWO
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

41. Plaintiff realleges all allegations heretofore set forth.

42. Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

43. The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

44. Plaintiff has been aggrieved by the Defendant's non-compliance with the DPA.

45. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

46. Pursuant to the DPA, Plaintiff is entitled to costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its facilities into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

7

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

e. For damages in an amount no less than $1,000.00 per violation per encounter; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

### COUNT FOUR
#### Negligence

47. Plaintiff realleges all allegations heretofore set forth.

48. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

49. Defendant breached this duty.

50. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

51. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

52. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

53. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

54. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects

---

[1] 42 U.S.C. § 12101(a)(2)
[2] 42 U.S.C. §12101(a)(3)

8

of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

55. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

56. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

57. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

58. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

59. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

60. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[6].

61. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

62. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

---

[3] 42 U.S.C. §12101(a)(5)
[4] 42 U.S.C. §12101(a)(6)
[5] 42 U.S.C. §12101(a)(7)
[6] 42 U.S.C. §12101(a)(8)

63. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

64. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

65. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

66. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A.  For finding of negligence; and

    B.  For damages in an amount to be proven at trial; and

    C.  For punitive damages to be proven at trial; and

    D.  For such other and further relief as the Court may deem just and proper.

<strong>REQUEST FOR TRIAL BY JURY</strong>

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

<strong>VERIFICATION</strong>

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and/or belief.

RESPECTFULLY SUBMITTED this 19TH day of October, 2018

**PETER STROJNIK**

Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

# ADDENDUM A



21 **Identification of Specific Barrier in Plain Language:** Booking website does not
22 identify and describe accessible features in the hotel and guest rooms in enough detail
to reasonably permit Plaintiff to assess independently whether the hotel or guest room
23 meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access,**
24 **and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and
equal access by failing to identify and describe accessible features in the hotel and
25 guest rooms in enough detail to reasonably permit Plaintiff to assess independently
whether the hotel or guest room meets his accessibility needs.

26 **The dates on each particular occasion on which Plaintiff encountered such**
**barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

27
28

**Accessibility**

If you have requests for specific accessibility needs, please note them at check-out when you book your room.

- Accessible bathroom
- In-room accessibility
- Roll-in shower

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

**DELUXE ROOMS**
Sq. Ft: 330

Classic elegance meets contemporary design in an authentic, warm and welcoming surrounding. Our 330 square foot Deluxe room showcases luxury furnishings with high style and maximum comfort. The well planned space features a 48" television, multiple power locations, wi fi with streaming options, generous storage, and a large desktop. The bath with simple, clean lines, white marble and light create an attractive, fresh appeal. TOTO Washlet in suites and floors 6 through 8.

 **DELUXE ROOMS**



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

**JUNIOR SUITES**
Sq. Ft: 405

Overlooking the city, each studio-style Junior Suite boasts 11-foot ceilings and crown molding that enhance its turn-of-the-century ambience. A palate of deep plum, midnight blue, and shades of grey creates the backdrop for an exquisite, layered interior.

**JUNIOR SUITES**



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



DELUXE SUITES
Sq. Ft: 630-647

Iconic Jessie Street views await guests of our Deluxe Suites. Each layout enjoys 11-foot ceilings and refined crown molding that underscore the undeniable architectural grace of the hotel. Mood-setting colors have been inspired by West Coast Impressionism. Deluxe Suite is the perfect choice for guests who like to keep their work separate from the rest of their lives.

DELUXE SUITES

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



SPECIALTY SUITES
Sq. Ft: 930

Specialty Suites–comprising the Ambassador Suite, the Royal Suite, and the State Suite–are distinguished as some of San Francisco's most refined accommodations. Century-old architectural details have been preserved and are juxtaposed with modern amenities and state-of-the-art technology.

SPECIALTY SUITES

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and

13

guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** Accessible route not accessible OR not marked.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

14



**Identification of Specific Barrier in Plain Language:** Accessible route not accessible OR not marked.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.






**Identification of Specific Barrier in Plain Language:** Accessible shower comparyment not compliant with ¶ 608 of 2010 Standards.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** Accessible bathroom not compliant with 2010 Standards.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** Accessible bathroom not compliant with 2010 Standards.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** Accessible bathroom not compliant with 2010 Standards.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** Accessible bathroom not compliant with 2010 Standards.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** No apparent accessibility by virtue of fixed pool lift.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**Identification of Specific Barrier in Plain Language:** Inaccessible bar.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Identification of Specific Barrier in Plain Language:** Accessible route not accessible OR not marked.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

**1ST PARTY BOOKING WEBSITE**

**https://www.sfpalace.com/**

## PALACE HOTEL SERVICES & AMENITIES

The Palace Hotel offers an extensive range of deluxe hotel services and amenities to enhance your stay in San Francisco. From professional concierge assistance to valet parking, to delicious restaurants and in-room dining, a state-of-the-art fitness center, indoor swimming pool, meetings and events services, and high speed Internet access, the Palace Hotel meets the discerning traveler's needs and priorities.

Exceptional Guest Services

Beyond the heated indoor pool, our guest services and Concierge team are here to ensure your stay is as memorable as possible. Our Concierges strive to deliver exceptional service and are eager to reveal some of the hidden gems San Francisco has on offer. Whether you're looking for guidance on nearby services or tips on the best restaurants, just ask. There's plenty of wonderful things for families to do at the Palace Hotel and plenty of activities for children of all ages.

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

## DINING

The Palace Hotel is known for its excellent San Francisco Restaurants. Our two famous restaurants offer a distinctive setting for any occasion. The Garden Court, which opened in 1909, is a historic landmark. The historic Pied Piper Bar & Grill was named among the top bars in the world.

### GARDEN COURT

The only indoor historic landmark in San Francisco, the Garden Court restaurant debuted in 1909 and has been the remarkable setting for family gatherings, lavish parties, high tea, dinner dances and much more.

**LEARN MORE**



### PIED PIPER BAR & GRILL

The historic Pied Piper Bar & Grill has been a favored spot among San Francisco downtown restaurants for more than a century. Classic California cuisine complements the Pied Piper's premium beverage menu of Palace Hotel signature cocktails, beer, wine and traditional mixes.

**LEARN MORE**



22

This is a non-smoking hotel.
There are no accessible rooms available for your dates.

Grand Deluxe Room, Non-Smoking

**King Bed** 🚫

**Prepaid Rate**
- Cancellation penalty applies
- Deposit required

Rate Terms & Details

Book Now
**USD 675**
per room / night

**Prepaid Package**
- Cancellation penalty applies
- Deposit required

Rate Terms & Details

Book Now
**USD 705**
per room / night

360 ft² / 33 m²
- Newly renovated
- 48-inch LED TV
- Marble bathroom
- Exterior view
- Learn More About Grand Deluxe Rooms

**Flexible Rate**
- Free cancellation until 4:00 PM hotel time on Mon, 24 Sep 2018

Rate Terms & Details

Book Now
**USD 725**
per room / night

**Prepaid Rate With Breakfast**
- Cancellation penalty applies
- Deposit required

Rate Terms & Details

Book Now
**USD 725**
per room / night

See 3 More Rates   +

| Room Description | Standard Amenities |
| --- | --- |

GRAND DELUXE ROOMS

To underscore their lovely proportions, our Grand Deluxe Rooms feature large desks and armchairs. Long graceful windows let in natural light and allow views of city, such as the legendary Market Street. Each room embraces such charming architectural details as 11-foot ceilings and elegant crown molding on the walls. A palate of deep plum, midnight blue, and shades of grey creates the backdrop for an exquisite, layered interior.

The room's old-world charm is complemented by sophisticated modern amenities, including a superlative 48-inch LED flat screen television, dual phone lines, individually-controlled air conditioning and heating units, and ingenious multifunction nightstand outlets for easy laptop and smartphone hookups.

Thoughtful details in the spacious bathroom include our signature Luxury Collection bathroom amenity line of custom-blended soaps, lotions, and shampoo; a large backlit mirror; a marble vanity; a combined shower and bathtub; and a cozy terrycloth robe and slippers. Grand Deluxe Rooms on floors 6 through 8 have TOTO Washlets.

- 360 Square Feet / 33 Square Meters
- TOTO Washlet (Select Rooms)

| ROOM AMENITIES & SERVICES |
| --- |
| • Iron/Ironing board |
| • Shoe Mitt |
| • Slippers |
| • Sewing Kit |
| • Wake-up Service |
| • In-Room Laptop Safe |
| • Express/Video Check-Out |
| • Smoke Detectors in Room |
| • Housekeeping Service |
| • Express Check-In |

**Identification of Specific Barrier in Plain Language:** (1) Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs AND (2) No indication that the alleged accessible room was held as required by 28 CFR 36.302(e)(iii) – (v).

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.



**DELUXE ROOMS**
Sq. Ft: 330

Classic elegance meets contemporary design in an authentic, warm and welcoming surrounding. Our 330 square foot Deluxe room showcases luxury furnishings with high style and maximum comfort. The well planned space features a 48" television, multiple power locations, wi fi with streaming options, generous storage, and a large desktop. The bath with simple, clean lines, white marble and light create an attractive, fresh appeal. TOTO Washlet in suites and floors 6 through 8.

**DELUXE ROOMS**

**Identification of Specific Barrier in Plain Language:** (1) Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs AND (2) No indication that the alleged accessible room was held as required by 28 CFR 36.302(e)(iii) – (v).

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

**JUNIOR SUITES**
Sq. Ft: 405

Overlooking the city, each studio-style Junior Suite boasts 11-foot ceilings and crown molding that enhance its turn-of-the-century ambience. A palate of deep plum, midnight blue, and shades of grey creates the backdrop for an exquisite, layered interior.

**JUNIOR SUITES**



**Identification of Specific Barrier in Plain Language:** (1) Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs AND (2) No indication that the alleged accessible room was held as required by 28 CFR 36.302(e)(iii) – (v).

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

**DELUXE SUITES**
Sq. Ft: 630-647

Iconic Jessie Street views await guests of our Deluxe Suites. Each layout enjoys 11-foot ceilings and refined crown molding that underscore the undeniable architectural grace of the hotel. Mood-setting colors have been inspired by West Coast Impressionism. Deluxe Suite is the perfect choice for guests who like to keep their work separate from the rest of their lives.

**DELUXE SUITES**



**Identification of Specific Barrier in Plain Language:** (1) Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs AND (2) No indication that the alleged accessible room was held as required by 28 CFR 36.302(e)(iii) – (v).

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018.

25

**SPECIALTY SUITES**
Sq. Ft: 930

Specialty Suites–comprising the Ambassador Suite, the Royal Suite, and the State Suite–are distinguished as some of San Francisco's most refined accommodations. Century-old architectural details have been preserved and are juxtaposed with modern amenities and state-of-the-art technology.

SPECIALTY SUITES



| **Identification of Specific Barrier in Plain Language:** (1) Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs AND (2) No indication that the alleged accessible room was held as required by 28 CFR 36.302(e)(iii) – (v). |
| --- |
| **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. |
| **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** September 24, 2018. |

**END**

**EXHIBIT 15**

ProSe

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:18-cv-06777-JD

Strojnik v. 574 Escuela, LLC

Assigned to: Judge James Donato

Case in other court: California Eastern, 1:18-cv-01520

Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 11/08/2018

Jury Demand: Plaintiff

Nature of Suit: 446 American with Disabilities - Other

Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by    **Peter Strojnik, Sr.**
2375 E. Camelback Rd.
Suite 600
Pheonix, AZ 85016
(602) 524-6602
Email: ps@strjnik.com
PRO SE

V.

**Defendant**

**574 Escuela, LLC**

*doing business as*

Monte Cristo Inn B&B

represented by    **Philip Harris Stillman**
Stillman & Associates
3015 North Bay Road, Suite B
Miami Beach, FL 33140
(888) 235-4279
Fax: (888) 235-4279
Email: pstillman@stillmanassociates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2018 | 1 | COMPLAINT against 574 Escuela, LLC by Peter Strojnik, Sr. (Attachments: # 1 Civil Cover Sheet(Sant Agata, S) (Entered: 11/05/2018) |
| 11/05/2018 | | RECEIPT number #CAE100040679 $400.00 fbo Peter Strojnik by Peter Strojnik on 11/2/2018. (Sant Agata, S) (Entered: 11/05/2018) |
| 11/06/2018 | 2 | ORDER TRANSFERRING CASE to the Northern District of California signed by Magistrate Judge Erica P. Grosjean on 11/5/2018. (Sant Agata, S) (Entered: 11/06/2018) |
| 11/06/2018 | | SERVICE BY MAIL: 2 Order, Case Transferred Out to Another District served on Peter Strojnik Sr.. (Sant Agata, S) (Entered: 11/06/2018) |
| 11/08/2018 | 3 | Case transferred in from District of California Eastern; Case Number 1:18-cv-01520. Original file certified copy of transfer order and docket sheet received. (Entered: 11/08/2018) |
| 11/08/2018 | 4 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and http://cand.uscourts.gov/cameras (hdjS, COURT STAFF) (Filed on 11/8/2018) (Additional attachment(s) added on 11/8/2018: # 1 Notice of Eligibility for Video Recording) (hdjS, COURT STAFF). (Entered: 11/08/2018)** |
| 11/28/2018 | 5 | Summons Issued as to 574 Escuela, LLC. (hdjS, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 02/05/2019 | 6 | CERTIFICATE OF SERVICE by Peter Strojnik, Sr re 4 Initial Case Management Scheduling Order - ADA Case, 1 Complaint - Miscellaneous (hdjS, COURT STAFF) (Filed on 2/5/2019) (Entered: 02/06/2019) |
| 02/08/2019 | 7 | MOTION to Dismiss *Complaint for Lack of Jurisdiction and Failure to State A Claim* filed by 574 Escuela, LLC. Motion Hearing set for 3/21/2019 10:00 AM in San Francisco, Courtroom 11, 19th Floor before Judge James Donato. Responses due by 2/22/2019. Replies due by 3/1/2019. (Attachments: # 1 Memorandum of Points & Authorities in Support of Motion to Dismiss)(Stillman, Philip) (Filed on 2/8/2019) (Entered: 02/08/2019) |
| 02/13/2019 | 8 | OPPOSITION/RESPONSE (re 7 MOTION to Dismiss *Complaint for Lack of Jurisdiction and Failure to State A Claim* ) filed by Peter Strojnik, Sr. (hdjS, COURT STAFF) (Filed on 2/13/2019) (Entered: 02/22/2019) |
| 02/13/2019 | 9 | MOTION for Permission for Electronic Case Filing filed by Peter Strojnik, Sr. (Attachments: # 1 Proposed Order)(hdjS, COURT STAFF) (Filed on 2/13/2019) (Entered: 02/22/2019) |
| 02/26/2019 | 10 | **ORDER re Dkt. No. 9 . Signed by Judge James Donato on 2/26/2019. (jdlc3S, COURT STAFF) (Filed on 2/26/2019) (Additional attachment(s) added on 2/27/2019: # 1 Certificate/Proof of Service) (lrcS, COURT STAFF). (Entered: 02/26/2019)** |
| 02/26/2019 | 11 | **duplicate** MOTION for Permission for Electronic Case Filing filed by Peter Strojnik, Sr. (hdjS, COURT STAFF) (Filed on 2/26/2019) (Entered: 02/26/2019) |
| 03/18/2019 | 12 | **ORDER. The motion to dismiss is terminated for failure to comply with the Court's page limits in its standing order for civil cases. Defendant may refile a conforming motion by April 1, 2019. All parties are advised to review the Court's standing orders and our district's Civil Local Rules to ensure full compliance. The parties are also ordered to follow the provisions of General Order No. 56. The hearing set for March 21, 2019, is vacated. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jdlc3S, COURT STAFF) (Filed on 3/18/2019) Modified on 3/19/2019 (lrcS, COURT STAFF). (Entered: 03/18/2019)** |

| 03/29/2019 | [13] | Amended MOTION to Dismiss *Complaint Pursuant to Rules 12(b)(1) and (6)* filed by 574 Escuela, LLC. Motion Hearing set for 5/9/2019 10:00 AM in San Francisco, Courtroom 11, 19th Floor before Judge James Donato. Responses due by 4/12/2019. Replies due by 4/19/2019. (Attachments: # [1] Memorandum of Points and Authorities)(Stillman, Philip) (Filed on 3/29/2019) (Entered: 03/29/2019) |
|---|---|---|
| 04/25/2019 | 14 | **ORDER. The hearing on the motion to dismiss set for May 9, 2019, is vacated pending further order from the Court. Signed by Judge James Donato on 4/25/2019. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jdlc3S, COURT STAFF) (Filed on 4/25/2019) (Entered: 04/25/2019)** |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/05/2019 17:40:08 | | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 3:18-cv-06777-JD |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

1  Peter Strojnik,
2  2375 East Camelback Road Suite 600
   Phoenix, Arizona 85016
3  Telephone:  (602) 524-6602
   ps@strojnik.com
4  *pro se*

FILED

NOV 02 2018

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

5

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

6

7                                          Case No: 1:18-cv-1520-LJO-
                                                    EPG
8  Peter Strojnik (Sr.),                   **VERIFIED COMPLAINT**
9
                              Plaintiff,    1. **Americans with Disabilities**
10                                             **Act**
                                           2. **Discrimination in Public**
11                                             **Accommodations (State**
                        vs.                    **Law)**
12                                         3. **Negligence**
13 574 Escuela, LLC dba Monte Cristo Inn B
   & B                                     **JURY TRIAL REQUESTED**
14
15
                              Defendant.
16

17 1. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42

18    U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department

19    of Justice Standards for Accessible Design ("ADA"), (2)  California Unruh Civil

20    Rights Act, California Civil Code § 51, 52 ("Unruh") (3) the California Disabled

21    Persons Act ("DPA") and (4) common law of negligence per se.

22                                    **PARTIES**

23 2. Plaintiff Peter Strojnik is a veteran and a disabled person as defined by the ADA and

24    DPA.

25 3. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is

26    and, at all times relevant hereto has been, legally disabled by virtue of a severe right-

27    sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer
28

1   and renal cancer, degenerative right knee and is therefore a member of a protected

2   class under the ADA and Unruh.

3   4. Plaintiff suffers from physical impairments described above which impairments

4   substantially limit his major life activities. Plaintiff walks with difficulty and pain

5   and requires compliant mobility accessible features at places of public

6   accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic

7   ranging from dull and numbing pain to extreme and excruciating agony.

8   5. Defendant, owns, operates leases or leases to a lodging business ("Hotel") located at

9   600 Presidio Ave, San Francisco, California which is a public accommodation

10   pursuant to 42 U.S.C. § 12181(7)(A) and Unruh.

**JURISDICTION**

11   6. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§

12   28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

13   7. Plaintiff brings this action as a private attorney general who has been personally

14   subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28

15   CFR §36.501.

16   8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,*

17   Plaintiff's claim for equitable nominal damages.

18   9. Venue is proper pursuant to 28 U.S.C. § 1391.

19   10. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs

20   mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn,

21   constitutes discrimination satisfying the "injury in fact" requirement of Article III of

22   the United States Constitution.

23   11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the

24   Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's

25   disability.

26   12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's

27   noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled

28   individual who intends to return to a noncompliant facility suffers an imminent injury

from the facility's existing or imminently threatened noncompliance with the ADA, a

1  plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of
2  lack of access to the Hotel.

### COUNT ONE
### Violation of Plaintiff's Civil Rights under the ADA

13. Plaintiff realleges all allegations heretofore set forth.

14. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

15. Plaintiff intended to visit the San Francisco Area and therefore, reviewed vacation booking websites as documented in Addendum A.

16. Plaintiff became aware that third party booking websites disclosed general availability and description of Defendant's Hotel. Third Party booking websites referenced here are more fully documented in Addendum A which is by this reference incorporated herein.

17. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented in Addendum A.

18. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

19. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented. *See* Addendum A.

20. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

21. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.

22. Online information relating to accessibility or lack thereof disclosed architectural barriers to accessibility as more fully documented in Addendum A.

23. Defendant has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and as outlined in Addendum A.

24. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

25. As a result of the deficiencies described above, Plaintiff declined to book a room at Defendant's Hotel and did no travel to San Francisco.

26. The removal of accessibility barriers listed above is readily achievable.

27. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT TWO**
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

28. Plaintiff realleges all allegations heretofore set forth.

29. Plaintiff intended to visit the San Francisco area and spend several nights there.

30. Plaintiff became aware that 3rd party booking websites disclosed general availability and description of Defendant's Hotel. 3rd Party booking website referenced here is more fully discussed in Addendum A which is by this reference incorporated herein.

31. 3rd party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

32. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

33. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

34. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

35. Plaintiff subsequently declined to book a room at the Hotel.

36. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

37. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

38. Plaintiff has been damaged by the Defendant's non-compliance with Unruh and is thereby aggrieved.

39. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

40. Pursuant to Unruh, Plaintiff is entitled to costs and expenses in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its accommodation into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the Hotel facilities are fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

e. For damages in an amount no less than $4,000.00 per encounter with barrier; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## COUNT TWO
### (Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)

41. Plaintiff realleges all allegations heretofore set forth.

42. Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

43. The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

44. Plaintiff has been aggrieved by the Defendant's non-compliance with the DPA.

45. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

46. Pursuant to the DPA, Plaintiff is entitled to costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its facilities into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

e. For damages in an amount no less than $1,000.00 per violation per encounter; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## COUNT FOUR
### Negligence

47. Plaintiff realleges all allegations heretofore set forth.

48. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

49. Defendant breached this duty.

50. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

51. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

52. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

53. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

54. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects

---

[1] 42 U.S.C. § 12101(a)(2)
[2] 42 U.S.C. §12101(a)(3)

of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

55. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

56. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

57. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

58. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

59. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

60. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[6].

61. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

62. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

---

[3] 42 U.S.C. §12101(a)(5)
[4] 42 U.S.C. §12101(a)(6)
[5] 42 U.S.C. §12101(a)(7)
[6] 42 U.S.C. §12101(a)(8)

63. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

64. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

65. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

66. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

### REQUEST FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and/or belief.

RESPECTFULLY SUBMITTED this 23RD day of October, 2018.

**PETER STROJNIK**

Plaintiff

**ADDENDUM A**



## ADA VIOLATIONS
## 3RD PARTY BOOKING WEBSITE - EXPEDIA.COM

### Monte Cristo Inn ★★★

San Francisco

📱 Breakfast Included

1-866-264-5744

✔ Free Cancellation

**4.6/5 Wonderful!**
(225 reviews)
We have 4 left at

~~$277~~ **$241**
nightly price

Earn 2x Expedia Rewards points

✔ Reserve now, pay when you stay

**Monte Cristo Inn**
600 Presidio Avenue, San Francisco, CA 94115
📍 Very good location
97% of guests were happy with the hotel's location
46 guests said the neighborhood was safe

### Bed & Breakfast Amenities

**Bed & Breakfast Amenities**
- Express check-in
- Newspapers in lobby (surcharge)
- Business center
- Express check-out
- Total number of rooms - 16
- Number of floors - 2

- Luggage storage
- Concierge services
- Free breakfast
- Year Built 1875
- Television in common areas
- Free WiFi

Show all bed and breakfast amenities

### Internet
Available in all rooms: Free WiFi , Free wired Internet

Available in some public areas: Free WiFi , Free wired Internet

### Room Amenities
- Soundproofed rooms
- Free local calls
- Private bathroom
- Hair dryer
- Cable TV service
- Free WiFi

- Phone
- Daily housekeeping
- Free toiletries
- Iron/ironing board
- Flat-panel TV
- Free wired Internet

Show all room amenities

### Where to Eat
A complimentary continental breakfast is served each morning between 7:30 AM and 10:30 AM.

### Nearby Things to Do
- Golfing nearby

### Bed & Breakfast Policies

**Check-in**
Check-in time starts at 3 PM

Check-in time ends at 7 PM

Special check-in instructions
There is no front desk at this property. To make arrangements for check-in please contact the property at least 24 hours before arrival using the information on the booking confirmation. An adult age 18 or older must assume all liability for the booking.
24-hour airport shuttle service is available. Contact the property in advance to make arrangements.
Guests arriving after 7 PM should contact the property via email to receive key codes and arrange check-in. Contact information can be found on the confirmation received after booking.

**Check-out**
Check-out time is 11 AM

**Payment types**



**Children and extra beds**
- Children are welcome
- Rollaway/extra beds are not available.
- Cribs (infant beds) are available for USD 25.00 per stay

**Pets**
- Pets not allowed

**You need to know**
Extra-person charges may apply and vary depending on property policy.
Show all policies

Information missing or incorrect? Tell us! ✏

1
2
3
4
5
6
7
8



9
10

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

11
12
13
14
15
16
17
18
19

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

20
21
22
23
24
25
26
27
28



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**ADA Deficiency:** Non-compliant space.



ADA Deficiency: Non-compliant toilet, tub and sink.

ADA Deficiency: Non-compliant toilet and tub.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



ADA Deficiency: Non-compliant toilet and sink and maneuvering space.

ADA Deficiency: Non-compliant tub.



ADA Deficiency: Non-compliant tab and toilet.

ADA Deficiency: Non-compliant toilet and sink. Reflecting surface appears too high.

1
2
3
4
5
6
7
8
9
10
11
12



**ADA Deficiency:** Non-compliant tub, toilet, space and sink. Reflecting surfce appears too high.

13
14
15
16
17
18
19
20
21
22
23
24
25



26
27
28



**ADA Deficiency:** Non-compliant accessible route – step.



**ADA Deficiency:** Non-compliant accessible route – step.

**ADA Deficiency:** Non-compliant accessible route – step.

**1ST PARTY BOOKING WEBSITE**
www.bedandbreakfastsf.com



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

1
2
3
4
5
6
7
8
9
10
11
12
13
14

## California King Room

One California King Bed, cable television, en-suite bathroom, elegant antiques, a writing desk, alabaster chandelier and hardwood floors with a Persian rug. Located on street level or upstairs. supremely comfortable Cal King bed for a restful night's sleep. Enjoy a newly remodeled private marble bathroom en-suite with a European-styled rain shower over a full tub, towel warmer, and a Japanese style heated toilet seat with bidet.

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

Petite Queen Room

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

### Mayfair- Cal King - Upstairs

A handsome deluxe king room freshly redecorated with period wallpaper of powder blue damask. This room features elegant antiques, a writing desk, alabaster chandelier and hardwood floors with a Persian rug. Located upstairs with a supremely comfortable Cal King bed for a restful night's sleep. Enjoy a newly remodeled private marble bathroom en-suite with walk-in shower, towel warmer, and heated toilet seat with bidet.

Supremely Comfortable Cal King Bed
Complimentary Breakfast
Private Marble Bathroom with walk-in shower
Toto Washlet and Bidet
Towel Warmer
Hairdryer, Iron and Board
iPhone Alarm Clock and Charger
47" LCD TV with Netflix and Cable
Complimentary Local Phone Calls
Complimentary Wifi Internet

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

### Comstock - Cal King - Upstairs

A handsome deluxe king room freshly redecorated with period wallpaper of powder blue damask. This room features elegant antiques, a writing desk, alabaster chandelier and hardwood floors with a Persian rug. Located upstairs with a supremely comfortable Cal King bed for a restful night's sleep. Enjoy a newly remodeled private marble bathroom en-suite with walk-in shower, towel warmer, and heated toilet seat with bidet.

Supremely Comfortable Cal King Bed
Complimentary Breakfast
Private Marble Bathroom with walk-in shower
Toto Washlet and Bidet
Towel Warmer
Hairdryer, Iron and Board

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs



Petite Queen - Gothic - Upstairs

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

1
2
3
4
5
6
7
8
9
10
11
12
13
14



Monte Cristo Inn Petite Queen - Versailles Street Level

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Petite Queen - Eastlake - Street Level

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

Tiny - Broderick - Street Level



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

Comstock - Cal King - Street Level

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs

**3ʳᵈ PARTY PHOTOS – GOOGLE.COM/MAPS – OYSTER.COM – ETC.**



**ADA Deficiency:** Non-compliant security latch height.

**ADA Deficiency:** Non-compliant route with no signage to accessible route. Improperly configured handrails.

1
2
3
4
5



**ADA Deficiency:** Non-compliant accessible route.

6
7
8
9
10
11
12
13
14
15
16



**ADA Deficiency:** Non-compliant accesible route.

17
18
19
20
21
22
23



**ADA Deficiency:** Non-compliant accesible route.

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**ADA Deficiency:** Non-compliant tub.



**ADA Deficiency:** Non-compliant space around bed.



**ADA Deficiency:**  Non-compliant bathroom.



**ADA Deficiency:** Non-compliant bathroom.

**ADA Deficiency:** Non-compliant bathroom.

**ADA Deficiency:** Non-compliant bathroom.



**ADA Deficiency:** Non-compliant toilet.

1

**ADA Deficiency:** Non-compliant tub.



**ADA Deficiency:** Non-compliant reading lounge.



**END**

# EXHIBIT 18

E-ProSe,ProSe

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-01844-VKD**

| | |
|---|---|
| Strojnik v. Ensemble Hotel Partners, LLC | Date Filed: 04/05/2019 |
| Assigned to: Magistrate Judge Virginia K. DeMarchi | Jury Demand: Plaintiff |
| Cause: 42:12101 Americans w/ Disabilities Act (ADA) | Nature of Suit: 446 American with Disabilities - Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Peter Strojnik, Sr.**        represented by   **Peter Strojnik, Sr.**
7847 N. Central Ave.
Pheonix, AZ 85020
602-524-6602
PRO SE

V.

**Defendant**

**Ensemble Hotel Partners, LLC**     represented by   **Robert David Vogel**
*doing business as*                                       Jackson Lewis LLP
Dream Inn Stanta Cruz                                725 South Figueroa Street
Suite 2500
Los Angeles, CA 90017
213-689-0404 x8277
Fax: 213-689-0430
Email: VogelR@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Matthew J. Weber**
Jackson Lewis, PC
725 S. Figueroa St., Suite 2500
Los Angeles, CA 90017
213-689-0404
Fax: 213-689-0430
Email: matthew.weber@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Counter-claimant**

**Ensemble Hotel Partners, LLC**     represented by   **Matthew J. Weber**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter-defendant**

**Peter Strojnik, Sr.**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/05/2019 | 1 | COMPLAINT against Ensemble Hotel Partners, LLC (Filing fee $ 400., receipt #54611017998). Filed by Peter Strojnik, Sr. Consent/Declination due by 4/19/2019. (Attachments: # 1 Civil Cover Sheet)(dhmS, COURT STAFF) (Filed on 4/5/2019) (Entered: 04/05/2019) |
| 04/05/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (Attachments: # 1 Standing Order)(dhmS, COURT STAFF) (Filed on 4/5/2019) (Entered: 04/05/2019)** |
| 04/05/2019 | 3 | Summons Issued as to Ensemble Hotel Partners, LLC. (dhmS, COURT STAFF) (Filed on 4/5/2019) (Entered: 04/05/2019) |
| 05/02/2019 | 4 | CLERK'S NOTICE Re: Consent or Declination: Plaintiffs/Defendants shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. Consent/Declination due by 5/16/2019. (Attachments: # 1 Certificate/Proof of Service) (pmcS, COURT STAFF) (Filed on 5/2/2019) (Entered: 05/02/2019) |
| 05/10/2019 | 5 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr. (dhmS, COURT STAFF) (Filed on 5/10/2019) (Entered: 05/14/2019) |
| 05/13/2019 | 6 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr. (dhmS, COURT STAFF) (Filed on 5/13/2019) (Entered: 05/15/2019) |
| 05/13/2019 | 7 | MOTION for Permission for Electronic Case Filing filed by Peter Strojnik, Sr. (Attachments: # 1 Proposed Order)(dhmS, COURT STAFF) (Filed on 5/13/2019) (Entered: 05/15/2019) |
| 05/16/2019 | 8 | **ORDER by Magistrate Judge Virginia K. DeMarchi granting 7 plaintiff's Motion for Permission for Electronic Case Filing.** |

| | | |
|---|---|---|
| | | (vkdlc2S, COURT STAFF) **(Filed on 5/16/2019) (Additional attachment(s) added on 5/16/2019: # 1 Certificate/Proof of Service) (pmcS, COURT STAFF). (Entered: 05/16/2019)** |
| 06/28/2019 | 9 | SUMMONS Returned Executed by Peter Strojnik, Sr. Ensemble Hotel Partners, LLC served on 4/11/2019, answer due 5/2/2019. (dhmS, COURT STAFF) (Filed on 6/28/2019) (Entered: 07/01/2019) |
| 07/08/2019 | 10 | STIPULATION *TO EXTEND TIME FOR DEFENDANTS TO FILE AN ANSWER TO INITIAL COMPLAINT BY NOT MORE THAN 30 DAYS* filed by Ensemble Hotel Partners, LLC. (Vogel, Robert) (Filed on 7/8/2019) (Entered: 07/08/2019) |
| 07/15/2019 | 11 | *DEFENDANT ENSEMBLE HOTEL PARTNERS LLC'S* ANSWER to Complaint *AND*, COUNTERCLAIM *FOR BREACH OF SETTLEMENT AGREEMENT* against Peter Strojnik, Sr byEnsemble Hotel Partners, LLC. (Weber, Matthew) (Filed on 7/15/2019) (Entered: 07/15/2019) |
| 07/19/2019 | 12 | CLERK'S NOTICE Re: Consent or Declination: Defendants shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. Consent/Declination due by 8/2/2019. (pmcS, COURT STAFF) (Filed on 7/19/2019) (Entered: 07/19/2019) |
| 07/29/2019 | 13 | MOTION to Dismiss Counterclaim filed by Peter Strojnik, Sr. Responses due by 8/12/2019. Replies due by 8/19/2019. (dhmS, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/29/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:47:07 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-01844-VKD |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

E-FILING

ADR

FILED

APR 05 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1  Peter Strojnik (Sr.),
2  7847 N. Central Avenue
   Phoenix, Arizona 85020
3  Telephone: (602) 524-6602
   ps@strojnik.com
4

5  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
6

7  Case No:  **CV  19  1844**

8  Peter Strojnik (Sr.),                        **VERIFIED COMPLAINT**

9                             Plaintiff,         **1. Americans with Disabilities
                                                    Act**
10
                                                 **2. Discrimination in Public
11             vs.                                   Accommodations (State
                                                     Law)**
12  Ensemble Hotel Partners, LLC dba Dream Inn     **3. Negligence**
    Santa Cruz
13
                                                 **JURY TRIAL REQUESTED**
14

15                             Defendant.

16  1. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42

17     U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department

18     of Justice Standards for Accessible Design ("ADA"), (2)  California Unruh Civil

19     Rights Act, California Civil Code § 51, 52 ("Unruh") (3) the California Disabled

20     Persons Act ("DPA") and (4) common law of negligence per se.

21                                  **PARTIES**

22  2. Plaintiff Peter Strojnik is a veteran and a disabled person as defined by the ADA and

23     DPA.

24  3. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is

25     and, at all times relevant hereto has been, legally disabled by virtue of a severe right-

26     sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer

27     and renal cancer, degenerative right knee and is therefore a member of a protected

28     class under the ADA and Unruh.

4. Plaintiff suffers from physical impairments described above which impairments substantially limit his major life activities. Plaintiff walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic ranging from dull and numbing pain to extreme and excruciating agony.

5. Defendant, owns, operates leases or leases to a lodging business ("Hotel") located at 175 W. Cliff Drive, Santa Cruz, CA 95060which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A) and Unruh.

## JURISDICTION

6. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

7. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28 CFR §36.501.

8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,* Plaintiff's claim for equitable nominal damages.

9. Venue is proper pursuant to 28 U.S.C. § 1391.

10. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

## COUNT ONE
### Violation of Plaintiff's Civil Rights under the ADA

13. Plaintiff realleges all allegations heretofore set forth.

14. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

15. Plaintiff intended to visit the Santa Cruz area and therefore, reviewed hotel booking websites as documented in Addendum A which is by this reference incorporated herein for all purposes.

16. Plaintiff became aware that third party booking websites disclosed general availability and description of Defendant's Hotel. Third Party booking websites referenced here are more fully documented in Addendum A which is by this reference incorporated herein.

17. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented in Addendum A.

18. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

19. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented. *See* Addendum A.

20. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

21. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.

22. Online information relating to accessibility or lack thereof disclosed architectural barriers to accessibility as more fully documented in Addendum A.

23. Defendant has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and as outlined in Addendum A.

24. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

25. Plaintiff lodged at Defendant's Hotel on November 28, 2018.

26. The removal of accessibility barriers listed above is readily achievable.

27. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT TWO**
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

28. Plaintiff realleges all allegations heretofore set forth.

29. Plaintiff intended to visit the Santa Cruz area and spend a night there.

30. Plaintiff became aware that 3rd party booking websites disclosed general availability and description of Defendant's Hotel. 3rd Party booking website referenced here is more fully discussed in Addendum A which is by this reference incorporated herein.

31. 3rd party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

32. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

33. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

34. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

35. Plaintiff subsequently declined to book a room at the Hotel.

36. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

37. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

38. Plaintiff has been damaged by the Defendant's non-compliance with Unruh and is thereby aggrieved.

5

39. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

40. Pursuant to Unruh, Plaintiff is entitled to costs and expenses in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its accommodation into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the Hotel facilities are fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

e. For damages in an amount no less than $4,000.00 per encounter with barrier; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

6

**COUNT THREE**
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

41. Plaintiff realleges all allegations heretofore set forth.

42. Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

43. The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

44. Plaintiff has been aggrieved by the Defendant's non-compliance with the DPA.

45. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

46. Pursuant to the DPA, Plaintiff is entitled to costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its facilities into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

7

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

e. For damages in an amount no less than $1,000.00 per violation per encounter; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## COUNT FOUR
### Negligence – 2 counts

47. Plaintiff realleges all allegations heretofore set forth.

48. During the stay at Defendant's Hotel, Defendant's valets displaced the key to Plaintiff's automobile.

49. Defendants valets had a duty of safeguarding Plaintiff's automobile's key while it was in their custody. Defendants breached this duty causing Plaintiff damages as follows: $185.00 for new key, $70.36 for loss of use, (anticipated) $75.00 to reset the second key, trip interruption, loss of time, aggravation and mental stress in an amount no less than $15,000.00 for the total of $15,330.36.

50. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

51. Defendant breached this duty.

52. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

53. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

---

[1] 42 U.S.C. § 12101(a)(2)

54. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

55. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

56. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

57. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

58. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

59. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

60. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

61. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

62. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the

---

[2] 42 U.S.C. §12101(a)(3)
[3] 42 U.S.C. §12101(a)(5)
[4] 42 U.S.C. §12101(a)(6)
[5] 42 U.S.C. §12101(a)(7)

9

1    United States billions of dollars in unnecessary expenses resulting from dependency

2    and nonproductivity[6].

3  63. Defendant's knowing and intentional unfair and unnecessary discrimination against

4       Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

5  64. Defendant's breach of duty caused Plaintiff damages including, without limitation,

6       the feeling of segregation, discrimination, relegation to second class citizen status the

7       pain, suffering and emotional damages inherent to discrimination and segregation and

8       other damages to be proven at trial.

9  65. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and

        outrageous conduct.

10  66. The ADA has been the law of the land since 1991, but Defendant engaged in a

11      conscious action of a reprehensible character, that is, Defendant denied Plaintiff his

12      civil rights, and cause him damage by virtue of segregation, discrimination, relegation

13      to second class citizen status the pain, suffering and emotional damages inherent to

14      discrimination and segregation and other damages to be proven at trial

15  67. Defendant either intended to cause injury to Plaintiff or defendant consciously

16      pursued a course of conduct knowing that it created a substantial risk of significant

17      harm to Plaintiff.

18  68. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial

19      sufficient, however, to deter this Defendant and others similarly situated from

20      pursuing similar acts.

21  **WHEREFORE,** Plaintiff prays for relief as follows:

22      A. For finding of negligence; and

23      B. For damages in an amount to be proven at trial but in no event less than

          $25,000.00; and

24      C. For punitive damages to be proven at trial; and

25      D. For such other and further relief as the Court may deem just and proper.

26

27

28

_____

[6] 42 U.S.C. §12101(a)(8)

1

**REQUEST FOR TRIAL BY JURY**

2

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

3

RESPECTFULLY SUBMITTED this 2019-04-02

4

5

PETER STROJNIK

6

7

Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

1

**ADDENDUM A**

2

| 3ʳᴰ PARTY BOOKING WEBSITE |
| --- |

**HOTELS.COM**

**Dream Inn Santa Cruz**                    ♥ Loved by guests          Great Rate
                                                                     We have 2 left at
175 W Cliff Dr, Santa Cruz, CA, 95060, United States, 866-573-
4235                                                                  ~~$359~~ $199

                        **4-star**                                   ✓ free cancellation
                                                                     ✓ pay now or at
                        🔲 Westside Santa Cruz                           property
                        • 29 miles to San Jose, CA (SJC-Norman Y. Mineta     **Choose Room**
                          San Jose Intl.)
                        • 0.4 miles to Santa Cruz Beach Boardwalk
                        🧭 Collect nights

                        **Superb 9.0** 842 reviews
                        🔵 ⊙⊙⊙⊙ⓘ 2,415 reviews

---

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

**Main amenities**                      **Feel at home**

✓ 165 smoke-free                        ✓ Free cribs/infant beds
  guestrooms                            ✓ Rollaway/extra beds
✓ On the beach                            (surcharge)
✓ Restaurant and bar/lounge             ✓ Daily housekeeping
✓ Outdoor pool                          ✓ Hair dryer
✓ Valet parking                         ✓ Coffee/tea maker
✓ 24-hour front desk                    ✓ Elevator/lift
✓ Daily housekeeping
✓ ATM/banking services
✓ Free WiFi

12

## At a glance

### Key facts

**Hotel size**
- 165 rooms
- Arranged over 10 floors

**Arriving/leaving**
- 92% of customers were happy with check-in
- Check-in time 4:00 PM-midnight
- Check-out time is 11:00 AM

**Required at check in**
- Credit card or cash deposit required
- Government-issued photo ID required

## At the resort

| | |
|---|---|
| **Food and drink** | Restaurant   \|   Bar/lounge |
| **Things to do** | Outdoor pool   \|   Spa tub |
| **Services** | 24-hour front desk |
| **Facilities** | Elevator/lift   \|   ATM/banking |

## In the apartment

| | |
|---|---|
| **Home comforts** | Coffee/tea maker |
| **Things to enjoy** | Balcony |
| **Freshen up** | Hair dryer |
| **Stay connected** | Free WiFi   \|   Free local calls |
| **More** | Daily housekeeping   \|   In-room safe |

13

**Dream Inn Santa Cruz's small print**

**Also known as**

- Dream Inn
- Dream Santa Cruz
- Dream Inn Santa Cruz a Joie de Vivre Boutique Hotel

**Policies**

Guests must contact this property in advance to reserve a crib (infant bed) or rollaway bed. Contact the office using the information on the reservation confirmation received after booking.

- Pool access available from 7 AM to 10 PM.

Children under 15 years old are not allowed in the swimming pool or spa tub without adult supervision.

Please note that cultural norms and guest policies may differ by country and by property. The policies listed are provided by the property.

**Optional extras**

Self parking costs USD 25.00 per night

Valet parking costs USD 25.00 per night with in/out privileges

Rollaway beds are available for USD 30.0 per night

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

**Deluxe Room, 1 King Bed, Ocean View, Tower** 



Guestroom   [1/4]

**1 King Bed**
344-sq-foot (32-sq-meter) room, balcony with ocean views

**Internet** - Free WiFi
**Food & Drink** - Coffee/tea maker
**Bathroom** - Partially open bathroom, a hair dryer, and a shower
**Practical** - Free local calls and safe; rollaway/extra beds and free cribs/infant beds available on request
**Comfort** - Daily housekeeping
Non-Smoking

Sleeps 3 people (including up to 2 children)
**Bed choices**
- 1 King Bed
**Extra beds available**
- Crib • Rollaway bed

More Info: 866-539-8117

**Details**

- Balcony
- Coffee/tea maker
- Daily housekeeping
- Free cribs/infant beds
- Free local calls
- Free WiFi
- Hair dryer
- In-room safe
- Rollaway/extra beds (surcharge)

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail

14

to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Deluxe Room, 1 King Bed, Accessible, Ocean View**

Guestroom [1/3]

**1 King Bed**
344-sq-foot (32-sq-meter) room, balcony with ocean views

Internet - Free WiFi
**Food & Drink** - Coffee/tea maker
**Bathroom** - Partially open bathroom, a hair dryer, and a shower
**Practical** - Free local calls and safe; rollaway/extra beds and free cribs/infant beds available on request
**Comfort** - Daily housekeeping
Non-Smoking

**Sleeps 3 people (including up to 2 children)**
**Bed choices**
- 1 King Bed
**Extra beds available**
- Crib • Rollaway bed

More Info: 866-539-8117

**Details**
- Balcony
- Coffee/tea maker
- Daily housekeeping
- Free cribs/infant beds
- Free local calls
- Free WiFi
- Hair dryer
- In-room safe
- Rollaway/extra beds (surcharge)

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. **Insufficient dispersion.**

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

**Deluxe Room, 2 Queen Beds, Ocean View**

Guestroom [1/4]

2 Queen Beds
344-sq-foot (32-sq-meter) room, balcony with ocean views

Internet - Free WiFi
Food & Drink - Coffee/tea maker
Bathroom - Partially open bathroom, a hair dryer, and a shower
Practical - Free local calls and safe; rollaway/extra beds and free cribs/infant beds available on request
Comfort - Daily housekeeping
Non-Smoking

**Sleeps 4 people** (including up to 3 children)
**Bed choices**
▪ 2 Queen Beds
**Extra beds available**
▪ Crib ▪ Rollaway bed

More Info: 866-539-8117

**Details**
- Balcony
- Coffee/tea maker
- Daily housekeeping
- Free cribs/infant beds
- Free local calls
- Free WiFi
- Hair dryer
- In-room safe
- Rollaway/extra beds (surcharge)

| | |
|---|---|
| **Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersion. | |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

16

**Room, 2 Queen Beds, Ocean View, Tower** ⊗

Guestroom [1/4]

‹ ›

**2 Queen Beds**
344-sq-foot (32-sq-meter) room, balcony with ocean views

Internet - Free WiFi
**Food & Drink** - Coffee/tea maker
**Bathroom** - Partially open bathroom, a hair dryer, and a shower
**Practical** - Free local calls and safe; rollaway/extra beds and free cribs/infant beds available on request
**Comfort** - Daily housekeeping
Non-Smoking

**Sleeps 4 people** (including up to 3 children)
**Bed choices**
- 2 Queen Beds
**Extra beds available**
- Crib • Rollaway bed

More Info: 866-539-8117

**Details**

| | | |
|---|---|---|
| • Balcony | • Free cribs/infant beds | • Hair dryer |
| • Coffee/tea maker | | • In-room safe |
| • Daily housekeeping | • Free local calls | • Rollaway/extra beds (surcharge) |
| | • Free WiFi | |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

17



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.





**Identification of Specific Barrier in Plain Language:** Premium charged for accessible room.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. Insufficient dispersion.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest

rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Hotel Photos fail to identify accessible features.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.





**Outdoor Pool** [3/32]

**Identification of Specific Barrier in Plain Language:** Apparently inaccessible pool.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Stairs on route with no apparent signage to accessible route.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

**1ST PARTY BOOKING WEBSITE**

**https://www.dreaminnsantacruz.com/**

24

**PROPERTY ACCESSIBILITY**

We make every effort to be accessible for all guests to enjoy, and therefore all of our hotel amenities and public spaces meet the requirements of the American with Disabilities Act (ADA). Under the Rooms section of our website, you can find detail on our accessible guestroom accommodations. In addition, we offer 24-hour valet parking, a wheelchair accessible path of travel to and into the hotel entrance, and an accessible check-in reception counter. Our restaurant and bar have accessible dining options and our public restrooms meet ADA requirements. Our outdoor spaces are accessible and our pool and hot tub have accessible lifts for access. Should any guest desire to request accessible transportation, simply dial the hotel operator and they will be pleased to arrange for an accessible car from our local car service.

- Accessible guest rooms with mobility features with entry doors that provide 32" of clear width
- Accessible hotel restaurant
- Accessible meeting rooms
- Accessible valet parking
- Accessible public entrance
- Accessible registration desk
- Accessible route from the accessible public entrance to the accessible guestrooms
- Accessible route from the accessible public entrance to the registration area
- Accessible route from the hotel's accessible entrance to the meeting rooms
- Accessible route from the hotel's accessible public entrance to the restaurant
- Accessible route from the hotel's accessible public entrance to the swimming pool
- Accessible swimming pool and hot tub
- Accessible transportation with advance notice
- Assistive listening devices for meetings upon request
- Closed captioning on televisions or closed captioning decoders
- Public Areas accessible for physically challenged
- Roll-in Shower
- Rooms accessible to wheelchairs (no steps)
- Service support animals welcome
- Swimming pool hoist for pool and hot tub access
- TTY for guest use

**Identification of Specific Barrier in Plain Language:** False warranty of ADA Compliance.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest

rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



OCEAN VIEW CATHEDRAL EXECUTIVE

KING    TWO QUEEN

Featuring a private furnished balcony and vaulted cathedral ceiling with fans, the spacious Ocean View Cathedral Executive King is perfect for a weekend getaway. Floor to ceiling window configuration varies by room.

RESERVE

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient disclosure of dispersement of accessible rooms. **Insufficient dispersion.**

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



OCEAN VIEW SUITE

JUNIOR    TOWER    DREAM INN
CLOUD LEVEL

Our breezy, attractively furnished Ocean View Junior Suite features a plush king bed, private balcony with ocean views and queen sleeper sofa.

RESERVE

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient disclosure of dispersement of accessible rooms. **Insufficient dispersion.**

1
2
3

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

4

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

5
6
7
8
9
10
11
12



**OCEAN VIEW INFINITY**

TWO QUEEN    KING ADA

SUITE KING ADA

Overlooking our beachfront pool, the Ocean View Infinity Two Queen guest room features ocean views from a semi-private patio. Bathrooms are equipped with a bathtub with detachable rain water shower head.

RESERVE

13
14
15

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. Insufficient disclosure of dispersement of accessible rooms. **Insufficient dispersion.**

16
17
18

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

19

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

20

**3rd PARTY PHOTOS (GOOGLE – OYSTER – ETC)**

21
22
23
24
25
26
27
28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Identification of Specific Barrier in Plain Language:** No apparent pool or spa access.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** No apparent bar access.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

1
2
3
4
5
6
7
8
9
10
11



12 **Identification of Specific Barrier in Plain Language:** Inaccessible outdoor seating.
13 **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal
14 access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether
15 the hotel or guest room meets his accessibility needs.
16 **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

17
18
19
20
21
22
23
24
25
26



27 **Identification of Specific Barrier in Plain Language:** (1) Inaccessible toilet; (2) Inaccessible shower enclosure..
28 **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal

access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Inaccessible spa.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Stairs on route with no apparent signage to accessile route.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal

31

access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Inaccessibe coffee bar.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

32

1
2
3
4
5
6
7
8
9
10
11
12



13 **Identification of Specific Barrier in Plain Language:** Inaccessibe surf bar.

14 **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

15
16 **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

17
18
19
20
21
22
23
24
25
26
27
28



33

**Identification of Specific Barrier in Plain Language:** Inaccessibe bathroom.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

### PERSONAL OBSERVATIONS



**Identification of Specific Barrier in Plain Language:** Water over 120°F.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



| | |
|---|---|
| 1 | **Identification of Specific Barrier in Plain Language:** No positive shut off on shower spray unit. |
| 2 | **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. |
| 5 | **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018. |

36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24  **Identification of Specific Barrier in Plain Language:** Inaccessibe tub.

25  **The manner in which the barriers denied Plaintiff full and equal use or access, and
which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal
26  access by failing to identify and describe accessible features in the hotel and guest
rooms in enough detail to reasonably permit Plaintiff to assess independently whether
27  the hotel or guest room meets his accessibility needs.

28  **The dates on each particular occasion on which Plaintiff encountered such barrier
and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Inaccessibe entry on balcony.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** More than 5 lbs to open sliding door onto balcony.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

1

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** More than 5lbs to open door to room.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest

rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** No handrails on ramp.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** No marked passenger drop off area.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.



**Identification of Specific Barrier in Plain Language:** Inaccessibe bar counter.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.



**Identification of Specific Barrier in Plain Language:** Inaccessibe counter.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

44



**Identification of Specific Barrier in Plain Language:** Self parking across street – not closest to entry.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about November 25, 2018.

**END**

45

**EXHIBIT 19**

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-01875-NC**

Strojnik v. Bernardus LLC
Assigned to: Judge Nathanael M. Cousins
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 04/08/2019
Jury Demand: Plaintiff
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by **Peter Strojnik, Sr.**
7847 N. Central Ave.
Pheonix, AZ 85020
602-524-6602
PRO SE

V.

**Defendant**

**Bernardus LLC**
*TERMINATED: 05/28/2019*
*doing business as*
Bernardus Lodge & Spa
*TERMINATED: 05/28/2019*

**Defendant**

**Woodside Hotel Group, LTD**

represented by **Robert David Vogel**
Jackson Lewis LLP
725 South Figueroa Street
Suite 2500
Los Angeles, CA 90017
213-689-0404 x8277
Fax: 213-689-0430
Email: VogelR@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Matthew J. Weber**
Jackson Lewis, PC
725 S. Figueroa St., Suite 2500
Los Angeles, CA 90017
213-689-0404
Fax: 213-689-0430
Email: matthew.weber@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Monterey Holdings, L.P.**

**Counter-claimant**

**Woodside Hotel Group, LTD**

represented by **Matthew J. Weber**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter-defendant**

**Peter Strojnik, Sr.**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/08/2019 | 1 | COMPLAINT against Bernardus LLC (Filing fee $ 400-PAID.). Filed by Peter Strojnik, Sr. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(sfbS, COURT STAFF) (Filed on 4/8/2019) (Entered: 04/08/2019) |
| 04/08/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (sfbS, COURT STAFF) (Filed on 4/8/2019) (Entered: 04/08/2019)** |
| 04/08/2019 | 3 | Summons Issued as to Bernardus LLC. (sfbS, COURT STAFF) (Filed on 4/8/2019) (Entered: 04/08/2019) |
| 04/29/2019 | 4 | SUMMONS Returned Executed by Peter Strojnik, Sr. Bernardus LLC served on 4/12/2019, answer due 5/3/2019. (dhmS, COURT STAFF) (Filed on 4/29/2019) (Entered: 05/01/2019) |
| 05/06/2019 | 5 | CLERK'S NOTICE SETTING Initial Case Management Conference set for 10/2/2019 at 10:00 AM in San Jose, Courtroom 5, 4th Floor. |

| | | |
|---|---|---|
| | | Case Management Statement due by 9/25/2019.<br><br>All parties shall file a consent or declination to proceed before a magistrate judge by 5/20/2019. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>(Attachments: # 1 Certificate/Proof of Service) (lmh, COURT STAFF) (Filed on 5/6/2019) (Entered: 05/06/2019) |
| 05/08/2019 | 6 | CERTIFICATE OF SERVICE by Peter Strojnik, Sr re 4 Summons Returned Executed (sfbS, COURT STAFF) (Filed on 5/8/2019) (Entered: 05/08/2019) |
| 05/13/2019 | 7 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr. (sfbS, COURT STAFF) (Filed on 5/13/2019) (Entered: 05/14/2019) |
| 05/28/2019 | 8 | AMENDED COMPLAINT against Monterey Holdings, L.P., Woodside Hotel Group, LTD. Filed by Peter Strojnik, Sr. (sfbS, COURT STAFF) (Filed on 5/28/2019) (Entered: 05/29/2019) |
| 05/31/2019 | 9 | Summons Issued as to Monterey Holdings, L.P., Woodside Hotel Group, LTD. (sfbS, COURT STAFF) (Filed on 5/31/2019) (Entered: 05/31/2019) |
| 06/27/2019 | 10 | SUMMONS Returned Executed by Peter Strojnik, Sr. Woodside Hotel Group, LTD served on 6/17/2019, answer due 7/8/2019. (sfbS, COURT STAFF) (Filed on 6/27/2019) (Entered: 07/03/2019) |
| 07/08/2019 | 11 | STIPULATION *TO EXTEND TIME FOR DEFENDANTS TO FILE AN ANSWER TO INITIAL COMPLAINT BY NOT MORE THAN 30 DAYS* filed by Woodside Hotel Group, LTD. (Vogel, Robert) (Filed on 7/8/2019) (Entered: 07/08/2019) |
| 07/15/2019 | 12 | *DEFENDANT WOODSIDE HOTEL GROUP, LTD* ANSWER to Complaint *AND*, COUNTERCLAIM *FOR BREACH OF SETTLEMENT AGREEMENT* against Peter Strojnik, Sr byWoodside Hotel Group, LTD. (Weber, Matthew) (Filed on 7/15/2019) (Entered: 07/15/2019) |
| 07/29/2019 | 13 | MOTION to Dismiss Counterclaim filed by Peter Strojnik, Sr. Responses due by 8/12/2019. Replies due by 8/19/2019. (sfbS, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/29/2019) |
| 07/30/2019 | 14 | CLERK'S NOTICE REGARDING Consent or Declination: All parties are requested to file a consent or declination to proceed before a magistrate judge by 8/6/2019. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (Attachments: # 1 Certificate/Proof of Service) (lmh, COURT STAFF) (Filed on 7/30/2019) (Entered: 07/30/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:47:54 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-01875-NC |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**EXHIBIT 20**

CLOSED,ProSe

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-01876-SVK**

Strojnik v. JMA Ventures LLC
Assigned to: Magistrate Judge Susan van Keulen
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 04/08/2019
Date Terminated: 07/01/2019
Jury Demand: Plaintiff
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by **Peter Strojnik, Sr.**
7847 N. Central Ave
Pheonix, AZ 85020
(602) 524-6602
PRO SE

V.

**Defendant**

**JMA Ventures LLC**
*doing business as*
Dolce Hayes Mansion San Jose

represented by **Janelle Jad Sahouria**
Jackson Lewis P.C.
50 California Street, 9th Floor
San Francisco, CA 94111-4615
415-394-9400
Fax: 415-394-9401
Email: janelle.sahouria@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/08/2019 | 1 | COMPLAINT (summons issued) against JMA Ventures LLC (Filing fee $ 400.). Filed by Peter Strojnik, Sr. Consent/Declination due by 4/22/2019. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(cv, COURT STAFF) (Filed on 4/8/2019) Modified on 4/8/2019 (cv, COURT STAFF). (Entered: 04/08/2019) |
| 04/08/2019 | 2 | Summons Issued as to JMA Ventures LLC. (cv, COURT STAFF) (Filed on 4/8/2019) (Entered: 04/08/2019) |
| 04/08/2019 | 3 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (cv, COURT STAFF) (Filed on 4/8/2019) (Entered: 04/08/2019)** |
| 04/18/2019 | 4 | SUMMONS Returned Executed by Peter Strojnik, Sr. JMA Ventures LLC served on 4/11/2019, answer due 5/2/2019. (cv, COURT STAFF) (Filed on 4/18/2019) (Entered: 04/18/2019) |
| 05/01/2019 | 5 | STIPULATION *to Extend Defendant's Time to File Responsive Pleading to Plaintiff's Complaint* filed by JMA Ventures LLC. (Sahouria, Janelle) (Filed on 5/1/2019) (Entered: 05/01/2019) |
| 05/21/2019 | 6 | CLERK'S NOTICE Re: Consent or Declination: Plaintiff/Defendant shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. Consent/Declination due by 6/4/2019. (Attachments: # 1 Certificate/Proof of Service) (dmcS, COURT STAFF) (Filed on 5/21/2019) (Entered: 05/21/2019) |
| 06/03/2019 | 7 | NOTICE of settlement by Peter Strojnik, Sr (cv, COURT STAFF) (Filed on 6/3/2019) (Entered: 06/03/2019) |
| 06/04/2019 | 8 | **ORDER TO SHOW CAUSE RE SETTLEMENT Re: Dkt. No. 7 . Dispositive Motion due by 7/3/2019. Show Cause Response due by 7/9/2019. Order to Show Cause Hearing set for 7/16/2019 10:00 AM.Signed by Judge Susan van Keulen on 6/4/19. (Attachments: # 1 Certificate/Proof of Service)(dmcS, COURT STAFF) (Filed on 6/4/2019) (Entered: 06/04/2019)** |
| 07/01/2019 | 9 | NOTICE of Voluntary Dismissal by Peter Strojnik, Sr (cv, COURT STAFF) (Filed on 7/1/2019) (Entered: 07/01/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/05/2019 17:48:43 | | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-01876-SVK |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT 21

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-02529-SVK**

Strojnik v. Mirabel Hotel and Restaurant Group LLC
Assigned to: Magistrate Judge Susan van Keulen
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 05/10/2019
Jury Demand: Both
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**                                 represented by   **Peter Strojnik, Sr.**
                                                                        2375 E. Camelback Rd.
                                                                        Suite 600
                                                                        Pheonix, AZ 85016
                                                                        (602) 524-6602
                                                                        PRO SE

V.

**Defendant**

**Mirabel Hotel and Restaurant Group LLC**              represented by   **Cathleen M Giovannini**
*doing business as*                                                     JRG Attorneys at Law
L'Auberge Carmel                                                        318 Cayuga Street
                                                                        Salinas, CA 93901
                                                                        831-754-2444
                                                                        Fax: 831-269-7143
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Stephan Allen Barber**
                                                                        JRG Attorneys at Law
                                                                        318 Cayuga Street
                                                                        Salinas, CA 93901
                                                                        (831) 754-2444
                                                                        Fax: (831) 269-7089
                                                                        Email: Steve@jrgattorneys.com
                                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/10/2019 | 1 | COMPLAINT against Mirabel Hotel and Restaurant Group LLC (Filing fee $ 400.). Filed byPeter Strojnik, Sr. Consent/Declination due by 5/24/2019. (cv, COURT STAFF) (Filed on 5/10/2019) (Additional attachment(s) added on 5/10/2019: # 1 Exhibit Booking Website, # 2 Civil Cover Sheet) (cv, COURT STAFF). (Entered: 05/10/2019) |
| 05/10/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (cv, COURT STAFF) (Filed on 5/10/2019) (Entered: 05/10/2019)** |
| 05/10/2019 | 3 | Summons Issued as to Mirabel Hotel and Restaurant Group LLC. (cv, COURT STAFF) (Filed on 5/10/2019) (cv, COURT STAFF). (Entered: 05/10/2019) |
| 05/28/2019 | 4 | SUMMONS Returned Executed by Peter Strojnik, Sr. Mirabel Hotel and Restaurant Group LLC served on 5/16/2019, answer due 6/6/2019. (cv, COURT STAFF) (Filed on 5/28/2019) (Entered: 05/29/2019) |
| 06/25/2019 | 5 | ANSWER to Complaint byMirabel Hotel and Restaurant Group LLC. (Attachments: # 1 Certificate/Proof of Service)(Barber, Stephan) (Filed on 6/25/2019) (Entered: 06/25/2019) |
| 06/25/2019 | 6 | CERTIFICATE OF SERVICE by Mirabel Hotel and Restaurant Group LLC re 5 Answer to Complaint *(by mail and email to Plaintiff)* (Barber, Stephan) (Filed on 6/25/2019) (Entered: 06/25/2019) |
| 07/09/2019 | 7 | CLERK's NOTICE Re: Consent or Declination: Plaintiff/Defendant shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. Consent/Declination due by 7/16/2019. (Attachments: # 1 Certificate/Proof of Service) (dmcS, COURT STAFF) (Filed on 7/9/2019) (Entered: 07/09/2019) |
| 07/09/2019 | 8 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Mirabel Hotel and Restaurant Group LLC.. (Barber, Stephan) (Filed on 7/9/2019) (Entered: 07/09/2019) |
| 07/17/2019 | 9 | CLERK's NOTICE Re: Consent or Declination: Plaintiff shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (Party/parties were also notified via telephone) Consent/Declination due by 7/24/2019. (Attachments: # 1 Certificate/Proof of Service) (dmcS, COURT STAFF) (Filed on 7/17/2019) (Entered: 07/17/2019) |
| 07/22/2019 | 10 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr.. (cv, COURT STAFF) (Filed on 7/22/2019) (Entered: 07/22/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/05/2019 17:49:10 | | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-02529-SVK |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**EXHIBIT 22**

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-02556-WHO**

Strojnik v. VY Verasa Commercial Company LLC et al
Assigned to: Judge William H. Orrick
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 05/15/2019
Jury Demand: Defendant
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by **Peter Strojnik, Sr.**
7847 N. Central Avenue
Pheonix, AZ 85020
(602) 524-6602
PRO SE

V.

**Defendant**

**VY Verasa Commercial Company LLC**
*doing business as*
The Westin Verasa Napa

represented by **Gregory F. Hurley**
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Fourth Floor
Costa Mesa, CA 92626-1993
714-513-5100
Fax: 714-513-5130
Email: GHurley@sheppardmullin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Greg Hurley**

**Defendant**

**Jane Doe Hurley**

**Defendant**

**Sheppard Mullin**
*a law firm*

represented by **Bradley James Leimkuhler**
Sheppard Mullin Richter and Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
714-513-5100
Fax: 714-513-5100
Email: bleimkuhler@sheppardmullin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/13/2019 | 1 | COMPLAINT; 1. AMERICANS WITH DISABILITIE ACT; 2. DISCRIMINATION IN PUBLIC ACCOMMODATIONS (STATE LAW); 3. NEGLIGENCE; 4. THREATS 42 USC 12203 AND 28 CFR 36.206; JURY TRIAL REQUESTED; against Jane Doe Hurley, Greg Hurley, Sheppard Mullin, VY Verasa Commercial Company LLC (Filing fee $ 400.00., Receipt Number 34611142439). Filed byPeter Strojnik, Sr. (Attachments: # 1 Envelope)(aaaS, COURT STAFF) (Filed on 5/13/2019) (Additional attachment(s) added on 5/15/2019: # 2 Civil Cover Sheet) (aaaS, COURT STAFF). (Additional attachment(s) added on 5/15/2019: # 3 Civil Cover Sheet) (aaaS, COURT STAFF). (Entered: 05/15/2019) |
| 05/13/2019 | 2 | **ERRONEOUSLY E-FILED, DISREGARD**<br>Summons Issued as to Peter Strojnik, Sr. (aaaS, COURT STAFF) (Filed on 5/13/2019) (Entered: 05/15/2019) |
| 05/13/2019 | 3 | Summons Issued as to Jane Doe Hurley, Greg Hurley, Sheppard Mullin, VY Verasa Commercial Company LLC. (aaaS, COURT STAFF) (Filed on 5/13/2019) (Entered: 05/15/2019) |
| 05/13/2019 | 4 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Signed by Judge William H. Orrick on 05/13/19. (Attachments: # 1 Notice of Eligibility)(aaaS, COURT STAFF) (Filed on 5/13/2019) (Entered: 05/15/2019)** |
| 06/03/2019 | 5 | CERTIFICATE OF SERVICE; by Peter Strojnik, Sr (Attachments: # 1 Envelope)(aaaS, COURT STAFF) (Filed on 6/3/2019) (Entered: 06/04/2019) |
| 06/03/2019 | 6 | CERTIFICATE OF SERVICE: RETURN OF SERVICE; DECLARATION OF DUE DILIGENCE; DECLARATION OF MAILING; by Peter Strojnik, Sr (aaaS, COURT STAFF) (Filed on 6/3/2019) (Entered: 06/04/2019) |
| 06/03/2019 | 7 | CERTIFICATE OF SERVICE: DECLARATION OF MAILING; by Peter Strojnik, Sr (aaaS, COURT STAFF) (Filed on 6/3/2019) |

|            |     | (Entered: 06/04/2019) |
|------------|-----|------------------------|
| 06/03/2019 | 8   | CERTIFICATE OF SERVICE: DECLARATION OF DUE DILIGENCE; DECLARATION OF MAILING; by Peter Strojnik, Sr (aaaS, COURT STAFF) (Filed on 6/3/2019) (Entered: 06/04/2019) |
| 07/06/2019 | 9   | ANSWER to 1 Complaint with Jury Demand ; by VY Verasa Commercial Company LLC. (Hurley, Gregory) (Filed on 7/6/2019) Modified on 7/8/2019 (aaaS, COURT STAFF). (Entered: 07/06/2019) |
| 07/09/2019 | 10  | Corporate Disclosure Statement by VY Verasa Commercial Company LLC identifying Corporate Parent VY Napa Holdings LLC for VY Verasa Commercial Company LLC. (Hurley, Gregory) (Filed on 7/9/2019) (Entered: 07/09/2019) |
| 07/15/2019 | 11  | ACCEPTANCE OF SERVICE OF PROCESS; by Peter Strojnik, Sr (Attachments: # 1 Envelope)(aaaS, COURT STAFF) (Filed on 7/15/2019) (Entered: 07/15/2019) |
| 07/30/2019 | 12  | MOTION to Dismiss filed by Sheppard Mullin. Motion Hearing set for 9/4/2019 02:00 PM in San Francisco, Courtroom 02, 17th Floor before Judge William H. Orrick. Responses due by 8/13/2019. Replies due by 8/20/2019. (Attachments: # 1 Declaration of Gregory F. Hurley, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proposed Order)(Leimkuhler, Bradley) (Filed on 7/30/2019) (Entered: 07/30/2019) |

| PACER Service Center | | |
|----------------------|---|---|
| Transaction Receipt | | |
| 08/05/2019 17:49:37 | | |
| PACER Login: | ashleymilnes:5620455:4376970 | Client Code: | h9374-12 |
| Description: | Docket Report | Search Criteria: | 3:19-cv-02556-WHO |
| Billable Pages: | 2 | Cost: | 0.20 |

# EXHIBIT 23

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-03006-NC**

Strojnik v. Hyatt International Corporation
Assigned to: Judge Nathanael M. Cousins
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 05/31/2019
Jury Demand: None
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by **Peter Strojnik, Sr.**
7847 N. Central Ave.
Pheonix, AZ 85020
PRO SE

V.

**Defendant**

**Hyatt International Corporation**
*doing business as*
Hyatt Carmel Highlands

represented by **Tracy Anne Warren**
Buchalter
655 W. Broadway, Suite 1625
San Diego, CA 92101
619-219-5335
Fax: 949-720-0182
Email: twarren@buchalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/31/2019 | 1 | COMPLAINT against Hyatt International Corporation (Filing fee $ 400-Paid.) Filed by Peter Strojnik, Sr. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(sfbS, COURT STAFF) (Filed on 5/31/2019) (Entered: 05/31/2019) |
| 05/31/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act.** **(sfbS, COURT STAFF) (Filed on 5/31/2019) (Entered: 05/31/2019)** |
| 05/31/2019 | 3 | Summons Issued as to Hyatt International Corporation. (sfbS, COURT STAFF) (Filed on 5/31/2019) (Entered: 05/31/2019) |
| 07/02/2019 | 4 | SUMMONS Returned Executed by Peter Strojnik, Sr. Hyatt International Corporation served on 6/28/2019, answer due 7/19/2019. (sfbS, COURT STAFF) (Filed on 7/2/2019) (Entered: 07/02/2019) |
| 07/09/2019 | 5 | CLERK'S NOTICE SETTING Initial Case Management Conference for 11/6/2019 at 10:00 AM before Judge Nathanael Cousins in San Jose, Courtroom 5, 4th Floor. Case Management Statement due by 10/30/2019.<br><br>All parties are requested to file a consent or declination to proceed before a magistrate judge by 7/23/2019. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>(Attachments: # 1 Certificate/Proof of Service) (lmh, COURT STAFF) (Filed on 7/9/2019) (Entered: 07/09/2019) |
| 07/31/2019 | 6 | STIPULATION re 1 Complaint *Stipulation to Extend Deadline for Responsive Pleading* filed by Hyatt International Corporation. (Warren, Tracy) (Filed on 7/31/2019) (Entered: 07/31/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:50:07 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-03006-NC |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 24

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-03082-NC**

Strojnik v. Xenia Hotels & Resorts, Inc.
Assigned to: Judge Nathanael M. Cousins
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 06/04/2019
Jury Demand: Plaintiff
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**
       represented by    **Peter Strojnik, Sr.**
7847 N. Central Ave.
Pheonix, AZ 85020
602-524-6602
PRO SE

V.

**Defendant**

**Xenia Hotels & Resorts, Inc.**
*doing business as*
Hyatt Regency Santa Clara
       represented by    **Tracy Anne Warren**
Buchalter
655 W. Broadway, Suite 1625
San Diego, CA 92101
619-219-5335
Fax: 949-720-0182
Email: twarren@buchalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2019 | 1 | COMPLAINT against Xenia Hotels & Resorts, Inc. dba Hyatt Regency Santa Clara (Filing fee $ 400-Paid). Filed by Peter Strojnik, Sr. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(sfbS, COURT STAFF) (Filed on 6/4/2019) (Entered: 06/04/2019) |
| 06/04/2019 | 2 | Summons Issued as to Xenia Hotels & Resorts, Inc. dba Hyatt Regency Santa Clara (sfbS, COURT STAFF) (Filed on 6/4/2019) (Entered: 06/04/2019) |
| 06/04/2019 | 3 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (sfbS, COURT STAFF) (Filed on 6/4/2019) (Entered: 06/04/2019)** |
| 07/08/2019 | 4 | ANSWER to Complaint byXenia Hotels & Resorts, Inc.. (Warren, Tracy) (Filed on 7/8/2019) (Entered: 07/08/2019) |
| 07/08/2019 | 5 | Certificate of Interested Entities by Xenia Hotels & Resorts, Inc. re 4 Answer to Complaint (Attachments: # 1 Certificate/Proof of Service Answer to Complaint and Corporate Disclosures)(Warren, Tracy) (Filed on 7/8/2019) (Entered: 07/08/2019) |
| 07/09/2019 | 6 | CLERK'S NOTICE SETTING Initial Case Management Conference for 11/6/2019 at 10:00 AM before Judge Nathanael M. Cousins in San Jose, Courtroom 5, 4th Floor. Case Management Statement due by 10/30/2019.<br><br>All parties are requested to file a consent or declination to proceed before a magistrate judge by 7/23/2019. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>(Attachments: # 1 Certificate/Proof of Service) (lmh, COURT STAFF) (Filed on 7/9/2019) (Entered: 07/09/2019) |
| 07/11/2019 | 7 | SUMMONS Returned Executed by Peter Strojnik, Sr. Xenia Hotels & Resorts, Inc. served on 6/17/2019, answer due 7/8/2019. (sfbS, COURT STAFF) (Filed on 7/11/2019) (Entered: 07/11/2019) |
| 07/29/2019 | 8 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr.. (dhmS, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/31/2019) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 08/05/2019 17:52:44 | | |
| PACER Login: | ashleymilnes:5620455:4376970 | Client Code: | h9374-12 |
| Description: | Docket Report | Search Criteria: | 5:19-cv-03082-NC |
| Billable Pages: | 1 | Cost: | 0.10 |

**EXHIBIT 25**

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:19-cv-03122-NC**

Strojnik, Sr. v. First & Mission Properties LLC      Date Filed: 06/05/2019
Assigned to: Judge Nathanael M. Cousins      Jury Demand: None
Cause: 42:12101 Americans w/ Disabilities Act (ADA)      Nature of Suit: 446 American with Disabilities - Other
     Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**          represented by   **Peter Strojnik, Sr.**
     7847 N. Central Ave.
     Pheonix, AZ 85020
     602-524-6602
     PRO SE

V.

**Defendant**

**First & Mission Properties LLC**        represented by   **Julia Nell Sarnoff**
*doing business as*      Seyfarth Shaw LLP
Hilton Santa Clara      975 F. St. NW
     Washington, DC 20008
     202-828-3535
     Fax: 202-828-5393
     Email: jsarnoff@seyfarth.com
     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/05/2019 | 1 | COMPLAINT against First & Mission Properties LLC (Filing fee $ 400-paid). Filed by Peter Strojnik, Sr. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(sfbS, COURT STAFF) (Filed on 6/5/2019) (Entered: 06/05/2019) |
| 06/05/2019 | 2 | Summons Issued as to First & Mission Properties LLC. (sfbS, COURT STAFF) (Filed on 6/5/2019) (Entered: 06/05/2019) |
| 06/05/2019 | 3 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (sfbS, COURT STAFF) (Filed on 6/5/2019) (Entered: 06/05/2019)** |
| 06/24/2019 | 4 | SUMMONS Returned Executed by Peter Strojnik, Sr. First & Mission Properties LLC served on 6/17/2019, answer due 7/8/2019. (sfbS, COURT STAFF) (Filed on 6/24/2019) (Entered: 06/25/2019) |
| 07/02/2019 | 5 | STIPULATION re 1 Complaint *First Stipulation for Extension of Time to Respond to Complaint* filed by First & Mission Properties LLC. (Sarnoff, Julia) (Filed on 7/2/2019) (Entered: 07/02/2019) |
| 07/09/2019 | 6 | CLERK'S NOTICE SETTING Initial Case Management Conference for 11/6/2019 at 10:00 AM before Judge Nathanael Cousins in San Jose, Courtroom 5, 4th Floor. Case Management Statement due by 10/30/2019.<br><br>All parties are requested to file a consent or declination to proceed before a magistrate judge by 7/23/2019. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>(Attachments: # 1 Certificate/Proof of Service) (lmh, COURT STAFF) (Filed on 7/9/2019) (Entered: 07/09/2019) |
| 07/29/2019 | 7 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr.. (dhmS, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/31/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:54:12 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 5:19-cv-03122-NC |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**EXHIBIT 26**

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-03377-SK**

Strojnik v. Wilson
Assigned to: Magistrate Judge Sallie Kim
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 06/13/2019
Jury Demand: None
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by **Peter Strojnik, Sr.**
7847 N. Central Avenue
Pheonix, AZ 85020
(602) 524-6602
PRO SE

V.

**Defendant**

**Kenneth C. Wilson**
*doing business as*
Calderwood Inn

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2019 | 1 | COMPLAINT (1) Americans with Disabilities Act; (2) Discrimination in Public Accommodations (State Law); (3) Negligence; Jury Trial Requested against Kenneth C. Wilson, (Filing Fee: $400.00, 34611143020). Filed by Peter Strojnik, Sr.. Consent/Declination due by 6/27/2019. (Attachments: #(1) Civil Cover Sheet, #(2) Filing Fee Receipt) (tnS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/14/2019) |
| 06/13/2019 | 2 | Summons Issued as to Defendant Kenneth C. Wilson. (tnS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/14/2019) |
| 06/13/2019 | 3 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (Attachments: #(1) Standing Order for Mag. Judge Sallie Kim, #(2) Standing Order for All Judges)(tnS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/14/2019)** |
| 07/12/2019 | 4 | CLERK'S NOTICE Re: Consent or Declination: Plaintiff shall file a consent or declination to proceed before a magistrate judge by 7/26/2019. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (mklS, COURT STAFF) (Filed on 7/12/2019) (Entered: 07/12/2019) |
| 07/18/2019 | 5 | SUMMONS Returned Executed filed by Peter Strojnik, Sr. Served Upon Defendant Kenneth C. Wilson served on 7/12/2019, answer due 8/2/2019. (tnS, COURT STAFF) (Filed on 7/18/2019) (Entered: 07/19/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:54:56 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-03377-SK |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 27

CONSENT,ProSe

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-03375-LB**

Strojnik v. Madrona Manor Wine Country Inn & Restaurant Inc.
Assigned to: Magistrate Judge Laurel Beeler
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 06/13/2019
Jury Demand: Both
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by **Peter Strojnik, Sr.**
7847 N. Central Ave.
Phoenix, AZ 85020
602-524-6602
PRO SE

V.

**Defendant**

**Madrona Manor Wine Country Inn & Restaurant Inc.**
*doing business as*
Madrona Manor

represented by **John A. Holdredge**
Geary Shea O'Donnell Grattan & Mitchell, P.C.
90 South E Street, Suite 300
Santa Rosa, CA 95404
707-545-1660
Email: jholdredge@gearylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Magdalena Ridley McQuilla**
Geary Shea O'Donnell Grattan & Mitchell, P.C.
90 South E Street, Suite 300
Santa Rosa, CA 95404
707-545-1660
Fax: 707-545-1876
Email: mridley@gearylaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2019 | 1 | COMPLAINT against Madrona Manor Wine Country Inn & Restaurant Inc. (Filing fee $ 400.). Filed byPeter Strojnik, Sr. Consent/Declination due by 6/27/2019. (fabS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019) |
| 06/13/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (fabS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019)** |
| 06/13/2019 | 3 | Summons Issued as to Madrona Manor Wine Country Inn & Restaurant Inc.. (fabS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019) |
| 06/18/2019 | 4 | **NOTICE AND ORDER: The attached notice and order notifies the plaintiff of resources available, attaches the district's handbook for litigants who do not have a lawyer, includes a flyer for contacting the court's help desk and instructs the plaintiff about serving the defendants. Signed by Judge Laurel Beeler on 06/18/2019. (Attachments: # 1 Certificate/Proof of Service, # 2 Self Help Flyer, # 3 Pro Se Handbook)(ejkS, COURT STAFF) (Filed on 6/18/2019) (Entered: 06/18/2019)** |
| 06/28/2019 | 5 | CLERK'S NOTICE Re: Consent or Declination: Plaintiff shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. **Consent/Declination due by 7/12/2019.** (Attachments: # 1 Certificate/Proof of Service) (ejkS, COURT STAFF) (Filed on 6/28/2019) (Entered: 06/28/2019) |
| 07/15/2019 | 6 | CLERK'S SECOND NOTICE Re: Consent or Declination: Plaintiff shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. **Consent/Declination due by 7/29/2019.** (Attachments: # 1 Certificate/Proof of Service) (ejkS, COURT STAFF) (Filed on 7/15/2019) (Entered: 07/15/2019) |
| 07/18/2019 | 7 | SUMMONS Returned Executed by Peter Strojnik, Sr. Madrona Manor Wine Country Inn & Restaurant Inc. served on 7/12/2019, answer due 8/2/2019. (fabS, COURT STAFF) (Filed on 7/18/2019) (Entered: 07/19/2019) |
| 07/22/2019 | 8 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Peter Strojnik, Sr.. (fabS, COURT STAFF) (Filed on 7/22/2019) (Entered: 07/23/2019) |
| 07/29/2019 | 9 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Madrona Manor Wine Country Inn & Restaurant Inc... (McQuilla, Magdalena) (Filed on 7/29/2019) (Entered: 07/29/2019) |
| 08/01/2019 | 10 | ANSWER to Complaint with Jury Demand byMadrona Manor Wine Country Inn & Restaurant Inc.. (Holdredge, John) (Filed on 8/1/2019) (Entered: 08/01/2019) |
| 08/01/2019 | 11 | Corporate Disclosure Statement by Madrona Manor Wine Country Inn & Restaurant Inc. (Holdredge, John) (Filed on 8/1/2019) (Entered: |

| | | 08/01/2019) |
|---|---|---|
| 08/01/2019 | 12 | Certificate of Interested Entities by Madrona Manor Wine Country Inn & Restaurant Inc. (Holdredge, John) (Filed on 8/1/2019) (Entered: 08/01/2019) |

| PACER Service Center | | | | |
|---|---|---|---|---|
| Transaction Receipt | | | | |
| 08/05/2019 17:55:22 | | | | |
| PACER Login: | ashleymilnes:5620455:4376970 | Client Code: | h9374-12 | |
| Description: | Docket Report | Search Criteria: | 3:19-cv-03375-LB | |
| Billable Pages: | 2 | Cost: | 0.20 | |

**EXHIBIT 28**

CLOSED,ProSe

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:19-cv-03376-TSH

Strojnik v. Fowler LLC
Assigned to: Magistrate Judge Thomas S. Hixson
Cause: 42:12101 Americans w/ Disabilities Act (ADA)

Date Filed: 06/13/2019
Date Terminated: 07/17/2019
Jury Demand: Plaintiff
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**

represented by   **Peter Strojnik, Sr.**
7847 N. Central Avenue
Pheonix, AZ 85020
602-524-6602
PRO SE

V.

**Defendant**

**Fowler LLC**
*doing business as*
Honor Mansion

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2019 | 1 | COMPLAINT against Fowler LLC (Filing fee $ 400-#34611143022). Filed byPeter Strojnik, Sr. Consent/Declination due by 6/27/2019. (Attachments: # 1 Civil Cover Sheet)(hdjS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019) |
| 06/13/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (hdjS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019)** |
| 06/13/2019 | 3 | NOTICE Regarding Resources Available to Pro Se Litigants by Peter Strojnik, Sr (hdjS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019) |
| 06/13/2019 | 4 | Summons Issued as to Fowler LLC. (hdjS, COURT STAFF) (Filed on 6/13/2019) (Entered: 06/18/2019) |
| 07/01/2019 | 5 | CERTIFICATE OF SERVICE (hdjS, COURT STAFF) (Filed on 7/1/2019) (Additional attachment(s) added on 7/10/2019: # 1 Envelope) (hdjS, COURT STAFF). (Entered: 07/10/2019) |
| 07/15/2019 | 6 | NOTICE of Voluntary Dismissal by Peter Strojnik, Sr (hdjS, COURT STAFF) (Filed on 7/15/2019) (Entered: 07/17/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:58:48 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** 3:19-cv-03376-TSH |
| **Billable Pages:** | 1 | **Cost:** 0.10 |

# EXHIBIT 29

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-03583-JSC**

Strojnik v Napa LW Hotel Associates et al         Date Filed: 06/20/2019
Assigned to: Magistrate Judge Jacqueline Scott Corley    Jury Demand: Plaintiff
Cause: 28:1331 Fed. Question               Nature of Suit: 446 American with Disabilities - Other
                                       Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**                    represented by    **Peter Strojnik, Sr.**
                                          7847 N. Central Ave.
                                          Pheonix, AZ 85020
                                          602-524-6602
                                          PRO SE

V.

**Defendant**

**Napa LW Hotel Associates**
*doing business as*
Carneros Resort and Spa

| Date Filed | # | Docket Text |
|---|---|---|
| 06/20/2019 | 1 | COMPLAINT re (1) Americans with Disabilities Act; (2) Discrimination in Public Accommodations (State Law) and (3) Negligence. JURY TRIAL REQUESTED against Napa LW Hotel Associates (Filing fee of $ 400 paid. Receipt # 54611018117.) Filed by Peter Strojnik, Sr. Consent/Declination due by 7/5/2019. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(bwS, COURT STAFF) (Filed on 6/20/2019) Modified on 6/20/2019 (bwS, COURT STAFF). (Entered: 06/20/2019) |
| 06/20/2019 | 2 | Summons Issued as to Napa LW Hotel Associates. (bwS, COURT STAFF) (Filed on 6/20/2019) (Entered: 06/20/2019) |
| 06/20/2019 | 3 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (bwS, COURT STAFF) (Filed on 6/20/2019) (Entered: 06/20/2019)** |
| 07/26/2019 | 4 | SUMMONS Returned Executed by Peter Strojnik, Sr. Napa LW Hotel Associates served on 7/17/2019, answer due 8/7/2019. (slhS, COURT STAFF) (Filed on 7/26/2019) (Entered: 07/26/2019) |
| 07/30/2019 | 5 | CLERK'S NOTICE Re: Consent or Declination: **Plaintiffs** shall file a consent or declination to proceed before a magistrate judge by **8/13/2019.** Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (ahm, COURT STAFF) (Filed on 7/30/2019) (Entered: 07/30/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 18:01:03 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-03583-JSC |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**EXHIBIT 30**

ProSe

**U.S. District Court**
**California Northern District (Oakland)**
**CIVIL DOCKET FOR CASE #: 4:19-cv-03968-KAW**

Strojnik v. WCH Napa LLC                             Date Filed: 07/10/2019
Assigned to: Magistrate Judge Kandis A. Westmore         Jury Demand: Plaintiff
Cause: 42:12101 Americans w/ Disabilities Act (ADA)       Nature of Suit: 446 American with Disabilities - Other
                                                      Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**                     represented by    **Peter Strojnik, Sr.**
                                                      7847 N. Central Ave.
                                                      Phoenix, AZ 85020
                                                      PRO SE

V.

**Defendant**

**WCH Napa LLC**
*doing business as*
River Terrace Inn - a Nobel House Hotel

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2019 | 1 | COMPLAINT against WCH Napa LLC (Filing fee $ 400; Receipt No. 34611143508). Filed by Peter Strojnik, Sr. Consent/Declination due by 7/24/2019. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt, # 3 Envelope)(slhS, COURT STAFF) (Filed on 7/10/2019) (Entered: 07/11/2019) |
| 07/10/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act.** (slhS, COURT STAFF) (Filed on 7/10/2019) (Entered: 07/11/2019) |
| 07/10/2019 | 3 | Summons Issued as to WCH Napa LLC. (slhS, COURT STAFF) (Filed on 7/10/2019) (Entered: 07/11/2019) |
| 07/29/2019 | 4 | CLERK'S NOTICE Re: Consent or Declination: Plaintiff shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. Consent/Declination due by 8/12/2019. (Attachments: # 1 Certificate/Proof of Service) (dtmS, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/29/2019) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2019 17:59:45 | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 4:19-cv-03968-KAW |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**EXHIBIT 31**

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-03980-JCS**

Strojnik v. 539 Johnson Street, LLC                          Date Filed: 07/10/2019
Assigned to: Magistrate Judge Joseph C. Spero               Jury Demand: Plaintiff
Cause: 42:12101 Americans w/ Disabilities Act (ADA)         Nature of Suit: 446 American with Disabilities - Other
                                                            Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr.**                     represented by  **Peter Strojnik, Sr.**
                                                            7847 N. Central Avenue
                                                            Pheonix, AZ 85020
                                                            (602) 524-6602
                                                            PRO SE

V.

**Defendant**

**539 Johnson Street, LLC**
*doing business as*
Grape Leaf Inn

| Date Filed | # | Docket Text |
|---|---|---|
| 07/10/2019 | 1 | COMPLAINT; Jury Trial Requested against 539 Johnson Street, LLC (Filing fee $ 400.00. Receipt Number 34611143521). Filed by Peter Strojnik, Sr. Consent/Declination due by 7/24/2019. (Attachments: # 1 Civil Cover Sheet, # 2 Filing Fee Receipt) (gbaS, COURT STAFF) (Filed on 7/10/2019) (Entered: 07/11/2019) |
| 07/10/2019 | 2 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act. (gbaS, COURT STAFF) (Filed on 7/10/2019) (Entered: 07/11/2019)** |
| 07/11/2019 | 3 | Summons Issued as to 539 Johnson Street, LLC. (gbaS, COURT STAFF) (Filed on 7/11/2019) (Entered: 07/11/2019) |
| 07/29/2019 | 4 | CLERK'S NOTICE Re: Consent or Declination: Plaintiff shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (Party/parties were also notified via telephone or email.) Consent/Declination due by 8/12/2019. (klhS, COURT STAFF) (Filed on 7/29/2019) (Entered: 07/29/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/05/2019 18:00:13 | | | |
| **PACER Login:** | ashleymilnes:5620455:4376970 | **Client Code:** | h9374-12 |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-03980-JCS |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**EXHIBIT 32**

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:19-cv-03981-RS**

Strojnik, Sr v. Cypress Inn Investors
Assigned to: Judge Richard Seeborg
Cause: 28:1331 Fed. Question

Date Filed: 07/11/2019
Jury Demand: Plaintiff
Nature of Suit: 446 American with Disabilities - Other
Jurisdiction: Federal Question

**Plaintiff**

**Peter Strojnik, Sr**

represented by **Peter Strojnik, Sr**
7847 N. Central Avenue
Phoenix, AZ 85020
602-524-6602
PRO SE

V.

**Defendant**

**Cypress Inn Investors**
*a California LP*
*doing business as*
The Vagabond's House

| Date Filed | # | Docket Text |
|---|---|---|
| 07/11/2019 | 1 | COMPLAINT against Cypress Inn Investors (Filing fee of $ 400 paid, receipt #54611018134.). Filed by Peter Strojnik, Sr. (Attachments: # 1 Civil Cover Sheet)(bwS, COURT STAFF) (Filed on 7/11/2019) Modified on 7/11/2019 (bwS, COURT STAFF). (Additional attachment(s) added on 7/15/2019: # 2 Envelope) (gbaS, COURT STAFF). (Entered: 07/11/2019) |
| 07/11/2019 | | Case REASSIGNED to Judge Richard Seeborg. (bwS, COURT STAFF) (Filed on 7/11/2019) (Entered: 07/11/2019) |
| 07/11/2019 | 2 | Summons Issued as to Cypress Inn Investors. (bwS, COURT STAFF) (Filed on 7/11/2019) (Entered: 07/11/2019) |
| 07/11/2019 | 3 | **Initial Case Management Scheduling Order for Cases Asserting Denial of Right of Access under Americans with Disabilities Act.** (gbaS, COURT STAFF) (Filed on 7/11/2019) (Entered: 07/15/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/05/2019 18:23:36 | | | |
| PACER Login: | ashleymilnes:5620455:4376970 | Client Code: | h9374-12 |
| Description: | Docket Report | Search Criteria: | 3:19-cv-03981-RS |
| Billable Pages: | 1 | Cost: | 0.10 |