Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

FILED

AUG 21 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

Case No: 4:19-CV-03983-DMR

PETER STROJNIK (SR.),

Plaintiff,

vs.

IA LODGING NAPA FIRST LLC., DBA
ANDAZ NAPA

Defendant.

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS**

### INTRODUCTION AND SUMMARY

In this facial jurisdictional attack, Defendant moves to dismiss Plaintiff's Complaint on four bases:

1. That the Complaint fails to allege injury in fact.

2. That the Complaint fails to allege "genuine" deterrence.

3. That Plaintiff's Unruh and DPA claims must be dismissed because (1) the federal claim must be dismissed (2) Plaintiff did not actually visit Defendant's Hotel and (3) there is lack of territorial jurisdiction.

4. That Plaintiff's negligence claims must be dismissed if the federal ADA claim is dismissed.

*Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("CREEC") disposes of items 1 and 2. For reasons stated below, items 3 and 4 are not well taken because (1) the federal claim is well pled and should not be dismissed, (2) Plaintiff actually visited the hotel, *see* below section titled

1   *Specific Facts Clarifying Jurisdictional Allegations In The Complaint*, supported by

2   Plaintiff's Declaration, and (3) Plaintiff is subject to California's territorial jurisdiction.

3         On pages 2 and 3 Defendant impermissibly, indeed deceptively, delves into

4   Plaintiff's character. There, Defendant's lead barney is that Plaintiff is a bad person. The

5   9th Circuit Court of Appeals is decidedly unimpressed with such personal attacks. *See In*

6   *Re Plise,* No. 15-15786 (9th Cir. 2018) (unpublished) where the Court noted:

7
> Counsel makes several ad hominem attacks alleging unethical behavior on
> the part of opposing counsel, former co-counsel, the prior judges who have

8
> heard this matter, and the trustee. We are, in short, hugely unimpressed with
> counsel's efforts, which we find both improper and unprofessional.

9

10         As the 9th Circuit Court of Appeals, so does Plaintiff find Defendant's bad person

11   argument unworthy of learned counsel.  Plaintiff hopes that Defendant's exuberance is

12   temporary and that this scandalous and impertinent[1], but litigating privileged,

13   disparagement transient.  The regretful segregationist events that transpired in Arizona are

14   well known in the ADA community and are more fully described in Declaration of Peter

    Strojnik, in Section A *Historical Perspective*, pp. 1-5.

15         The entire bad person argument is obviously intended to provoke anger and

16   dislike.  The mere mention of Defendant's utterly irrelevant bad person narrative is

17   reminiscent of the immortal words of the Honorable Judge Melinda Harmon who issued

18   this striking rebuke to hostility against ADA Plaintiffs:

19

20
> Testers have been an accepted and successful means of enforcing civil rights
> statutes under the Fair Housing Act and Title VII of the Civil Rights Act of

21
> 1964, although a number of courts addressing Title III cases have been
> skeptical, and even hostile. *See* Lee, *Giving Disabled Testers Access to*

22
> *Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers*
> *Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702.

23
> "As a result of both the Attorney General's limited resources and the limited

24
> remedies available to Title III plaintiffs, 'most suits are brought by a small

25
> number of private plaintiffs who view themselves as champions of the
> disabled.' " *Betancourt v. Federated Dept. Stores,* 732 F.Supp.2d 693, 701

26

27 [1] *Wilkerson v. Butler,* 229 F.R.D. 166, 170 (E.D. Cal. 2005) (allegation is "impertinent" if
    it is not responsive or relevant to the issues; it is "scandalous" if it improperly casts a

28     derogatory light on someone.)

1   (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d
2   1047, 1062 (9th Cir. 2007).

3   *Gilkerson v. Chasewood Bank*, 1 F.Supp.3d 570, 596-97 (S.D. Tex., 2014).

4       Far be it from Plaintiff's contention that the Honorable Judge Harmon was directing
5   her comments to anyone associated with this case. Nonetheless, Defendant's Motion is
    evocative of her frank and memorable censure.
6
7       The response to Defendant's unwarranted personal attack is more fully developed
8   in separately filed Declaration of Peter Strojnik, with is by this reference incorporated
    herein.
9
10      The record must be made clear:  Plaintiff comes before the Court as a 67 year old
    disabled veteran seeking redress for violation of his civil rights. No more, no less.
11
12  **SPECIFIC FACTS CLARIFYING JURISDICTIONAL ALLEGATIONS IN THE
    COMPLAINT**

13      Appended hereto is the Declaration of Peter Strojnik addressing (A) Historical
14  Perspective of Plaintiff's Civil Rights Litigation, (B) Plaintiff's Practice Regarding
15  Plaintiff's Civil Rights Litigation and (C) Events Applicable to This Case. Section 3 of the
16  Declaration states the facts clarifying this Court's ADA jurisdiction as follows:

17      25. Declarant and Mrs. Strojnik travel to Napa often between once or twice
            per year to stock up on California wines and spirits.
18
19      26. Declarant travelled to Napa, California, on April 18, 2019, and lodged at
            River Terrace Inn:
20



21
22
23
24
25
26
27
28

3

27. Prior to selecting River Terrace Inn Declarant reviewed both first party and third party booking agent's for River Terrace Hotel and others, including Andaz.

28. Declarant decided on River Terrace Inn because it appeared most suitable for his mobility needs.

29. Upon arrival at River Terrace Hotel, Declarant noted that the Hotel was not ADA compliant.

30. Since Declarant intends to travel to Napa yet again to stock up on California wines and spirits, he visited Andaz to determine if *it* would be suitable for Declarant's mobility needs upon his return to Napa.

31. Declarant noted that Andaz was not suitable for his needs and documented notable ADA violations through photography. The Photographs were incorporated into Declarant's due diligence report [attached to the Declaration].

32. Upon returning home, Declarant issued to Andaz a Courtesy ADA Notice [attached to the Declaration] in the hope that Andaz would immediately correct the ADA deficiencies.

33. Andaz refused to correct the ADA deficiencies and Declarant filed suit [Doc 1].

34. Declarant intends to lodge at Andaz when Andaz becomes fully and completely compliant with the requirements of 28CFR36 and relevant Standards for Accessibility Design as these requirements relate to Declarant's disability.

## MEMORANDUM

### A. Legal Standard

#### 1. Federal Rule of Civil Procedure 12(B)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a given claim. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 12(B)(1) allows defendants to move to dismiss a claim for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(B)(1).

4

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(B)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(B)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the Court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6). *Brick Oven Rest.*, 406 F.Supp.2d at 1124 (citing Moore's Federal Practice § 12.30). This means the court accepts the factual allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 (9th Cir. 2001).

In this case, the attack on jurisdiction is factual; therefore, all well pleaded facts are taken as true.

**2. Supplemental Jurisdiction Under 28 U.S.C. § 1367**

"When a federal court has original jurisdiction over a claim, then the court 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . . .' " *Johnson v. United Rentals Nw., Inc.*, No. 2:11-cv-00204-JAM, 2011 WL 2746110, at *1 (E.D. Cal. July 13, 2011) (quoting 28 U.S.C. § 1367(a)). State claims are part of the same case or controversy as federal claims " 'when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.' " *Kuba v. 1-A Agricultural Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.2d 923, 925 (9th Cir. 2003)).

Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies. *Schutza v. Cuddeback*, 262 F.Supp.3d 1025, 1028 (S.D. Cal. 2017). Under § 1367(c), a district court may decline supplemental jurisdiction over a claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

A court may decline to exercise supplemental jurisdiction under § 1367(c) "under any one of [the statute's] four provisions." *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th Cir. 1998).

The latest statement on this issue was issued on June 28, 2019 by the Honorable Joseph C. Spero in *Castillo-Antonio v. Hernandez*, 19-cv-00672-JCS (ND Cal. 2019) at Doc. 20. Exhibit 1. There, the Court found that the exercise of supplemental jurisdiction over Unruh and DPA claims in an ADA case was warranted. The legal reasoning in *Castillo-Antonio* is incorporated in its entirety.

### 3. Plaintiff's Complaint Alleges Injury in Fact and Deterrence (Defendant's Arguments 1 and 2)

Plaintiff alleges [Doc 1]:

10. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

Plaintiff was aware of Defendant's ADA violations as documented by personal photography in Addendum A "and declined to book a room at Defendant's hotel but booked a room elsewhere." *Id.* at ¶25.

In *CREEC*, the Court of Appeals stated, 867 F.3d at 1099:

A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the

defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, <u>631 F.3d 939</u>, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at 949-50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.

The relevant question, therefore, is whether the Named Plaintiffs are presently deterred from visiting HPT-owned hotels. We limit our evaluation to the pleadings. *See Cent. Delta Water Agency v. United States*, <u>306 F.3d 938</u>, 947 (9th Cir. 2002) (The elements of standing "must be supported at each stage of the litigation in the same manner as any other essential element of the case.").

The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' non-compliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs, " as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, <u>727 F.3d 975</u>, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. Their harm is "concrete and particularized, " and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Plaintiff's allegations of Article III injury in fact are well pled.

**4. The exercise of Supplemental Jurisdiction is Proper (Defendant's Items 3 and 4.**

As indicated above, supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies. *Schutza v. Cuddeback*, 262

7

1    F.Supp.3d 1025, 1028 (S.D. Cal. 2017). Under § 1367(c), a district court may decline

2    supplemental jurisdiction over a claim if:

3         (1) the claim raises a novel or complex issue of State law,
4         (2) the claim substantially predominates over the claim or claims over
          which the district court has original jurisdiction,
5         (3) the district court has dismissed all claims over which it has original
          jurisdiction, or
6         (4) in exceptional circumstances, there are other compelling reasons for
7         declining jurisdiction.

8         Defendant does not rely on any of the exceptions listed in 1367(c).  Instead, it

9    appears to argue (1) the state law claims must be dismissed because it anticipates the

10   dismissal of federal claims (2) Plaintiff did not actually visit Defendant's Hotel and (3)

11   there is lack of territorial jurisdiction.

12        But of course, Plaintiff *did* personally visit the hotel, *personally* took the

13   photographs and *personally* decided to lodge elsewhere and is subject to territorial

14   jurisdiction of California.

15        In California, "[t]wo overlapping laws, the Unruh Civil Rights Act (§ 51) and the

16   Disabled Persons Act (§§ 54-55.3), are the principal sources of state disability access

17   protection." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1044 [150 Cal.Rptr.3d 191, 290 P.3d

18   187] (*Jankey*).) "The Unruh Civil Rights Act broadly outlaws arbitrary discrimination in

19   public accommodations and includes disability as one among many prohibited bases. (§

20   51, subd. (b).) As part of the 1992 reformation of state disability law, the Legislature

21   amended the Unruh Civil Rights Act to incorporate by reference the ADA [the Americans

22   with Disabilities Act of 1990], making violations of the ADA per se violations of the

23   Unruh Civil Rights Act. (§ 51, subd. (f); *Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at

24   pp. 668-669.) This amendment was intended to extend to disabled individuals aggrieved

25   by an ADA violation the full panoply of Unruh Civil Rights Act remedies. (*Munson*, at p.

26   673.) These include injunctive relief, actual damages (and in some cases as much as treble

27   damages), and a *minimum* statutory award of $4,000 per violation. (§ 52, subds. (a), (c)(3);

28   *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058,

     [123 Cal.Rptr.3d 395].)" (*Jankey*, *supra*, 55 Cal.4th at p. 1044.) "The Act is to be given a

1  liberal construction with a view to effectuating its purposes." (*Koire v. Metro Car Wash*
2  (1985) 40 Cal.3d 24, 28 [219 Cal.Rptr. 133, 707 P.2d 195] (*Koire*).)

3  Standing under the Unruh Civil Rights Act is broad. When "any person or group of
4  persons is engaged in conduct of resistance to the full enjoyment of any of the rights
5  described in this section... any person aggrieved by the conduct may bring a civil action...."
6  (§ 52, subd. (c).) As the Supreme Court stated, "[A]n individual plaintiff has standing
7  under the Act if he or she has been the victim of the defendant's discriminatory act."
8  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158
9  P.3d 718] (*Angelucci*).) "The prerequisites for standing to assert statutorily-based causes
10 of action are to be determined from the statutory language, as well as the underlying
11 legislative intent and the purpose of the statute." *Surrey v. True Beginnings* (2008) 168
12 Cal.App.4th 414, 417-18 [85 Cal.Rptr.3d 443] (*Surrey*) "The focus of the standing inquiry
13 is on the plaintiff, not on the issues he or she seeks to have determined; he or she must
14 have a special interest that is greater than the interest of the public at large and that is
15 concrete and actual rather than conjectural or hypothetical." (*Id.* at p. 417.)

16 **A. Jurisdiction under Unruh**

17 As indicated in *Surrey*, Unruh standing is determined from the statute. Civ. Code
18 §51(b) provides:

> (b) All persons within the jurisdiction of this state are free and equal, and no
> matter what their sex, race, color, religion, ancestry, national origin,
> disability, medical condition, genetic information, marital status, sexual
> orientation, citizenship, primary language, or immigration status are entitled
> to the full and equal accommodations, advantages, facilities, privileges, or
> services in all business establishments of every kind whatsoever.

The remedies statute, §52(a) provides:

> (a) **Whoever** denies, aids or incites a denial, or makes any discrimination or
> distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every
> offense for the actual damages, and any amount that may be determined by
> a jury, or a court sitting without a jury, up to a maximum of three times the
> amount of actual damage but in no case less than four thousand dollars
> ($4,000), and any attorney's fees that may be determined by the court in
> addition thereto, **suffered by any person** denied the rights provided in
> Section 51, 51.5, or 51.6. (emphasis supplied)

9

At first glance it appears that §51(b) states the general policy relating to the rights of all persons within the jurisdiction of California while §52(b) describes the remedy. The remedy is available to *any person.* Clearly, the "whoever" refers to Defendant while "any person" refers to Plaintiff.

There is, indubitably, a great deal of confusion relating to Unruh standing and website violations. The 9th Circuit Court of Appeals recently recognized this in its Order Certifying Questions to the California Supreme Court in *White v. Square, Inc.* dated June 7, 2018, case no 16-17137[2].

The *White* case did not, however, arise I the context of *booking* websites. The question of *booking* website, 28CFR36.302(e), has been specifically adopted by the California Legislature. As stated in Unruh §51(f):

> A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.

> Thus, a violation of 28CFR§36.302(e) is also a violation of Unruh.

While the distinction between the statement of policy (§51(b)) and the remedy provided to "any person" (§52(a)) appears dispositive, this does not respond to Defendant's inapposite argument that Plaintiff is not a person "within the jurisdiction" of the State of California. In fact, Plaintiff travels to California quite often and stays in California hotels frequently, thus constantly exposing himself to the territorial jurisdiction of California. At the very minimum, he was within the jurisdiction of California at the

---

[2] In *White*, the following question was certified to the California Supreme Court:

> Does a plaintiff suffer discriminatory conduct, and thus have statutory standing to bring a claim under the Unruh Act, when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that deny the plaintiff full and equal access to its services, and then departs without entering into an agreement with the service provider? Alternatively, does the plaintiff have to engage in some further interaction with the business and its website before the plaintiff will be deemed to have been denied full and equal treatment by the business?

1    time of discrimination and will continue to be subject to it at the time of trial.  *See*
2    separately filed Declaration of Peter Strojnik.

3    **B. Jurisdiction under DPA**

4    The DPA does not have a statement of policy similar to §51(b). It makes no
5    mention of "persons within the jurisdiction of this state".   DPA's statement of policy
6    simply states in § 54(a) and (c):

7        (a)    Individuals with disabilities or medical conditions have the same right
8        as the general public to the full and free use of the streets, highways,
9        sidewalks, walkways, public buildings, medical facilities, including
         hospitals, clinics, and physicians' offices, public facilities, and other public
10       places.
                                        ***
11       (c) A violation of the right of an individual under the Americans with
         Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of
12       this section.

13   Therefore, territorial jurisdiction is completely irrelevant under DPA.

14                   **CONCLUSION AND PRAYER FOR RELIEF**

15   For the foregoing reasons Plaintiff respectfully request that Defendant's Motion
16   be denied. Alternatively, to the extent the Court finds any of the jurisdictional
17   allegations lacking, leave to amend.

18   RESPECTFULLY DATED this 16th day of August, 2019.

19
20                          **PETER STROJNIK**

21                          Plaintiff

22
23   Mailed to the District Court this 19th day of August 2019 and distributed by email as
     follows:
24   TRACY A. WARREN, twarren@buchalter.com
     ERIC KENNEDY, ekennedy@buchalter.com
25   Counsel for Defendant

26

27

28

11

EXHIBIT 1

EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DANIEL CASTILLO-ANTONIO, | Case No. 19-cv-00672-JCS |
| Plaintiff, | |
| v. | **ORDER REGARDING MOTION TO DISMISS** |
| RAFAEL HERNANDEZ, et al., | Re: Dkt. No. 10 |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Jose Daniel Castillo-Antonio brings this action against Defendants Rafael Hernandez, Carmen Hernandez, and several Doe defendants not yet identified.  Plaintiff alleges that Defendants failed to provide barrier-free access for disabled persons to their business in violation of federal and California law.  Defendants Rafael and Carmen Hernandez move to dismiss Castillo-Antonio's state-law claims for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).  The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for July 12, 2019.  For the reasons discussed below, Defendants' motion is DENIED.[1]

A case management conference will occur on July 12, 2019 at 2:00 PM, for which the parties may request to appear telephonically if they so choose.  The parties shall file a joint case management statement no later than July 10, 2019.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Factual Allegations

Castillo-Antonio is severely limited in the use of his legs and qualifies as a "physically handicapped person," a "physically disabled person," and a "person with a disability" as those terms are used under applicable California and federal law, including the Unruh Civil Rights Act ("Unruh Act"), the California Disabled Persons Act ("CDPA"), and Title III of the Americans with Disabilities Act of 1990 ("ADA"). Compl. (dkt. 1) ¶ 6. Defendants own and operate the Hernandez Meat Market in Oakland, California. *Id.* ¶ 3.

On or about June 30, 2018, September 28, 2018, and December 29, 2018, Plaintiff visited Hernandez Meat Market to buy food and beverages. *Id.* ¶ 12. Plaintiff alleges that he encountered several architectural barriers that interfered with his access to Hernandez Meat Market in violation of both California and federal law. *Id.* ¶¶ 3, 4. First, the primary entrance door allegedly lacked the proper posted International Symbol of Accessibility in violation of California Code of Regulations Title 24 (the California Building Code, or "CBC") section 11B-216.6 and the Americans with Disabilities Act Accessibilities Guidelines of the United States Access Board ("ADAAG") section 4.30.7. *Id.* ¶ 3. Second, the aisles inside the business were purportedly too narrow in violation of CBC section 11B-904.4. and ADAAG section 7.2. *Id.* ¶¶ 3, 4. Third, Plaintiff asserts that the service countertop for sales was not accessible for wheelchair occupants in violation of CBC section 11-904.4.1 and ADAAG section 7.2 ¶ 4. Finally, Plaintiff alleges the designated parking spot was not properly laid out in violation of CBC sections 11B-247.1.2.5, 11B-705.1.2.5, 11B-502.2, 11B-502.3, and 11B-502.4 as well as ADAAG sections 4.6.3, 4.6.6, 4.1.2(1), 4.3.2(1), and 4.14.1. *Id.*

During each visit, Plaintiff alleges that he informed Defendants of the architectural barriers. Compl. ¶ 12. Plaintiff asserts that by the third visit, Defendants had not removed the alleged barriers. *Id.* As a result, Plaintiff alleges to have been deterred from making a fourth visit on or about February 4, 2019. *Id.* Plaintiff maintains that he plans to visit the business in the future if the alleged violations are remedied. *Id.* ¶ 14. As a result of encountering these alleged violations, Plaintiff alleges that he suffered and continues to suffer emotional distress and

2

1    violations of his civil rights to full and equal enjoyment of goods, services, facilities, and

2    privileges. *Id.* ¶ 17.

3         Plaintiff asserts four causes of action against Defendants: (1) violation of the ADA (42

4    U.S.C. § 12101 et seq.); (2) breach of statutory protections for persons with physical disabilities

5    (California Health and Safety Code § 19955); (3) violation of the CDPA (Cal. Civ. Code §§ 54,

6    54.1, and 54.3); and, (4) violation of the Unruh Act (Cal. Civ. Code §§ 51 and 51.5). Compl.

7    ¶¶ 34, 35, 45, 56, 67. In connection with these claims, Plaintiff seeks injunctive relief, attorney's

8    fees, declaratory relief, compensatory damages, and statutory damages under the Unruh Act, or, in

9    the alternative, under the CDPA. Compl. at 21–23 (prayer for relief).

10        **B.    Relevant Statutes**

11             **1. The Americans with Disabilities Act**

12        Title III of the ADA prohibits discrimination "on the basis of disability in the full and

13   equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

14   any place of public accommodation by any person who owns, leases (or leases to), or operates a

15   place of public accommodation." 42 U.S.C. § 12182(a). A grocery store like the one operated by

16   Defendants is a "public accommodation" within the meaning of the ADA. 42 U.S.C. §

17   12181(7)(E).

18        To prevail on an ADA claim, a plaintiff must show that: (1) they are disabled within the

19   meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of

20   public accommodation; and (3) the plaintiff was denied access to public accommodations by the

21   defendant because of the plaintiff's disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th

22   Cir. 2007). A plaintiff may seek injunctive relief and attorney's fees under the ADA. 42 U.S.C.

23   §§ 12188(a)(2), 12205. Damages are not available in private suits under the ADA. *M.J. Cable,*

24   *Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002)).

25             **2. The Unruh Civil Rights Act**

26        The Unruh Act states that "[a]ll persons within the jurisdiction of [California] are free and

27   equal, and no matter what their . . . disability . . . are entitled to the full and equal

28   accommodations, advantages, facilities, privileges, or services in all business establishments of

3

every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA is a per se violation of the Unruh Act. Cal. Civ. Code § 51(f). Claims can also be brought under the Unruh Act without relying on the ADA if the plaintiff demonstrates an intentional discriminatory act or omission by the defendant. *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1029 (S.D. Cal. 2017) (citing *Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1129 (S.D. Cal. 2005)). An Unruh Act claim premised on a violation of the ADA does not require a showing of intentional discrimination. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–66 (2009).

Like the ADA, the Unruh Act allows plaintiffs to seek injunctive relief and attorney's fees. Cal. Civ. Code § 52(c)(3). The Unruh Act also allows plaintiffs to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a). A plaintiff "need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731 (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)).

### 3. The California Disabled Persons Act

The CDPA establishes that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations . . . and other places to which the general public is invited." Cal. Civ. Code § 54.1(a)(1). A violation of the ADA is a per se violation of the CDPA. Cal Civ. Code § 54.1(e). Under the CDPA, a plaintiff is entitled to actual damages "up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars" and "attorney's fees as may be determined by the court in addition thereto." Cal. Civ. Code § 54.3(a).

### 4. The California Health and Safety Code

The California Health and Safety Code ("CHSC") requires all public accommodations constructed in California to conform with the provisions of Chapter 7 (commencing with section 4450) of Division 5 of Title 1 of the Government Code. Cal. Health & Safety Code § 19956. Section 4450 of the Government Code directs the State Architect "to submit proposed building standards to the California Building Standards Commission for approval" and "develop other regulations for making buildings, structures, sidewalks, curbs, and related facilities accessible to

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   and usable by persons with disabilities." Cal. Gov't Code § 4450.  The State Architect

2   promulgated such regulations, which are codified in Title 24 of the California Code of

3   Regulations.  A plaintiff suing under CHCS section 19955 may seek both injunctive relief and

4   attorney's fees. Cal. Health & Safety Code § 19953.

5       **C.  Parties' Arguments**

6           Defendants move to dismiss Plaintiff's state-law claims under Rule 12(b)(1) of the Federal

7   Rules of Civil Procedure for lack of subject matter jurisdiction.  Mot. (dkt. 10) at 3.  The Court

8   may hear the ADA claim pursuant to federal question jurisdiction under 28 U.S.C. § 1331.  The

9   other three claims brought by Plaintiff arise under California law, so the Court may only hear them

10   pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.[2]  Defendants argue that the

11   Court should decline to exercise supplemental jurisdiction because: (1) Plaintiff's state-law claims

12   substantially predominate over his ADA claim; (2) allowing Plaintiff's state-law claims into

13   federal court raises comity concerns in relation to the California legislature; and (3) Plaintiff's

14   state-law claims raise novel and complex issues of state law.  Defendants present the first two of

15   these arguments in their motion, and raise the third argument for the first time in their reply.

16           In support of their first argument, Defendants maintain that the Unruh Act and CDPA

17   provide more expansive remedies than the ADA, meaning the state-law claims substantially

18   predominate over the federal-law claim such that the Court should decline to exercise

19   supplemental jurisdiction over the state-law claims pursuant to § 1367(c)(2).  Mot. at 7.  The ADA

20   allows plaintiffs to sue for injunctive relief and attorney's fees, but not for compensatory or

21   statutory damages.  42 U.S.C. § 12188(a).  By contrast, when taken together, the Unruh Act and

22   CDPA allow plaintiffs to sue not only for injunctive relief and attorney's fees, but also for

23   compensatory and statutory damages, which may be trebled.  Cal. Civ. Code §§ 52, 54.3.

24   Defendants interpret this discrepancy in available remedies to mean that the federal claim adds no

25   value to Plaintiff's suit because the remedies that could be obtained under the ADA in federal

26   court could also be obtained in state court under the Unruh Act.  Mot. at 7.  Accordingly, they

27   _____

28   [2] There is no indication, and no party has suggested, that this case falls within the Court's diversity jurisdiction under 28 U.S.C. § 1332.

5

1    argue that the state-law claims substantially predominate over the federal law claim. *Id.*

2          In support of their second argument, Defendants contend that the Court should decline to

3    exercise supplemental jurisdiction over Plaintiff's state-law claims in the interest of comity with

4    the California legislature. Mot. at 8. In 2012, the California legislature adopted heightened

5    pleading requirements for disability discrimination claims brought under the Unruh Act and

6    CDPA. *See* Cal. Civ. Proc. Code § 425.50. Because state civil procedures do not apply in federal

7    court, Defendants argue that Plaintiff is using the ADA claim as a "jurisdictional hook" to bring

8    his state claims in federal court, thereby sidestepping the heightened pleading requirements under

9    state law. *Id.* at 8, 9. Defendants maintain that this contravenes the intent of the California

10   legislature and that the Court should therefore decline to exercise supplemental jurisdiction over

11   Plaintiff's state-law claims in the interest of comity. *Id.* at 8. Though Defendants do not argue

12   this explicitly, the comity concern would fit within the framework of § 1367(c), if at all, as an

13   "other compelling reason" to decline to exercise supplemental jurisdiction pursuant to §

14   1367(c)(4).

15         In opposition, Plaintiff cites a Ninth Circuit case for the proposition that "dismissal for lack

16   of subject matter jurisdiction in a case premised on federal question jurisdiction is 'exceptional.' "

17   Opp'n (dkt. 12) ¶ 5 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th

18   Cir. 1983)). Plaintiff contends that "[j]urisdictional dismissal is not warranted when 'the

19   jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

20   dependent on the resolution of factual issues going to the merits of the action' " and that the

21   substantive and jurisdictional issues of his state-law claims are intertwined in such a way. *Id.*

22   (quoting *Sun Valley Gasoline*, 711 F.2d at 139). Accordingly, Plaintiff maintains that it would be

23   inappropriate to dismiss his state-law claims "at this very early stage of the litigation." *Id.* ¶ 14.

24         Plaintiff further argues that courts must be cautious when construing a plaintiff's past ADA

25   litigation against them because, "as the Ninth Circuit 'has noted more than once, for the

26   Disabilities Act to yield its promise of equal access for the disabled, it may be necessary and

27   desirable for committed individuals to bring serial litigation advancing the time when public

28   accommodations will be compliant with the Disabilities Act.' " Opp'n ¶ 5 (quoting *Antoninetti v.*

United States District Court
Northern District of California

6

1    *Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal citations and quotation

2    marks omitted)).  Defendants respond that the authority Plaintiff relies upon for this claim was

3    issued prior to California's adoption of heightened pleading requirements for disability

4    discrimination claims.  Reply (dkt. 13) at 1.

5         Finally, Plaintiff quotes at length a recent decision from this district.  Opp'n ¶ 15 (quoting

6    *Johnson v. Mariani*, No. 17-cv-01628-BLF, 2017 WL 2929453 (N.D. Cal. July 10, 2017)).  The

7    *Mariani* court found that the plaintiff's state-disability-discrimination claims did not substantially

8    predominate over the plaintiff's ADA claim because the claims had nearly identical proof and

9    scope, even if the state law remedies were more expansive.  *Id.*  Defendants criticize this case for

10   relying on authority which predates the heightened pleading requirements adopted by the

11   California legislature since 2012.  Reply at 3.

12        In their reply, Defendants argue for the first time that Plaintiff's state-law claims raise

13   novel and complex issues of state law such that the Court should decline to exercise supplemental

14   jurisdiction over them pursuant to § 1367(c)(1).  Reply at 1.  They contend that California courts

15   have a substantial interest in interpreting pleading requirements for state disability discrimination

16   claims because the California legislature amended those requirements as recently as 2016.  *Id.* at 3.

17   They point to one specific issue of state law.  To make a claim under the Unruh Act generally

18   requires a showing of intentional discrimination.  *See Lentini v. Cal. Ctr. for the Arts, Escondido*,

19   370 F.3d 837, 847 (9th Cir. 2004).  However, an ADA violation, which has no intent requirement,

20   is a per se violation of the Unruh Act.  *See* 42 U.S.C. § 12182(b)(2)(A)(iv); Cal. Civ. Code § 51(f).

21   Defendants contend that the California Supreme Court, not a federal district court, should resolve

22   this issue.  Reply at 3.

23   **III.    ANALYSIS**

24         **A.    Legal Standard**

25               **1. Federal Rule of Civil Procedure 12(b)(1)**

26         Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of*

27   *Am.*, 511 U.S. 375, 377 (1994).  Accordingly, "federal courts have a continuing independent

28   obligation to determine whether subject-matter jurisdiction exists" over a given claim.  *Leeson v.*

7

United States District Court
Northern District of California

1   *Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks

2   and citations omitted). Rule 12(b)(1) allows defendants to move to dismiss a claim for lack of

3   subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a motion to dismiss for lack of subject

4   matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of

5   subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197

6   (9th Cir. 2008).

7           A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a

8   facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). If

9   the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to

10  demonstrate the existence of jurisdiction, the Court's inquiry is much the same as when ruling on a

11  motion to dismiss brought under Rule 12(b)(6). *Brick Oven Rest.*, 406 F. Supp. 2d at 1124 (citing

12  Moore's Federal Practice § 12.30). This means the court accepts the factual allegations in the

13  complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 (9th Cir. 2001).

14          **2. Supplemental Jurisdiction Under 28 U.S.C. § 1367**

15          "When a federal court has original jurisdiction over a claim, then the court 'shall have

16  supplemental jurisdiction over all other claims that are so related to claims in the action . . . that

17  they form part of the same case or controversy . . . .' " *Johnson v. United Rentals Nw., Inc.*, No.

18  2:11-cv-00204-JAM, 2011 WL 2746110, at *1 (E.D. Cal. July 13, 2011) (quoting 28 U.S.C.

19  § 1367(a)). State claims are part of the same case or controversy as federal claims " 'when they

20  derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be

21  expected to try them in one judicial proceeding.' " *Kuba v. 1–A Agricultural Ass'n*, 387 F.3d 850,

22  855–56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v.*

23  *Desert Valley Landscape & Maint., Inc.*, 333 F.2d 923, 925 (9th Cir. 2003)).

24          Supplemental jurisdiction is mandatory unless prohibited by § 1367(b),[3] or unless one of

25  the exceptions in § 1367(c) applies. *Cuddeback*, 262 F. Supp. 3d at 1028. Under § 1367(c), a

26

27  _____
    [3] 28 U.S.C. § 1367(b) applies to civil actions of which a district court has original jurisdiction
    founded solely on 28 U.S.C. § 1332 (diversity jurisdiction). Because the Court's jurisdiction over

28  this controversy is founded on 28 U.S.C. § 1331 (federal question jurisdiction), § 1367(b) is
    inapplicable.

1    district court may "decline supplemental jurisdiction over a claim" if:

2              (1) the claim raises a novel or complex issue of State law, (2) the
           claim substantially predominates over the claim or claims over which
3          the district court has original jurisdiction, (3) the district court has
           dismissed all claims over which it has original jurisdiction, or (4) in
4          exceptional circumstances, there are other compelling reasons for
           declining jurisdiction.
5

6    28 U.S.C. § 1367(c).

7              A district court's discretion to decline to exercise supplemental jurisdiction over

8    state law "is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.' "

9    *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine*

10   *Workers v. Gibbs*, 383 U.S. 715, 726, (1966)).  A court may decline to exercise supplemental

11   jurisdiction under § 1367(c) "under any one of [the statute's] four provisions." *San Pedro Hotel*

12   *Co., Inc. v. City of L.A.*, 159 F.3d 470, 478–79 (9th Cir. 1998).  When dismissing a state-law claim

13   pursuant to § 1367(c)(1)–(3), a district court need not state its reason for dismissal.  *Id.*  If a

14   district court declines to exercise supplemental jurisdiction under § 1367(c)(4), however, the court

15   must "articulate why the circumstances of the case are exceptional." *Exec. Software N. Am., Inc.*

16   *v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994).  The Ninth Circuit has cautioned that

17   declining supplemental jurisdiction based on § 1367(c)(4) should be the exception, not the rule.

18   *Id.* at 1558.

19        **B.    Supplemental Jurisdiction over Plaintiff's Claims Is Appropriate**

20             Defendants do not contest that Plaintiff's ADA claim is properly before the court as a

21   federal question, nor do they dispute that Plaintiff's state-law claims share a common nucleus of

22   operative fact and are "part of the same case or controversy" as the ADA claim.  Mot. at 6.  The

23   court therefore has mandatory supplemental jurisdiction over Plaintiff's state law claims pursuant

24   to § 1367(a) unless one of the exceptions of § 1367(c) applies.  Defendants' arguments implicate

25   § 1367(c)(1), § 1367(c)(2), and § 1367(c)(4).

26             **1. 28 U.S.C. § 1367(c)(1)**

27             Defendants identify only one potential complex or novel issue of state law implicated by

28   the instant case.  They cite a Southern District of California case for the proposition that Plaintiff's

United States District Court
Northern District of California

9

1    state-law claims present a complex issue of state law because "the Unruh Act requires proof of

2    intentional discrimination while the ADA does not," even though a violation of the ADA

3    constitutes a per se violation of the Unruh Act. *Schutza v. Lamden*, No. 3:17-CV-2562-L-JLB,

4    2018 WL 4385377, at *4 (S.D. Cal. Sept. 14, 2018) (describing the tension between the two

5    standards as "an irreconcilably complex issue of state law"). This Court respectfully disagrees

6    with the Southern District's decision. The *Lamden* court relied on a prior Southern District

7    decision reached in 2007. *See Lamden*, 2018 WL 4385377, at *4 (citing *Cross v. Pac. Coast*

8    *Plaza Invs., L.P.*, No. 06 CV 2543 JM RBB, 2007 WL 951772, at *5 (S.D. Cal. Mar 6, 2007)).

9    However, the California Supreme Court resolved this issue in 2009. *See Munson*, 46 Cal. 4th at

10   664–66 (holding that a plaintiff seeking damages for ADA violations under the Unruh Act is not

11   required to prove intentional discrimination). Accordingly, the Court finds that this does not

12   constitute a complex or novel issue of state law within the meaning of § 1367(c)(1).

13          Defendants further contend that because the pleading requirements for California state

14   disability discrimination claims were amended by the California legislature as recently as 2016,

15   there might be new complex or novel issues of state law which California state courts should have

16   an opportunity to resolve. The Court finds this argument unpersuasive. As district courts within

17   the Ninth Circuit have repeatedly held, state pleading requirements for disability discrimination

18   claims do not apply in federal court because such requirements are procedural in nature and

19   federal courts use federal procedural rules. *See, e.g.*, *Johnson v. Mariani*, No. 17-CV-01628-BLF,

20   2017 WL 2929453, at *3 (N.D. Cal. July 10, 2017); *see generally Erie R.R. Co. v. Tompkins*, 304

21   U.S. 64 (1938). Accordingly, the meaning of California's heightened disability discrimination

22   pleading requirements is not at issue in this case.[4]

23

24   _____

[4] Defendants' arguments could perhaps be construed as suggesting that by hearing Plaintiff's state-

25   law claims, the Court is denying California state courts an opportunity to interpret the heightened
     pleading requirements. However, Defendants point to no particular issue regarding these

26   requirements raised by this case. Even assuming there were such an issue, and that ensuring state
     courts the opportunity to consider such issues is a valid reason to decline jurisdiction under

27   § 1367(c), disability discrimination claims are hardly a rarity, so the California state courts have
     had and will have other opportunities to interpret disability discrimination pleading requirements.

28   Plaintiff himself has filed such claims in state court as recently as February 2, 2018. Surreply
     (dkt. 14) at 1.

United States District Court
Northern District of California

10

1    The Court finds no novel or complex issues of state law at issue in Plaintiff's state-law

2  claims.

3         **2. 28 U.S.C. § 1367(c)(2)**

4    Defendants argue that Plaintiff's state-law claims substantially predominate over Plaintiff's

5  ADA claim because (1) the remedies available to Plaintiff under the state-law claims are more

6  expansive than those available under the ADA and (2) the ADA claim adds nothing to the lawsuit

7  that could not be obtained in state court.  Mot. at 7, 8.

8    The Supreme Court has held that state-law claims can "substantially predominate . . . in

9  terms of proof, of scope of issues raised, or of comprehensiveness of remedy sought."  *United*

10  *Mine Workers of Am.*, 383 U.S. at 726.  Defendants cite several district court decisions which have

11  held that the more expansive remedies available to plaintiffs under the Unruh Act and CDPA

12  mean that such claims necessarily substantially predominate over ADA claims.[5]  *See, e.g.,*

13  *Cuddeback*, 262 F. Supp. 3d at 1030 (holding that monetary damages of $36,000 sought by a

14  plaintiff under the Unruh Act substantially predominated over federal injunctive relief sought

15  under the ADA).  But district courts within the Ninth Circuit are split on this issue.  *Compare, e.g.,*

16  *Vogel v. Winchell's Donut*, 252 F. Supp. 3d 977, 986 (C.D. Cal. 2017) (holding that a plaintiff's

17  state-law claims substantially predominated over an ADA claim because the remedies available

18  under state law were more expansive and the ADA claim added no unique remedy to the suit),

19  *with, e.g., Schoors v. Seaport Vill. Operating Co., LLC*, No. 16CV3089 (AJB), 2017 WL 1807954

20  (S.D. Cal. May 5, 2017) (holding that although a plaintiff's Unruh Act claim offered more

21  comprehensive remedies than their ADA claim, the Unruh Act claim did not substantially

22  predominate over the ADA claim because it involved identical facts, witnesses, and evidence).

23    In resolving this issue, this Court follows the approach taken in *Schoors* and accordingly

24  finds that Plaintiff's state-law claims do not substantially predominate over Plaintiff's ADA claim.

25  _____

26  [5] Defendants do not implicate Plaintiff's CHSC claim in arguing that Plaintiff's state-law claims
substantially predominate over Plaintiff's federal claim.  Because Plaintiff may only recover

27  injunctive relief and attorney's fees under the CHSC, the CHSC does not provide more expansive
remedies than the ADA.  A violation of the ADA is, however, not a per se violation of the CHSC,

28  so the evidence required to prove Plaintiff's CHSC claim may differ from what is required to
prove Plaintiff's other claims.

United States District Court
Northern District of California

1 Though the remedies Plaintiff seeks pursuant to his state-law claims exceed those available under

2 the ADA, the federal and state claims involve nearly identical facts, witnesses, and evidence

3 because Plaintiff's Unruh Act and CDPA claims are premised on proving a violation of the ADA.

4 *See* Compl. ¶¶ 56, 64, 68; Cal. Civ. Code §§ 51(f), 54(c).  To prove his Unruh Act and CDPA

5 claims, Plaintiff need only make an additional showing of the particular occasions on which he

6 encountered the barrier or was deterred from visiting the market to establish statutory damages.

7 *See Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011).  Thus, even though the

8 state-law claims provide for more comprehensive remedies, they do not substantially predominate

9 over the ADA claim because the proof required for both the state and federal claims is nearly

10 identical.

11     Applying the *Gibbs* factors—economy, convenience, fairness, and comity—to the

12 § 1367(c)(2) analysis supports this conclusion.  As the *Kohler* court noted:

13 > It is clearly more convenient and economical for the ADA claim and
state-law claims based on those same ADA violations to be litigated
14 > in one suit. Moreover, comity does not counsel in favor of declining
jurisdiction here, where state law incorporates the federal substantive
15 > standard and simply provides additional remedies. Finally, the Court
does not find it unfair to have the state-law claims litigated in this
16 > forum, rather than in a separate, and largely redundant, state-court
suit.

18 *Id.*  The *Gibbs* factors thus weigh in favor of finding that Plaintiff's state-law claims do not

19 substantially predominate over his ADA claim.[6]

20     **3. 28 U.S.C. § 1367(c)(4)**

21     Defendants argue that Plaintiff is using his ADA claim as a "jurisdictional hook" to have

22 his state-law claims heard in federal court to bypass the heightened pleading requirements for

---

[6] Plaintiffs also cite the *Mariani* court's decision for the proposition that " 'accepting Defendants' argument "would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act [in an ADA case].' " Opp'n. at 7 (quoting *Mariani*, 2017 WL 2929453, at *3 (internal citations omitted)). In this Court's view, the possibility of federal courts declining to exercise jurisdiction over claims under a particular California statute is not in itself a reason to exercise such jurisdiction, and instead begs the question of whether such jurisdiction is appropriate.  To the extent that this statement from *Mariani* suggests that plaintiffs might choose to prosecute parallel ADA and Unruh Act claims in federal and state court, however, the potential duplication of effort that would result weighs in favor of exercising supplemental jurisdiction.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    disability discrimination claims used in California state courts. Mot. at 8, 9. Plaintiff asserts

2    construction-related accessibility claims and he is a high-frequency litigant as defined by

3    California Code of Civil Procedure section 425.55(b). Mot. at 3. Accordingly, Plaintiff would be

4    subjected to each of the heightened pleading requirements in California Code of Civil Procedure

5    section 425.50 if he filed in California state court. The court in *Johnson v. Morning Star Merced,*

6    *LLC* succinctly defined those heightened pleading requirements:

7            "Section 425.50 imposes the following pleading requirements: (1)
8            complaint must allege whether it is filed by or on behalf of a high-
         frequency litigator; (2) the number of complaints alleging a
9            construction related accessibility claim that were filed by the high
         frequency litigator in the past twelve months; (3) the reason the high
10           frequency litigator was in the region of the defendant's business; and
         (4) the specific reason that the high frequency litigator desired access
11           to the defendant's business. Cal. Code Civ. P. § 425.50(a)(4).
         Additionally, a high frequency litigator must verify his complaint and
12           pay an additional filing fee. See Cal. Code Civ. P. § 425.50(b); Cal.
         Gov. Code § 70616.5.

13   *Johnson v. Morning Star Merced, LLC,* No. 1:18-CV-0558 AWI EPG, 2018 WL 4444961, at *5

14   (E.D. Cal. Sept. 14, 2018). Federal courts have applied the Federal Rules of Civil Procedure

15   instead of the pleading requirements outlined in California Code of Civil Procedure section

16   425.50. *Id.* (citing, *e.g.*, *Saavedra v. Chu,* 2017 WL 2468779, *1 (C.D. Cal. June 7, 2017); *Anglin*

17   *v. Bakersfield Prosthetic & Orthotics Ctr.,* 2013 WL 6858444, *4–5 (E.D. Cal. Dec. 30, 2013);

18   *Oliver v. In-N-Out Burgers,* 286 F.R.D. 475, 477 (S.D. Cal. 2012)).

19           Defendants note several district court decisions that have accepted their argument. *See,*

20   *e.g.*, *Velez v. Il Fornario (Am.) Corp.,* No. 3:18-cv-1840-CAB, 2018 WL 6446169, at *6 (S.D.

21   Cal. Dec. 10, 2018) (declining to exercise supplemental jurisdiction over a plaintiff's Unruh Act

22   claim in part because doing so would frustrate the California legislature's attempt to discourage

23   vexatious disability discrimination by adopting heightened pleading requirements for the Unruh

24   Act); *Cuddeback,* 262 F. Supp. 3d at 1025; *Brick Oven Rest.,* 406 F. Supp. 2d at 1120. These

25   cases "emphasize that the plaintiffs are high frequency litigants, that there is nothing to be gained

26   by litigating in federal court other than to avoid state pleading requirements, the plaintiffs are

27   engaged in forum shopping, and that considerations of comity and discouraging forum shopping

28   constitute 'exceptional circumstances' under § 1367(c)(4)." *Morning Star Merced, LLC,* 2018

1    WL 4444961, at *5.

2        Other district court decisions have, however, rejected this argument. *See, e.g., Morning*

3    *Star Merced, LLC,* 2018 WL 444496; *Mariani,* 2017 WL 2929453 at *11; *Schoors,* 2017 WL

4    1807954. "These cases emphasize that considerations of fairness and efficiency outweigh any

5    concerns over comity, and that there is nothing improper about a litigant choosing to litigate in

6    federal court." *Morning Star Merced, LLC,* 2018 WL 4444961, at *6 (internal citations omitted).

7        Applying the *Gibbs* factors, this Court finds the reasoning of the *Morning Star Merced*

8    court persuasive and accordingly finds no compelling reason to decline to exercise supplemental

9    jurisdiction over Plaintiff's state-law claims. Comity concerns weigh in favor of Defendants'

10   argument, given that the California legislature has enacted heightened pleading requirements for

11   suits like this one.[7] However, "it is not efficient, convenient, or fair to require [Plaintiff] to file

12   two nearly identical cases involve [sic.] materially identical proof and issues." *Id.* It is more

13   economical to have all of Plaintiff's claims heard in one court "instead of requiring duplicative

14   efforts in multiple courts, possibly involving multiple juries, and possibly leading to inconsistent

15   results." *Id.* Nor should a plaintiff be forced to choose between either proceeding in two separate

16   forums or forsaking the plaintiff's entitlement to bring an ADA claim in federal court and instead

17   litigating it in state court. Accordingly, the Court finds no compelling reason to decline to

18   exercise supplemental jurisdiction over Plaintiff's state-law claims.

19   **IV.    CONCLUSION**

20       For the foregoing reasons, Defendants' motion is DENIED.

21       **IT IS SO ORDERED.**

22   Dated: June 28, 2019

23

24   JOSEPH C. SPERO
     Chief Magistrate Judge

25

26   ───────────────────
     [7] The parties do not address the purpose or legislative history of the legislature's decision to
     impose heightened pleading requirements on frequent disability access litigants. To the extent the

27   legislature may have been concerned about defendants facing a large volume of such lawsuits,
     comity weighs in favor of declining to exercise jurisdiction. To the extent that the legislature may
     have intended to alleviate congestion of the California courts, however, allowing plaintiffs to bring

28   their claims in federal court would promote rather than impair that goal.

United States District Court
Northern District of California