Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

FILED

AUG 21 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

Case No: 4:19-CV-03983-DMR

PETER STROJNIK (SR.),

Plaintiff,

vs.

IA LODGING NAPA FIRST LLC., DBA
ANDAZ NAPA

Defendant.

**DECLARATION OF PETER
STROJNIK**

## DECLARATION OF PETER STROJNIK REGARDING HIS ADA PRACTICE

### A. Historical Perspective

Plaintiff makes this Declaration under the Penalty of Perjury.

1. In or about 2016, Declarant was ready to retire; however, he wanted to provide *pro bono* services to a worthy cause. Declarant vacillated between providing *pro bono* services to the immigrant community (Declarant is an immigrant), the veteran community (Declarant is a veteran) or the disabled community (Declarant is disabled). Declarant realized that the immigrant community was already adequately represented as immigration is a socially and politically favored cause, but that the pervasive hostility to the disabled community required someone with Declarant's experience and resolute attributes.

2. Therefore, Declarant began representing disabled individuals in Arizona State Courts. He filed $1,500± civil rights cases in the Maricopa County Superior Court.

3. A local TV station interviewed Declarant and issued a series of typically scathing, but fundamentally false, reports.

4. Declarant began receiving death threats and reported them to the Police.

5. Arizona's AG Brnovich ("Brnovich") intervened in all state cases, moved to consolidate them and moved to dismiss them all for lack of standing.

6. Undeterred by the holding in *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, (9th Cir. 06/19/2002) (holding that plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the "futile gesture" of attempting to gain access in order to show actual injury), Arizona's AG Brnovich ("Brnovich") intervened in Arizona cases and moved to consolidate them and dismiss them all for lack of standing. Brnovich's primary basis was that Plaintiffs failed to allege that they had *personally* encountered ADA barriers.

7. Contrary to *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, (9th Cir. 06/19/2002) (holding that plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the "futile gesture" of attempting to gain access in order to show actual injury), the State Court found that what was required for standing purposes was *personal* knowledge of a barrier, that is, an actual personal encounter with the barrier. The State Court dismissed *all* consolidated cases for lack of standing on this basis.

8. Brnovich thereafter filed motions for sanctions and Plaintiff responded. In the meantime, the 9th Circuit Court of Appeals issued the *CREEC*[1] decision which confirmed *Pickern* and further clarified that "**[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative**." (Emphasis supplied). Id. (citing to *Pickern.*)

9. The *CREEC* decision was contrary to the State Court's decision.

---

[1] Civil Rights Education and Enforcement Center v. Hospitality Properties Trust, 867 F.3d 1093, 1099 (9th Cir. 2017)

1 | 10. Thereafter, Brnovich entered into a stipulation with Declarant which withdrew all
2 | Brnovich's motions for sanctions **"for the reason that a continuing pursuit of**
3 | **sanctions, costs and fees against…Strojnik would not advance the cause of**
4 | **justice."** (Emphasis supplied)  Exhibit 1 at ¶6. The stipulation further confirmed that
5 | Strojnik was not a vexatious litigant, stating, "[f]or avoidance of any doubt, nothing
6 | in this paragraph limits the ability of Mr. Strojnik…to represent any party in any
7 | action." *See id* at ¶4.
8 | 11. Thereafter, the Arizona Republic published an op-ed piece authored by Declarant:



1

2   12. Following the publication of the op-ed, all Hades broke loose. The Arizona State Bar

3        ("SBA") investigated Declarant. Additional death threats were received by Declarant.

4        The entire State turned against ADA civil rights.

5   13. In order to appease the public, SBA filed a Motion for Interim Suspension.    At the

6        conclusion of a hearing the disciplinary judge announced, paraphrasing, "[a]ll I have

7        heard is that Strojnik files meritorious ADA lawsuits". For reasons not yet explained,

8        the disciplinary judge nevertheless suspended Declarant. Perhaps the reason for this

9        change of heart can be gleaned from subsequently filed action by Declarant against

10       the SBA in *Strojnik v. Arizona State Bar* 2:19-cv-02704-DJH at Doc. 22, *Second*

11       *Amended Complaint*, Exhibit 2. Declarant incorporates herein all factual allegations

12       in Exhibit 2 as if fully stated herein.

13   14. Declarant views Brnovich and SBA as simply segregationist. Therefore,  Declarant

14       issued Notice of Retirement and Resignation stating "[Declarant's] continuing

15       association with the State Bar is inconsistent with [his] core principles of morality and

16       fair play":

16   ///

17

18   ///

19

20   ///

21

22   ///

23

24   ///

25

26   ///

27

28   ///



**PETER STROJNIK**

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

October 24, 2018

Shauna R. Miller, Esq.
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6288
By e-mail only Shauna.Miller@staff.azbar.org

Re: *Notice of Retirement and Resignation*

Dear Shauna:

I previously advised you that my continuing association with the State Bar is inconsistent with my core principles of morality and fair play and indeed, my health; therefore, I give you formal notice of my immediate retirement and resignation from your organization.

I understand that there are pending issues relating to my now former license which I will deal with in the ordinary course of business. Please do not misunderstand this notice as any admission of any impropriety; any contrary indication on your website will be viewed as defamatory.

You previously advised me that it is impossible to retire or resign from your organization and on that, let me offer this: You can tell a fish that he can't swim, and you can tell me that I can't resign. But he can, and I do. On a personal level, I have always found you to be amiable and cordial, and I wish you the very best in all your endeavors.

Please e-mail me a copy of this letter marked "received" and make it a part of my file.

Sincerely,

Peter Strojnik

15. Declarant's 1st Amendment right to dissociation went unrecognized.

16. Plaintiff thereafter filed a Motion to Recognize is Expressive Dissociation, Exhibit 3. Not surprisingly, this too went unrecognized.

17. Declarant thereafter consensually agreed to disbarment to be free from what he considers SBA's *George Wallacesque* segregationist views. Declarant admits, however, that the freedom of dissociation from the SBA is exquisite and exhilarating.

18. Thereafter, Declarant filed suit against the SBA alleging (1) 42 U.S.C. § 1981 et seq Claims for (a) Violation of Plaintiff's 1st Amendment Right of Dissociation, and for (b) Violation of Plaintiffs right to be free from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206, and for (c) Conspiracy to Violate Civil Rights, (2) Civil Conspiracy (3) Aiding and Abetting (4) Tortious Interference with Contract (5) Abuse of Process and (6) Intentional Infliction of Emotional Distress. Exhibit 2[2].

19. Declarant is honored to have filed 1,700± ADA cases in the Arizona State Courts and donated *all* his fees to a 501(c)(3) disability organization, but he is ashamed of the SBA for its *George Wallacesque* segregationism. Plaintiff admits, however, that the freedom of dissociation from the SBA is exquisite and exhilarating indeed.

## B. Current Practice

20. Plaintiff is a retired 67 year old disabled veteran and a former lawyer. He spends his retirement years travelling across America. While traveling he tests places of lodging for ADA compliance. If a particular place of lodging is not ADA compliant, he documents the violations, prepares a Due Diligence Report, incorporates the Due Diligence Report into a draft Complaint as Addendum A, and issues it to the offending place of lodging along with a Courtesy Notice of ADA Violations. He followed this practice in the current case, *see* Exhibits 4 (Due Diligence Report), 5 (Courtesy Notice of ADA Violations) and 6 (Draft Complaint).

21. The Courtesy Notice invites the offending place of lodging to correct any potential errors in Addendum A to the Draft Complaint, stating:

> In the preparation of the attached draft Complaint, I personally experienced accessibility barriers documented in Addendum A of the draft. I believe the information to be correct, however, let me know any corrections you deem should be incorporated into or deleted from the draft Complaint.

> I strongly suggest you consult with an attorney learned in ADA matters. This is a complex matter involving significant potential damages, attorney's fees, costs and expenses.

---

[2] Motion to Dismiss is anticipated. In the meantime, Declarant is interviewing counsel for representation in this case and the upcoming filing against Brnovich.

22. Sometimes the offending places of lodging respond directly or through counsel. In most of these cases, the factual disputes are resolved and the matter is negotiated to a private resolution. In other cases Declarant receives anonymous but emotional phone calls threatening death. In yet other cases attorneys engage in a threatening and intimidating practice violative of 42 USC §12203 and 28 CFR §36.206.

23. Where no aimable resolution can be reached, Declarant files a complaint.

24. Each and every complaint filed by Plaintiff is well grounded in fact and supported by the law and otherwise completely and absolutely meritorious – just as disciplinary judge stated at the conclusion of the suspension proceedings

**C.  Applicable to This Case**

25. Declarant and Mrs. Strojnik travel to Napa often between once and twice per year to stock up on California wines and spirits.

26. Declarant travelled to Napa, California, on April 18, 2019, and lodged at River Terrace Inn:

| | |
|---|---|
| 4/12/2019 | Reservation Confirmation – Printable Version |

**HOTEL DETAILS**
Hotel Name: River Terrace Inn
Hotel Address: 1600 Soscol Avenue
Main Phone: 1-707-3209000
Reservation Phone:
Fax: 1-707-2581236
Reservation Email: reservations@riverterraceinn.com

**RESERVATION DETAILS**
Itinerary Number: 119103038393
Confirmation Number: CI2U11KP
Check-in: 4/18/2019
Check-Out: 4/19/2019
Number of Guests: 2
    Guests Summary: 2 Adults
Number of Rooms: 1
Room Type: ADA River Side Guestroom, 1 King Bed
Booked Rate: Mid-Week Escape
Reservation must be cancelled by 14:00 PST 72 Hours prior to arrival date to avoid penalty of one night's room and tax.
Rate Policies: There is a Credit Card required for this reservation. A hold will be placed on your Debit/Credit card for the full anticipated amount to be owed to the hotel, including estimated incidentals, through your date of check-out and such hold may not be released for 72 hours from the date of check-out or longer at the discretion of your card issuer.

27. Prior to selecting River Terrace Inn Declarant reviewed both first party and third party booking agent's for River Terrace Hotel and others, including Andaz.

28. Declarant decided on River Terrace Inn because it appeared most suitable for his mobility needs.

29. Upon arrival at River Terrace Hotel, Declarant noted that the Hotel was not ADA compliant.

30. Since Declarant intends to travel to Napa yet again to stock up on California wines and spirits, he visited Andaz to determine if *it* would be suitable for Declarant's mobility needs upon his return to Napa.

31. Declarant noted that Andaz was not suitable for his needs and documented notable ADA violations through photography. The Photographs were incorporated into Declarant's due diligence report, Exhibit 4.

32. Upon returning home, Declarant issued to Andaz a Courtesy ADA Notice, Exhibit 5, in the hope that Andaz would immediately correct the ADA deficiencies.

33. Andaz refused to correct the ADA deficiencies and Declarant filed suit [Doc 1].

34. Declarant intends to lodge at Andaz when Andaz becomes fully and completely compliant with the requirements of 28CFR36 and relevant Standards for Accessibility Design as these requirements relate to Declarant's disability.

I DECLARE THAT THE INFORMATION ABOVE IS BASED ON MY PERSONAL KNOWLEDGE AND IS CORRECT TO THE BEST OF MY ABILITY.

FURTHER THE DECLARANT SAITH NOT.

DATED this 16th day of August, 2019.

PETER STROJNIK

Declarant

Mailed to the District Court this 19th day of August 2019 and distributed by email as follows:
TRACY A. WARREN, twarren@buchalter.com
ERIC KENNEDY, ekennedy@buchalter.com
Counsel for Defendant

EXHIBIT 1

FILED
11/14/17    10:04am
MICHAEL K. JEANES, Clerk
By_____ M. Kay
M. Kay/Deputy

1
**MARK BRNOVICH**
**ATTORNEY GENERAL**
2
(Firm Bar No. 14000)
3
PAUL WATKINS (BAR NO. 32577)
MATTHEW DU MÉE (BAR NO. 28468)
4
BRUNN (BEAU) W. ROYSDEN III (BAR NO. 28698)
ORAMEL H. (O.H.) SKINNER (BAR NO. 32891)
5
EVAN G. DANIELS (BAR NO. 30624)
6
AARON M. DUELL (BAR. NO. 33450)
    *Assistant Attorneys General*
7
1275 West Washington Street
8
Phoenix, Arizona 85007
Telephone: (602) 542-7731
9
Facsimile: (602) 542-4377
Matthew.duMee@azag.gov
10
*Attorneys for State of Arizona*
11
12
IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
13
IN AND FOR THE COUNTY OF MARICOPA

14
ADVOCATES FOR INDIVIDUALS WITH
15
DISABILITIES FOUNDATION, INC., a
charitable non-profit foundation, *et al.*;
16
17
                    Plaintiffs,
18
        vs.
19
Consolidated Defendants;
20
                    Defendants,
21
22
        vs.
23
STATE OF ARIZONA, *ex rel.* Mark
Brnovich;
24
25
                    Defendant-Intervenor.
26

Case No: CV2016-090506 (consol.)

[PROPOSED] ORDER APPROVING
STIPULATION BETWEEN PLAINTIFFS
AND DEFENDANT-INTERVENOR,
AWARDING SANCTIONS AGAINST
CERTAIN PLAINTIFFS, AND
RETURNING CASES TO ORIGINATING
DIVISIONS

(Assigned to the Hon. David M. Talamante)

Doc#6596022

These consolidated cases are before the Court on the State's pending motions for sanctions against Plaintiffs—Advocates for Individuals with Disabilities Foundation, Inc.; Advocates for Individuals with Disabilities, LLC f/k/a Advocates for American Disabled Individuals, LLC; and David Ritzenthaler—and counsel for Plaintiffs Peter Strojnik (collectively, "Plaintiffs and Strojnik"). Pursuant to the stipulation of Plaintiffs and Strojnik and Defendant-Intervenor State of Arizona *ex rel.* Mark Brnovich (the "State"), and good cause appearing, the Court ORDERS as follows:

1. The Court previously consolidated the cases for the limited purposes of addressing common issues related to standing and, if appropriate, sanctions. On April 27, 2017, the Court entered judgment pursuant to Arizona Rule of Civil Procedure 54(b), in which the Court dismissed the consolidated cases for lack of standing. This judgment was amended *nunc pro tunc* by this Court on June 13, 2017 to attach the list of dismissed cases. This judgment with the attached exhibit (the "Rule 54(b) Standing Judgment") is incorporated herein by reference. Plaintiffs filed a notice of appeal of the Rule 54(b) Standing Judgment on May 25, 2017, which is pending in the Arizona Court of Appeals as 1 CA-CV-17-0365.

2. The Court's dismissal of consolidated cases was on the basis of lack of standing and never reached the merits of the allegations in the consolidated cases' complaints.

3. On March 27, 2017, the State filed a Motion for Rule 11 Sanctions, Motion for Non-Rule 11 Sanctions, Motion in Limine, and Motion for Evidentiary Hearing. The Court granted the State's motion for evidentiary hearing on the issue of sanctions against Plaintiffs and Strojnik to be held on November 20 and 21, 2017.

4. Pursuant to the stipulation of Plaintiffs and Strojnik and the State, Plaintiffs and all of their affiliates and successors that have actual notice of this order are permanently enjoined from filing as plaintiff any actions in the Superior Court of the State of Arizona that allege violations of the Arizonans With Disabilities Act, A.R.S. § 41-1492 *et seq.*;

1    Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*; or any

2    regulations issued thereunder.  For purposes of this paragraph, affiliate includes any

3    entity or person directly or indirectly controlling, controlled by, or under common control

4    with one or more Plaintiffs.  For purposes of this paragraph, successor includes any entity

5    controlled by one or more Plaintiffs, or by any person who was as of October 1, 2017 a

6    manager, officer, or director of any Plaintiff or entity member of any Plaintiff.  For

7    avoidance of doubt, nothing in this paragraph limits the ability of Mr. Strojnik or any

8    other attorney admitted to practice law by the Arizona Supreme Court to represent any

9    party in any action.

10   5.   Plaintiffs Advocates for Individuals with Disabilities Foundation, Inc. and Advocates for

11        Individuals with Disabilities, LLC consent to the entry of judgment—as a sanction

12        pursuant to Rule 11, A.R.S. § 12-349, and the inherent power of the Court—against them

13        and in favor of the Consolidated Defendants in each of the consolidated cases for the

14        defendant's reasonable attorneys' fees and costs (if any) in defending the case.

15   6.   The State withdraws with prejudice its Motion(s) for sanctions pursuant to Rule 11,

16        A.R.S. § 12-349, and the Court's inherent power, or otherwise, and for an award of

17        attorney's fees and costs against Messrs. Ritzenthaler and Strojnik for the reason that a

18        continuing pursuit of sanctions, costs and fees against Messrs. Ritzenthaler and Strojnik

19        would not advance the cause of justice. This withdrawal applies solely to the consolidated

20        cases, and does not preclude the State from acting to protect the public in other litigation.

21   7.   Plaintiffs will cause to be paid on execution of this agreement by November 6, 2017 to

22        the Arizona Attorney General's Office the amount of $25,000 for the sole purpose of

23        establishing a fund to educate businesses regarding ADA and AzDA compliance and that

24        businesses can apply for to obtain funds towards improvements to their parking lots to

25        comply with the ADA and AzDA.

26

1  8.  Upon payment of money described in the preceding paragraph, the State is dismissed as a

2     party to these consolidated cases other than CV2016-090506 for the purpose of enforcing

3     this order (if necessary).

4  9.  Plaintiffs agree to dismiss their appeal of the Rule 54(b) Standing Judgment in the

5     Arizona Court of Appeals, and to forego any appeal of the issues addressed in this Order.

6  10.  Plaintiffs further agree to dismiss their separate mandamus action against the Arizona

7     Attorney General, Case No. CV2016-011532.

8  11.  The evidentiary hearing set for November 20 and 21, 2017 is vacated.

9  12.  This Court retains jurisdiction of case number CV2016-090506 for the purpose of

10     enforcing this Order.

11  13.  The consolidated cases are returned to their originating divisions for the defendant(s) in

12     each case to file, if they choose, an application for reasonable attorneys' fees and costs (if

13     any) against Plaintiffs in defending their case.

14  DATED this 13ᵗʰ day of November, 2017.

15

16

17     The Honorable David M. Talamante
       Judge of the Superior Court

18

19

20

21

22

23

24

25

26

## CONSENT TO ENTRY OF ORDER

1.       Plaintiffs and Strojnik and the State have fully read and understand this Order, understand the legal consequences of signing it, and affirm that this is the entire agreement between them, no other representations or agreements between them exist, and no force, threats, or coercion of any kind have been used to obtain their agreement and signatures.

2.       Plaintiffs and Strojnik acknowledge that the State's agreement to the entry of this Order is solely for the purpose of settling the consolidated cases and mandamus action described above, and does not preclude the State, or any other agency, officer, or subdivision of this State, from instituting other civil or criminal proceedings as may be appropriate now or in the future.

3.       Plaintiffs Advocates for Individuals with Disabilities Foundation, Inc. and Advocates for Individuals with Disabilities, LLC represent that the person signing below on each's behalf is duly appointed and authorized to do so.

4.       This Consent to Entry of Order may be executed in counterpart, and may be executed by way of facsimile or electronic signature, and if so, shall be considered an original.

ADVOCATES FOR INDIVIDUALS WITH DISABILITIES FOUNDATION, INC.

Dated: _11 / 3 / 17_

By: _ALEX CALLAN_
Title: _AUTHORIZED AGENT_

ADVOCATES FOR INDIVIDUALS WITH DISABILITIES, LLC F/K/A ADVOCATES FOR AMERICAN DISABLED INDIVIDUALS, LLC

Dated: _11/3/17_

By: _ALEX CALLAN_
Title: _AUTHORIZED AGENT_

DAVID RITZENTHALER

Dated: _1/3/17_

1   PETER STROJNIK

2   _____           Dated: _11/3/17_

3
    **Approved as to Form**
4
5   HORNE SLATON, PLLC
    By: _____Tom Horne_____      Dated: _11/8/17_
6   Thomas Horne
7   6720 N. Scottsdale Rd., Suite 285
    Scottsdale, AZ 85253
8   horne@horneslaton.com
    *Attorney for Plaintiffs Peter Strojnik*
9
10  **Approved as to Form and Content**

11  MARK BRNOVICH
    ATTORNEY GENERAL
12
    By: _____    Dated: _11/3/2017_
13  Paul Watkins
    Matthew du Mée
14  Brunn (Beau) W. Roysden III
    Oramel H. (O.H.) Skinner
15  Evan G. Daniels
    Aaron M. Duell
16      *Assistant Attorneys General*
    1275 West Washington Street
17  Phoenix, Arizona 85007
    Telephone: (602) 542-7731
18  Facsimile: (602) 542-4377
    Matthew.duMee@azag.gov
19  *Attorneys for State of Arizona*

20

21

22

23

24

25

26

                                    -6-

EXHIBIT 2

1  Peter Strojnik (Sr.)
   7847 N. Central Ave.
2  Phoenix, Arizona 85020
   Telephone: (602) 524-6602
3  PS@strojnik.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Case No: 2:19-cv-02704-DJH

**SECOND AMENDED COMPLAINT
(ARCP 15(a)(1)**

PETER STROJNIK, (Sr.)

                        Plaintiff,

            vs.

STATE BAR OF ARIZONA, an Arizona
nonprofit corporation, SHAUNA MILLER
and JOHN DOE MILLER, husband and
wife; MARET VESSELLA and JOHN
DOE VESSELLA, Husband and Wife;
YET UNKNOWN ENTITIES AND
PERSONS WHO PARTICIPATED IN
THE CONSPIRACY ALLEGED BELOW,

                        Defendants.

1.  **42 U.S.C. § 1981 et seq Claims for**

    (a) **Violation of Plaintiff's 1ˢᵗ
        Amendment Right of
        Dissociation,** and for

    (b) **Violation of Plaintiffs right to
        be free from (1) retaliation, (2)
        interference, (3) coercion
        and/or (4) intimidation
        pursuant to 42 USC §12203
        and 28 CFR §36.206,** and for

    (c) **Conspiracy to Violate Civil
        Rights.**

2.  **Civil Conspiracy**
3.  **Aiding and Abetting**
4.  **Tortious Interference with
    Contract**
5.  **Abuse of Process**
6.  **Intentional Infliction of Emotional
    Distress**

1.  In this Action Plaintiff seeks remedy against the State Bar of Arizona ("SBA")

Shauna Miller and John Doe Miller[1] (Miller), Maret Vessella and John/Jane Doe

_____
[1] Added only in his capacity as spouse of Shauna Miller

Case 4:19-cv-03983-DMR    Document 23    Filed 08/21/19    Page 18 of 97

Case 2:19-cv-02704-DJH    Document 22    Filed 07/22/19    Page 2 of 22

Vessella[2] pursuant to 42 US Code §§1981, 1981a, 1983, 1985 and 1988 for conspiracy to violate and the actual violation of Plaintiff's 1st Amendment Right of Dissociation, statutory rights of freedom from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206 and for conspiracy to violate Plaintiff's civil rights with non-party AG Mark Brnovich ("Brnovich") and others whose names have not yet been discovered but whose identities will be substituted at close of discovery Plaintiff further alleges that as part of the conspiracy alleged herein, Defendants engaged in tortious civil conspiracy under state law, aiding and abetting Arizona's AG Brnovich ("Brnovich"), East Mesa Chamber of Commerce ("EMCC"), the local firm of Jennings Strauss and Salmon (in particular Lindsay Leavitt and Scott Frerichs) ("JSS") in their effort to prevent Plaintiff from acting as a private attorney general in the prosecution of Plaintiff's and Plaintiff's clients' civil rights. Plaintiff further alleges that Defendants engaged in intentional interference with Plaintiff's contractual rights, abuse of process and intentional infliction of emotional distress, all as more fully developed below.

2. During 2017 through 2019 both Plaintiff and SBA desired a complete dissociation one from the other: Accordingly, on October 24, 2019, Plaintiff advised Defendant of his expressive dissociation from the SBA for the reason that his continued association with the SBA was (and is) inconsistent with his "core principles of morality and fair play". While Plaintiff's expressive dissociation was denied by SBA, SBA contemporaneously attempted to disbar Plaintiff in connection with his civil rights work on behalf of disabled individuals. Plaintiff sought to dissociate himself from the SBA because he finds SBA's expressive conduct incompatible with his fundamental sense of integration, equality, morality and fair play.

3. On May 8, 2019, Plaintiff tendered to SBA a voluntary Consent to Disbarment stating, in part:

> I am aware of the rules of the Supreme Court with respect to discipline, disability, resignation and reinstatement, and I understand that any future application by me for admission or reinstatement as a member of the State Bar of Arizona will be treated as an application by a member who has

---

[2] Added only in his capacity as spouse of Maret Vessella

been disbarred for professional misconduct, as set forth in the charges made against me. I have previously denied the allegations of any impropriety and enter this Consent as a consequence of my ailing health and desire for peace.

4. In response, SBA entered a Judgment of Disbarment on May 10, 2019, stating in part:

Under Rule 57(a)(5)(A), any future application for reinstatement "will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the . . . complaint . . . ."

Mr. Strojnik has been under the force of an interim suspension order. Under Arizona Rule of Supreme Court 61(d), that order of interim suspension continued in force until final disposition of all pending proceedings against him. This judgment is the final disposition of these proceedings and the force of that order is lifted.

5. Despite both parties' identical purpose – absolute and final dissociation one from the other - SBA has denied Plaintiff his 1st Amendment right of expressive dissociation in order to (1) retaliate and coerce Plaintiff to confirm to SBA's expressive segregationist creed, and (2) to intimidate and interfere with Plaintiff's 1st Amendment right to redress his own personal grievances.

6. Defendants never proved and the presiding disciplinary judge William O'Neal never found that Plaintiff violated any ethical rules in connection with his representation of civil rights plaintiffs whom he represented.

7. Despite Plaintiff's disbarment and the setting aside the interim suspension order, Plaintiff continues and will to continue experiencing concrete and continuing injury through severe collateral consequences of the disbarment in lieu of dissociation, including, without limitation, the following:

    a. Effectively prevents Plaintiff for reapplying to the membership with the SBA or this District Court even at a time when the SBA adopts non-discriminatory values; and

    b. Effective foreclosure from applying to State Bar Membership in non-discriminatory jurisdictions, including State and Federal jurisdictions; and

3

c. The defamatory scorn experienced by attorneys who are branded as "disbarred"; and

d. As an ADA Tester himself, Plaintiff currently experiences and will continue to experience ADA defense counsel refusal to recognition of expressive dissociation in the hope that some judges who fall within "skeptical" and "hostile" categories will be, as some have been, influenced by this false narrative[3].

8. Despite Plaintiff's consent to dissociate himself from the SBA, the case and controversy continues for the reason that Defendant's conduct is capable of repetition yet evading review through its power to disbar those who refuse to conform to its segregationist views.

9. Some of the allegations in this Second Amended Complaint are based on "information and belief" which are "based on factual information that makes the inference of culpability plausible," although a court may consider whether "facts are peculiarly within the possession and control of the defendant." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 U.S. Dist. LEXIS 44833, at *5 (N.D. Cal. 2018)

### JURISDICTION AND VENUE

10. The actions or omissions that form the basis for the Plaintiffs' claims herein occurred in Maricopa County in the State of Arizona. The Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under

---

[3] This category of Judges was referenced by the Honorable Judge Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp.3d 570, 596-97 (S.D. Tex., 2014):

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although a number of courts addressing Title III cases have been skeptical, and even hostile. *See* Lee, *Giving Disabled Testers Access to Federal Courts*, 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA*, 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.' " *Betancourt v. Federated Dept. Stores,* 732 F.Supp.2d 693, 701 (W.D.Tex.2010) *Betancourt,* 732 F.Supp.2d at 701, *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007).

1  42 U.S.C. §§ 1981, 1981a, 1983, 1985 and 1988. The Court has supplemental jurisdiction

2  over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. 18. Venue in this Court

3  is appropriate under 28 U.S.C. § 1391(b)(2) because the Defendant is located within this

4  District.

**PARTIES**

5    11. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff

6  is an immigrant and a veteran and has been, at all times relevant hereto, legally disabled

7  by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral

8  neuropathy, prostate cancer and renal cancer, degenerative right knee (now replaced with

9  a prosthetic knee). . He currently suffers from memory loss and other amnesia. Plaintiff

10  is a member of a protected class under the Americans with Disabilities Act.

11    12. Plaintiff is a former member of the State Bar of Arizona  having resigned on

12  October 24, 2018 for the reason that his continued association with said agency "is

13  inconsistent with [his] core principles of morality and fair play":

14  ///

15
16  ///

17
18  ///

19
20  ///

21
22  ///

23
24  ///

25
26  ///

27  ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



PETER STROJNIK

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

October 24, 2018

Shauna R. Miller, Esq.
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6288
*By e-mail only Shauna.Miller@staff.azbar.org*

    Re: *Notice of Retirement and Resignation*

Dear Shauna:

I previously advised you that my continuing association with the State Bar is inconsistent with my core principles of morality and fair play and indeed, my health; therefore, I give you formal notice of my immediate retirement and resignation from your organization.

I understand that there are pending issues relating to my now former license which I will deal with in the ordinary course of business. Please do not misunderstand this notice as any admission of any impropriety; any contrary indication on your website will be viewed as defamatory.

You previously advised me that it is impossible to retire or resign from your organization and on that, let me offer this: You can tell a fish that he can't swim, and you can tell me that I can't resign. Bu he can, and I do. On a personal level, I have always found you to be amiable and cordial, and I wish you the very best in all your endeavors.

Please e-mail me a copy of this letter marked "received" and make it a part of my file.

Sincerely,

Peter Strojnik

13. Defendant SBA is a private non-profit corporation established in 1933.

14. All acts committed by the SBA through its agents and employees Miller and Vessella were committed by it in its private, non-governmental capacity, non-judicial or

quasi-judicial purposes, but under the color of state law. (Defendants are hereinafter sometimes referred jointly as "SBA" or "Defendants")

### COUNT 1

U.S.C. § 1981 et seq Claims for (a) Violation of Plaintiff's 1st Amendment Right of Dissociation, (b) Violation of Plaintiffs right to be free from  (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206.

15. For several years Plaintiff provided legal services to the disabled community in Arizona filing 1,700± in the Maricopa Superior Court alone. In *all* 1,700± Plaintiff donated *all* his fees to a non-profit organization for the disabled.

16. Plaintiff's representation of disabled individuals was at all times ethical, moral, legal and proper.

17. When the news about Plaintiff's civil rights work spread through the Phoenix area, numerous media outlets began disseminating false information about the civil rights of the disabled and about the Plaintiff, completely and utterly oblivious to the fact that in the ADA civil rights litigation, the disabled individual and not the offending public accommodation is the victim.

18. As a direct and proximate result of the number of cases filed, upon information and belief, State Bar of Arizona, Brnovich, the East Mesa Chamber of Commerce, the local firm of Jennings Strauss and Salmon (in particular Lindsay Leavitt and Scott Frerichs) ("JSS") conducted at least two clandestine meetings at the offices of the East Mesa Chamber of Commerce ("EMCC") to design and develop a plan to force Plaintiff to cease enforcing disabled individuals' civil rights in the State of Arizona[4].

19. At one of these two clandestine meetings, upon information and belief, JSS suggested that one way of stopping Strojnik from continuing his civil rights actions was for ADA violating individuals to file bar charges against him.

---

[4] Prior to including JSS and EMCC as party defendants, Plaintiff intends to seek leave to conduct appropriate discovery.  Further, prior to including Brnovich and the Office of the AG, Plaintiff intends to conduct discovery in order to make the A.R.S. §12-821.01 Notice of Claim and, subsequently, include Brnovich and AG to this suit.

20. Brnovich agreed to intervene in civil rights cases on behalf of the ADA violating public accommodations. At the above referenced meetings, upon information and belief, it was agreed that the cases would be consolidated before Superior Court Judge Talamante. In connection with Judge Talamante, a statement was made, upon information and belief, that "we have a judge".

21. Plaintiff understands and, on that basis alleges, that the statement "we have a judge" reference was made to the Superior Court of Maricopa County Judge Talamante, The statement was meant to communicate that Brnovich, JSS, EMCC "have a judge" who will dismiss the Superior Court Cases.

22. Once agreeing to intervene and thwart the civil rights of Arizona's disabled community, Brnovich sent out criminal investigators to take photos of cars parked at Plaintiff's location. Brnovich began investigating and intimidating Plaintiff and Plaintiff's support staff.

23. Indeed, Brnovich intervened on behalf of ADA violating public accommodations and Judge Talamante, as calculated by the statement "we have a judge", dismissed the Superior Court cases for lack of standing.

24. Judge Talamante never considered the merits of these cases.

25. Judge Talamante's dismissal was appealed.

26. On March 27, 2017, Brnovich filed a Motion for Rule 11 Sanctions, Motion for Non-Rule 11 Sanctions and for evidentiary hearing against Plaintiff.

27. On or about August 9, 2017, the 9th Circuit Court of Appeals issued the now celebrated *CREEC* decision[5] which by implication overruled Judge Talamante's dismissal for lack of standing and positively and absolutely vindicated Plaintiff.

28. At this time Brnovich, defendant State Bar of Arizona and JSS realized – or should have realized – that Judge Talamante's decision was wrong, incorrect and contrary to law and that a continued harassment and intimidation of Plaintiff was contrary to the cause of justice and, further, that ***any continued prosecution of Strojnik "would not advance the***

---

[5] *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust,* 867 F.3d 1093 (9th Cir. 2017)

*cause of justice*". In fact, in a Court filing, Brnovich so admitted on or about November 6, 2017:

> 6.    The State withdraws with prejudice its Motion(s) for sanctions pursuant to Rule 11, A.R.S. § 12-349, and the Court's inherent power, or otherwise, and for an award of attorney's fees and costs against Messrs. Ritzenthaler and Strojnik for the reason that a continuing pursuit of sanctions, costs and fees against Messrs. Ritzenthaler and Strojnik would not advance the cause of justice. This withdrawal applies solely to the consolidated cases, and does not preclude the State from acting to protect the public in other litigation.

29. In the meantime, EMCC membership and Brnovich continued filing bar charges against Plaintiff with Defendant the State Bar of Arizona, and the media continued to publish false reports about the ADA.

30. Throughout the relevant period, Arizona's media was paying a close attention to Plaintiff's civil rights work, Brnovich's protection of the ADA violating public accommodations and SBA's persecution of Plaintiff. Most media outlets, and particularly the most vociferous media outfit, Channel 15 and David Biscobing,  took a critical view of Plaintiff's civil rights work. Indeed, Biscobing's reporting resulted in death threats against Plaintiff.

31. In order to correct the false impressions created by the media, the SBA and Brnovich, Plaintiff challenged Brnovich to a public debate but Brnovich refused.

32. On or about December 15, 2017, Plaintiff submitted and the Arizona Republic published Plaintiff's opinion piece which explained the discriminatory actions on the part of Brnovich under the headline[6]:

///

///

///

///

---

[6]    https://www.azcentral.com/story/opinion/op-ed/2017/12/15/mark-brnovich-fighting-disabled-business/944342001/

9



33. The above publication, on information and belief, motivated Brnovich to retaliate for Plaintiff's civil rights work. Plaintiff's exposure of Brnovich as a hater of the disabled and a "champion of small business" (see below) caused Brnovich, SBA, JSS and EMCC to agree, expressly or tacitly, to work closely together to impose maximum damage against Plaintiff.

34. SBA and Brnovich agreed that, despite Plaintiff's vindication by the *CREEC* decision, they would work together to affect Brnovich's, SBA's, JSS's, EMCC's desire to accomplish a disbarment of Plaintiff for the purpose of (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

35. For their part, the Defendants agreed to investigate the bar charges even where, in its face, a bar charge would disclose no violation of ethical rules.

36. For its part of the agreement, Brnovich agreed to (1) conduct independent investigation of Plaintiff and share the results with the SBA, (2) send out criminal investigators to investigate Strojnik and the non-profit organization to whom Strojnik donated ADA litigation proceeds ("AID"), (3) provide support and assistance in SBA's investigations of Strojnik and AID and (4) provide additional assistance to the SBA in any proceeding through testimony of Brnovich's staff.

37. The purpose of the agreements between SBA,  Brnovich, JSS and EMCC was for Plaintiff to incur unnecessary attorney's fees and costs, and force Plaintiff to cease his civil rights work through economic extorsion and the threat of disbarment and through the commission of torts alleged below.

38. Plaintiff was not to be economically deterred and, therefore, the SBA filed for interim suspension.  At the conclusion of the Interim Suspension Hearing, the presiding judge O'Neill noted, paraphrasing, "all he has heard is that Strojnik filed meritorious ADA cases" implying that there was no basis for interim suspension.

39. Nonetheless, through a methodology and subsequent events currently unclear to Plaintiff, Judge O'Neil entered an order of interim suspension where he stated, in part:

> The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

40. The above quote demonstrates SBA's view that it is ADA enforcement, and not ADA violations that are the problem in this State.  Not to be lost in the above quote is that the SBA's O'Neil found that filing meritorious ADA enforcement actions constitutes a "*scheme*" and that filing meritorious ADA enforcement actions "*cause imminent and substantial harm to the public and administration of justice*".

41. SBA's individual employees and agents were caught up in the anti-civil rights frenzy. Upon information and belief, they were motivated by group think and embarrassment that one of their members was acting contrary to the desired popular public perception of Arizona lawyers.

42. Upon information and belief, these employees and agents decided to use their power to strip Plaintiff of his right to practice law, thus preventing him from representing civil rights plaintiffs.

43. Subsequently, the SBA filed a formal complaint against Strojnik. The Complaint was based, in part, on SBA's position that filing meritorious civil rights lawsuits is "wreak[ing] havoc" requiring SBA immediate action to stop it. In its communications with the Brnovich, the Miller stated:

> **From:** Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
> **Sent:** Friday, May 04, 2018 10:22 AM
> **To:** Roysden, Beau
> **Subject:** Strojnik hearing yesterday
>
> Hi Beau,
>
> Well, I have good news and bad new; the good news is that your testimony was extremely compelling. You make a very good witness, too bad that isn't some type of career; you could make a mint. Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision. That is just going to prolong Mr. Strojnik's ability to wreak havoc. I was hoping we would get a ruling within the next week, but now it is open-ended. I will keep you updated as we go along. If anything else concerning Mr. Strojnik comes to your attention, please let me know.

44. SBA's close working relationship with Brnovich was admitted by the SBA in an e-mail from SBA to the SBA board of governors, stating in part, "we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending":

///

///

///

///

///

///

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

| From: | Shauna Miller |
|-------|---------------|
| Sent: | Friday, June 29, 2018 8:29 AM |
| To: | Karen Calcagno (Karen.Calcagno@staff.azbar.org) |
| Subject: | FW: Strojnik file no. 16-1309 |

Please upload to the file.

---

From: Shauna Miller
Sent: Friday, June 29, 2018 8:27 AM
To: 'Mike Wilson' <mwilson@wilsonps.net>
Cc: Maret Vessella <Maret.Vessella@staff.azbar.org>; Amy Rehm <Amy.Rehm@staff.azbar.org>
Subject: Strojnik file no. 16-1309

Hi Mike,

I just received the fax you sent with a copy of the letter to the Board of Governors. I wanted to give you an update on where we are with the Strojnik matters.

Although it may seem like the State Bar is not doing anything, I can tell you that I have been working on the Strojnik case pretty much non-stop for the last several months. On March 6, 2018, the State Bar filed a motion for interim suspension with the Presiding Disciplinary Judge (PDJ) and a hearing should have been held no later than April 10, 2018. It was actually set for April 11, 2018. On April 3, 2018, Mr. Strojnik filed a motion to continue the hearing date due to a medical issue, which the State Bar opposed. The PDJ granted the motion and the hearing was reset for April 18, 2018. On April 11, 2018, Mr. Strojnik filed a motion to dismiss the State Bar's motion for interim suspension. The State Bar filed its response on April 26, 2018. On May 2, 2018, Mr. Strojnik filed his reply. On May 3, 2018, the PDJ heard oral argument on the motion to dismiss, and denied it. The hearing on the motion for interim suspension took place that same day. Assistant Attorney General Beau Roysden testified at the hearing. At the conclusion of the hearing, the PDJ ordered the parties to file their closing arguments. The State Bar's closing argument was due 20 days after we received a transcript from the hearing, and our closing argument was filed on June 14, 2018. Mr. Strojnik has until July 3, 2018 to file his closing argument. The PDJ must then file his decision no later than July 18, 2018. We have requested that Mr. Strojnik be suspended until the pending discipline matters have been resolved.

In the meantime, we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending. Those include matters pending in the district court and state court.

I understand this process seems to take a long time, but we are constrained by the Arizona Supreme Court Rules and need to adhere to the timelines set forth therein. If you ever want an update on the status of your case, please email me and I will give you the information that I am allowed to give pursuant to the rules.

**Shauna Miller, Senior Bar Counsel**
T: 602.340.7386 F: 602.416.7446

20

21

22

23

24

25

26

27

28

45. SBA and Brnovich, through expressive and verbal speech, identified themselves as holding segregationist views toward the disabled. Indeed, Plaintiff alleges on information and belief that as a direct result of SBA's and Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation, Brnovich Was recognized as a "champion of small business" by the National Federation of Independent Business:

**Mark Brnovich**

*Arizona Attorney General*

Mark Brnovich was inaugurated as Arizona's Attorney General in 2015. He previously served as Director of the Arizona Department of Gaming, as an Assistant U.S. Attorney for the District of Arizona, and as an Assistant Attorney General with the state. He has also been a Judge Pro Tem of Maricopa County Superior Court, Deputy Maricopa County Attorney, Command Staff Judge Advocate in the U.S. Army National Guard, and Director of the Center for Constitutional Government at the Goldwater Institute.

Brnovich is known for restoring public confidence in the office of "Arizona's Top Cop" and for assembling some of the nation's most talented public servants for his administration. He argued at the United States Supreme Court regarding voter redistricting, was featured on the CBS television (60 Minutes) in defense of capital punishment, and appeared on Times Square's billboards to combat human sex trafficking.

Most recently, he was honored by the National Federation of Independent Business as a "Champion of Small Businesses."



46. Upon receipt of the above cutout e-mails and other information on or about March 13, 2019, Plaintiff realized that the SBA and Brnovich were working together for the express purpose of halting all ADA related litigation in the State of Arizona, thus violating the express findings and purposes of the ADA encapsulated in 42 U.S.C. 12101:

**42 U.S.C. §12101:**
**(a) Findings**
The Congress finds that—
(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;
(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;
(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;
(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory

14

effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

**(b) Purpose**

It is the purpose of this chapter—

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

47. Plaintiff realized that the SBA, JSS and EMCC were persecuting Plaintiff for the primary purpose of affecting Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

48. SBA's and Brnovich's expressive conduct and verbal statements disclose Defendants' and Brnovich's opposition with congressional findings and purpose.

49. On the other hand, Plaintiff agrees with congressional findings and purpose.

50. SBA's and Brnovich's expressive opposition to congressional findings and purpose is fundamentally inimical to the integration of the disabled individuals into America's social and economic life and to Plaintiff's moral creed.

51. If Plaintiff were to remain a member of the SBA, he would be viewed as having the same expressive opinions of civil rights as the SBA and Brnovich, and would become a subject of scorn and distrust.

52. Plaintiff alleges that the First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977). Plaintiff further believes, and therefore alleges, that the right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623 (1984) (**"Freedom of association . . . plainly presupposes a freedom not to associate"**) (emphasis supplied); see *Pacific Gas & Elec.*, *supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). By remaining a member of the State Bar, Strojnik is forced to confess to State Bar's faith in discrimination, coercion, threats and intimidation.

53. Defendants' and Brnovich's inimical expressions to integration of the disabled community into American economic and social life run counter to Plaintiff's fundamental beliefs of equality for all.

54. Therefore, on March 8, 2019, Plaintiff filed with the Presiding Disciplinary Judge a Motion To Recognize Strojnik's Expressive Dissociation From The Arizona State Bar. The Motion stated, in part:

> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977); see *Riley* v. *National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc.* v. *Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241, 256–257 (1974); accord, *Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623

16

(1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec.*, *supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). (Emphasis in original.)

55. The SBA did not respond but, instead, submitted a Motion to Strike on the fundamental bases that Plaintiff's Motion is "redundant", "immaterial" and "impertinent" and further that the Motion is damaging SBA's "credibility and reputation".

56. Plaintiff's Motion was denied by SBA's O'Neil.

57. By forcing Plaintiff to remain a member of the SBA, Strojnik was forced to confess to State Bar's faith in discrimination, segregation, coercion, threats and intimidation.

58. Further, Defendants and Brnovich have taken the above actions to force Plaintiff to remain a member of the SBA in order to keep him under the oppressive regime of the SBA's oversight, thus preventing him from exercising his own individual 1st Amendment right to redress[7] ADA violations.

59. The denial of Plaintiff's motion for dissociation violates Plaintiff's First Amendment right to expressive dissociation.

60. Plaintiff has been damaged by SBA's denial of his right to expressive dissociation.

61. Plaintiff has been damaged by SBA's and Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

62. The controversy has not been rendered moot by Plaintiff's disbarment under the doctrines alleged above, and elsewhere in this Second Amended Complaint.

63. Throughout the relevant times, upon information and belief, SBA has been acting in its purely private motives for purely private purposes and to conform to the group think

---

[7] Plaintiff's First Amendment right to "petition the Government for a redress of grievances" — which includes the filing of lawsuits — and which is "one of `the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)).

that permeated Arizona during the relevant period. At the same time, Defendants acted under the color of state law. Their conduct was intentional and aggravated, outrageous and reprehensible. It's entire purpose was, upon information and belief, designed to "to compel [Plaintiff] to conform" to Arizona's discriminatory group think. *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001).

64. At all times relevant hereto, Defendants acted under the color of state law in order to deprive Plaintiff his rights under the Constitution (1st Amendment), Federal Statute (42 USC 12203) and Regulation (28 CFR 36.206) and otherwise as alleged herein.

65. In order to perpetuate (a) Violation of Plaintiff's 1st Amendment Right of Dissociation, (b) Violation of Plaintiffs right to be free from   (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206 as alleged above, Defendants committed the torts alleged in Counts 2 (Civil Conspiracy), Count 3 (Aiding and Abetting), Count 4 (Interference with Contractual Relationships), Count 5 (Abuse of Process) and Count 6 (Intentional Infliction of Emotional Distress)

**WHEREFORE,** Plaintiff requests relief as follows:

1. For a finding that Plaintiff has the right of 1st Amendment expressive dissociation; and

2. For a finding that the SBA acted in concert with Brnovich to defy Plaintiff's constitutional right of expressive dissociation; and

3. For a finding that SBA denied Plaintiff his 1st Amendment right of expressive dissociation; and

4. For immediate order to the SBA to acknowledge Plaintiff's expressive dissociation; and

5. For damages in an amount to be proven at trial, but in no event less than $750,000.00; and

6. For punitive damages in an amount to be proven at trial but in no event less than $5,000,000.00.

7. For early discovery process to permit Plaintiff to discover facts relative to Brnovich's, JSS's, EMCC's aiding, abetting, providing support to and conspiring with the SBA.

8. For such other and further relief as the Court deems appropriate.

## Count 2
## Civil Conspiracy

66. Plaintiff realleges all allegations heretofore set forth.

67. Defendants, Brnovich, EMCC and JSS agreed to accomplish an unlawful purpose, causing damage, all as more fully alleged above and below.

68. Defendants, Brnovich, EMCC and JSS agreed to accomplish a lawful purpose by unlawful means, causing damage, all as more fully described above and below.

69. Defendant, Brnovich, EMCC and JSS agreed and thereupon accomplished underlying torts alleged herein, which they agreed to commit, all as more fully set forth above and below.

70. Plaintiff has been damages by Defendants' civil conspiracy in an amount to be proven at trial, but in no event less than $5,000,000.00.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For a finding of civil conspiracy by Defendants; and

B. For damages in an amount no less than $5,000,000.00; and

C. For costs and fees incurred in this litigation; and

D. For such other and further relief as the Court may deem just and proper.

## Count 3
## Aiding and Abetting

71. Plaintiff realleges all allegations heretofore set forth.

72. Defendants knowingly aided and abetted Brnovich, EMCC and JSS in their (1) retaliation, interference, coercion and/or intimidation of Plaintiff as prohibited pursuant to 42 USC §12203 and 28 CFR §36.206, (2) Tortious Interference with Plaintiff's current and potential contracts and (3) Intentional infliction of emotional distress, all as more fully set forth above and below.

73. Plaintiff has been damaged by Defendants' aiding and abetting Brnovich, EMCC and JSS in an amount no less than $5,000,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A.  For a finding that Defendants aided and abetted Brnovich, EMCC and JSS as alleged; and

B.  For damages in an amount no less than $5,000,000.00; and

C.  For costs and fees incurred; and

D.  For such other and further relief as the Court may deem just and proper.

## Count 4
### Tortious Interference with Contractual Relations

74. Plaintiff realleges all allegations heretofore set forth.

75. At relevant times, Plaintiff has a contractual relationship with then  current clients and a business expectancy of gaining future clients.

76. Defendants intentionally interfered with Plaintiff's current clients and business expectancies by engaging in conduct described above and below.

77. Defendant's motive was to harm Plaintiff as part of the overall conspiratorial strategy between SBA, Brnovich, EMCC and JSS.

78. Plaintiff suffered damages as a result in an amount no less than $5,000.000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A.  For a finding of tortious interference with Plaintiff's contracts and business expectancies; and

B.  For damages in an amount no less than $5,000,000.00; and

C.  For costs and fees incurred; and

D.  For such other and further relief as the Court may deem just and proper.

## Count 5
### Abuse of Process

79. Plaintiff realleges all allegations heretofore set forth.

80. Defendants used the judicial process for the purpose of perpetrating injustice, that is, they perverted the judicial process primarily to accomplish an improper purpose, all as more fully described above and below.

81. Plaintiff has been damaged as a result of the Defendants' abuse of process in an amount no less than $5,000,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

    A.  For a finding that Defendants committed abuse of process.; and

    B.  For damages in an amount no less than $5,000,000.00; and

    C.  For costs and fees incurred; and

    D.  For such other and further relief as the Court may deem just and proper.

## Count 6
### Intentional Infliction of Emotional Distress

82. Plaintiff realleges all allegations heretofore set forth.

83. Defendants caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result, all as more fully alleged above and below.

84. Severe emotional distress resulted causing Plaintiff damage in an amount no less than $5,000,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A.  For a finding that Defendants committed abuse of process.; and

B.  For damages in an amount no less than $5,000,000.00; and

C.  For costs and fees incurred; and

D.  For such other and further relief as the Court may deem just and proper.

### PRAYER FOR PUNITIVE DAMAGES

85. Plaintiff realleges all allegations heretofore set forth.

86. Defendants' conduct was motivated by the intent to cause harm to Plaintiff and disabled individuals in general and to effectively kill all ADA civil rights litigation in the State of Arizona.

87. Defendants' conduct alleged above demonstrate that Defendants possessed an "evil mind" while engaging in aggravated and outrageous conduct as described above.

88. Punitive damages against Defendants are particularly appropriate to deter Defendant from emulating the alleged conduct in the future.

WHEREFORE, Plaintiff requests relief as follows:

A.  For punitive damages sufficient in amount to deter these Defendants and others similarly situated from emulating Defendants' conduct; and

B.  For such other and further relief as the Court may find reasonable and proper.

## TRIAL BY JURY IS DEMANDED

DATED this 22nd day of July 2019.

**PETER STROJNIK**

Peter Strojnik
Plaintiff

Filed and distributed through PACER.

EXHIBIT 3

1

Peter Strojnik

2

2375 East Camelback Road Suite 600
Phoenix, Arizona 85016

3

Telephone:  (602) 524-6602
ps@strojnik.com

4

Twitter: @strojnikpeter

5



6

7

8

9

10

11

12

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

13

14

PDJ-2018-9015
No: 18-0615

15

IN THE MATTER OF A **NON**-MEMBER
OF THE STATE BAR OF ARIZONA

**MOTION TO RECOGNIZE
STROJNIK'S EXPRESSIVE
DISSOCIATION FROM THE
ARIZONA STATE BAR**

16

**PETER STROJNIK**

17

18

**Non**-Member

19

20

Strojnik brings this motion for the reason that on October 24, 2018, he expressively

21

dissociated himself from the State Bar for the reason that a continued association with said

22

agency "is inconsistent with [his] core principles of morality and fair play". Addendum A.

23

While the Stat Bar's Mission, Vision, and Core Values[1] lists the assurances that

24

"*[a]ll Arizona residents have equal access to legal services of the highest quality*",

25

"*commitment to advocate causes of justice*", "*diversity*" and "*promotion of justice*", its

26

expressive conduct demonstrate that it its creed includes segregation, violation of federal

27

28

---

[1] https://www.azbar.org/aboutus/mission-vision-andcorevalues/

law, coercion and intimidation designed "to compel dissenters to conform". *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001)

It is Strojnik's 1st Amendment protected opinion that contrary to the lofty goals stated in State Bar's Mission, Vision and Core Values, the State Bar is actually a segregationist organization whose purpose is to thwart all ADA civil rights enforcement action in the State of Arizona. Although the righteousness of Strojnik's opinion is irrelevant to the question of expressive dissociation, his opinion is based in history.

It is by now undisputed that the State Bar has been in a closely knit collusion with the Arizona AG Brnovich, *see, e.g.,* Addendum D. It is also undisputed that Strojnik issued a scathing op-ed piece in the Arizona Republic questioning *Why Does Brnovich Hate the Disabled*:



2

This op-ed is also protected by the 1st Amendment[2]. However, as a result of this piece, AG Brnovich became highly agitated and teamed up with the State Bar to frustrate *all* civil rights of the Arizona Disability Community.

It is likewise undisputed that Strojnik's activity as a civil rights attorney is federally protected against retaliation, interference, coercion or intimidation, see 42 USC 12203 and 28 CFR § 36.206.

This is plain from State Bar's own e-mail that it considers civil rights litigation as "wreak[ing] havoc" requiring State Bar's action to stop it.  In its communications with the AG, State Bar stated:

> **From:** Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
> **Sent:** Friday, May 04, 2018 10:22 AM
> **To:** Roysden, Beau
> **Subject:** Strojnik hearing yesterday
>
> Hi Beau,
>
> Well, I have good news and bad new; the good news is that your testimony was extremely compelling.  You make a very good witness, too bad that isn't some type of career; you could make a mint.  Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision.  That is just going to prolong Mr. Strojnik's ability to wreak havoc.  I was hoping we would get a ruling within the next week, but now it is open-ended.  I will keep you updated as we go along.  If anything else concerning Mr. Strojnik comes to your attention, please let me know.

Addendum C.  See also State Bar's admission that " we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending". Addendum D, Thus, the common goal expressed by and between the State Bar and the AG cannot be disputed.

**1. Strojnik Has The 1st Amendment Right To Dissociate From Any Agency That Prescribes What Shall Be Orthodox In The Matters Of Opinion.**

The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977); see *Riley* v. *National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc.* v. *Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241, 256–257 (1974); accord,

---

[2] It must be noted that AG's function is to promote everyone's civil rights, including the disabled.  Instead, AG, and now the State Bar, have concluded that it is more important to "protect" ADA violating public accommodations. After all, "public accommodations" vote and file bar charges. The disabled not so much.

*Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623 (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec., supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein.*" *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). By remaining a member of the State Bar, Strojnik is forced to confess to State Bar's faith in discrimination, coercion, threats and intimidation.

**2.  Is State Bar's Conduct "Speech"?**

*See  Texas v. Johnson*, 491 U.S. 397 (1989). (Expressive conduct is speech.) Here, the State Bar admits that filing ADA civil rights actions "wreak havoc" and must be stopped.

**3.  Whether The "Opinion" Is Commonly Accepted, Or Even Discriminatory, Is Irrelevant.**

As stated in *Roberts* supra, the "[f]reedom of association . . . plainly presupposes a freedom not to associate"). The concepts of *association* and *dissociation* are equal in principle.  Therefore, the case of *Boy Scouts of America et al. v. Dale*, 530 U.S. 640 (2000) is instructive.

In *Dale,* decided on June 28, 2000, the Supreme Court held that held that the constitutional right to freedom of association allowed the Boy Scouts of America (BSA) to exclude a homosexual person from membership in spite of a state law requiring equal treatment of homosexuals in public accommodations. More generally, the court ruled that the BSA may exclude a person from membership when "the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints". The Supreme Court ruled that opposition to homosexuality is part of BSA's "expressive message" and that allowing homosexuals as adult leaders would interfere with that message.

4

It is significant to note that the Court did not turn on whether BSA's creed was popular or even discriminatory. It was simply *its* creed. The Court observed, 530 U.S. 647-650:

> In *Roberts* v. *United States Jaycees,* 468 U. S. 609, 622 (1984), we observed that "implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas. See *ibid.* (stating that protection of the right to expressive association is "especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority"). Government actions that may unconstitutionally burden this freedom may take many forms, one of which is "intrusion into the internal structure or affairs of an association" like a "regulation that forces the group to accept members it does not desire." *Id.,* at 623. Forcing a group to accept certain members may impair the ability of the group to express those views, and only those views, that it intends to express. Thus, "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Ibid.*

> The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints. *New York State Club Assn., Inc.* v. *City of New York,* 487 U. S. 1, 13 (1988). But the freedom of expressive association, like many freedoms, is not absolute. We have held that the freedom could be overridden "by regulations adopted to serve compelling State interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts, supra,* at 623.

> To determine whether a group is protected by the First Amendment's expressive associational right, we must determine whether the group engages in "expressive association." The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private.

> Because this is a First Amendment case where the ultimate conclusions of law are virtually inseparable from findings of fact, we are obligated to independently review the factual record to ensure that the state court's judgment does not unlawfully intrude on free expression. See *Hurley, supra,* at 567-568. The record reveals the following. The Boy Scouts is a private, nonprofit organization. According to its mission statement:

5

"It is the mission of the Boy Scouts of America to serve others by helping to instill values in young people and, in other ways, to prepare them to make ethical choices over their lifetime in achieving their full potential. The values we strive to instill are based on those found in the Scout Oath and Law:

"Scout Oath "On my honor I will do my best "To do my duty to God and my country "and to obey the Scout Law; "To help other people at all times; "To keep myself physically strong, "mentally awake, and morally straight. "Scout Law "A Scout is: "Trustworthy Obedient "Loyal Cheerful "Helpful Thrifty "Friendly Brave "Courteous Clean "Kind Reverent." App. 184.

Thus, the general mission of the Boy Scouts is clear: "[T]o instill values in young people." *Ibid.* The Boy Scouts seeks to instill these values by having its adult leaders spend time with the youth members, instructing and engaging them in activities like camping, archery, and fishing. During the time spent with the youth members, the scoutmasters and assistant scoutmasters inculcate them with the Boy Scouts' values—both expressly and by example. It seems indisputable that an association that seeks to transmit such a system of values engages in expressive activity. See *Roberts, supra,* at 636 (O'Connor, J., concurring) ("Even the training of outdoor survival skills or participation in community service might become expressive when the activity is intended to develop good morals, reverence, patriotism, and a desire for self-improvement").

### 4.  Application

As the Boy Scouts in *Dale,* so does Strojnik have a deeply felt moral creed that State Bar's expressions of discrimination is wrong, its retaliation, interference, coercion and intimidation are wrong, and that its violation of federal law is wrong. Strojnik cannot be forced to associate with a group whose expression by conduct is to segregate, discriminate and violate federal law, nor can he allow himself to be linked to any such group.

### 5.  Compelling State Interest and Less Restrictive Means

The freedom to dissociate can be overridden "by regulations adopted to serve compelling State interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts, supra,* at 623.

1     It is unclear what "compelling state interest" may be offered where the Strojnik and

2  the State Bar agree on the ultimate end to their relationship: dissociation. If the State Bar

3  truly believes that Strojnik committed some made up ethnical violations, Strojnik's

4  voluntary expressive dissociation will cover *all* of its Missions, Visions and Core Values.

5     Here, the entire purpose of State Bar's expressive conduct is to infringe on

6  Strojnik's associational freedom. The only means "less restrictive of associational

7  freedom" is dissociation itself.

### CONCLUSION AND PRAYER FOR RELIEF

8     Strojnik respectfully request that all involved recognize his First Amendment right

9  to expressive dissociation.  To the extent that the State Bar wishes to continue with the

10  current proceeding with the sole goal of noting on the bar website that Strojnik has been

11  *disbarred* and has not *resigned*, then Strojnik will participate in the proceeding for the sole

12  purpose of protecting his good name.

13     DATED this 18th day of March 2019.

14                              **PETER STROJNIK**

15                              _____

16                              Non-member

17  Original mailed 18th day of March, 2019 to:

18  Amanda McQueen

19  Disciplinary Clerk
    Office of the Presiding Disciplinary Judge

20  1501 W. Washington, Suite 102

21  Phoenix, Arizona 85007

22  e-mailed to:

23  Shauna R. Miller
    Senior Bar Counsel

24  *State Bar of Arizona*

25  4201 N. 24th Street, Suite 100
    Phoenix, AZ 85016-6288

26  Email: lro@staff.azbar.org

27  /s/ PS

28

7

1

**ADDENDUM A**

2



3

# PETER STROJNIK

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

4

5

6

7

October 24, 2018

8

Shauna R. Miller, Esq.

9

Senior Bar Counsel
*State Bar of Arizona*

10

4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6288

11

*By e-mail only Shauna.Miller@staff.azbar.org*

12

Re: *Notice of Retirement and Resignation*

13

Dear Shauna:

14

I previously advised you that my continuing association with the State Bar is inconsistent

15

with my core principles of morality and fair play and indeed, my health; therefore, I give
you formal notice of my immediate retirement and resignation from your organization.

16

I understand that there are pending issues relating to my now former license which I will

17

deal with in the ordinary course of business. Please do not misunderstand this notice as any
admission of any impropriety; any contrary indication on your website will be viewed as

18

defamatory.

19

You previously advised me that it is impossible to retire or resign from your organization

20

and on that, let me offer this: You can tell a fish that he can't swim, and you can tell me
that I can't resign. Bu he can, and I do. On a personal level, I have always found you to be

21

amiable and cordial, and I wish you the very best in all your endeavors.

22

Please e-mail me a copy of this letter marked "received" and make it a part of my file.

23

Sincerely,

24

Peter Strojnik

25

26

27

28

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Mission, Vision, and Core Values

## Mission Statement

The State Bar of Arizona exists to serve and protect the public with respect to the provision of legal services and access to justice. Consistent with these goals, the State Bar of Arizona seeks to improve the administration of justice and the competency, ethics, and professionalism of lawyers practicing in Arizona.

## Long-Term Vision

The State Bar of Arizona (SBA) has a vision of the future that guides our work as an organization. We are committed to create a future Arizona where:

- All Arizona lawyers are part of a supportive and collegial community of professionals exhibiting the highest standards of ethical conduct and technical skill, and sharing a passion for excellence in the practice of law.
- Arizona courts are honored as forums for the fair and prompt handling of legal proceedings by judicial officers of the highest caliber.
- All Arizona residents have equal access to legal services of the highest quality and to a system of justice that affords them prompt resolution of their legal issues.
- The judiciary and the members of the SBA stand ready at all times to anticipate the emerging legal needs of Arizona citizens and to continuously improve the system of justice to meet those needs.

## Core Values

There are key values that guide the work of the Board of Governors. These values are important to everything we do. We use these values to shape our work and ensure that our approaches are consistent with our results. We list them without reference to priority, because they are of equal value to how we live our professional and personal lives.

**Integrity:** This value represents our commitment to truth in all of its forms and in all of our actions. It is adherence to the spirit as well as to the letter of the law. It is consistency, transparency, and accountability for what we say and what we do, as individuals, as professionals, and as an organization.

**Service to Clients and the Public:** This value represents our commitment to advocate the causes of others with all of our strength, as we would advocate for ourselves in the most important of personal concerns. It is embracing the responsibility to give back to society the knowledge and skills that we acquired with the help of others.

**Diversity:** This value represents our commitment to ensuring that the legal profession and the justice system reflect the community it serves in all of its social, economic, and geographical diversity. It is seeking out members of underrepresented groups to add their strength to the legal profession and to the advancement of justice in all areas of society.

**Professionalism:** This value represents our commitment to each other and to all whom we encounter to act with highest level of sensitivity to the feelings of others. It transcends common courtesy and requires treating all persons within the sphere of our influence with dignity, respect, and unqualified civility.

**Promoting Justice:** This value represents our commitment to ensuring at every risk to ourselves that others have access to the system of justice in which we serve as officers of the court. It is living in our daily lives the oath of allegiance to the Constitutions of the United States and of the State of Arizona by which we are privileged to practice our profession.

**Leadership:** This value represents our commitment to use whatever influence we are privileged to acquire to advance the just causes of those whose influence is less. It is understanding at all times that our actions are observed and may be emulated, and that we are responsible for social behaviors modeled upon our own.

**ADDENDUM C**

From: Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
Sent: Friday, May 04, 2018 10:22 AM
To: Roysden, Beau
Subject: Strojnik hearing yesterday

Hi Beau,

Well, I have good news and bad new; the good news is that your testimony was extremely compelling.  You make a very good witness, too bad that isn't some type of career; you could make a mint.  Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision.  That is just going to prolong Mr. Strojnik's ability to wreak havoc.  I was hoping we would get a ruling within the next week, but now it is open-ended.  I will keep you updated as we go along.  If anything else concerning Mr. Strojnik comes to your attention, please let me know.

10

1

## ADDENDUM D

2

| | |
|---|---|
| **From:** | Shauna Miller |
| **Sent:** | Friday, June 29, 2018 8:29 AM |
| **To:** | Karen Calcagno (Karen.Calcagno@staff.azbar.org) |
| **Subject:** | FW: Strojnik file no. 16-1309 |

3

4

5

Please upload to the file.

6

**From:** Shauna Miller
**Sent:** Friday, June 29, 2018 8:27 AM
**To:** 'Mike Wilson' <mwilson@wilsonps.net>
**Cc:** Maret Vessella <Maret.Vessella@staff.azbar.org>; Amy Rehm <Amy.Rehm@staff.azbar.org>
**Subject:** Strojnik file no. 16-1309

7

8

Hi Mike,

9

I just received the fax you sent with a copy of the letter to the Board of Governors. I wanted to give you an update on where we are with the Strojnik matters.

10

11

Although it may seem like the State Bar is not doing anything, I can tell you that I have been working on the Strojnik case pretty much non-stop for the last several months. On March 6, 2018, the State Bar filed a motion for interim suspension with the Presiding Disciplinary Judge (PDJ) and a hearing should have been held no later than April 10, 2018. It was actually set for April 11, 2018. On April 3, 2018, Mr. Strojnik filed a motion to continue the hearing date due to a medical issue, which the State Bar opposed. The PDJ granted the motion and the hearing was reset for April 18, 2018. On April 11, 2018, Mr. Strojnik filed a motion to dismiss the State Bar's motion for interim suspension. The State Bar filed its response on April 26, 2018. On May 2, 2018, Mr. Strojnik filed his reply. On May 3, 2018, the PDJ heard oral argument on the motion to dismiss, and denied it. The hearing on the motion for interim suspension took place that same day. Assistant Attorney General Beau Roysden testified at the hearing. At the conclusion of the hearing, the PDJ ordered the parties to file their closing arguments. The State Bar's closing argument was due 20 days after we received a transcript from the hearing, and our closing argument was filed on June 14, 2018. Mr. Strojnik has until July 3, 2018 to file his closing argument. The PDJ must then file his decision no later than July 18, 2018. We have requested that Mr. Strojnik be suspended until the pending discipline matters have been resolved.

12

13

14

15

16

17

In the meantime, we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending. Those include matters pending in the district court and state court.

18

19

I understand this process seems to take a long time, but we are constrained by the Arizona Supreme Court Rules and need to adhere to the timelines set forth therein. If you ever want an update on the status of your case, please email me and I will give you the information that I am allowed to give pursuant to the rules.

20

21

**Shauna Miller, Senior Bar Counsel**
T: 602.340.7386 F: 602.416.7446

22

23

24

25

26

27

28

EXHIBIT 4

**IA LODGING NAPA FIRST LLC DBA ANDAZ NAPA – A CONCEPT BY HYATT**

**ADA DUE DILIGENCE REPORT AND INITIAL DISCLOSURES**

| DEFENDANT AND PROPERTY INFORMATION | |
|---|---|
| **Manager** | Patrick Miller Patrick.m.miller@andaz.com |
| **Defendant / dba** | IA Lodging Napa First LLC., dba Andaz Napa – a concept by Hyatt |
| **Address** | 1450 First Street, Napa, CA 84559 |
| **Phone** | 707-687-1234 |

| 201321310231    IA LODGING NAPA FIRST, L.L.C. | |
|---|---|
| Registration Date: | 07/31/2013 |
| Jurisdiction: | DELAWARE |
| Entity Type: | FOREIGN |
| Status: | ACTIVE |
| Agent for Service of Process: | C T CORPORATION SYSTEM (C0168406) |
| | To find the most current California registered Corporate Agent for Service of Process address and authorized employee(s) information, click the link above and then select the most current 1505 Certificate. |
| Entity Address: | 200 S ORANGE AVE STE 2700 ORLANDO FL 32801 |
| Entity Mailing Address: | 200 S ORANGE AVE STE 2700 ORLANDO FL 32801 |
| LLC Management | * |
| https://www.hyatt.com/en-US/hotel/california/andaz-napa/apcrn | |

## ADDENDUM A

| 3RD PARTY BOOKING WEBSITE – GENERAL ACCESSIBILITY INFORMATION |
|---|
| www.hotels.com |

### INSUFFICIENT ACCESSIBILITY INFORMATION

**Main amenities**
- ✓ 141 smoke-free guestrooms
- ✓ Restaurant and 2 bars/lounges
- ✓ Breakfast available
- ✓ Fitness center
- ✓ Valet parking
- ✓ 24-hour business center
- ✓ Free WiFi

## About Andaz Napa - a concept by Hyatt, Napa

**Location.**
Located in downtown Napa, this elegant boutique hotel is within 6 blocks of tasting rooms, renowned restaurants, and the Oxbow Public Market. World-class wineries are within 10 miles.

**Hotel Features.**
An outdoor terrace is outfitted with a fire pit, porch swings, and lounge chairs. The hotel's expert concierge desk staff can assist with winery tours, local tastemaker tips, and restaurant reservations. The hotel offers 1,500 square feet of meeting space, 3 conference rooms, and a computer station. Complimentary wireless Internet access is available throughout the hotel. Self parking is available.

**Guestrooms.**
Smoke-free guestrooms feature Italian-cotton matelasse coverlets, 42-inch flat-panel TVs, MP3 docking stations, and marble bathrooms with waterfall showers. Minibars are stocked with gourmet goodies from Dean & DeLuca. Cuisinart coffeemakers brew organic coffees and come with travel mugs.

## Key facts

### Hotel size

- This hotel has 141 rooms
- This hotel is arranged over 5 floors

### Arriving/leaving

💬 95% of customers were happy with check-in

- Check-in time starts at 4 PM
- Check-out time is noon
- Express check-out

### Required at check-in

- Credit card or cash deposit required
- Government-issued photo ID required

## In the hotel

| | |
|---|---|
| Food and drink | Full breakfast daily (surcharge)  \|  2 bars/lounges  \|  Restaurant  \|  Coffee shop/café  \|  24-hour room service |
| Things to do | Bicycle rentals on site  \|  Personal motorized watercraft on site  \|  Ecotours nearby  \|  Golf lessons available nearby  \|  Golfing nearby  \|  Hiking/biking trails nearby  \|  Kayaking nearby  \|  Mountain biking nearby  \|  Parasailing nearby  \|  Rafting nearby  \|  Sailing nearby  \|  Scooter/moped rentals nearby  \|  Skydiving nearby |
| Working away | 24-hour business center  \|  Conference space  \|  Meeting rooms  \|  Conference space size (feet) - 1900  \|  Conference space size (meters) - 177  \|  Conference center  \|  Computer station |
| Services | 24-hour front desk  \|  Concierge services  \|  Tours/ticket assistance  \|  Dry cleaning/laundry service  \|  Free newspapers in lobby  \|  Luggage storage  \|  Wedding services  \|  Multilingual staff  \|  Porter/bellhop |
| Facilities | Number of buildings/towers - 1  \|  Year Built 2009  \|  Elevator/lift  \|  Safe-deposit box at front desk  \|  Terrace  \|  Television in common areas |
| Accessibility | Accessible bathroom  \|  In-room accessibility  \|  Roll-in shower |
| Languages Spoken | English  \|  Spanish |

2

| In the room | |
|---|---|
| Home comforts | In-room climate control (air conditioning)  \|  Air conditioning  \|  Coffee/tea maker  \|  Bathrobes  \|  Iron/ironing board |
| Sleep well | Blackout drapes/curtains  \|  Premium bedding  \|  Pillowtop mattress |
| Things to enjoy | In-room massage available |
| Freshen up | Private bathroom  \|  Rainfall showerhead  \|  Shower only  \|  Designer toiletries  \|  Hair dryer |
| Be entertained | 42-inch LED TV  \|  Premium TV channels |
| Stay connected | Desk  \|  Free newspaper  \|  Free WiFi  \|  Free local calls |
| Food and drink | Free bottled water |
| More | Daily housekeeping  \|  In-room safe (laptop compatible)  \|  Connecting/adjoining rooms available |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019.

**1ST PARTY BOOKING WEBSITE - GENERAL ACCESSIBILITY INFORMATION**

https://www.hyatt.com/en-US/hotel/california/andaz-napa/apcrn?&src=adm_sem_agn_360i_crp_ppc_D+Brand-Napa-NonGP_google_Brand-Napa-AZ+Napa-Exact_e_andaz%20napa_Brand&gclid=CjwKCAjw7_rlBRBaEiwAc23rhilcXLWj3zKCDeYuvIkOwUjD7VOV8HEekiIHfTvEF7Wgf0qdkj5yNxoCMv0QAvD_BwE&gclsrc=aw.ds

3

HOTEL ACCESSIBILITY FEATURES

We are committed to providing equal access and opportunity for individuals with disabilities. The features also make our hotels more accessible for older individuals with changing abilities to ensure a seamless experience. Our overall goal is to improve usability throughout the hotel for all guests.

**Accessible Hotel Parking and Transportation**

Van-accessible self-parking

Self-parking for cars

**Accessible Hotel Areas**

Public Entrance

Registration desk

Restaurants

Public restrooms

**Accessibility for Guest Rooms and Meetings**

Closed caption or closed captioning decoders for guest room televisions

Accessible guest rooms with mobility features have doorways with 32in (0.81m) of clear width

**Hotel Areas with Accessible Routes from Accessible Public Entrance**

Restaurants

Accessible guestrooms

Business Center

Fitness Center / Exercise facilities

SPA

Registration area

Swimming pool

Meeting room / Ballroom area

| | |
|---|---|
| **Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. False claim as more fully documented in personal observations below. | |
| **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. | |
| **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019. | |

**PERSONAL ENCOUNTERS**



Identification.



**Identification of Specific Barrier in Plain Language:** Inaccessible check in counter.



**Identification of Specific Barrier in Plain Language:** Inaccessible check in counter.



**Identification of Specific Barrier in Plain Language:** Inaccessible bar seating.



**Identification of Specific Barrier in Plain Language:** Inaccessible coffee bar.



**Identification of Specific Barrier in Plain Language:** Inaccessible sevice counter.



**Identification of Specific Barrier in Plain Language:** 20lbs to push open lobby bathroom.



**Identification of Specific Barrier in Plain Language:** Improperly configured hardware in lobby bathroom.



**Identification of Specific Barrier in Plain Language:** 4s closing time for lobby bathroom.



**Identification of Specific Barrier in Plain Language:** Over 5 lbs to open.



**Identification of Specific Barrier in Plain Language:** Inaccessible hardware.



**Identification of Specific Barrier in Plain Language:** Inaccessible conciege desk.



| Identification of Specific Barrier in Plain Language: Inaccessible seating at hotel bar. |
| --- |
| The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel: Above described barriers denied Plaintiff full and equal access to the benefits of the facility. |
| The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel: On or about April 18, 2019. |

**END**

EXHIBIT 5



# PETER STROJNIK

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

April 24, 2019

Patrick Miller Patrick.m.miller@andaz.com
IA Lodging Napa First LLC., dba Andaz Napa – a concept by Hyatt
1450 First Street, Napa, CA 84559

Re: *Courtesy Notice of Potential Litigation*

Dear Mr. Miller:

I am a disabled veteran and an ADA tester. I intended to lodge at your Hotel on April 18, 2019, but noted that the Hotel does not provide equal access as required by 28 CFR Part 36, the 2010 Standards of Accessibility Design. The hotel's non-compliance with the ADA deter me from booking a room there although I intend to book it as your facility becomes fully ADA compliant.

In the preparation of the attached draft Complaint, I gathered information from third party booking agent's website, hotel's own website and personal observations. Some of the information may be old or otherwise unreliable; therefore, let me know any corrections that should be incorporated into the draft complaint. Further, please review the attached 2010 Standards of Accessibility Design and, pursuant to 28 CFR §36.302(e), disclose which of the mobility requirements have not been met.

I strongly suggest that you consult with an attorney learned in ADA matters. This is a complex matter involving significant potential damages, attorney's fees, costs and expenses.

I request that you respond to this communication no later than 10 days from the send date. In the meantime, I am able to discuss this matter by phone and e-mail.

Sincerely,

Peter Strojnik

Encls. as indicated

EXHIBIT 6

Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

Peter Strojnik (Sr.),

Plaintiff,

vs.

IA Lodging Napa First LLC., dba Andaz Napa

Defendant.

Case No:

**COMPLAINT**

1. **Americans with Disabilities Act**
2. **Discrimination in Public Accommodations (State Law)**
3. **Negligence**

**JURY TRIAL REQUESTED**

1. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department of Justice Standards for Accessible Design ("ADA"), (2)  California Unruh Civil Rights Act, California Civil Code § 51, 52 ("Unruh") (3) the California Disabled Persons Act ("DPA") and (4) common law of negligence per se.

**PARTIES**

2. Plaintiff Peter Strojnik is a veteran and a disabled person as defined by the ADA and DPA.

3. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is and, at all times relevant hereto has been, legally disabled by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, degenerative right knee and is therefore a member of a protected class under the ADA and Unruh.

4. Plaintiff suffers from physical impairments described above which impairments substantially limit his major life activities.  Plaintiff walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation. Plaintiff's impairment is constant, but the degree of pain is episodic ranging from dull and numbing pain to extreme and excruciating agony.

5. Defendant, owns, operates leases or leases to a lodging business ("Hotel") located at 1450 First Street, Napa, CA 84559which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A) and Unruh.

### JURISDICTION

6. District Court has jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

7. Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C.12188 and 28 CFR §36.501.

8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia,* Plaintiff's claim for equitable nominal damages.

9. Venue is proper pursuant to 28 U.S.C. § 1391.

10. The ADAAG violations in this Verified Complaint relate to barriers to Plaintiffs mobility. This impairs Plaintiff's full and equal access to the Hotel which, in turn, constitutes discrimination satisfying the "injury in fact" requirement of Article III of the United States Constitution.

11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability.

12. Plaintiff intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

**COUNT ONE**
**Violation of Plaintiff's Civil Rights under the ADA**

13. Plaintiff realleges all allegations heretofore set forth.

14. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

15. Plaintiff intended to visit California Wine Country and therefore, reviewed hotel booking websites as documented in Addendum A which is by this reference incorporated herein for all purposes.

16. Plaintiff became aware that third party booking websites disclosed general availability and description of Defendant's Hotel. Third Party booking websites referenced here are more fully documented in Addendum A which is by this reference incorporated herein.

17. Third party booking websites failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented in Addendum A.

18. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

19. Thereafter, Plaintiff became aware that Defendant's 1ˢᵗ party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully documented. *See* Addendum A.

20. Plaintiff also became aware that Defendant's 1ˢᵗ party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. *See* Addendum A.

3

21. Plaintiff thereafter reviewed Defendant's online information relating to accessibility or lack thereof, including in particular photographs of the amenities at the Hotel all as more fully documented in Addendum A.

22. Online information relating to accessibility or lack thereof disclosed architectural barriers to accessibility as more fully documented in Addendum A.

23. Defendant has violated the ADA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above and as outlined in Addendum A.

24. The ADA violations described in Addendum A relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

25. Plaintiff declined to book a room at Defendant's Hotel but booked a room elsewhere.

26. The removal of accessibility barriers listed above is readily achievable.

27. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E. Equitable nominal damages; and

    F. For costs, expenses and attorney's fees; and

    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

**COUNT TWO**

4

**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

28. Plaintiff realleges all allegations heretofore set forth.

29. Plaintiff intended to visit California Wine Country area and spend a night there.

30. Plaintiff became aware that 3rd party booking websites disclosed general availability and description of Defendant's Hotel. 3rd Party booking website referenced here is more fully discussed in Addendum A which is by this reference incorporated herein.

31. 3rd party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

32. Third party booking websites also failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

33. Thereafter, Plaintiff became aware that Defendant's 1st party booking website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs as more fully disclosed in Addendum A.

34. Plaintiff also became aware that Defendant's 1st party booking website failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms. Addendum A.

35. Plaintiff subsequently declined to book a room at the Hotel.

36. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

37. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

38. Plaintiff has been damaged by the Defendant's non-compliance with Unruh and is thereby aggrieved.

5

39. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

40. Pursuant to Unruh, Plaintiff is entitled to costs and expenses in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its accommodation into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the Hotel facilities are fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

d. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the Unruh; and

e. For damages in an amount no less than $4,000.00 per encounter with barrier; and

f. For treble damages pursuant to Cal Civ. Code. §3345.

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

**COUNT THREE**
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

41. Plaintiff realleges all allegations heretofore set forth.

42. Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of his disability as outlined above.

43. The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

44. Plaintiff has been aggrieved by the Defendant's non-compliance with the DPA.

45. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

46. Pursuant to the DPA, Plaintiff is entitled to costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to Unruh which directs Defendant to take all steps necessary to bring its facilities into full compliance with the requirements set forth in the Unruh, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, disabled individuals as required by law, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its facilities are fully in compliance with the relevant requirements of the Unruh to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; and

c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, the payment of costs of suit; and

7

d.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the DPA; and

e.  For damages in an amount no less than $1,000.00 per violation per encounter; and

f.  For treble damages pursuant to Cal Civ. Code. §3345.

g.  The provision of whatever other relief the Court deems just, equitable and appropriate.

### COUNT FOUR
Negligence

47. Plaintiff realleges all allegations heretofore set forth.

48. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

49. Defendant breached this duty.

50. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[1].

51. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

52. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[2].

53. Defendant's knowing and intentional persistence in discrimination against Plaintiff is alleged, causing Plaintiff damage.

54. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria,

---

[1] 42 U.S.C. § 12101(a)(2)
[2] 42 U.S.C. §12101(a)(3)

segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[3].

55. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

56. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[4].

57. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

58. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[5].

59. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

60. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[6].

61. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

62. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

63. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

---

[3] 42 U.S.C. §12101(a)(5)
[4] 42 U.S.C. §12101(a)(6)
[5] 42 U.S.C. §12101(a)(7)
[6] 42 U.S.C. §12101(a)(8)

64. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial

65. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

66. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A.  For finding of negligence; and

    B.  For damages in an amount to be proven at trial; and

    C.  For punitive damages to be proven at trial; and

    D.  For such other and further relief as the Court may deem just and proper.

**REQUEST FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this _____.

                **PETER STROJNIK**

                _____

                Plaintiff

1

## ADDENDUM A

2

3
**3ᴿᴰ PARTY BOOKING WEBSITE – GENERAL ACCESSIBILITY INFORMATION**

www.hotels.com

4

### INSUFFICIENT ACCESSIBILITY INFORMATION

5

6

**Main amenities**

7
- ✓ 141 smoke-free guestrooms
- ✓ Restaurant and 2 bars/lounges
- ✓ Breakfast available
- ✓ Fitness center
- ✓ Valet parking
- ✓ 24-hour business center
- ✓ Free WiFi

8

9

10

11

**About Andaz Napa - a concept by Hyatt, Napa**

12
**Location.**
Located in downtown Napa, this elegant boutique hotel is within 6 blocks of tasting rooms, renowned restaurants, and the Oxbow Public Market. World-class wineries are within 10 miles.

**Hotel Features.**
An outdoor terrace is outfitted with a free pit, porch swings, and lounge chairs. The hotel's expert concierge desk staff can assist with winery tours, local tastemaker tips, and restaurant reservations. The hotel offers 1,900 square feet of meeting space, 3 conference rooms, and a computer station. Complimentary wireless Internet access is available throughout the hotel. Self parking is available.

**Guestrooms.**
Smoke-free guestrooms feature Italian-cotton matelasse coverlets, 42-inch flat-panel TVs, MP3 docking stations, and marble bathrooms with waterfal showers. Minibars are stocked with gourmet goodies from Dean & DeLuca. Cuisinart coffeemakers brew organic coffees and come with travel mugs.

13

14

15

16
**Key facts**

**Hotel size**

17
- This hotel has 141 rooms
- This hotel is arranged over 5 floors

18
**Arriving/leaving**

🏆 95% of customers were happy with check-in

19
- Check-in time starts at 4 PM
- Check-out time is noon
- Express check-out

20

21
**Required at check-in**
- Credit card or cash deposit required
- Government-issued photo ID required

22

23

24

25

26

27

28

| In the hotel | | |
|---|---|---|
| Food and drink | Full breakfast daily (surcharge) \| 2 bars/lounges \| Restaurant \| Coffee shop/café \| 24-hour room service | |
| Things to do | Bicycle rentals on site \| Personal motorized watercraft on site \| Ecotours nearby \| Golf lessons available nearby \| Golfing nearby \| Hiking/biking trails nearby \| Kayaking nearby \| Mountain biking nearby \| Parasailing nearby \| Rafting nearby \| Sailing nearby \| Scooter/moped rentals nearby \| Skydiving nearby | |
| Working away | 24-hour business center \| Conference space \| Meeting rooms \| Conference space size (feet) - 1900 \| Conference space size (meters) - 177 \| Conference center \| Computer station | |
| Services | 24-hour front desk \| Concierge services \| Tours/ticket assistance \| Dry cleaning/laundry service \| Free newspapers in lobby \| Luggage storage \| Wedding services \| Multilingual staff \| Porter/bellhop | |
| Facilities | Number of buildings/towers - 1 \| Year Built 2009 \| Elevator/lift \| Safe-deposit box at front desk \| Terrace \| Television in common areas | |
| Accessibility | Accessible bathroom \| In-room accessibility \| Roll-in shower | |
| Languages Spoken | English \| Spanish | |

| In the room | |
|---|---|
| Home comforts | In-room climate control (air conditioning) \| Air conditioning \| Coffee/tea maker \| Bathrobes \| Iron/ironing board |
| Sleep well | Blackout drapes/curtains \| Premium bedding \| Pillowtop mattress |
| Things to enjoy | In-room massage available |
| Freshen up | Private bathroom \| Rainfall showerhead \| Shower only \| Designer toiletries \| Hair dryer |
| Be entertained | 42-inch LED TV \| Premium TV channels |
| Stay connected | Desk \| Free newspaper \| Free WiFi \| Free local calls |
| Food and drink | Free bottled water |
| More | Daily housekeeping \| In-room safe (laptop compatible) \| Connecting/adjoining rooms available |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019.

**1ST PARTY BOOKING WEBSITE - GENERAL ACCESSIBILITY INFORMATION**

https://www.hyatt.com/en-US/hotel/california/andaz-napa/apcrn?&src=adm_sem_agn_360i_crp_ppc_D+Brand-Napa-NonGP_google_Brand-Napa-AZ+Napa-Exact_e_andaz%20napa_Brand&gclid=CjwKCAjw7_rlBRBaEiwAc23rhilcXL

1
2

Wj3zKCDeYuvIkOwUjD7VOV8HEekiiHfTvEF7Wgf0qdkj5yNxoCMv0QAv
D_BwE&gclsrc=aw.ds

3

4

### HOTEL ACCESSIBILITY FEATURES

5

We are commited to providing equal access and opportunity for individuals with disabilities. The features also make our hotels more accessible for older individuals with changing abilities to ensure a seamless experience. Our overall goal is to improve usability throughout the hotel for all guests.

6

**Accessible Hotel Parking and Transportation**

Van-accessible self-parking

Self-parking for cars

7

**Accessible Hotel Areas**

Public Entrance

Registration desk

Restaurants

Public restrooms

8

**Accessibility for Guest Rooms and Meetings**

Closed caption or closed captioning decoders for guest room televisions

Accessible guestrooms with mobility features have doorways with 32in (0.81m) of clear width

9

**Hotel Areas with Accessible Routes from Accessible Public Entrance**

Restaurants

Accessible guestrooms

Business Center

Fitness Center / Exercise facilities

SPA

Registration area

Swimming pool

Meeting room / Ballroom area

10
11
12

13

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. False claim as more fully documented in personal observations below.

14
15

16

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

17
18

19

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019.

20

### PERSONAL ENCOUNTERS

21
22
23
24
25
26
27
28



Identification.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible check in counter.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible check in counter.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible bar seating.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible coffee bar.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible sevice counter.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** 20lbs to push open lobby bathroom.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Improperly configured hardware in lobby bathroom.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** 4s closing time for lobby bathroom.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Over 5 lbs to open.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible hardware.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Identification of Specific Barrier in Plain Language:** Inaccessible conciege desk.



**Identification of Specific Barrier in Plain Language:** Inaccessible seating at hotel bar.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Above described barriers denied Plaintiff full and equal access to the benefits of the facility.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019.

**END**