# EXHIBIT 1

## DECLARATION OF PETER STROJNIK IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### A. Declarant's Background Information and Expertise

1. Declarant is a retired 67 year old disabled veteran and a former lawyer. He spends his retirement years travelling across America with Mrs. Strojnik. While traveling he tests places of lodging for ADA compliance.

2. Declarant is qualified as an expert by knowledge, skill, experience, training, and education to testify to matters of opinion. In connection with his expertise, Declarant states that he has extensively reviewed and studied the ADA, ADAAA, 28 CFR 36 and the 1991 and 2010 Standards for Accessibility Design both as a lawyer and as a private plaintiff.

### B. Declarant's Impairments

3. Declarant is and, at all times relevant hereto has been, legally disabled by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, missing part of a limb (right knee) and is therefore a member of a protected class under the ADA and Unruh.

4. Renal cancer causes Declarant persistent pain in the lower back and abdomen, fatigue and anemia. Foraminal stenosis with symptoms of femoral neuropathy cause excruciating pain while walking, sitting, standing, resting, reaching, lifting, bending, working manual tasks or doing anything at all. Missing right knee likewise causes excruciating pain while walking, sitting, standing, resting, reaching, lifting, bending, working manual tasks or doing anything at all.

5. Declarant ameliorated his renal cancer through mitigating cryoablation surgery (prognosis unknown). He ameliorated the severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy through mitigating nerve

blocking[1]. He ameliorated the generative right knee with mitigating measure of total knee replacement on June 18, 2019[2].

6. Declarant is aware that pursuant to the 2019 ADA Amendment Act ("ADAAA"), rules of construction require courts to evaluate whether an individual has a disability without considering the ameliorative effects of mitigating measures (except for ordinary eyeglasses and contact lenses). *Id.* Congress included examples of mitigating measures in the ADAAA, such as: medication, equipment, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics, hearing aids and cochlear implants, mobility devices, use of assistive technology, reasonable accommodations or auxiliary aids or services, and learned behavioral or adaptive neurological modifications[3]. Significantly, the EEOC and DOJ also stated that even though the mitigating measure itself cannot be considered, the negative side effects of mitigating measures may be considered in assessing disability. 28 CFR 36.105.

7. "An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Congress provided that "[t]he term 'substantially limits' shall be construed in favor of expansive coverage" and that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(i)-(ii). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *Id.* § 1630.2(j)(1)(iv). *See* 28 CFR 35.105.

---

[1] Nerve blocking is a procedure which inoculates nerve deadening medication directly on the affected nerve. The ameliorative effect of this procedure is temporary, requiring repeat applications. At the current time, Plaintiff has received one set of 3 applications plus one. This condition last a lifetime.

[2] In this procedure, a surgeon removes the operative parts of the knee and replaces it with a prosthetic metal and low friction plastic components:

[3] Id. at §§ 12102(4)(E)(i).

8. The term "major life activity" includes, but is not limited to, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working.

9. Declarant states that his impairments substantially limit his ability to perform a major life activity as compared to most people in the general population even with the ameliorating effects of mitigating measures described above.

10. "[I]n deciding whether the impairment is substantially limiting, courts must consider the nature and severity of the plaintiff's impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (internal quotations omitted).

11. Declarant confirms that his impairments (foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer and missing right knee) are severe of permanent, lifetime duration.

12. As a result of his disability, Declarant requires places of lodging to comply with 28 CFR 36.302(e) and the musculoskeletal requirements of the 1991 or 2010 Standards.

## C. Declarant's Standing

13. Plaintiff visited Defendant's Place of Lodging at the times specifically referenced in the Addendum A and personally experienced barriers to accessibility documented in Addendum A hereto.

14. Declarant is deterred from lodging at Defendant's Hotel because of Defendant's barriers to Declarant's access.

15. Declarant has a current intent to visit Defendant's Hotel once Declarant has learned that Defendant's Hotel is ADA compliant.

16. Declarant has suffered a constitutional injury in fact.

## D. Relationship between Renal Cancer, Severe Right Sided Neural Stenosis with Femoral Neuropathy as Mobility Limitation Preventing Plaintiff from Full and Equal Enjoyment of Defendant's Hotel.

### a. With Respect to 28 CFR §36.302(e)

17. 28 CFR§36.302(e) requires a place of lodging to "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs" "with respect to reservations made by any means, including by telephone, in-person, or through a third party". The official comment states:

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (*e.g.,* deluxe executive suite), the size and number of beds (*e.g.,* two queen beds), the type of accessible bathing facility (*e.g.,* roll-in shower), and communications features available in the room (*e.g.,* alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.

> For older hotels with limited accessibility features, information about the hotel should include, at a minimum, **information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards.** … (Emphasis mine)

18. Defendant failed to comply with 302(e) as factually documented in Addendum A appended hereto.

### b. With Respect to Musculoskeletal Impairment

16. "An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Congress provided that "[t]he term 'substantially limits' shall be construed in favor of expansive coverage" and that "[a]n impairment need not prevent, or significantly

or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. § 1630.2(j)(1)(i)-(ii). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *Id*. § 1630.2(j)(1)(iv). *See* 28 CFR 35.105, appended as Addendum B, for applicable definitions and rules of construction.

17. "[I]n deciding whether the impairment is substantially limiting, courts must consider the nature and severity of the plaintiff's impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment." *Rohr v. Salt River Project Agric. Imp. & Power Dist*., 555 F.3d 850, 858 (9th Cir. 2009) (internal quotations omitted).

18. Here, Declarant's renal cancer (even if in remission), severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, and degenerative right knee are severe impairments with lifetime duration.

### a. With Respect to Architectural Barriers

19. In *Advocates for Individuals With Disabilities LLC v. WSA Props. LLC,* 210 F.Supp.3d 1213, 1219 (D. Ariz., 2016) the Court offered the following analysis:

> The ADAAG were promulgated by the United States Access Board and establish a national standard for minimum levels of accessibility in all new facilities or the remodeling of existing facilities. See *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 at n. 5 (9th Cir. 2011). (citing *Indep. Living Res. v. Or. Arena Corp*., 982 F. Supp. 698, 714 (D. Or. 1997)); see also *White v. Divine Investments, Inc*., No. 04-cv-206 FCD DA, 2005 WL 2491543, at *4 (E.D. Cal. Oct. 7, 2005). "A disabled person who encounters a 'barrier,' i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA." *Chapman*, 631 F.3d at 948 n. 5 (citing 42 U.S.C. § 12182(b)(1)(A)(i)).
>
> In *Chapman* , the Ninth Circuit described the circumstances under which an ADA plaintiff experiences injury-in-fact:
>
> > Under the ADA, when a disabled person *encounters an accessibility barrier* violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way. Rather, the

barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a).

*** 

Of course, a "barrier" will only amount to such interference *if it affects the plaintiff's full and equal enjoyment of the facility* on account of his particular disability. Because the ADAAG establishes the technical standards required for "full and equal enjoyment," **if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. That discrimination satisfies the "injury-in-fact" element of *Lujan*.** As we have held, once a disabled plaintiff *has encountered a barrier* violating the ADA, "that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability." *Chapman* , 631 F.3d at 947 (emphasis added, footnote and some citations omitted).

20. The barriers to accessibility documented in Addendum A appended hereto relate to Declarant's disabilities and interfered with Declarant's "full and equal enjoyment" of Defendant's place of lodging. 42 U.S.C. § 12182(a).

21. Declarant personally encountered the barriers to accessibility documented in Addendum A which caused Declarant to experience difficulty and discomfort, thus denying him full and equal access. (California's Civil Rights Act, Cal. Civ. Code §55.56(b) and (c).

I DECLARE THAT THE INFORMATION ABOVE IS BASED ON MY PERSONAL KNOWLEDGE AND IS CORRECT TO THE BEST OF MY ABILITY.

DATED this 12th day of September, 2019.

**PETER STROJNIK**

_____
Declarant

FILED AND SERVED THROUGH PACER

# ADDENDUM A

<table>
<tr><td style="background:#8b0000;color:white"><b>3RD PARTY BOOKING WEBSITE – GENERAL ACCESSIBILITY INFORMATION</b></td></tr>
<tr><td style="background:#f0b000;color:green">www.hotels.com</td></tr>
</table>

**3RD PARTY BOOKING WEBSITE – GENERAL ACCESSIBILITY INFORMATION**

**www.hotels.com**

## INSUFFICIENT ACCESSIBILITY INFORMATION

**Main amenities**

✓ 141 smoke-free guestrooms
✓ Restaurant and 2 bars/lounges
✓ Breakfast available
✓ Fitness center
✓ Valet parking
✓ 24-hour business center
✓ Free WiFi

**About Andaz Napa - a concept by Hyatt, Napa**

**Location.**
Located in downtown Napa, this elegant boutique hotel is within 6 blocks of tasting rooms, renowned restaurants, and the Oxbow Public Market. World-class wineries are within 10 miles.

**Hotel Features.**
An outdoor terrace is outfitted with a fire pit, porch swings, and lounge chairs. The hotel's expert concierge desk staff can assist with winery tours, local tastemaker tips, and restaurant reservations. The hotel offers 1,900 square feet of meeting space, 3 conference rooms, and a computer station. Complimentary wireless Internet access is available throughout the hotel. Self parking is available.

**Guestrooms.**
Smoke-free guestrooms feature Italian-cotton matelasse coverlets, 42-inch flat-panel TVs, MP3 docking stations, and marble bathrooms with waterfall showers. Minibars are stocked with gourmet goodies from Dean & DeLuca. Cuisinart coffeemakers brew organic coffees and come with travel mugs.

**Key facts**

**Hotel size**

▪ This hotel has 141 rooms
▪ This hotel is arranged over 5 floors

**Arriving/leaving**

💬 95% of customers were happy with check-in

▪ Check-in time starts at 4 PM
▪ Check-out time is noon
▪ Express check-out

**Required at check-in**

▪ Credit card or cash deposit required
▪ Government-issued photo ID required

## In the hotel

| | |
|---|---|
| Food and drink | Full breakfast daily (surcharge) \| 2 bars/lounges \| Restaurant \| Coffee shop/café \| 24-hour room service |
| Things to do | Bicycle rentals on site \| Personal motorized watercraft on site \| Ecotours nearby \| Golf lessons available nearby \| Golfing nearby \| Hiking/biking trails nearby \| Kayaking nearby \| Mountain biking nearby \| Parasailing nearby \| Rafting nearby \| Sailing nearby \| Scooter/moped rentals nearby \| Skydiving nearby |
| Working away | 24-hour business center \| Conference space \| Meeting rooms \| Conference space size (feet) - 1900 \| Conference space size (meters) - 177 \| Conference center \| Computer station |
| Services | 24-hour front desk \| Concierge services \| Tours/ticket assistance \| Dry cleaning/laundry service \| Free newspapers in lobby \| Luggage storage \| Wedding services \| Multilingual staff \| Porter/bellhop |
| Facilities | Number of buildings/towers - 1 \| Year Built 2009 \| Elevator/lift \| Safe-deposit box at front desk \| Terrace \| Television in common areas |
| Accessibility | Accessible bathroom \| In-room accessibility \| Roll-in shower |
| Languages Spoken | English \| Spanish |

## In the room

| | |
|---|---|
| Home comforts | In-room climate control (air conditioning) \| Air conditioning \| Coffee/tea maker \| Bathrobes \| Iron/ironing board |
| Sleep well | Blackout drapes/curtains \| Premium bedding \| Pillowtop mattress |
| Things to enjoy | In-room massage available |
| Freshen up | Private bathroom \| Rainfall showerhead \| Shower only \| Designer toiletries \| Hair dryer |
| Be entertained | 42-inch LED TV \| Premium TV channels |
| Stay connected | Desk \| Free newspaper \| Free WiFi \| Free local calls |
| Food and drink | Free bottled water |
| More | Daily housekeeping \| In-room safe (laptop compatible) \| Connecting/adjoining rooms available |

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019.

**1ST PARTY BOOKING WEBSITE - GENERAL ACCESSIBILITY INFORMATION**

https://www.hyatt.com/en-US/hotel/california/andaz-napa/apcrn?&src=adm_sem_agn_360i_crp_ppc_D+Brand-Napa-NonGP_google_Brand-Napa-AZ+Napa-Exact_e_andaz%20napa_Brand&gclid=CjwKCAjw7_rlBRBaEiwAc23rhilcXLWj3z

[KCDeYuvIkOwUjD7VOV8HEekiiHfTvEF7Wgf0qdkj5yNxoCMv0QAvD_BwE&gcl src=aw.ds](KCDeYuvIkOwUjD7VOV8HEekiiHfTvEF7Wgf0qdkj5yNxoCMv0QAvD_BwE&gcl)

HOTEL ACCESSIBILITY FEATURES

We are committed to providing equal access and opportunity for individuals with disabilities. The features also make our hotels more accessible for older individuals with changing abilities to ensure a seamless experience. Our overall goal is to improve usability throughout the hotel for all guests.

**Accessible Hotel Parking and Transportation**

Van-accessible self-parking

Self-parking for cars

**Accessible Hotel Areas**

Public Entrance

Registration desk

Restaurants

Public restrooms

**Accessibility for Guest Rooms and Meetings**

Closed caption or closed captioning decoders for guest room televisions

Accessible guest rooms with mobility features have doorways with 32in (0.81m) of clear width

**Hotel Areas with Accessible Routes from Accessible Public Entrance**

Restaurants

Accessible guestrooms

Business Center

Fitness Center / Exercise facilities

SPA

Registration area

Swimming pool

Meeting room / Ballroom area

**Identification of Specific Barrier in Plain Language:** Booking website does not identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. False claim as more fully documented in personal observations below.

**The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

**The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019.

**PERSONAL ENCOUNTERS**



Identification.



**Identification of Specific Barrier in Plain Language:** Inaccessible check in counter.





**Identification of Specific Barrier in Plain Language:** Inaccessible check in counter.



**Identification of Specific Barrier in Plain Language:** Inaccessible bar seating.



**Identification of Specific Barrier in Plain Language:** Inaccessible coffee bar.



**Identification of Specific Barrier in Plain Language:** Inaccessible sevice counter.



**Identification of Specific Barrier in Plain Language:** 20lbs to push open lobby bathroom.



**Identification of Specific Barrier in Plain Language:** Improperly configured hardware in lobby bathroom.



**Identification of Specific Barrier in Plain Language:** 4s closing time for lobby bathroom.



**Identification of Specific Barrier in Plain Language:** Over 5 lbs to open.



**Identification of Specific Barrier in Plain Language:** Inaccessible hardware.



**Identification of Specific Barrier in Plain Language:** Inaccessible conciege desk.



| **Identification of Specific Barrier in Plain Language:** Inaccessible seating at hotel bar. |
| **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Above described barriers denied Plaintiff full and equal access to the benefits of the facility. |
| **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about April 18, 2019. |

**END**