1  BUCHALTER
   A Professional Corporation
2  TRACY A. WARREN (SBN: 228013)
   ERIC KENNEDY (SBN: 228393)
3  ASHLEY L. MILNES (SBN: 300697)
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA 90017-1730
   Telephone: 213.891.0700
5  Fax: 213.896.0400
   Email: ekennedy@buchalter.com
6
   Attorneys for Defendant IA Lodging Napa First LLC, dba Andaz Napa
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 PETER STROJNIK (SR.),                    Case No. 4:19-cv-03983-DMR

12         Plaintiff,                        **DEFENDANT IA LODGING NAPA
                                             FIRST LLC, DBA ANDAZ NAPA'S
13    vs.                                    SUPPLEMENTAL REQUEST FOR
                                             JUDICIAL NOTICE IN SUPPORT OF
14 IA LODGING NAPA FIRST LLC, DBA            MOTION FOR ORDER DECLARING
   ANDAZ NAPA,                               PLAINTIFF A VEXATIOUS
15                                           LITIGANT AND MOTION TO
           Defendant.                        DISMISS**
16
                                             **Pursuant to Fed. R. Evid. 201(b)**
17

18                                           Judge: Hon. Donna M. Ryu

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A Professional Corporation
Los Angeles

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Evidence 201(b), Defendant IA Lodging Napa First LLC, dba Andaz Napa, hereby requests that the Court take judicial notice of the following documents, and facts, in support of Defendant's Motion for Order Declaring Plaintiff a Vexatious Litigant and Motion to Dismiss.

Rule 201 permits the Court to take judicial notice of facts which are not subject to reasonable dispute. Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute if it is either (1) "generally known within the trial court's territorial jurisdiction," or (2) capable of accurate and ready determination from "sources whose accuracy cannot reasonably be questioned." *Id.* If a party requests judicial notice of such a fact, the court "must take judicial notice." Fed. R. Evid. 201(c)(2).

Judicial notice is proper here for Exhibits 37 through 46[1] because the documents for which the request is made are matters of the public record, and "capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 688, 689-90 (9th Cir. 2001).

Accordingly, Defendant Andaz Napa respectfully requests that the Court take judicial notice of Exhibits 37 through 46, which are attached to this Supplemental Request for Judicial Notice and filed concurrently herewith:

| | |
|---|---|
| **Exh. 37** | A true and correct copy of the Order on Plaintiff's Motion for Partial Judgment and Defendant's Motion to Enforce Compliance with Scheduling Order in *Strojnik v. VY Verasa Commercial Company LLC, et al.*, N.D. Cal., No. 19-cv-02556-WHO, Dkt. No. 31 at 4:6-9 (Nov. 12, 2019), in which the Court noted: |
| | Strojnik's behavior has been questionable since this case's inception. I am taking note of Strojnik's behavior. I will not award sanctions at this time, but I will consider this conduct in any future motion if his litigation performance does not substantially improve. I expect better. |

---

[1] *See* Exhibits 1 through 36 that were filed in connection with Defendant's 2nd Amended Request for Judicial Notice in support of its Motion to Dismiss and Motion for Order Declaration Plaintiff a Vexatious Litigant (Dkt. No. 29).

2

DEFENDANT'S SUPPLEMENTAL REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF MOTION FOR
ORDER DECLARING PLAINTIFF A VEXATIOUS
LITIGANT AND MOTION TO DISMISS

Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

| | | |
|---|---|---|
| 1 | **Exh. 38** | A true and correct copy of the Magistrate Judge's Memorandum and Recommendation for granting defendant's motion to dismiss in *Strojnik v. Landry's Inc. dba The Post Oak Hotel*, No. 4:19-cv-01170, Dkt. No. 18 at 2, fn. 1 (S.D. Tex. Dec. 9, 2019), in which the Court noted: |

Strojnik has filed numerous ADA cases—PACER puts the federal count over 1,000, although perhaps there are some double-counted cases— sometimes as the party to the case, and sometimes as an attorney…Although Plaintiff has primarily focused his litigation on state and federal courts in the Ninth Circuit, he has recently availed himself of federal courts in Texas. Given the multiplicity of suits filed by Strojnik, which may suffer the same lack of standing issue addressed herein, **it may be that Strojnik should be treated as a vexatious litigant**. (Emphasis added).

| | | |
|---|---|---|
| | **Exh. 39** | A true and correct copy of Order to Show Cause regarding why the case should not be dismissed *as frivolous* in *Strojnik v. Swantown Inn & Spa LLC*, No. C18-1831 RBL, Dkt. No. 9 at fn. 1 (W.D. Wash. Feb. 20, 2019), in which the Court noted: |

The complaint is a virtual copy of the one Strojnik filed in *Strojnik v. Geiger Victorian, Inc.*, Case No. 18-cv-5912RBL. The Court takes judicial notice of the fact that Strojnik is Phoenix-based attorney who was indefinitely suspended from practice for filing – 2000 "cut and paste" "frivolous" ADA lawsuits. *See* https://www.azbar.org/newsevents/newsreleases/2018/07/interimsuspersio n-peterstrojnik/.

| | | |
|---|---|---|
| | **Exh. 40** | A true and correct copy of the dismissal Order in *Strojnik v. Swantown Inn & Spa LLC*, No. C18-1831 RBL, Dkt. No. 12 at 3 (W.D. Wash. Mar. 12, 2019), in which the Court noted: |

This leaves the issue of whether Strojnik complied with his Rule 11 obligations before filing. This is a close question, **Strojnik's history of predatory, unethical filings** and hard-to-believe assertions does not help him. Strojnik was suspended by the Arizona State Bar filing hundreds of frivolous, extortionate ADA lawsuits that apparently looked a lot like this one. *See* Judge O'Neil's July 11, 2018 "Order of Interim Suspension," attached as Exhibit A. The Order demonstrates that Strojnik vehemently opposed the suspension, arguing among other things that the courts presiding over his cases could impose the required discipline. *Id.* at 1 (Emphasis added).

| | | |
|---|---|---|
| | **Exh. 41** | A true and correct copy of the Order to Show Cause why the action should not be dismissed for Strojnik's failure to prosecute the action and comply with the court's orders in *Strojnik v. Best Western Bakersfield North*, E.D. Cal., No. 19-cv-01096-DAD-JLT, Dkt. No. 12 (Dec. 6, 2019), in which the Court noted that: |

This action was filed in August 2019 (Doc. 1) and despite the passage of four months and the explicit order of the Court that [Strojnik] timely serve the defendant (Doc. 3 at 2), he has failed to do so.

3

DEFENDANT'S SUPPLEMENTAL REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF MOTION FOR
ORDER DECLARING PLAINTIFF A VEXATIOUS
LITIGANT AND MOTION TO DISMISS

Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

| | | |
|---|---|---|
| 1 | **Exh. 42** | A true and correct copy of the Findings and Recommendation to Dismiss the Action Due to Plaintiff's Failure to Comply with the Court's Orders and to Prosecute the Action in *Strojnik v. Integrated Capital, LLC, et al.*, E.D. Cal., No. 19-cv-01099-DAD-JLT, Dkt. No. 10 at 2:24-4:2 (Dec. 9, 2019), in which the Court noted: |

[Strojnik] has failed to serve the action or take any action to prosecut[e] this case, despite being ordered by the Court to do so…This Court cannot, and will not hold, this case in abeyance based upon the plaintiff's failure to comply with the Court's orders and failure to take action to continue prosecution in a timely manner…Given the plaintiff's failure to prosecute and action and failure to comply with the Court's orders, the policy favoring disposition of cases on their merits is outweighed by the factors in favor dismissal.

| | | |
|---|---|---|
| | **Exh. 43** | A true and correct copy of the Order granting dismissal for lack of standing in *Strojnik v. Resort at Indian Springs, LLC*, N.D. Cal., No. 19-cv-04616-SVK, Dkt. No. 23 (Dec. 19, 2019), based on similar grounds to those here, finding: |

The **lack of details about Plaintiff's particular physical limitations, combined with the conclusionary captions of the photographs submitted in the addendum, renders the complaint unclear as to whether and how the alleged barriers affected Plaintiff's use of enjoyment of the facility. These details are critical to the determination of standing** because the Ninth Circuit has held that a plaintiff "does not have standing to challenge those barriers that would burden or restrict access for a person" with a different disability. *Id.* at 7:10-17 (Citations omitted).

| | | |
|---|---|---|
| | **Exh. 44** | A true and correct copy of the Order granting dismissal for lack of standing in *Strojnik v. Hotel Circle GL Holdings, LLC*, E.D. Cal., No. 19-cv-01194-DAD-EPG, Dkt. No. 22 (Nov. 21, 2019), based on similar grounds to those here, finding as a matter of law that Strojnik failed to allege "what barriers he encountered at the Hotel," "how any of the alleged barriers relate to his specific disability," or "that he is deterred from returning to the Hotel." |
| | **Exh. 45** | A true and correct copy of the Order granting dismissal without leave to amend for lack of standing in *Strojnik v. Four Sisters Inns, Inc., dba Channel Road Inn*, C.D. Cal., No. 19-cv-02991-ODW-JEM, Dkt. No. 21 (Dec. 9, 2019), based on similar grounds to those here, finding as a matter of law that Strojnik failed to "state facts showing how the purported violations affect him or interfere with his mobility needs, and the captions in the Addendum are bare legal conclusions case in the form of factual allegations…This is insufficient to satisfy the injury-in-fact requirement." In addition, the Court found that "Plaintiff fails to suggest what more he would add in amendment…As such, the Court finds amendment would be futile." |
| | **Exh. 46** | A true and correct copy of the Order granting dismissal of the first amended complaint for lack of standing in *Strojnik v. Orangewood, LLC*, C.D. Cal., No. 8:19-cv-00946-DSF-GJSx, Dkt. No. 34 (Oct. 21, 2019), based on similar grounds finding that even though Strojnik "asserts that when he visited the DoubleTree Hotel he 'personally encountered architectural barriers to accessibility which |

4

**DEFENDANT'S SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR ORDER DECLARING PLAINTIFF A VEXATIOUS LITIGANT AND MOTION TO DISMISS**

Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1   interfered with his full and equal enjoyment of the facility on account of his disabilities" "Addendum A 'simply identifies alleged ADA...violations without connecting the alleged violations to [Plaintiff's disability, or indicating whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the [Hotel].' Plaintiff has not alleged sufficient facts to support standing."

2

3

4

5

6   DATED:  December 20, 2019          BUCHALTER
                                       A Professional Corporation

7

8                                      By:  /s/ Eric Kennedy
                                            TRACY A. WARREN
9                                           ERIC KENNEDY
                                            ASHLEY L. MILNES
10                                     Attorneys for Defendant IA Lodging Napa
                                       First LLC, dba Andaz Napa

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    5

28

DEFENDANT'S SUPPLEMENTAL REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF MOTION FOR
ORDER DECLARING PLAINTIFF A VEXATIOUS
LITIGANT AND MOTION TO DISMISS

Case No. 4:19-cv-03983-DMR

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

EXHIBIT 37

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK,<br><br>        Plaintiff,<br><br>        v.<br><br>VY VERASA COMMERCIAL COMPANY<br>LLC, et al.,<br><br>        Defendants. | Case No.  3:19-cv-02556-WHO<br><br>**ORDER ON PLAINTIFF'S MOTION<br>FOR PARTIAL JUDGMENT AND<br>DEFENDANT'S MOTION TO<br>ENFORCE COMPLIANCE WITH<br>SCHEDULING ORDER**<br><br>Re: Dkt. Nos. 20, 24 |

Despite the Northern District of California's orders related to Americans with Disabilities Act ("ADA") litigation, before me are two motions filed by ADA plaintiff Peter Strojnik. He brings suit against defendant VY Verasa Commercial Company LLC dba the Westin Verasa Napa for violations of the ADA, among other claims. Strojnik's first motion seeks partial summary judgment, and the second seeks an order requiring VY Verasa to comply with the Scheduling Order for this case. The former motion runs afoul of the Northern District's General Order 56 on ADA litigation; the latter lacks merit because Strojnik is equally at fault for the stalemate at which this case finds itself. Accordingly, I deny both motions and order both sides to get this case back on track.

## BACKGROUND

Stroknik describes himself as a disabled veteran and an ADA tester. Complaint ("Compl.") [Dkt. No. 1] ¶ 2, Add. B. On May 13, 2019, Strojnik filed a pro se complaint against VY Verasa. He asserts that he "is deterred from visiting" the hotel based on his knowledge of its noncompliance with the ADA. Compl. ¶ 12. The same day the complaint was filed, the parties were ordered to comply with the scheduling order for ADA cases. Dkt. No. 4.

Strojnik also included as defendants the law firm Sheppard, Mullin, Richter & Hampton,

VY Verasa counsel Greg Hurley, and Hurley's wife. On September 4, 2019 I dismissed with prejudice the claims against Sheppard Mullin. Dkt. No. 19. When resolving that motion, I wrote, "The parties are admonished to comply with the Scheduling Order for ADA cases." *Id.*

The following day, Hurley emailed Strojnik offering September 30 for the parties' joint site inspection. Declaration of Greg Hurley ISO Oppo. Compliance Mot. ("Hurley Decl. II") Ex. A [Dkt. No. 26-2]. Strojnik agreed and wrote that he would bring his own equipment to the inspection.[1] *Id.*

Strojnik filed the pending motion for partial summary judgment on September 13, 2019. Motion for Partial Summary Judgment ("MSJ") [Dkt. No. 20]. Hurley informed Strojnik that his motion was noncompliant with General Order 56 and requested that he withdraw it. Declaration of Greg Hurley ISO Oppo. MSJ ("Hurley Decl. I") [Dkt. No. 23-1] Ex. A [Dkt. No. 23-2]. Strojnik neither responded nor withdrew the motion.

On September 30, both Strojnik and Hurley appeared at the hotel for the joint inspection. VY Verasa General Manager Don Shindle was also present, although he did not come out to meet Strojnik. *See* Hurley Decl. II ¶ 4; Compliance Mot. 1-2. According to Hurley, Strojnik had no tools with him, was unprepared for the inspection, and failed to point out specific changes needed to the property, instead only referring him to the Due Diligence Report filed with his motion for partial summary judgment. Hurley Decl. II ¶¶ 6-7. According to Strojnik, Hurley was highly unpleasant during their interaction. Compliance Mot. 2. Strojnik left, and no inspection occurred.

After the parties' failed site inspection, Strojnik filed a motion to enforce compliance with the Scheduling Order. Motion to Enforce Compliance ("Compliance Mot.") [Dkt. No. 24].

**LEGAL STANDARD**

General Order 56 governs ADA litigation in the Northern District of California. It was adopted in 2005 to advance efficient and effective litigation of ADA cases, and it has been amended several times since then. The parties to an ADA access case are obligated to conduct a joint site inspection as set forth in paragraph 3:

---

[1] He also agreed that he would not serve Hurley or his wife in light of my order dismissing the claims against Sheppard Mullin. Hurley Decl. II Ex. A.

United States District Court
Northern District of California

United States District Court
Northern District of California

> No later than 105 days after filing the complaint, the parties and their counsel, accompanied by their experts if the parties so elect, shall meet in person at the subject premises. . . . They shall jointly inspect the portions of the subject premises, and shall review any programmatic or policy issues, which are claimed to violate the Americans with Disabilities Act.

General Order No. 56 ¶ 3. Paragraph 4 further provides that at the joint site inspection or within 28 days, the parties "shall meet in person and confer regarding settlement of the action." *Id.* ¶ 4. General Order 56 stays discovery and proceedings other than those provided for in the Order "unless the assigned judge orders otherwise." General Order 56 ¶ 2. *But see Johnson v. Otter*, No. 18-CV-01689-BLF, 2019 WL 452040, at *2 (N.D. Cal. Feb. 5, 2019) ("General Order 56 does not bar the filing of a motion challenging the pleadings or the court's jurisdiction.").

## DISCUSSION

Pending before me are two motions. First, Strojnik moves for summary judgment on two of his claims, for violations of the ADA and California's Unruh Civil Rights Act. Second, Strojnik moves to enforce compliance with General Order 56 and seeks costs associated with his travel to the September 30 joint site inspection. Compliance Mot. 3. VY Verasa asserts that the motion for summary judgment violates General Order 56 and that Strojnik arrived at the joint site inspection unprepared. Oppo. MSJ 3.

The motion for summary judgment plainly violates General Order 56 and my express admonition to the parties that they must comply with this district's Scheduling Order for ADA cases. *See* Dkt. Nos. 4, 19. Strojnik filed his motion on September 13, more than two weeks before the parties' scheduled joint site inspection on September 30. As the briefing for the pending motions makes clear, the parties have engaged in neither a joint site inspection nor a settlement discussion. General Order 56 expressly stays all discovery and proceedings absent a contrary order from me. Strojnik's motion is DENIED on this basis alone.[2]

VY Verasa further requests that I sanction Strojnik in the amount of $3,000 to compensate it for attorney fees incurred in opposing the motion for summary judgment. Oppo. MSJ 4. In

---

[2] I also note that summary judgment would not be appropriate in any event because VY Verasa is entitled to pursue discovery from Strojnik related to his asserted disability and the barriers he alleges he encountered.

3

United States District Court
Northern District of California

1    support of its request VY Verasa notes that Strojnik has engaged in abusive tactics from the

2    start—most notably by adding counsel's wife as a defendant—and that he refused to withdraw the

3    motion for summary judgment despite receiving a prompt warning that it violated General Order

4    56. *Id.*; Hurley Decl. I ¶ 2, Ex. A. Strojnik does not address the request in his reply. *See* Reply

5    [Dkt. No. 25]. Just like all litigants, Strojnik is obligated to familiarize himself with this district's

6    rules and guidelines, including General Order 56. Strojnik's behavior has been questionable since

7    this case's inception. I am taking note of Strojnik's behavior. I will not award sanctions at this

8    time, but I will consider this conduct in any future motion if his litigation performance does not

9    substantially improve. I expect better.

10        Strojnik next moves that I order VY Verasa to comply with the Scheduling Order. It is no

11    surprise that the parties have differing accounts of the reasons their site inspection failed. General

12    Order 56 clearly lays out the purpose of a site inspection: to "jointly inspect the portions of the

13    subject premises, and shall review any programmatic or policy issues, which are claimed to violate

14    the Americans with Disabilities Act." General Order 56 ¶ 3. I am concerned not with which party

15    is to blame but rather with the fact that the inspection did not occur and that as a result, this case is

16    not progressing.[3] Both parties are ordered to agree on a new date for a joint inspection and to

17    actually conduct that inspection—and a settlement discussion, either at the same time or within 28

18    days—as they are obligated to do. The inspection shall occur no later than **December 1, 2019.**

19        Strojnik further requests that I order VY Verasa to compensate him for various expenses

20    he incurred to travel to the site inspection in the amount of $1,321.00. The request is denied.

21    Whether or not Strojnik experienced unpleasantness, even according to his own account Strojnik

22    was invited to inspect the premises while he was there. Compliance Mot. 1-2 (paraphrasing

23    Hurley as saying, "This is your inspection so go and inspect"). Strojnik's Due Diligence Report

24    cannot satisfy his obligations under General Order 56.

25

26

27        [3] Both sides could have done better. Strojnik should have arrived prepared to conduct the

28    inspection and remained on site in order to do so, and counsel for VY Verasa should have put
aside his frustration in the name of moving this case along.

4

**CONCLUSION**

Strojnik's motions are resolved as set forth above.  Both parties shall conduct themselves with civility and meet their obligations as set forth in the Scheduling Order.  The November 13, 2019 hearing on these motions is VACATED.

**IT IS SO ORDERED.**

Dated: November 12, 2019

William H. Orrick
United States District Judge

United States District Court
Northern District of California

5

EXHIBIT 38

United States District Court
Southern District of Texas

**ENTERED**

December 09, 2019

David J. Bradley, Clerk

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETER STROJNIK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:19-CV-01170 |
| LANDRY'S INC. | § | |
| D/B/A THE POST OAK HOTEL | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Before the Magistrate Judge in this case that has been referred for all pretrial proceedings is Defendant, Landry's Inc. d/b/a The Post Oak Hotel's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) for Lack of Article III Standing/Subject Matter Jurisdiction and F.R.C.P. 12(b)(6) for Failure to State a Claim upon Which Relief Can Be Granted (Document No. 8). Having considered that motion, the response in opposition (Document No. 10), Defendant's reply (Document No. 11), the allegations in Plaintiff's Complaint, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion to Dismiss be GRANTED.

### I.    Background

This is an action for injunctive relief under Title III of the Americans With Disabilities Act (ADA). Plaintiff, Peter Strojnik, Sr., who is an attorney, but who is proceeding *pro se*, alleges he is disabled as defined by the ADA due to severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, and a degenerative right knee, and that he has difficulty walking and requires compliant mobility accessible features at places of

public accommodation.  He further alleges that he is a "tester" for the purpose of determining

whether places of public accommodation are in compliance with the ADA,[1] and that when he

visited the website of The Post Oak Hotel, which is located in Houston, Texas, and owned and

operated by defendant, Landry's Inc. dba The Post Oak Hotel, in November 2018, with an intent

to book a room, he could not verify whether The Post Oak met his accessibility needs, because the

website did not contain sufficient information about a number of the accessible features that he

claims to require.  The website's non-disclosure of information on certain accessibility features,

Strojnik maintains, prevented him from staying at The Post Oak, and constitutes a violation of

Section 36.302(e) of the ADA.  He has brought this suit under the ADA seeking injunctive relief,

nominal damages, and attorneys' fees.  He has also asserted a claim, based on the same allegations,

for common law negligence.

---

[1] Strojnik  has filed numerous ADA cases – PACER puts the federal count over 1,000, although
perhaps there are some double-counted cases – sometimes as the party to the case, and
sometimes as an attorney. In addition, although not strictly relevant to the disposition herein, the
Presiding Disciplinary Judge of the Arizona Supreme Court accepted a consent to disbarment
filed by Peter Strojnik, effective May 10, 2019. Strojnik had been suspended on an interim basis
since July 11, 2018, while the Bar conducted its investigation. The Arizona State Bar stated that
Peter Strojnik was placed on Interim Suspension on July 11, 2018 because:

> Strojnik filed more than 1,7000 complaints in a State Court and more than 160
> complaints in a District Court alleging violations of the Americans with
> Disabilities Act (ADA) and the Arizonans with Disabilities Act (AzDA).

*See* Order of Interim Suspension, No. PDJ-2018, dated July 11, 2018 (Ariz. July 11, 2018), a
copy of which is attached as Exhibit 3 to Doc. No. 8. Although Plaintiff has primarily focused
his litigation on state and federal courts in the Ninth Circuit, he has recently availed himself of
federal courts in Texas.  Given the multiplicity of suits filed by Strojnik, which may suffer the
same lack of standing issue addressed herein, it may be that Strojnik should be treated as a
vexatious litigant. *See, e.g.*, Tex. Civ. Prac. & Rem. Code §11.001, *et seq.*; *Alliance Riggers &
Constructors, Ltd. V. Restrepo*, No. 3:14-cv-00408-DCG, 2015 WL 966324, at \*2 (W.D. Tex.
Jan 8, 2015).

Defendant seeks dismissal of Strojnik's claims, arguing that: (1) Strojnik lacks standing to bring an ADA accessibility claim; (2) Strojnik has failed to state a plausible ADA accessibility claim; and (3) Strojnik has not alleged a plausible negligence claim under Texas law.

## II.    ADA Accessibility

Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

An "inn, hotel, motel, or other place of lodging" is considered a place of public accommodation. 42 U.S.C. §12181(7)(A). Hotels are places of public accommodation within the meaning of the statute. 42 U.S.C. §12181(7)(A). 28 C.F.R. §36.302(e)(1), enacted pursuant to the ADA, regulates "reservations made by any means" at places of public accommodation. Under this regulation, hotels must "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. §36.302(e)(1)(ii).

A plaintiff alleging Title III ADA discrimination "must initially prove that (1) he is a disabled individual; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA." *Norkunas v. Seahorse NB, LLC,* 444 F. Appp'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. §12182(a)).

*Pro se* plaintiffs are limited to seeking injunctive relief under the ADA.[2] A plaintiff seeking injunctive relief bears the additional burden of establishing a "real or immediate threat that the plaintiff will be wronged" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). When seeking injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (quoting *Lyons*, 461 U.S. at 102). Further, "[b]ecause injunctions regulate future conduct, a party seeking injunctive relief must allege . . . a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." *Wooden v. Bd. Of Regents Univ. Sys. Of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001) (quoting *Lyons*, 504 U.S. at 102).

### III.    Discussion – Standing

Defendant argues in its Motion to Dismiss that Strojnik lacks standing to pursue an ADA accessibility claim because there is no current accessibility violation related to the hotel's website, Strojnik has not alleged any facts to support a determination that he has a plausible intent to return to the hotel's website, and Strojnik has not alleged a concrete and particularized harm related to his use of the hotel's website.

The power of the federal judiciary to hear cases is limited to only those in which the Plaintiff has constitutional standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To have constitutional standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

---

[2] Plaintiff alleges that he is entitled to attorney's fees, but he cites no authority as to why attorney's fees should be awarded to a *pro se* litigant (Doc. No. 1); *see* Complaint, Wherefore clause.

favorable judicial decision." *Id.* To survive a motion to dismiss, the complaint must "clearly allege facts demonstrating each element." *Id.* (internal quotation omitted).

An "injury in fact" is a harm that is "concrete and particularized" and "actual or imminent." *Id.* at 560 (internal quotation marks and citations omitted). A plaintiff must allege sufficient facts demonstrating that he "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate." *Lyons*, 461 U.S. at 102 (internal quotation marks and citations omitted). To plead and prove an injury-in-fact, a plaintiff must allege facts showing that he personally is adversely affected. *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). The first element, "injury in fact" requires a plaintiff to show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). To be concrete, the injury must be "real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548. Consequently, "a bare procedural violation" of a statute or regulation is insufficient to satisfy the injury-in-fact requirement. *Id.* at 1549.

"Intangible injuries can nevertheless be concrete." *Id.* The court must consider two factors when evaluating the concreteness of an intangible injury: (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and (2) whether Congress has "elevate[d] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (internal quotations omitted).

Here, for the reasons advanced by Defendant, Strojnik lacks standing to pursue an ADA accessibility claim against Defendant. First, Strojnik's complaints about the hotel's website, to the extent the complaints were, at one time, factually true, have been remedied by Defendant.

According to the affidavit of Jorge Gonzalez (Document No. 8-4), when a reservation is requested

through the hotel's website, the system indicates the general types of rooms available, such as

luxury rooms and one-bedroom suites, and the size (e.g., king) and number of beds in the room.

*Id.* at 6. The website allows for the selection of an accessible room, noting that those rooms include

roll-in showers, *Id.,* and provides an extensive description of the accessibility features of the

accessible rooms and the hotel. *Id.* at 7. Among the information listed is that "accessible guest

rooms with mobility features with entry doors that provide 32 [inches] or clear width" are

available. *Id.* Bedroom and bathroom doors also are "at least 32 inches wide." *Id.* The website

notes that "assistive listening devices"" and "TTY [text telephone]" are available for guest use, as

well as vibrating alarm clocks for the hearing impaired. *Id.* Grab bars are available in the bathroom.

*Id.* Gonzalez also states in his affidavit that the hotel's accessible rooms are listed as options on

at least three different websites.  In addition, the website, as it currently exists, generally complies

with the ADA regulation governing lodging reservations, which provides, in relevant part:

> (e) (1) Reservations made by places of lodging. A public accommodation
> that owns, leases (or leases to), or operates a place of lodging shall, with respect to
> reservations made by any means, including by telephone, in-person, or through a
> third party –
>      (i) Modify its policies, practices, or procedures to ensure that individuals
> with disabilities can make reservations for accessible guest rooms during the same
> hours and in the same manner as individuals who do not need accessible rooms;
> [and]
>      (ii) Identify and describe accessible features in the hotels and guest rooms
> offered through its reservations service in enough detail to reasonably permit
> individuals with disabilities to assess independently whether a given hotel or guest
> room meets his or her accessibility needs.

28 C.F.R. §36.302(e)(1)(i) to (ii).  Strojnik has not alleged in what manner the hotel's website is

deficient in listing the accessibility features of its accessible rooms, and has not alleged how the

website should be edited to provide the type of information Strojnik believes is needed.  Because

Plaintiff must allege, for constitutional standing purposes, that any injury will be "redressed by a

favorable decision," *Lujan*, 504 U.S. at 560-561, and because the deficiencies in the hotel's website that were generally described by Strojnik in his Complaint, have been corrected, Strojnik cannot show that any alleged injury can be remedied or redressed by a favorable decision and the injunctive relief he seeks.

Second, there are no allegations from which a plausible intent to return to the hotel's website could be established. Plaintiffs who encounter barriers at public accommodations have standing to bring injunctive claims *only* if they show a plausible intention or desire to return to the place but for the barriers to access. *Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F.App'x 336, 339-40 (5th Cir. 2018); *see also Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). A vague allegation of an intent to return to the place of injury "some day" is insufficient. *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require") (emphasis original)); *see also Deutsch*, 2018 WL 704131 at *3. "When analyzing this likelihood of return, courts have examined such factors as: (1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. 3:05-CV-1307-G, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005); *see also Van Winkle v. Pinecroft Ctr., L.P.*, No. CV H-16-2694, 2017 WL 3648477, at *9 (S.D. Tex. Aug. 23, 2017); *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 594 (S.D. Tex. 2014). Furthermore, "past exposure to illegal conduct does not itself present a case or controversy regarding injunctive relief . . . if

unaccompanied by any continuing, present adverse effect." *Lyons,* 461 U.S. at 102; *Deutsch,* 2018 WL 704131 at *3 (citing *Lujan*).

Here, Strojnik's vague allegation of an intent to return to the hotel's website[3] is insufficient to demonstrate plausible intent. While Strojnik alleges he researched rooms at The Post Oak on The Post Oak's website and "third party booking websites" on November 14, 2018, intending to visit between November 16, 2018 and November 19, 2018. (Document No. 1), he does not allege why he was intending to visit the hotel, does not identify the name of the third party booking websites he visited, has not alleged how any alleged ADA violation continues to negatively affect his day to day life, and has not alleged that he has visited the website again since then. *Wintergreen Commercial P'Ship*, 2005 WL 2989307 at *8 (alleged past injury -- suffered during a single visit to defendant's establishment – alone is not sufficient for Article III standing). He also does not allege that he ever visited the hotel, and he does not allege any concrete plans to ever travel to Houston, to visit The Post Oak's website or the third party website, or to stay at The Post Oak. *See Delil v. El Torito Restaurants, Inc.,* C-94-3900-CAL, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997) (the distance between plaintiff and defendant -- over 100 miles -- was one factor that supported the court's finding of no standing); *see also Deutsch v. Yu,* No. A-16-CV-72 RP, 2016 WL 5317370, at *4 (W.D. Tex. Sept. 21, 2016), Upon this record, Strojnik has not made a showing of a plausible intent to return to the hotel or the hotel's website.

Third and finally, Strojnik has not alleged a concrete or particularized injury relative to the hotel's website. Strojnik alleges that he suffers from right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, degenerative right knee (sic)."

---

[3] The only allegation in the Complaint relative to an intent to return is as follows: "Plaintiff intends to visit Defendant's Hotel at a time when the Defendant's noncompliant Hotel becomes fully compliant with the ADAAG." Complaint (Document No. 1) at 2.

(Document No. 1). Plaintiff also alleges that these impairments "substantially limit his major life activities" and he "walks with difficulty and pain and requires compliant mobility accessible features." *Id.* He then alleges that The Post Oak's website and third party booking website "fail[e]d to identify and describe accessible features in the hotel." *Id.* Strojnik, however, fails to identify what accessible features were not described and why he needs those features. Without any allegation regarding the specific defect that personally prevented him from booking a hotel room with The Post Oak, Plaintiff has failed to plead a concrete and particularized harm, which is required for constitutional standing.

As part of his response to Defendant's Motion to Dismiss, Strojnik has asked for leave to amend to "correct, modify or add any particular fact based allegation that the Court finds insufficient." Response (Document No. 10) at 15. While leave to amend is generally freely given, and "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002), here, nothing in the record or Plaintiff's arguments suggests that Plaintiff could amend his pleadings, in a manner consistent with Fed. R. Civ. P. 11, to set forth allegations that would give him standing to assert an ADA accessibility claim against Defendant. Amendment should, therefore, not be allowed.

In all, for each of the reasons set forth by Defendant, both collectively and independently, Plaintiff Peter Strojnik lacks standing to assert an ADA accessibility claim against Defendant based on the contents of Defendant's website.[4] *See e.g., Strojnik v. 1315 Orange LLC*, Case No.

---

[4] It is unclear from Plaintiff's Complaint whether he intends to state a claim related not just as to alleged insufficient descriptions of the accessibility features of The Post Oak, but also regarding the existence of actual physical barriers to access at the property, which he alleges he has not visited. (Document No. 1) (alleging in "Addendum A" the barriers underlying his claims, which include the "inaccessible" pool and inaccessible bar and seating area (Document No. 1 at 16, 18),

19cv1991-LAB (JLB), 2019 WL 5535766 (S.D. Ca. Oct. 25, 2019) (dismissing for lack of standing Plaintiff's ADA accessibility claim where Plaintiff had not "adequately alleged how any of the barriers affect him" and there was only a "bare allegation were only "bare allegation" of an intent to return). Defendant is therefore entitled to dismissal of Strojnik's ADA accessibility claim under Rule 12(b)(1).

IV.    **Discussion – Failure to State a Claim**

In addition to seeking dismissal of Strojnik's ADA claim for lack of standing, Defendant argues that Strojnik cannot maintain a plausible ADA accessibility claim based on the contents of the hotel's website because websites are not public places of accommodation. In addition, with respect to the negligence claim, Defendant argues that Strojnik cannot maintain such a claim based on the same allegations and conduct upon which his ADA accessibility claim is based.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains

---

and also alleging that Plaintiff was denied "full and equal use or access" due to failure "to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs" and indicating that he "encountered such barrier" on the date he alleges he accessed The Post oak's website). Because Plaintiff has not actually encountered the physical barriers, his claim fails for lack of standing. *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1253-54 (M.D. Fla. 2000) (plaintiff lacked standing to pursue ADA Title III case where the plaintiff had not visited the defendant's theme parks until after the litigation began); *see also Wintergreen Commercial P'ship, Ltd.* 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005) ("[b]elated efforts to bolster standing are future.").

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In *Zaid v. Smart Financial Credit Union*, Civil Action No. H-18-1130, 2019 WL 314732 * 6 (S.D. Tex. Jan. 24, 2019), this Court determined that an ADA claim could not be based on the alleged deficiencies in a business' website because a website is not a place of public accommodation. *See also Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534-36 (5th Cir. 2016) (concluding that vending machines are not places of public accommodation). In that respect, Strojnik has not alleged a plausible ADA accessibility claim and that claim is additionally subject to dismissal under Rule 12(b)(6).

As for the negligence claim asserted by Strojnik, nothing in Strojnik's allegations states a plausible negligence claim under Texas law given that all of Strojnik's allegations are covered by the ADA and any Texas statutory/regulatory counterpart. *See Evans v. Wright,* No. 6:14CV566, 2015 WL 5766862, at *8 (E.D. Tex. Sept. 29, 2015) ("Acts of negligence do not fall under the ambit of the ADA"); *see also Pena v. H.E. Butt Grocery Co.*, No. Civ. A. B-05-052, 2005 WL 2277500 *2 (S.D. Tex. Aug. 22, 2005) (a negligence cause of action and/or a claim for money damages is not available to remedy a defendant's noncompliance with the ADA). Furthermore,

there are no factual allegations in Strojnik's complaint that align with the elements of a common law negligence claim under Texas law.  To state a claim for negligence under Texas law a plaintiff must allege "'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'"  *Nabors Drilling, U.S.A ., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)).  Here, Strojnik alleges in his Complaint that Defendant breached "a duty to Plaintiff to remove ADA accessibility barriers," that Defendant acted knowingly and intentionally, and that Defendant's knowing and intentional discrimination caused Plaintiff damage.  Complaint (Document No. 1) at 5-6.  These allegations do not support the existence of a duty outside that imposed by the ADA. In addition, the allegations of intentional and knowing conduct are inconsistent with the concept of negligence, which is based on the failure to exercise reasonable care.  *Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890, 896 (Tex. 2016) ("negligence means the failure to use ordinary care— failing to do what a reasonable person like the defendant would have done under the same or similar circumstances—to protect against unreasonable risk of harm").  Because Strojnik's negligence claim is based on the same allegations as his ADA claim, and because there are no factual allegations that state a plausible state law negligence claim attendant to Strojnik's access and use of Defendant's website, Strojnik's negligence claim is subject to dismissal under Rule 12(b)(6).

## V.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff lacks standing to assert the Americans with Disabilities Act claim he has alleged in this case, and that he has not stated plausible ADA and negligence claims based on the contents of Defendant's hotel's website, the Magistrate Judge

RECOMMENDS that Defendant's Motion to Dismiss (Document No. _8) be GRANTED and Plaintiffs' claims be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed R. Civ. P. 72(b), and General Order 80–5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), cert. denied, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this ___9th___ day of December, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

EXHIBIT 39

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETER STROJNIK,

               Plaintiff,

    v.

SWANTOWN INN & SPA LLC,

               Defendant.

CASE NO. C18-1831 RBL

ORDER

THIS MATTER is before the Court on *pro se* Plaintiff Strojnik's Motion to Strike [Dkt. # 8] Defendant's "Response" [Dkt. # 6] to his Complaint [Dkt. # 1], and on the Court's own motion.

Strojnik sued the Swanton Inn LLC (a bed and breakfast in Olympia) for what he claims are violations of the Americans with Disabilities Act. His complaint[1] alleges that he is disabled, and that he was dissuaded from visiting the Swanton Inn because the description and pictures he

---

[1] The complaint is a virtual copy of the one Stronjik filed in *Stronjk v Geiger Victorian, Inc.*, Cause No. 18-cv-5912RBL. The Court takes judicial notice of the fact that Stronjik is Phoenix-based attorney who was indefinitely suspended from practice for filing ~2000 "cut and paste" "frivolous" ADA lawsuits. *See* https://www.azbar.org/newsevents/newsreleases/2018/07/interimsuspension-peterstrojnik/.

ORDER - 1

1    saw on the internet (on Hotels.com) failed to demonstrate to him that the Inn was ADA

2    compliant:



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.



**ADA Deficiency:** Failure to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs.

[Dkt. # 1-1]. Based on these ADA violations, Stronjik seeks injunctive relief,

compensatory damages, punitive damages, costs and, despite the fact is he proceeding *pro se*,

attorneys' fees. [Dkt. # 1].

Nathan and Casey Allan's "Response" claims they own and live at the Inn, and that it is

exempt from the ADA because it has only five rooms. They also explain that one of the rooms *is*

1   ADA complaint, except for grab bars in the bathroom. They demonstrate that this information is

2   on their own website, Swanntowninn.com.

3          Strojnik moves to strike the Response because the Allans are not attorneys and they

4   cannot represent their LLC *pro se* in this Court.

5          Representing another person or entity in court is the practice of law. To practice law, one

6   must be an attorney. RCW 2.48.170. Thus Washington, like all federal courts, follows the

7   common law rule that corporations appearing in court proceedings must be represented by an

8   attorney. There is a *pro se* exception to this general rule, under which a person "may appear and

9   act in any court as his own attorney without threat of sanction for unauthorized practice." The

10   pro se exception is, however, extremely limited and applies "only if the layperson is acting solely

11   on his own behalf" with respect to his own legal rights and obligations. *Cottringer v. State, Dep't*

12   *of Employment Sec.,* 162 Wash. App. 782, 787–88, 257 P.3d 667, 669 (2011).

13          The Court will not strike the Response but the Swanton Inn LLC must obtain an attorney

14   to represent it in this Court. The Motion to Strike is **DENIED**. Swantown Inn's obligations to

15   respond to the complaint or participate in the formulation of a discovery plan is **STAYED** for 90

16   days for it to do so.

17          In the meantime, Plaintiff Stronjik is **ORDERED TO SHOW CAUSE** in writing why

18   this case should not be dismissed as frivolous. At a minimum, Stronjik's Response should

19   address the following:

20        •    Describe and document any reasonable inquiry into the complaint's factual

21   allegations and claims, consistent with Stronjik's obligations under Fed. R. Civ. P. 11(b)(1), (2),

22   and (3).

23

24

1        •       Stronjik's standing to assert these claims, including his disability and any injury

2    in fact.

3        •       The propriety of any sanctions if the Court concludes that the matter is frivolous

4    or violates Rule 11.

5        Stronjik's Response to the Order to Show Cause should be filed and served within 15

6    days of this Order.

7        IT IS SO ORDERED.

8        Dated this 20th day of February, 2019.

9

10       Ronald B. Leighton
         United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 4

# EXHIBIT 40

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETER STROJNIK,

                              Plaintiff,

        v.

SWANTOWN INN & SPA LLC,

                              Defendant.

CASE NO. C18-1831 RBL

ORDER

        THIS MATTER is before the Court on Plaintiff Strojnik's Response [Dkt. # 11] to the Court's Order to Show Cause [Dkt. # 9].

        Strojnik argues that because Nathan and Casey Allan do not directly *own* the Swantown Inn—it is owned by Swantown Inn & Spa LLC, which is in turn owned by the Allans—they cannot be its "proprietors." Thus, he claims, even though it has "not more than five rooms for rent," it is not exempt from the ADA because the "proprietor" does not "actually occupy" the "establishment" as "its residence." *See* 42 U.S.C. § 12181(7)(A).

        Instead, he states the obvious: a fictitious entity like an LLC cannot "occupy" a premises as its "residence." Strojnik ignores the evidence that he includes in his Response, which amply demonstrates that the LLC itself is owned entirely by Nathan and Casey Allen, that Nathan is the

ORDER - 1

1  LLC's registered agent, and that he, Casey, and the LLC all reside at the Swantown Inn & Spa,

2  1431 11th Ave SE Olympia WA 98501:

3

| ⊘ SWANTOWN INN & SPA LLC | ACTIVE |
|---|---|
| | 👍 View this business on a printer-friendly and bookmarkable page |
| UBI # | 604 037 092 |
| Status | ACTIVE |
| Expiration Date | 📅 9/30/2019 |
| Period of Duration | PERPETUAL |
| Business Type | WA LIMITED LIABILITY COMPANY |
| Date of Incorporation | 9/20/2016 |
| State of Incorporation | WASHINGTON |
| Registered Agent | NATHAN ALLAN<br>1431 11TH AVE SE<br>OLYMPIA, WA 98501 |
| Governing Persons | NATHAN ALLAN — GOVERNOR<br>CASEY ALLAN — GOVERNOR |

13  [Dkt. # 11 at 2].

14        Strojnik's *ipse dixit* proclamation that the an LLC owner is the proprietor and that it

15  cannot reside on site to qualify for the ADA exemption as a matter of law, includes no citation,

16  and the Court cannot find any authority for it. There is no legal or logical support for his claim

17  that the proprietor must own the property in his own name for the exemption to apply. Merriam-

18  Webster  includes at least two common definitions for "proprietor:"

19
20              a : a person who has the legal right or exclusive title to something : owner
                b : one having an interest (such as control or present use) less than
                    absolute and exclusive right
21
22  https://www.merriam-webster.com/dictionary/proprietor. "Owner" and "proprietor" are

23  not synonyms. Mrs. Murphy did not lose her FHA exemption just because she

24  incorporated, for liability, estate planning, or tax reasons.

It is clear that the Allans actually reside at the Inn, that they are the Inn's proprietors, and that they do not rent more than five rooms. 42 U.S.C. § 12181(7)(A) applies, and because the Inn is therefore not a place of public accommodation, the ADA facially does not apply, as a matter of law. Strojnik's Response on the substantive merit of his claim is insufficient, and his ADA lawsuit against the Swantown Inn & Spa is **DISMISSED** with prejudice.

This leaves the issue of whether Strojnik complied with his Rule 11 obligations before filing. This is a close question, and Strojnik's history of predatory, unethical filings and hard-to-believe assertions[1] does not help him. Strojnik was suspended by the Arizona State Bar filing hundreds of frivolous, extortionate ADA lawsuits that apparently looked a lot like this one. *See* Judge O'Neil's July 11, 2018 "Order of Interim Suspension," attached as Exhibit A. The Order demonstrates that Strojnik vehemently opposed the suspension, arguing among other things that the courts presiding over his cases could impose any required discipline. *Id.* at 1.

Yet Strojnik's Response goes out of the way to dispute the fact of his suspension; he claims he "*voluntarily resigned*" because "continued association" with that organization was "*inconsistent with his core personal principles of fair play and morality.*" [Dkt. # 11 at 8 (emphasis added)]. Again, his evidence entirely undermines his premise: Strojnik's attached October 24, 2108 "Notice of Retirement and Resignation" was sent more than 100 days after the effective date of his suspension. If the findings of the disciplinary judge are any indication, this sort of disconnect is common.

---

[1] Strojnik testified at his suspension hearing that he worked 24 hours a day, seven days a week, for a year and half.

1        In any event, the issue is whether to sanction Strojnik for filing *this* frivolous case, not for

2  the hundreds of ones he filed before and elsewhere. This court does not sanction attorneys or pro

3  se litigants often, and it will not do so for a first offense here.

4        The case is **DISMISSED with prejudice**, and the matter is closed.

5        IT IS SO ORDERED.

6        Dated this 12th day of March, 2019.

Ronald B. Leighton
United States District Judge

ORDER - 4

# EXHIBIT A

## BEFORE THE PRESIDING DISCIPLINARY JUDGE

| | |
|---|---|
| IN THE MATTER OF A MEMBER OF THE STATE BAR OF ARIZONA, | **PDJ-2018-9018** |
| | **ORDER OF INTERIM SUSPENSION** |
| **PETER STROJNIK,** | [State Bar No. 18-0615] |
| **Bar No. 006464** | |
| Respondent. | **FILED JULY 11, 2018** |

### PROCEDURAL HISTORY

On March 6, 2018, the State Bar of Arizona moved for Interim Suspension (Motion) of Respondent, Peter Strojnik, Bar No. 006464 under Rule 61, Ariz. R. Sup. Ct.[1]  The allegations were verified and additionally supported by attached Exhibits 1-14.  On March 27, 2018, Mr. Strojnik filed his response, arguing among other things that there was no emergency because "the state and federal courts in which Mr. Strojnik has made those filings are fully capable of dealing with them according to law." [Respondent Response 1:22-24.] See also 6:7-12. The response concludes that there is no risk of injury to the public when compared to the damage Mr. Strojnik would suffer from an interim suspension. This Court disagrees. The

---

[1] Unless stated otherwise, all Rule references are to the Ariz. R. Sup. Ct.

1

testimony of Mr. Strojnik gives this judge little assurance that he will not continue to file or make claims against members of the public.

In conceding that interim suspension is warranted for "egregious" misconduct, Mr. Strojnik cited an article by Francis M. Dougherty (citations omitted). He also claims that interim suspension is also warranted for conduct "which cannot be easily corrected by other courts." Similarly, the response supports that interim suspension should be reserved for "the most extreme cases of lawyer misconduct" citing the West Virginia Supreme Court, (citations omitted). An evidentiary hearing was scheduled for April 11, 2018.

On April 3, 2018, Mr. Strojnik moved to continue the hearing because his health was greatly imperiled, and he would be unable to proceed. He was to undergo arterial embolization for kidney cancer which was scheduled for April 11, 2018 and would be unable to reasonably participate in the hearing due to his health. The hearing was continued.

On May 3, 2018, a hearing on the State Bar's Motion for Interim Suspension was held. Shauna Miller appeared on behalf of the State Bar of Arizona. Mr. Strojnik appeared, represented by Geoffrey Sturr and Joshua Bendor, *Osborn Maledon, P.A.*

## **GENERAL FINDINGS**

Any lawyer admitted to practice law in Arizona is subject to the disciplinary jurisdiction of the Arizona Supreme Court. Rule 46(a). Discipline proceedings are

*sui generis*, neither civil nor criminal. Rule 48(a). An attorney may be disciplined for any of the grounds stated in Rule 54. A discipline proceeding commences upon receipt by the State Bar of a charge against a respondent. Rule 55(a). Bar counsel conducts an initial evaluation of the information that comes to the State Bar's attention alleging lawyer lack of professionalism or misconduct. It is undisputed that the State Bar has received multiple charges from members of the public regarding the conduct of Mr. Strojnik.

If "the alleged conduct may warrant the imposition of a sanction" the matter is referred for a screening investigation. Rule 55(a)(2)(C).   Mr. Strojnik has acknowledged various charges have been in a screening investigation and thereby that the State Bar has long held the view that the conduct of Mr. Strojnik may warrant the imposition of a sanction. [Respondent Closing Argument 3:5-7.]

Rule 61 is the governing rule regarding interim suspension. The State Bar may move for interim suspension at any time after a charge is received. Under Rule 61(a), an interim suspension may be entered upon a showing of probable cause that a lawyer "is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice."

Rule 61(c)(2) sets forth the required procedural grounds by which an interim suspension may be sought. The procedural requirements were followed. The 339-page motion with attachments was supported by separate affidavits which were

based upon personal knowledge. The motion was timely served upon Mr. Strojnik.
He timely filed a 112-page response to the motion.

Under Rule 61(c)(2)(B), "The State Bar shall have the burden of establishing
probable cause that the basis of the requested relief exists and that interim suspension
is appropriate." In conducting the hearing, "The presiding disciplinary judge is not
bound by common law or rules of evidence or by technical or formal rules of
procedure and may conduct the hearing in any manner that will achieve substantial
justice." Probable cause exists.

## FINDINGS OF FACTS

Mr. Strojnik has filed over 1,700 complaints in State Court and over 160
complaints in District Court alleging violations of the Americans with Disabilities
Act (ADA) and the Arizonans with Disabilities Act (AzDA). The cases filed were
all very similar, alleging vague and non-specific violations. In cases brought in
District Court, Mr. Strojnik represented plaintiff Fernando Gastelum where they
targeted hotels. Mr. Strojnik represented the plaintiffs, generally referred to as AID
(Advocates of Individuals with Disabilities, LLC) and David Ritzenthaler in the
State Court cases which involved parking lot violations.

In each case, Mr. Strojnik would demand $5,000 in attorney's fees, regardless
if the business had remedied the violation. [SBA Exhibits 4-6.] Mr. Strojnik testified
that he has collected, in the parking lot cases, approximately $1.2 million in

settlements, which mainly consisted of attorney's fees. [Tr. 186:18-187:10.] In the Gastelum cases, as of the date of the hearing, Mr. Strojnik swore he had received "$384,000 net to me." [Id. 186:1-5.] After reflection that number increased by another $288,000. [Id. 187:8-10.] He plans to continue his pattern of conduct as he has always done. [Id. 188:25-189:10.]

Beau Roysden, an attorney with the Attorney General's office Civil Litigation Division, testified that the Attorney General's office became involved in these matters because of complaints by the public of the lawsuits being filed by Mr. Strojnik. In each suit, large attorney fees were claimed "and in some cases, potentially suing things like dirt lots or businesses that were not subject to the ADA." [Transcript, p. 73:13-23.] He also testified the suits were "copy and paste" and that some of the suits claimed they involved public lodging when it did not. Regardless, demands for $5,000 in attorney's fees and "some complaints claimed $5000 in damages as well." [Id. 76:8-20.]

Early in his testimony Mr. Strojnik acknowledged that with his method of "review" of the "investigative reports" he made errors and brought suit against dirt lots. [Id. 160:16-19.] Later when asked about the testimony of Mr. Roysden, Mr. Strojnik conceded that this had happened but claimed "rarely." He then claimed there was only one situation where this occurred as referred to by Mr. Roysden and

agreed it had occurred despite what he claimed to be a thorough investigation. [Tr. p. 196:9-14.]

Mr. Strojnik acknowledged he had a direct hand in this thorough investigation. He swore that he personally supervised the "investigators" that would go to the properties and ultimately their photographs would be delivered to him for review. [Id. 146:11-14.] Relying upon those "investigative reports" he personally determined if there were ADA violations. However, he later conceded he "did not know who the people were who actually went out to work." [Id. 148:10-11.] He testified he did not know how the instruments they used to take the photographs worked and that he had no expertise regarding this. He would rely on these "investigators" that he supervised, but never met, and for which he had no expertise of their methodology of the alleged violations in filing his lawsuits.

He also knew that this thorough investigation of the properties included simply hiring people from Craigslist to go take pictures of businesses that might be non-compliant. [Id. 144:11-17.] Throughout the hearing he called these individuals "investigators." They forwarded to him "approximately 10,000 violations filed on the businesses that were visited by these investigators." [Id. 145:1-6.] "Every case that was filed, I would review the investigative report given by the investigators." [Id 146:18-19.]

He swore he checked their work through the photographs that they provided to him. He swore he personally reviewed 10,000 of these "reports" by investigators certifying their accuracy to the court when suits were filed on any of them. Some days he would receive 150 such reports that he would look over to make sure they were accurate. [Id. 152:24-153:1.] Mr. Strojnik, in justifying this and his attorney fees, claimed he worked, at times, 24 hours a day.

Q: 24 hours a day?

A: Yeah.

Q. You wouldn't go to sleep?

A. No.

Q. Okay.

A. And I would, you know, for a year and a half, that's all I did. [164:16-22.]

He was later asked to verify these answers.

Q. You said you were doing the 24/7 for about a year, year and a half?

A. That's about a year and a half. 165:10-12.]

Mr. Roysden swore that a number of these suits involved "newer regulations" that altered the height for handicapped parking signs. These governmental changes caused once compliant businesses to fall out of compliance. Mr. Strojnik summarized his viewpoint that "non-compliance with disability law is rampant in

Arizona." It is apparent Mr. Strojnik believes these business owners violate the ADA without restraint. Even if there was no actual access issue, Mr. Strojnik claimed a violation that the 2010 standards were not in place at the time were "irrelevant under the ADA" even if a person had complete and unfettered access to the property. [Tr. 157:1-14.]

The time Mr. Strojnik spent on each case was minimal. For example, in the parking lot cases, Mr. Strojnik would review the investigative report prepared by the employees of AID. Then, if Mr. Strojnik determined that there was a violation, he might prepare a complaint, sign it, and file it. Mr. Strojnik would review photographs submitted. [Id. 192:21-194:5 and Ex. 31, vol. 1, Tab 5, Exhibit B, appendix B.] The preparation and review of the complains was under thirty minutes. He is a "one-man show" that does his own typing, has his investigators upload pictures of properties that he claims to review and charges $650 per hours for "everything I do that an attorney should do." [Id. p. 183:21-184:7.]

His state of mind was clarified by his response to questioning by his attorney. He was asked whether all his other cases had factual support. Mr. Strojnik attempted to testify about a hearing on standing. [Id. 199:24-25.] His attorney asked him, "Why are you so thorough and careful in the preparatory work for the lawsuits that you are filing on Mr. Gastelum's behalf?" He seethed, "I have learned in the last year and a half that there is a clear subliminal, just under the surface, dislike of society against

people with disabilities. If you drive off the freeway and there is a guy in a wheel chair asking for money, how many drivers actually look at him and make eye contact? Nobody. The reason why I didn't do that…"  The non-responsive answer was interrupted by the court. [Id. 208:13-21.]

In fact, Mr. Strojnik worked for free, under an arrangement with AID, he would demand attorney fees and those attorney fees were paid directly to AID and given to other individuals unknown to Mr. Strojnik. [158:7-18.] He swore he was never paid or given anything for attorney fees. Instead he testified, "The attorney fees were assigned to AID." He then added "I never saw the check." When pressed regarding this, he contradicted himself and swore the checks would either be written directly to his client or he would sign the check over. [167:6-168:12.]

In the hotel cases, Mr. Strojnik would pay Mr. Gastelum $350 per case to participate as the plaintiff.  As of November 17, 2017, Mr. Gastelum had been paid a total of $1,500 by Mr. Strojnik. The fee agreement between Mr. Gastelum and Mr. Strojnik gave Mr. Strojnik the authority to accept settlements and keep all money offered without Mr. Gastelum's approval. [SB Exhibit 19-28.]

In these fee applications filed by Mr. Strojnik in the Gastelum federal lawsuits, each had identical terms including: 1) Strojnik's hourly rate is $650.00 per hour, based on several factors; 2) Strojnik would represent Plaintiff pro bono, but can seek the recovery of attorney's fees from the Defendant at the rate of $650 per hour; 3)

Strojnik has the unfettered discretion in all settlements, but the client's consent is required if the settlement amount is less than $350; and 4) an expense under "client expenses" is paying Mr. Gastelum $350 for mileage, time effort, reviews, collection of evidence, and other expenses as required.

Mr. Strojnik testified that he never had an application for attorney fees denied where he had provided no pre-suit notification. [Id. 192:7-10.] This relevant testimony introduced by Mr. Strojnik was undermined by the recent denials of his attorney fees. Under examination by his attorney, Mr. Strojnik testified he had never had a lawsuit involuntarily dismissed. Such testimony was acknowledged as relevant and material by Mr. Strojnik. [Id. 210:20-23.] Recent rulings are likewise relevant, material and undermine his position.

The District Court has held that Strojnik's tactics are "extortionate" stating in part, "[no] fee is the reasonable fee for an unnecessary lawsuit that a demand letter would have taken care of. A demand for a fee beyond what is reasonable is a demand without legal basis under the ADA." *Advocates for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 898 (D. Ariz. 2017). Although most of the lawsuits filed have been dismissed, Mr. Strojnik stated that he wanted to file 10,000 ADA compliance lawsuits, and then file a million nationwide.[2]

---

[2] Stated in meeting with Lyndsay Leavitt who represented many defendants in the ADA/AzDA lawsuits. [Tr 18:12-19:25]

On May 25, 2018, Judge G. Murray Snow ordered a consolidated hearing to consider Mr. Gastelum's standing in the hotel cases. Judge Snow stated that Mr. Gastelum failed to meet the requirements for standing in every case. The Court concluded that Mr. Gastelum and Mr. Strojnik are engaged in a joint enterprise to file suits against Phoenix area lodgings that they believe to be out of compliance with ADA standards. The suits are filed without reference to whether Mr. Gastelum actually had intended to make future visits to those facilities or even if he potentially might be deterred from future visits by the type of non-compliance. Based on the lack of standing, Judge Snow dismissed all of the consolidated cases before him. However, since this ruling, Mr. Strojnik has filed an additional four ADA lawsuits in District Court. [SB Notice Supplementing the Record Re: *Gastelum v. Canyon Hospitality.*]

Judge David M. Talamante consolidated additional cases for the purpose of addressing issues of standing and possible sanctions. Judge Talamante also dismissed the consolidated cases based on a lack of standing. [SB Motion for Interim Suspension, Exhibit 8.] Shortly thereafter, Mr. Strojnik began filing Rule 60 Ariz. Civ. R. Pro. Motions for Relief from the Judgment in the cases dismissed with a lack of standing. On April 9, 2017, Judge Talamante issued an order directing Mr. Strojnik not to file any additional Rule 60 motions. Judge Talamante found that Strojnik committed a "serious due process violation" by failing to provide notice or

copies of the Motions for Relief from Judgment to the State. Judge Talamante also denied all relief sought by Strojnik. [SB Notice Supplementing the Record Re: Judge Talamante.]

## ANALYSIS

Mr. Strojnik argues on one hand that Rule 61 mandates that a Respondent must be actively engaging in case-specific litigation because, "The Bar cannot rely on past, completed conduct to support its request for interim suspension." [Respondent Closing Argument, p. 1:22-26.] Yet on the other hand he argued in the hearing and in his response that interim suspension should not be sought because the cases "should be handled by the court with jurisdiction over those cases." [Respondent Response, p. 3:7-9.] Presumably he means until the case is concluded, at which time that cannot be relied upon in seeking interim suspension.

Mr. Strojnik argued interim suspension should not issue because some of the matters have been in screening too long. [Respondent Closing, p. 2:5-7.] He also seems to argue interim suspension should not issue because some of the matters have not been in screening long enough. [Respondent Closing, p. 6:23-7:2.] Such circular arguments appear disingenuous and ignore the language of Rule 61. It is a course of conduct, not whether case specific motions have been resolved, that are at issue.

He also claims that this judge must make a definitive ruling of which ethical rules(s) were violated. "To suspend Mr. Strojnik, this Court would have to determine

that the Rule 60 motions violate some rule of professional conduct." [Id. 6:12-13.] This court determines whether there is probable cause that a respondent "is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice." If the State Bar meets its burden of proof of establishing probable cause that the basis of the requested relief exists and that interim suspension is appropriate, the PDJ may, but is not required to, order either interim suspension or interim probation.

The determination of probable cause for interim suspension is not substantially different from that of the Attorney Discipline Probable Cause Committee, ("ADPCC"). Under Rule 55, that Committee "shall first determine whether probable cause exists." Neither Rule 55 nor Rule 61 require a definitive finding regarding an ER.

Mr. Strojnik initially emphasized that this Court should defer to the State or Federal Court rulings as he expressed a concern that this Court "could reach inconsistent conclusions about the merits of the motions." [Id. 6:16-18.] The argument that the PDJ must specify which ERs were violated would do precisely what Respondent initially argued against regarding the other courts. It would preset the State Bar to prosecute specific ERs and preset the ADPCC to find probable cause regarding those ERs, potentially resulting in conflicting orders. Rule 61 does not

require findings of fact and conclusions of law. It requires that the PDJ determine, if probable cause is established, whether interim suspension "is appropriate."

The response criticized the State Bar for claiming future harm, as being based on unsupported speculation. "[I]t is not clear how the Bar came to this belief or satisfied its obligation to make a reasonable inquiry. It did not, for example, ask Mr. Strojnik what he intended to do." Regarding the multiple lawsuits filed, the response asserts that Mr. Strojnik and his client Mr. Gastelum, "engage in a rigorous investigative process" and often file lawsuits when infractions are discovered. This is questionable. The response also emphasizes that only Judge Wake was critical of Mr. Strojnik and that case involved his representation of a different client. That argument has been severely undercut.

Based on the foregoing facts, the State Bar contends Mr. Strojnik is engaging in conduct that is likely to cause immediate and substantial harm to clients, the public, or the administration of justice.

## **RULE 61 ANALYSIS**

### *Ethical Rules Violated*

Rule 61 does not explicitly state that violation of specific ethical rules must be found for an interim suspension. However, the State Bar has the burden of establishing that there is a reasonable belief that the basis of the requested relief exists, and that interim suspension is appropriate, i.e. Mr. Strojnik must be engaging

in unethical conduct and that interim suspension is appropriate. Further, interim suspension is like a preliminary injunction in that it requires the State Bar to show that it is likely to obtain a serious sanction after a full hearing on the merits. *In re Discipline of Trujillo*, 24 P.3d 972 (Utah 2001).

In its closing argument, the State Bar alleges that Mr. Strojnik has violated ERs 1.2, 1.4, 1.5(a), 3.3(a), 8.4(c), and 8.4(d).[3] Violation of these Rules would result in a significant sanction at the conclusion of the disciplinary process. One of the applicable standards for imposing sanctions, *Standard 7.2*, provides that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system.

Viewing Mr. Strojnik's conduct in its entirety, he has filed 1,700 complaints in State Court and over 160 complaints in District Court. Virtually all of the State Court lawsuits were dismissed.

### *Immediate and Substantial Harm*

Mr. Strojnik has demonstrated that without action by this Court, he will continue to file ADA/AzDA lawsuits. [SB's Supplement Re: *Gastelum v. Canyon*

---

[3] The alleged ethical violations are not necessarily inclusive of what will be charged in the disciplinary complaint but are at the least sufficient to show that Mr. Strojnik has violated the Rules of Professional Conduct, that at the least will result in a long-term suspension.

*Hospitality.*] US District Court Judge Neil V. Wake issued an order in *Advocates for Individuals With Disabilities LLC, and David Ritzenthaler, vs. MidFirst Bank*, 2:16-cv-01969-PHX-NVW suggesting that sanctions were appropriate and that Mr. Strojnik's "extortionate practice ha[d] become pervasive," [SB Motion for Interim Suspension, Exhibit 11.] The District Court stated that "it is certain that Arizona courts would not waive the standing requirement and empower [Respondent's] unethical extortion of unreasonable attorney's fees from defendants" when Mr. Strojnik requested to remand the case to state court. [Exhibit 11 at pg. 10.]

The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

## CONCLUSION

The State Bar has met its burden demonstrating Mr. Strojnik is engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice. Mr. Strojnik has demonstrated that he will continue filing lawsuits, and has filed lawsuits, irrespective of rulings by other Courts.

Therefore:

**IT IS ORDERED** finding probable cause Peter Strojnik has engaged in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice.

**IT IS FURTHER ORDERED Peter Strojnik, Bar No. 006464,** is suspended from the practice of law effective immediately on an interim basis and until further order of this Court.

**IT IS FURTHER ORDERED** such suspension shall continue in force until final disposition of all pending disciplinary proceedings against Peter Strojnik, unless vacated or modified.

**IT IS FURTHER ORDERED** under Rule 72(a) Peter Strojnik shall notify all his clients of the terms of this order within ten (10) days and shall timely file with the Disciplinary Clerk and the Court, notice of compliance with this Order as provided by Rule 72(e).

**IT IS FURTHER ORDERED** that the State Bar shall promptly prosecute this matter and it is set for telephonic status review on **Tuesday, January 15, 2019 at 10:00 a.m.**

**DATED** this 11th day of July, 2018.

_____    *William J. O'Neil*
                            **William J. O'Neil, Presiding Disciplinary Judge**

17

Copies of the foregoing e-mailed
this 11th day of July, 2018, and
mailed July 12, 2018, to:

Shauna R. Miller
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, AZ  85016-6288
Email:  lro@staff.azbar.org

Geoffrey M.T. Sturr
Joshua D. Bendor
*Osborn Maledon, PA*
2929 N. Central Ave., Suite 2100
Phoenix, AZ 85012-2793
Emails: gsturr@omlaw.com,
jbendor@omlaw.com
Respondent's Counsel


by: AMcQueen

# EXHIBIT 41

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11  PETER STROJNIK, SR.,                    )   Case No.: 1:19-cv-01096-DAD-JLT
                                            )
12              Plaintiff,                  )   ORDER TO THE PLAINTIFF TO SHOW CAUSE
                                            )   WHY THE ACTION SHOULD NOT BE
13        v.                                )   DISMISSED FOR FAILURE TO PROSECUTE
                                            )
14  JW WORLD ENTERPRISES, INC. BEST         )
    WESTERN BAKERSFIELD NORTH,              )
15              Defendant.                  )
                                            )
16  _____)

17          The Court denied the plaintiff's request for entry of default in this case because the proof of

18  service failed to demonstrate the defendant was properly served.  (Doc. 10) The Court ordered the

19  plaintiff to file proof of service no later than December 5, 2019, but he failed to do so.  This action was

20  filed in August 2019 (Doc. 1) and despite the passage of four months and the explicit order of the

21  Court that he plaintiff timely serve the defendant (Doc. 3 at 2), he has failed to do so.  Thus, the Court

22  **ORDERS**:

23          1.  **Within 14 days**, the plaintiff **SHALL** show cause why the action should not be dismissed

24              due to his failure to prosecute the action and comply with the Court's orders;

25          2.  The scheduling conference is **CONTINUED** to February 25, 2020 at 8:30 a.m.

26  ///

27  ///

28  ///

1

Failure to comply with result in a recommendation that the action be dismissed.

IT IS SO ORDERED.

Dated:    **December 6, 2019**                    **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE

2

# EXHIBIT 42

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| PETER STROJNIK SR., | ) | Case No.: 1:19-cv-01099 DAD JLT |
| Plaintiff, | ) ) | FINDINGS AND RECOMMENDATION TO |
| v. | ) ) | DISMISS THE ACTION DUE TO PLAINTIFF'S FAILURE TO COMPLY WITH THE COURT'S |
| INTEGRATED CAPITAL, LLC, et al., | ) ) | ORDERS AND TO PROSECUTE THIS ACTION |
| Defendants. | ) ) ) | |

On August 12, 2019, the plaintiff initiated this action related to alleged violations of the Americans with Disabilities Act. (Doc. 1) The Court issued summonses on August 13, 2019 (Doc. 3) and its order setting the mandatory scheduling conference to occur on November 1, 2019 (Doc. 4) and after the plaintiff filed a First Amended Complaint on September 23, 2019 (Doc. 6), the Court again issued a summons to the newly named defendant (Doc. 7). In its order setting the mandatory scheduling conference, the Court advised counsel:

> The Court is unable to conduct a scheduling conference until defendants have been served with the summons and complaint. Accordingly, plaintiff(s) shall diligently pursue service of summons and complaint and dismiss those defendants against whom plaintiff(s) will not pursue claims. Plaintiff(s) shall promptly file proofs of service of the summons and complaint so the Court has a record of service. Counsel are referred to F.R.Civ.P., Rule 4 regarding the requirement of timely service of the complaint. Failure to timely serve summons and complaint may result in the imposition of sanctions, including the dismissal of unserved defendants.

(Doc. 4 at 1) Despite this, the plaintiff has not filed a proof of service of the summons and complaint as to Easiness LP and this defendant has not appeared in the action. On October 30, 2019, the Court

1

1   ordered the plaintiff to show cause why sanctions should not be imposed for his failure to comply with

2   the Court's order and to prosecute this action. (Doc. 9) The plaintiff has failed to respond.

3       The Local Rules, corresponding with Fed. R. Civ. P. 11, provide: "Failure of counsel or of a

4   party to comply with . . . any order of the Court may be grounds for the imposition by the Court of any

5   and all sanctions . . . within the inherent power of the Court." Local Rule 110. "District courts have

6   inherent power to control their dockets," and in exercising that power, a court may impose sanctions

7   including dismissal of an action. Thompson v. Housing Authority of Los Angeles, 782 F.2d 829, 831

8   (9th Cir. 1986). A court may dismiss an action with prejudice, based on a party's failure to prosecute

9   an action or failure to obey a court order, or failure to comply with local rules. See, e.g. Ferdik v.

10  Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order);

11  Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with

12  a court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to

13  prosecute and to comply with local rules).

14      To determine whether to dismiss an action for failure to prosecute and failure to obey a Court

15  order, the Court must consider several factors, including: "(1) the public's interest in expeditious

16  resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

17  defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability

18  of less drastic sanctions." Henderson, 779 F.2d at 1423-24; see also Ferdik, 963 F.2d at 1260-61;

19  Thomspon, 782 F.2d at 831.

20      The public's interest in expeditiously resolving this litigation and the Court's interest in

21  managing the docket weigh in favor of dismissal.  See Yourish v. Cal. Amplifier, 191 F.3d 983, 990

22  (9th Cir. 1999) ("The public's interest in expeditious resolution of litigation always favors dismissal");

23  Ferdik, 963 F.2d at 1261 (recognizing that district courts have inherent interest in managing their

24  dockets without being subject to noncompliant litigants).  This Court cannot, and will not hold, this

25  case in abeyance based upon the plaintiff's failure to comply with the Court's orders and failure to

26  take action to continue prosecution in a timely manner.  See Morris v. Morgan Stanley & Co., 942

27  F.2d 648, 652 (9th Cir. 1991) (a plaintiff has the burden "to move toward . . . disposition at a

28  reasonable pace, and to refrain from dilatory and evasive tactics").  Accordingly, these factors weigh

1   in favor of dismissal of the action.

2          To determine whether the defendants suffer prejudice, the Court must "examine whether the

3   plaintiff's actions impair the . . . ability to go to trial or threaten to interfere with the rightful decision

4   of the case." Malone, 833 F.2d at 131 (citing Rubin v. Belo Broadcasting Corp., 769 F.2d 611, 618

5   (9th Cir. 1985)). Significantly, a presumption of prejudice arises when a plaintiff unreasonably delays

6   the prosecution of an action. See Anderson v. Air West, 542 F.2d 522, 524 (9th Cir. 1976). The

7   plaintiff has failed to serve the action or take any action to prosecution this case, despite being ordered

8   by the Court to do so. Therefore, this factor weighs in favor of dismissal.

9          The Court "abuses its discretion if it imposes a sanction of dismissal without first considering

10  the impact of the sanction and the adequacy of less drastic sanctions." United States v. Nat'l Medical

11  Enterprises, Inc., 792 F.2d 906, 912 (9th Cir. 1986). However, a court's warning to a party that the

12  failure to obey could result in dismissal satisfies the "consideration of alternatives" requirement. See

13  Malone, 833 F.2d at 133; Ferdik, 963 F.2d at 1262. As the Ninth Circuit explained, "a plaintiff can

14  hardly be surprised" by a sanction of dismissal "in response to willful violation of a pretrial order."

15  Malone, 833 F.2d at 133.

16         The Court warned the plaintiff in the scheduling order that "[f]ailure to comply with this order

17  may result in the imposition of sanctions." (Doc. 4 at 6.) Again, in the order to show cause, the Court

18  stated that "a court may impose sanctions including dismissal of an action" based on a party's failure

19  to prosecute an action or failure to obey a court order, or failure to comply with local rules. (Doc. 9 at

20  2.) Importantly, the Court need only warn a party once that the matter could be dismissed for failure

21  to comply to satisfy the requirements of Rule 41. Ferdik, 963 F.2d at 1262; see also Titus v. Mercedes

22  Benz of North America, 695 F.2d 746, 749 n.6 (3rd Cir. 1982) (identifying a "warning" as an

23  alternative sanction). Accordingly, the repeated warnings to the plaintiff satisfied the requirement that

24  the Court consider lesser sanctions, and this factor weighs in favor of dismissal of the action. See

25  Ferdik, 963 F.2d at 1262; Henderson, 779 F.2d at 1424; Titus, 695 F.2d at 749 n.6.

26         Given the plaintiff's failure to prosecute the action and failure to comply with the Court's

27  orders, the policy favoring disposition of cases on their merits is outweighed by the factors in favor of

28  dismissal. See Malone, 833 F.2d at 133, n.2 (explaining that although "the public policy favoring

3

1  disposition of cases on their merits . . . weighs against dismissal, it is not sufficient to outweigh the

2  other four factors"). Therefore, the Court **ORDERS**:

3        1.      The scheduling conference is **VACATED**;

4  The Court **RECOMMENDS**,

5        1.      That the action be DISMISSED without prejudice;

6        2.      The Clerk of Court be DIRECTED to close this action.

7        This Findings and Recommendation is submitted to the assigned District Court Judge, pursuant

8  to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the

9  United States District Court, Eastern District of California. Within ten days after service of the

10  Findings and Recommendation, Petitioner may file written objections with the Court. Such a

11  document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

12  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

13  Petitioner is advised that failure to file objections within the specified time may waive the right to

14  appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15

16  IT IS SO ORDERED.

17     Dated:  __December 6, 2019__           ___**/s/ Jennifer L. Thurston**___

18                                           UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 43

1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    PETER STROJNIK,                          Case No.  19-cv-04616-SVK

8              Plaintiff,                      **ORDER ON (1) DEFENDANT'S
                                              MOTION TO DISMISS,**
9         v.                                  **(2) DEFENDANT'S REQUEST FOR
                                              JUDICIAL NOTICE, AND**
10   RESORT AT INDIAN SPRINGS, LLC,           **(3) PLAINTIFF'S MOTION FOR
                                              PARTIAL SUMMARY JUDGMENT**
11             Defendant.
                                              Re: Dkt. Nos. 5, 5-2, 13
12

13        In this case, Plaintiff Peter Strojnik, representing himself *pro se*, alleges that Defendant

14   Resort at Indian Springs, LLC, which owns, operates, or leases a hotel in Calistoga, California (the

15   "Hotel"), violates the Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights

16   Act ("Unruh Act"), and the California Disabled Persons Act ("DPA") and is liable for negligence.

17   According to Plaintiff, first-party and third-party booking websites did not describe the Hotel's

18   accessibility features in sufficient detail to permit Plaintiff to assess whether the Hotel meets his

19   accessibility needs; he was unable to reserve accessible guest rooms in the same manner as

20   individuals who do not need accessible rooms; and the Hotel has architectural barriers to

21   accessibility.  Dkt. 1 (Complaint) ¶¶ 16-22.  Defendant now seeks to dismiss the Complaint

22   pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and

23   12(b)(6) (failure to state a claim).  Dkt. 5.  In support of its motion to dismiss, Defendant also filed

24   a request for judicial notice.  Dkt. 5-2.  Following filing of Defendant's motion to dismiss,

25   Plaintiff filed a motion for partial summary judgment.  Dkt. 13.  The parties have consented to the

26   jurisdiction of a magistrate judge.  Dkt. 6, 11.

27        Pursuant to Civil Local Rule 7-1(b), the Court deems the pending motions suitable for

28   determination without oral argument.  After considering the parties' submissions, the case file, and

     relevant law, and for the reasons discussed below, Defendant's motion to dismiss is

United States District Court
Northern District of California

(1) GRANTED WITH LEAVE TO AMEND with respect to Plaintiff's ADA, Unruh Act, and DPA claims; and (2) GRANTED with respect to Plaintiff's negligence claim, without prejudice to Plaintiff's refiling that claim in state court or in an amended complaint in this case.  Defendant's request for judicial notice is DENIED.  Plaintiff's motion for partial summary judgment is DENIED.

## I.   BACKGROUND

Plaintiff Peter Strojnik, a resident of Arizona, alleges that he has "a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, [and a] degenerative right knee" that "substantially limit his major life activities."  Dkt. 1 ¶¶ 3-4.  According to Plaintiff, he "walks with difficulty and pain and requires compliant mobility accessible features at places of public accommodation."  *Id.* ¶ 4.

Plaintiff claims that he sought information about Defendant's Hotel in connection with a planned trip to the California Wine Country.  *Id.* ¶ 15.  According to Plaintiff, he became aware that first-party and third-party booking websites "failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs" and "failed to make reservations for accessible guest rooms available in the same manner as individuals who do not need accessible rooms."  *Id.* ¶¶ 17-20.  Plaintiff further alleges that online information about the Hotel disclosed architectural barriers to accessibility.  *Id.* ¶ 22.  Plaintiff contends that as a result of these conditions, he "is deterred from visiting the Hotel" but "intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel because fully compliant" with the ADA.  *Id.* ¶¶ 11-12.  Plaintiff's complaint is accompanied by an addendum containing screen shots from booking websites and photographs of the Hotel.  Dkt. 1-1.

On August 9, 2019, Plaintiff filed this action, asserting causes of action for:  (1) violation of the ADA, 42 U.S.C. § 12101 *et seq.*; (2) violation of the California Unruh Civil Rights Act, California Civil Code §§ 51 *et seq.*; (3) the California Disabled Person Act, California Civil Code §§ 54-54.3; and (4) negligence.  Dkt. 1.  Defendant seeks to dismiss the complaint (Dkt. 5), and Plaintiff seeks summary judgment in his favor (Dkt. 13).

United States District Court
Northern District of California

2

## II.   DEFENDANT'S MOTION TO DISMISS

### A.   LEGAL STANDARD

#### 1.   Rule 12(b)(1)

Rule 12(b)(1) allows the Court to dismiss a complaint for lack of subject matter jurisdiction. A challenge to a plaintiff's Article III standing is properly challenged by a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Rule 12(b)(1) motions can challenge subject matter jurisdiction in two different ways: (1) a facial attack based solely on the allegations of the complaint, or (2) a factual attack based on extrinsic evidence apart from the pleadings. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If a defendant initiates a factual attack by submitting a declaration with extrinsic evidence of the plaintiff's lack of standing, the plaintiff must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health and Human Svcs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted).

#### 2.   Rule 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dept' of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**B.    REQUEST FOR JUDICIAL NOTICE**

In support of its motion to dismiss, Defendant has filed a request that the Court take judicial notice of the following (Dkt. 5-2):

**Exhibit A:**  A printout from Google Maps showing the distance measurement and directions from Plaintiff's address in Phoenix, Arizona to Defendant's Hotel in Calistoga, California.

**Exhibit B:**  PACER search results reflecting 25 unique *pro se* cases filed by Plaintiff since October 28.

**Exhibit C:**  An Arizona State Bar complaint against Plaintiff.

**Exhibit D:**  The Arizona State Bar's Judgment of Disbarment of Plaintiff.

Plaintiff objects to the requests for judicial notice, primarily on relevance grounds. Dkt. 12.

Exhibits A, B, C, and D are not relevant to the Court's consideration of the motion to dismiss, and the Court therefore DENIES Defendant's request for judicial notice of those documents, without prejudice to renewal of the request in the event the documents become relevant to other issues in the case.

**C.    DISCUSSION**

Defendant's motion to dismiss argues that Plaintiff lacks standing to bring an ADA claim and therefore the claim should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.  Dkt. 5 at 4-12.  Because Defendant contends that the complaint's allegations, when accepted as true and all reasonable inferences are drawn in Plaintiff's favor, fail to establish standing, Defendant asserts a facial challenge to the Court's subject matter jurisdiction. *See* Dkt. 17 (Reply) (statement by Defendant that its motion to dismiss "mounts a facial attack on subject matter jurisdiction" under Rule 12(b)(1)).

Defendant also argues that if the ADA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims under the Unruh Act, under the

United States District Court
Northern District of California

4

DPA, and for negligence. Dkt. 5 at 12. Alternatively, Defendant argues that Plaintiff's state law claims fails to plead facts upon which relief may be granted. *Id.* at 12-16.

### 1. ADA Standing

As the party invoking the Court's jurisdiction, Plaintiff bears the burden of pleading Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To plead Article III standing, Plaintiff must show that (1) he has suffered an "injury-in-fact"; (2) the injury is fairly traceable to Defendant's challenged conduct; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). To establish injury in fact, the first of the elements of standing, Plaintiff must show that he suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). A "concrete" injury "must actually exist." *Id.* "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating" the existence of an injury in fact. *Id.* at 1547 (internal quotation marks and citations omitted).

"In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (en banc) (internal quotation marks and citation omitted).

Defendant argues that Plaintiff lacks Article III standing to bring his ADA claim because (1) he has not suffered a concrete and particularized injury in fact in that Plaintiff "does not relate the alleged ADA barriers to [his] particular disability," and (2) he has not alleged facts demonstrating that he faces a real and immediate threat of repeated injury in the future as required to plead standing to pursue prospective injunctive relief under the ADA. Dkt. 5 at 4, 6.

### a. Connection between alleged barriers and Plaintiff's disability

According to Defendant, for an injury to be concrete and particularized in the ADA context, the plaintiff must identify access barriers that interfere with his equal enjoyment of the facility, *i.e.*, a barrier that "affects the plaintiff's full and equal enjoyment of the facility on

United States District Court
Northern District of California

1    account of his particular disability." Dkt. 5 at 4 (citing *Chapman*, 631 F.3d at 947 (quoting 42

2    U.S.C. § 12182(a)).

3    In his complaint, Plaintiff describes his physical conditions and alleges that as a result of

4    those conditions, he "walks with difficulty and pain and requires compliant mobility accessible

5    features at places of public accommodation." Dkt. 1 ¶¶ 3-4. Plaintiff further claims that the

6    alleged ADA violations "relate to barriers to Plaintiff's mobility" and "impairs Plaintiff's full and

7    equal access to the Hotel which, in turn, constitutes discrimination satisfying the 'injury in fact'

8    requirement of Article III of the United States Constitution." *Id.* ¶ 10. In his opposition to the

9    motion to dismiss, Plaintiff argues that the Ninth Circuit's decision in *Civil Rights Education and*

10   *Enforcement Center v. Hospitality Properties Trust ("CREEC")*, 867 F.3d 1093 (9th Cir. 2017)

11   resolves the standing issues in Plaintiff's favor, as evidenced by a recent decision in this District

12   applying *CREEC* to a case involving similar facts, *Strojnik v. GF Carneros Tenant, LLC*, No. 19-

13   cv-03583. Dkt. 11 at 4-6; Dkt. 21.

14   In *CREEC*, the Ninth Circuit discussed the requirements for Article III standing, with a

15   particular focus on the question (discussed more fully in the following section of this order) of

16   whether a disabled plaintiff need actually visit the site that is the subject of the ADA lawsuit.

17   Similarly, *GF Carneros* focuses on whether the plaintiff had adequately alleged a genuine intent to

18   return to the hotel that was at the subject of that case. Those cases do not bear directly on

19   Defendant's argument that Plaintiff has failed to plead facts establishing that the alleged barriers at

20   the Hotel affect his full and equal enjoyment of the facility on account of his particular disability.

21   In any event, the Court concludes that *CREEC*, upon which the court in *GF Carneros* relied, is

22   distinguishable from this case as far as whether the plaintiff has adequately alleged a relationship

23   between the alleged barriers and the plaintiff's particular disability. The plaintiffs in *CREEC*

24   "use[d] wheelchairs for mobility." *CREEC*, 867 F.3d at 1097. The defendants in that case owned

25   hotels that provided free local shuttle services, but each plaintiff was informed that the local hotel

26   she contacted did not provide equivalent shuttle service for mobility-impaired people. *Id.* Thus,

27   the plaintiffs in *CREEC* appear to have satisfied *Chapman*'s standing requirements by tying a

28   specific barrier (lack of accessible shuttle service) to their particularly disability (wheelchair

6

1   bound).

2          Here, by contrast, Plaintiff has not alleged facts establishing how the alleged barriers at the

3   Hotel impair his full use and equal enjoyment of that facility, given his alleged mobility

4   limitations.  The complaint does not explain the extent of his mobility limitations, other than to

5   say that he "walks with difficulty and pain" and requires unspecified "compliant mobility

6   accessible features." Dkt. 1 ¶ 4.  Plaintiff claims his "impairment is constant, but the degree of

7   pain is episodic ranging from dull and numbing pain to extreme and excruciating agony." *Id.* The

8   addendum to the complaint contains captioned pictures of a variety of conditions at the Hotel,

9   such as a picture of a bathroom sink and mirror described as "[r]eflective surface 43" high" (Dkt.

10  1-1 at 26); a picture of a patio door with "improper hardware" (*id.* at 32); pictures of steps

11  described as an "[i]naccessible route to mineral pool" (*id.* at 40); and others.  The lack of details

12  about Plaintiff's particular physical limitations, combined with the conclusory captions of the

13  photographs submitted in the addendum, renders the complaint unclear as to whether and how the

14  alleged barriers affected Plaintiff's use of enjoyment of the facility.  These details are critical to

15  the determination of standing because the Ninth Circuit has held that a plaintiff "does not have

16  standing to challenge those barriers that would burden or restrict access for a person" with a

17  different disability. *See Doran v. 7-Eleven*, 524 F.3d 1034, 1044 n.7 (9th Cir. 2008) (holding that

18  plaintiff, a wheelchair user, can challenge only those barriers that might reasonably affect a

19  wheelchair user's full enjoyment of the convenience store at issue); *see also Strojnik v. Hotel

20  Circle GL Holdings*, No. 1:19-cv-01194-DAD-EPG, 2019 WL 6212084, at *3 (E.D. Cal. Nov. 21,

21  2019) (granting motion to dismiss ADA claim where same plaintiff as in this case because it could

22  not be determined from conclusory allegations that any of the purported violations "relate to"

23  Plaintiff's disability).

24          The Court therefore GRANTS the motion to dismiss WITH LEAVE TO AMEND insofar

25  as Defendant argues that Plaintiff has failed to tie the alleged barriers to his particular disability.

26                  **b.      Threat of repeated injury**

27          Defendant also argues that Plaintiff does not have standing because he has not pleaded

28  facts demonstrating that he faces a "real and immediate threat of repeated injury in the future," as

United States District Court
Northern District of California

1   required to seek injunctive relief on his ADA claim. Dkt. 5 at 6. According to Defendant, at least

2   three factors "weigh against finding [Plaintiff] is sufficiently likely to return to [Defendant's] hotel

3   to confer standing": (1) the distance between Plaintiff's residence and the Hotel; (2) the absence

4   of any allegation of Plaintiff's past patronage of the Hotel or the surrounding area; and (3) the lack

5   of an allegation of a definite plan by Plaintiff to visit the Hotel. *Id* at 7-8.

6       Where, as here, a plaintiff seeks injunctive relief, "past exposure to illegal conduct does

7   not in itself show a present case or controversy," and the plaintiff must instead allege "continuing,

8   present adverse effects" stemming from the defendant's actions. *CREEC*, 867 F.3d at 1098 (citing

9   *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). A plaintiff experiences continuing

10  adverse effects where a defendant's failure to comply with ADA requirements deters the plaintiff

11  from making use of the defendant's facility. *CREEC*, 867 F.3d at 1098 (citing *Chapman*, 631 F.3d

12  at 953). Further, "Article III . . . requires a sufficient showing of **likely injury in the future**

13  **related to the plaintiff's disability** to ensure that injunctive relief will vindicate the rights of the

14  particular plaintiff . . . .". *Chapman*, 631 F.3d at 949 (emphasis added). Where these

15  requirements are met, the Ninth Circuit has held that a disabled plaintiff who has actual knowledge

16  of illegal barriers at a public accommodation to which he desires access need not engage in the

17  "futile gesture" of attempting to gain access in order to show actual injury. *CREEC*, 867 F.3d at

18  1098 (citing *1099 Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002)).

19  The injury under the ADA continues so long as the discriminatory conditions continue and so long

20  as a plaintiff is aware of them and remains deterred. *CREEC*, 867 F.3d at 1099 (citing *1099

21  Pickern*, 293 F.3d at 1135).

22      Defendant argues that although *CREEC* held that an ADA plaintiff may show continuing

23  adverse effects by showing that the defendant's failure to comply with the ADA deterred the

24  plaintiff from using the defendant's facility, "the plaintiff must have a true desire to return to the

25  facility but for the barriers." Dkt. 17 at 7. Defendant contends that the complaint in this case does

26  not allege facts showing that Plaintiff has a true desire to visit the Hotel and that the alleged

27  barriers deter him from doing so. *Id.* at 7-8.

28      Accepting Plaintiff's allegations as true, as it must at this stage on Defendant's facial

challenge to the complaint, the Court finds that Plaintiff has failed to allege facts showing that Defendant's alleged failure to comply with ADA requirements deters Plaintiff from making use of the Hotel.  Plaintiff merely alleges that he is "deterred from vising the Hotel based on Plaintiff's knowledge that the hotel is not ADA or State Law compliant as such compliance relates to Plaintiff's disability" and that he "intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel become fully compliant with [the ADA]."  Dkt. 1 ¶¶ 11-12.  As *Chapman* makes clear, the complaint does not adequately describe Plaintiff's alleged disabilities or how the alleged barriers at the Hotel affected Plaintiff's use of enjoyment of the facility in light of his particular disabilities.  Absent such allegations, Plaintiff's conclusory allegations that he is deterred from visiting the Hotel, but would visit if it were accessible, are not plausible.

The Court therefore GRANTS the motion to dismiss WITH LEAVE TO AMEND insofar as Defendant argues that Plaintiff has failed to allege facts showing that he has suffered continuing, present adverse effects.

### 2.    State Law Claims

Defendant also seeks dismissal of Plaintiff's state law claims on several grounds.  First, Defendant argues that the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims if it dismisses Plaintiff's ADA claims.  Second, Defendant moves to dismiss the state law claims under Rule 12(b)(6) on the grounds that (1) Plaintiff lacks statutory standing to sue under the Unruh Act or the DPA because neither statute applies extraterritorially, and (2) Plaintiff does not and cannot plead facts sufficient to state a plausible negligence claim against Defendant.  *See* Dkt. 5 at 12-16.  The Court first considers Plaintiff's Unruh Act and DPA claims, then turns to Plaintiff's negligence claim.

### a.    Unruh Act and DPA claims

In support of its argument that Plaintiff lacks standing to bring a claim under the Unruh Act, Defendant points to California Civil Code § 51(b), which affords "[a]ll persons within the jurisdiction of this state" certain rights to full and equal accommodations and facilities in all business establishments.  According to Defendant, Plaintiff does not have standing under the Unruh Act because he is a resident of Arizona who did not visit Defendant's hotel and therefore is

United States District Court
Northern District of California

1    not a "person within the jurisdiction of this state." Dkt. 5 at 14-15.

2        Plaintiff argues that standing under the Unruh Act is broad, and the remedies specified in

3    Civil Code § 52(a) are available to "any person." Dkt. 11 at 7-9. However, Section 52(a) makes a

4    remedy available only to "any person *denied the rights provided in Section 51, 51.5, or 51.6*"

5    (emphasis added). Thus, to be entitled to a remedy under Section 52(b) for the alleged violation of

6    Section 51, Plaintiff must show that he had rights under Section 51, which extends rights only to

7    "persons within the jurisdiction of this state," or other sections not relevant here. Cal. Civ. C.

8    § 51(b). The Unruh Act "by its express language applies only within California." *Archibald v.*

9    *Cinerama Hawaiian Hotels, Inc.*, 73 Cal. App. 3d 152, 159 (1977); *see also Ebeid v. Facebook,*

10   *Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing Unruh

11   Act claim brought by resident of Arizona concerning alleged discrimination by website operator

12   located in California); *Perez v. Wells Fargo & Co.*, No. 17-CV-00454-MMC, 2017 WL 3314797,

13   at *6 (N.D. Cal. Aug. 3, 2017) (dismissing Unruh Act claim brought on behalf of plaintiff residing

14   in Texas who applied for and was denied credit in Texas by a bank headquartered in California).

15   Plaintiff, who resides in Arizona and apparently accessed Defendant's website from Arizona,

16   suggests that he falls within the category of persons protected by Section 51 because he "visits

17   California quite often." Dkt. 11 at 9. However, "by its own terms, [Section 51(b)] is expressly

18   limited to discrimination that takes place within California's borders." *Warner v. Tinder*, 105 F.

19   Supp. 3d 1083, 1099 (C.D. Cal. 2015) (dismissing Unruh Act claim against California-based

20   operator of dating app brought by resident of Florida; citing cases).

21       Similarly, the DPA "contains no language that indicates its protections should be extended

22   to individuals in other states, for injuries that took place outside of California." *Crawford v. Uber*

23   *Techs., Inc.*, No. 17-cv-02664-RS, 2018 WL 1116725, at *4 (N.D. Cal. Mar. 1, 2018).

24       There are stray remarks in the record suggesting that Plaintiff may have visited the Hotel.

25   *See, e.g.,* Dkt. 1-1 (Addendum A) at 11 (heading stating that the photographs of the alleged

26   architectural barriers are ones Plaintiff "personally encountered"); Dkt. 11 (Plaintiff's opposition

27   to motion to dismiss) at 6 (statement that "of course, Plaintiff *personally* visited the hotel,

28   *personally* took the photographs and *personally* lodged there)" (emphasis in original). However,

10

1    Plaintiff's complaint suggests he has not visited the Hotel because it states that the photographs of

2    the Hotel came from "online information" and claims that he is "deterred from visiting the Hotel"

3    and "intends to visit Defendant's Hotel at a specific time when [it] becomes fully compliant."

4    Dkt. 1 ¶¶ 11-12, 21-22.

5          On this record, the Court finds that Plaintiff has not pleaded facts showing that he is a

6    "person[] within the jurisdiction of this state" for purposes of bringing an Unruh Act claim or that

7    he is afforded protections under the California DPA.  The Court therefore GRANTS Defendant's

8    motion to dismiss the Unruh Act and DPA claims WITH LEAVE TO AMEND.

9                              **b.    Negligence claim**

10         Plaintiff's remaining claim is for negligence.  Defendant argues that if the Court dismisses

11   Plaintiff's ADA claim for lack of subject matter jurisdiction, it must dismiss the state law claims

12   because there is no basis for supplemental jurisdiction over those claims. Dkt. 5 at 12.  Defendant

13   further argues that if the Court dismisses the ADA claim for other reasons, the Court should

14   decline to exercise its discretion to exercise supplemental jurisdiction over the remaining state law

15   claims. *Id.*

16         As discussed above, the Court dismisses the ADA claim for lack of subject matter

17   jurisdiction, with leave to amend.  As a result, there is currently no basis for supplemental

18   jurisdiction over Plaintiff's negligence claim, and the Court therefore DISMISSES that claim,

19   without prejudice to Plaintiff filing the claim in state court or including the claim in an amended

20   complaint in this case.  If Plaintiff includes a negligence claim in his amended complaint,

21   Defendant may renew its arguments regarding dismissal of that claim.

22         **D.    CONCLUSION ON MOTION TO DISMISS**

23         Plaintiff's ADA claim, Unruh Act, and DPA claims are DISMISSED WITH LEAVE TO

24   AMEND.  Plaintiff's negligence claim is DISMISSED without prejudice to filing that claim in

25   state court or in an amended complaint in this Court, subject to Defendant's arguments as to why

26   the claim should be dismissed.

27   ////

28   ////

11

United States District Court
Northern District of California

### III.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.   LEGAL STANDARD

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* Even if summary judgment is not available on all claims in a case, a party may obtain partial summary judgment on a claim, defense, or portion thereof. Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of persuasion at trial must establish that there is no genuine issue of material fact regarding the elements of its claim. *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). However, the party opposing summary judgment must direct the court's attention to specific, triable facts. *So. Cal. Gas*, 336 F.3d at 889. "[T]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.* (1986) 475 US 574, 586-587 (1986).

A court considers only admissible evidence when reviewing a motion for summary judgment. *Weil v. Citizens Telecom Svcs. Co., LLC*, 922 F.3d 993, 998 (9th Cir. 2019).

### B.   DISCUSSION

Plaintiff's motion for partial summary judgment seeks summary judgment on his ADA and

1    Unruh Act Claims. *See* Dkt. 13 at 1 (arguing that "Plaintiff is entitled to Judgment as a matter of

2    law regarding Defendant's ADA and Unruh Act liability"). Plaintiff is not entitled to summary

3    judgment on either claim, for several reasons.

4          First, Defendant has challenged both the ADA and Unruh Act claims in its motion to

5    dismiss. Dkt. 5. Because of the motion to dismiss and the Court's ruling on that motion, which

6    gives Plaintiff the opportunity to amend his complaint, the pleadings in this case are not yet set.

7    The pleadings play a role in summary judgment; specifically, "the 'materiality' of particular facts

8    is determined by the pleadings and the substantive law." Rutter Group, *Federal Civil Procedure*

9    *Before Trial*, ¶ 14.27.1 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

10    Accordingly, because the pleadings in this case are not yet set, Plaintiff's motion for summary

11    judgment is premature.

12          Second, even if the pleadings were set, Defendant has shown that it should be permitted to

13    conduct discovery before it is required to oppose a summary judgment motion. *See* Fed. R. Civ.

14    P. 56(d); *see also* Dkt. 18-1 ¶ 8. This District's General Order 56, which governs ADA litigation,

15    stays all discovery and proceedings (other than initial disclosures) until the judge orders otherwise.

16    The timing and circumstances of Plaintiff's summary judgment motion indicates that it is an

17    improper attempt to bypass the procedures set forth in General Order 56.[1]

18          Third, Plaintiff's argument in support of summary judgment appears to be that his own

19    testimony concerning his alleged disability and photographs of alleged ADA violations are

20    sufficient to justify summary judgment in his favor. *See* Dkt. 13 at 2; Dkt. 13-1. Specifically,

21    Plaintiff claims that the information he submitted establishes that (1) his physical conditions

22    constitute a disability within the meaning of the ADA; (2) Defendant's reservation services do not

23

24    [1] Courts in this District have held that General Order 56 "does not stay all proceedings in an ADA

25    case, but instead stays only discovery and similar proceedings, and merely dictates an early case management process that has been tailored to ADA access cases filed in this district." *See*

26    *Johnson v. Otter*, No. 18-cv-01689-BLF, 2019 WL 452040, at *2 (N.D. Cal. Feb. 5, 2019) (internal quotation marks and citations omitted). Specifically, "General Order 56 does not bar the

27    filing of a motion challenging the pleadings or the court's jurisdiction." *Id.* (citations omitted). However, Plaintiff has not established that an early summary judgment motion—filed before the

28    pleadings are set and before other events required under General Order 56 events have occurred— is appropriate.

1   comply with ADA requirements; and (3) Defendant's hotels have architectural barriers that violate

2   the ADA. *See* Dkt. 13 at 5-7. Plaintiff's arguments misunderstand his burden of proof in bringing

3   his claims.

4          With respect to Plaintiff's physical conditions, although "a plaintiff's testimony may

5   establish a genuine issue of material fact sufficient to *survive* summary judgment … Plaintiff cites

6   no authority suggesting that her declaration alone is sufficient to establish her entitlement to the

7   ADA's protections as a matter of law." *Moralez v. Wal-Mart Stores Inc.*, No. C 17-05127 WHA,

8   2018 WL 545877, at *2 (N.D. Cal. Oct. 28, 2018) (denying plaintiff's motion for summary

9   judgment on ADA and Unruh Act claims where only evidence of Plaintiff's disability submitted in

10  support of her motion for summary judgment was her own declaration) (emphasis in original).

11  Defendant is entitled to test Plaintiff's assertions through discovery, which is currently stayed by

12  operation of General Order 56.

13         As to the alleged noncompliance of Defendant's reservation systems with ADA

14  requirements, Plaintiff cites 28 C.F.R. § 36.302(e), which requires, *inter alia,* that a place of

15  lodging "[i]dentify and describe accessible features in the hotels and guest rooms offered through

16  its reservation service in enough detail to reasonably permit individuals with disabilities to assess

17  independently whether a given hotel or guest room meets his or her accessibility needs." An

18  evaluation of whether a particular hotel meets this standard depends on a variety of considerations,

19  including whether the hotel was built in compliance with the 1991 Standards and on the

20  information available through and operation of the particular reservation system at issue. *See*

21  *Barnes v. Marriott Hotel Services, Inc.*, No. 15-cv-01409-HRL, 2017 WL 635474, at *10 (N.D.

22  Cal. Feb. 16, 2017). Although Plaintiff has presented screenshots of several first- and third-party

23  booking services relating to the Hotel, further development of the factual record is needed in order

24  to determine whether Defendant violates the relevant provisions of the ADA.

25         Similarly, Plaintiff's allegations regarding architectural barriers cannot be resolved on

26  summary judgment, at least based on the present record. For example, Plaintiff alleges that the

27  removal of the architectural barriers is "readily achievable." Dkt. 1 ¶ 25. In general, the ADA

28  imposes an obligation on owners and operators of existing facilities to remove architectural

14

barriers unless removal is not "readily achievable," and that standard encompasses a number of fact-specific considerations. See 42 U.S.C. §§ 12182(b)(2)(A)(iv), 12181(9). "Several courts have noted [that] whether a specific change is readily achievable is a fact-intensive inquiry that will rarely be decided on summary judgment." *Rodriguez v. Barrita, Inc.*, No. C 09-04057-RS, 2012 WL 3538014, at *8 (N.D. Cal. Mar. 1, 2012) (internal quotation marks and citations omitted).

### C.    CONCLUSION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's motion for partial summary judgment, brought before the pleadings are set and before any discovery has occurred, is premature. Moreover, the untested evidence submitted by Plaintiff does not establish that Plaintiff is entitled to summary judgment on the merits of its ADA or Unruh Act claims. Accordingly, Plaintiff's motion for partial summary judgment is DENIED. Further, Plaintiff must seek permission from this Court before filing another motion for summary judgment in this action.

### IV.    DISPOSITION

For the reasons discussed above, Defendant's motion to dismiss Plaintiff's ADA, Unruh Act, and DPA claims is GRANTED WITH LEAVE TO AMEND, and Plaintiff's negligence claim is DISMISSED without prejudice to refiling that claim in state court or in an amended complaint in this case, subject to Defendant's arguments as to why that claim should be dismissed. Defendant's request for judicial notice is DENIED. Plaintiff's motion for partial summary judgment is DENIED. The Court further ORDERS as follows:

1.    If Plaintiff wishes to attempt to address the deficiencies identified in this order, and if he can do so in compliance with Rule 11 standards, he may file an amended complaint no later than **January 15, 2020**.

2.    Defendant's response to the amended complaint is due no later than **10 days** after the filing of the amended complaint. If Defendant responds by filing a motion to dismiss the amended complaint, Plaintiff must file any opposition to that motion within **10 days**. Defendant may file a reply within **5 days** of the filing of Plaintiff's opposition. The Court will inform the parties if a hearing is necessary.

United States District Court
Northern District of California

3. Plaintiff must seek leave of court prior to filing another motion for summary judgment.

4. Within 10 days of Defendant filing a responsive pleading to an amended complaint, the Parties are to provide a joint statement setting forth the status of this action under General Order 56.

**SO ORDERED.**

Dated: December 19, 2019

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

16

EXHIBIT 44

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PETER STROJNIK, SR.,                    No. 1:19-cv-01194-DAD-EPG

12              Plaintiff,

13         v.                                 ORDER GRANTING DEFENDANT'S
                                              MOTION TO DISMISS
14    HOTEL CIRCLE GL HOLDINGS, LLC,
                                              (Doc. No. 8)
15              Defendant.

16

17         This matter is before the court on defendant Hotel Circle GL Holdings, LLC's

18   ("defendant") motion to dismiss *pro se* plaintiff Peter Strojnik Sr.'s ("plaintiff") complaint.

19   A hearing on the motion was held on November 19, 2019.  Plaintiff appeared telephonically on

20   his own behalf, and attorney Philip Stillman appeared telephonically on behalf of defendant.  The

21   court has considered the parties' briefs and oral arguments and, for the reasons set forth below,

22   will grant defendant's motion to dismiss with leave to amend.

23                                  **BACKGROUND**

24         Plaintiff's complaint alleges as follows.  Plaintiff is a person which physical disabilities,

25   including "severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy,

26   prostate cancer and renal cancer, [and a] degenerative right knee . . . ."  (Doc. No. 1 ("Compl.") at

27   ¶¶ 2, 3.)  These disabilities "substantially limit [plaintiff's] major life activities," in that he "walks

28   with difficulty and pain and requires compliant mobility accessible features at places of public

                                              1

1   accommodation." (*Id.* at ¶ 4.)  Defendant owns, operates, or leases a hotel located at 300 S. Court

2   Street, Visalia, CA 93291 (the "Hotel").  (*Id.* at ¶ 5.)  On or about June 8, 2019, plaintiff visited

3   the Hotel and encountered barriers to accessibility.  (*Id.* at ¶¶ 15, 16.)  Plaintiff has attached to his

4   complaint an "Addendum A," wherein he includes photographs of these alleged barriers to

5   accessibility.  (*See id.* at 8–10.)  As a result of these barriers, plaintiff "is deterred from visiting

6   the Hotel based on [his] knowledge that the Hotel is not . . . compliant [with the Americans with

7   Disabilities Act ('ADA') and California's Unruh Act] as such compliance relates to Plaintiff's

8   disability." (*Id.* at ¶ 11.)  "Plaintiff intends to visit Defendant's Hotel at a specific time when the

9   Defendant's noncompliant Hotel becomes fully compliant with [ADA Accessibility Guidelines

10   ("ADAAG")] . . . ." (*Id.* at ¶ 12.)

11          On August 30, 2019, plaintiff commenced this action, asserting claims under the ADA,

12   the Unruh Act, and the California Disabled Persons Act ("DPA") as well as a negligence claim

13   against defendant.  (*Id.* at 3–7.)  On October 9, 2019, pursuant to Federal Rules of Civil

14   Procedure 12(b)(1) and (6), defendant moved to dismiss the complaint, arguing that: (1) plaintiff

15   lacks standing to assert his ADA, Unruh Act, and DPA claims; and (2) the ADA and negligence

16   claims fail to state cognizable claims.  On October 18, 2019, plaintiff filed his opposition to the

17   pending motion, and on November 12, 2019, defendant filed its reply thereto.  (Doc. Nos. 10, 15.)

18                                              **LEGAL STANDARD**

19          "Rule 12(b)(1) permits a defendant to seek dismissal of a complaint for lack of subject-

20   matter jurisdiction," and "[a] defendant may bring a Rule 12(b)(1) motion to dismiss based on a

21   lack of standing." *Borden v. Horwitz*, No. 2:10-cv-00141-JHN-PLAx, 2010 WL 11459325, at *2

22   (C.D. Cal. May 18, 2010) (citing *Young v. Crofts*, 64 F. App'x 24, 25 (9th Cir. 2003)); *see also*

23   *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain

24   to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a

25   motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6).").

26          "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the

27   challenger asserts that the allegations contained in a complaint are insufficient on their face to

28   invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 383 F.3d 1035, 1039 (9th Cir. 2004)

1   (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "The district court resolves a facial

2   attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations

3   as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether

4   the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane*

5   *Co.*, 797 F.3d 1117, 1121 (9th Cir. 2014). As in a Rule 12(b)(6) motion, the court need not

6   assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox*

7   *Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "By contrast, in a factual attack,

8   the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

9   federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. Notably, extrinsic evidence is

10  heard on factual attacks and the court may review "*any* evidence, such as affidavits and

11  testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v.*

12  *United States*, 850 F.2d 558, 560 (9th Cir. 1988) (emphasis added) (citing *Land v. Dollar*, 330

13  U.S. 731 (1947)).[1]

14  **ANALYSIS**

15          Here, defendant asserts a facial challenge to jurisdiction because it contends that the

16  complaint's allegations, when accepted as true and all reasonable inferences are drawn in

17  plaintiff's favor, fail to (1) adequately allege an injury-in-fact as required to confer plaintiff

18  standing under Article III; and (2) adequately allege standing to seek injunctive relief, which is

19  the only remedy available to plaintiff under Title III of the ADA. (Doc. No. 8-1 at 9–19.) The

20  court addresses each of these arguments below.

21  A.   **Plaintiff Has Failed to Allege an "Injury-in-Fact" and He Does Not Have Standing to**

22       **Seek Injunctive Relief under the ADA.**

23          "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

24  threshold requirement imposed by Article III of the Constitution by alleging an actual case or

25  controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy the case or

26  _____

27  [1] As discussed in this order, the court finds that it lacks subject matter jurisdiction over plaintiff's
    sole federal claim, and the court will not exercise supplemental jurisdiction over plaintiff's

28  remaining state law claims. Accordingly, the court need not address plaintiff's 12(b)(6) motion
    for dismissal and will therefore not state the relevant standards for such a motion.

1   controversy requirement, a plaintiff must show that he has suffered an injury-in-fact that is

2   concrete and particularized; that the injury is traceable to the challenged action of the defendant;

3   and that the injury is likely to be redressed by a favorable decision. *See Lujan v. Defenders of*

4   *Wildlife*, 504 U.S. 555, 560–61 (1992); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081

5   (9th Cir. 2004). "In addition, to establish standing to pursue injunctive relief, which is the only

6   relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a 'real and

7   immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631

8   F.3d 939, 946 (9th Cir. 2011) (footnote and citation omitted). "[A]n ADA plaintiff can establish

9   standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating

10   injury-in-fact coupled with an intent to return to a noncompliant facility." *Id.* at 944.

11         Defendant first argues that plaintiff has not alleged an injury-in-fact in his complaint.

12   (Doc. No. 8-1 at 9–13.) Specifically, defendant contends that plaintiff has not identified any

13   alleged barriers to accessibility at the subject Hotel that relate to plaintiff's disability and "it is not

14   even clear what that disability is." (*Id.* at 10–11.) In this regard, plaintiff alleges in his complaint

15   the following facts with respect to his alleged disability or disabilities and how that disability or

16   disabilities relate to the alleged barriers to accessibility he encountered at the Hotel:  (1) plaintiff

17   is "legally disabled by virtue of a severe right-sided neural foraminal stenosis with symptoms of

18   femoral neuropathy, prostate cancer and renal cancer, [and a] degenerative right knee"; (2) he

19   "walks with difficulty and pain and requires compliant mobility accessible features at places of

20   public accommodation"; (3) "Plaintiff's impairment is constant"; (4) "Plaintiff requires an ADA

21   compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair

22   assisted"; (5) "Plaintiff encountered barriers to accessibility [at the Hotel] documented in

23   Addendum A" and those barriers "related to Plaintiff's disability and interfere with Plaintiff's full

24   and complete enjoyment of the Hotel"; and (6) "The ADAAG and Unruh violations in this

25   Complaint relate to barriers to Plaintiffs [sic] mobility." (Doc. No. 10 at 5–6; Compl. at ¶¶ 3, 4,

26   10, 11, 14, 16, 17.) The court finds that these allegations are insufficient to support a claim that

27   plaintiff suffered an injury-in-fact.

28   /////

4

1    First, although the complaint alleges that plaintiff is physically disabled, the extent of his

2    disability is not clear from his allegations.  For example, plaintiff alleges that he "requires . . .

3    both ambulatory and wheelchair assist[ance]" (Compl. at ¶ 14), but does not allege how often he

4    requires ambulatory assistance versus wheelchair assistance, nor does he allege that he required

5    ambulatory or wheelchair assistance when he visited the subject Hotel.  This deficiency clouds

6    whether plaintiff has suffered an injury-in-fact.  *See, e.g., Rutherford v. Cesar's Mexican Rest.,*

7    *LLC*, No. 19-cv-1416-LAB (JLB), 2019 WL 4193392, at *1 (S.D. Cal. Sept. 3, 2019) (finding

8    that a plaintiff failed to establish Article III standing where he did not allege if he used a

9    wheelchair at the defendant's facility despite pointing out barriers to accessibility that related to

10    wheelchair users).

11    Second, plaintiff does not allege what barriers to accessibility he encountered at the Hotel.

12    Plaintiff merely directs the court's attention to Addendum A to his complaint which contains, as

13    in other cases filed by plaintiff, "a series of [fifteen] grainy, murky photographs titled 'Personal

14    Barrier Encounters,' with brief captions" of barriers he purportedly encountered at the Hotel, but

15    "does not identify any barriers that would affect Strojnik, deny him equal access, or deter him

16    from staying at the hotel." *Strojnik v. 1315 Orange LLC*, No. 19-cv-1991-LAB (JLB), 2019 WL

17    5535766, at *2 (S.D. Cal. Oct. 25, 2019).  Indeed, the captions under each of the fifteen

18    photographs—such as "Security latch too high," "Not everyone is welcome," "Grab bar –

19    plumbing interference," "flush control on the wrong side of tank," etc. (Compl. at 8–11)—are

20    bare legal conclusions cast in the form of factual allegations, with no specification as to how any

21    alleged barrier violates any aspect of the ADA or any related accessibility guidelines.  Although

22    plaintiff references the ADAAG in his complaint, he does not allege what provision of the

23    ADAAG any of the alleged barriers depicted in the photographs attached to the complaint

24    purportedly violated.  It is therefore altogether unclear from the allegations of the complaint

25    before the court whether what plaintiff alleges are in fact ADA violations at all.

26    Third, even if the court were to find that the complaint plausibly alleges barriers to

27    accessibility at the subject Hotel, the complaint still fails to allege an injury-in-fact because it

28    does not allege how any of those alleged barriers relate to plaintiff's specific disability or

1   disabilities.  The Ninth Circuit has held that a plaintiff "does not have standing to challenge those

2   barriers that would burden or restrict access for a person" with a disability different than the

3   plaintiff's disability.  *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 n.7 (9th Cir. 2008)

4   (holding that plaintiff, a wheelchair user, "cannot challenge *all* of the ADA violations in the 7-

5   Eleven store. . . . Doran may challenge only those barriers that might reasonably affect a

6   wheelchair user's full enjoyment of the store.").  Thus, "a 'barrier' will only amount to []

7   interference if it affects *the plaintiff's* full and equal enjoyment of the facility on account of his

8   particular disability."  *Chapman*, 631 F.3d at 947 (emphasis added).  Here, plaintiff's complaint

9   alleges, in conclusory fashion, that "Plaintiff encountered barriers to accessibility" and that these

10  barriers "relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment

11  of the Hotel."  However, "Article III standing requires a concrete injury even in the context of a

12  statutory violation," and plaintiff "c[an] not . . . allege a bare procedural violation, divorced from

13  any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Spokeo, Inc. v.*

14  *Robins*, ___ U.S. ___, ___, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016); *see also*

15  *Strojnik v. Orangewood LLC*, 8:19-cv-00946-DFS-GJS, (Doc. No. 18 at 7) (C.D. Cal. Aug. 8,

16  2019) ("Plaintiff does not identify what features or information Plaintiff requires for his

17  accessibility needs.  Plaintiff must do more than merely identify barriers that he encountered—he

18  must plead how each barrier affected him because of his disability.").  From the complaint's

19  conclusory allegations, the court is unable to conclude that any of the purported violations

20  depicted in Addendum A to the complaint "relate to" plaintiff's disability or disabilities by

21  burdening or restricting his access to the subject Hotel.

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1     Because plaintiff has failed to allege facts supporting an ADA violation that relates to his

2   disability, the court concludes that plaintiff has failed to adequately allege an injury-in-fact.[2]

3   However, even if the court were to find that the complaint plausibly alleged that plaintiff

4   encountered an ADA violation at the Hotel that relates to his disability, his complaint still fails to

5   allege that plaintiff has standing to seek injunctive relief under the ADA.  As discussed, "to

6   establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs

7   under the ADA, [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in

8   the future," which he can accomplish "either by demonstrating deterrence, or by demonstrating

9   injury-in-fact coupled with an intent to return to a noncompliant facility."  *Chapman*, 631 F.3d at

10  946, 844 (footnote and citation omitted).  Defendant contends that plaintiff has not properly

11  alleged an intent to return to the subject Hotel, nor has he alleged facts sufficient to demonstrate

12  that he is being deterred from returning to the Hotel.  (Doc. No. 8-1 at 13–18.)  Plaintiff counters,

13  arguing that the allegations in his complaint—that he "intends to visit Defendant's Hotel at a

14  specific time when the Defendant's noncompliant hotel becomes fully compliant with ADAAG"

15

16  [2]  Relying upon the Ninth Circuit's decision in *Civil Rights Education and Enforcement Center v.*
    *Hospitality Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("*CREE*"), plaintiff argues that

17  he has alleged an injury-in-fact because his complaint states he intends to visit the Hotel and has
    been deterred from returning by defendant's noncompliance with the ADA.  He argues that,

18  because a district court must accept his factual allegations as true in a facial attack to jurisdiction,
    he has sufficiently alleged an injury-in-fact.  In so arguing, plaintiff conflates the injury-in-fact

19  requirement for standing with the requirement that an ADA plaintiff allege standing to seek

20  injunctive relief.  Moreover, a court need only "accept[] the plaintiff's allegations as true and
    draw all reasonable inferences in the plaintiff's favor . . . [to] determine[] whether the allegations

21  are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite*, 797 F.3d at 1121.  Here,
    the court accepts plaintiff's allegation that he is a disabled individual, but, as discussed above, his

22  complaint fails to allege that he encountered any barriers to accessibility at the Hotel, or how
    those purported barriers relate to his disability.  Accordingly, plaintiff's allegations—even when

23  accepted as true and viewed in the light most favorable to him—fail to invoke the court's

24  jurisdiction.  The Ninth Circuit's ruling in *CREE* supports the court's conclusion in this regard.
    There, three physically disabled plaintiffs who used wheelchairs called the defendant's hotels and

25  learned that they did not provide shuttle service for mobility-impaired individuals but provided
    such a service for those who were not so impaired.  *CREE*, 867 F.3d at 1097.  The court found

26  that these allegations sufficiently alleged an injury-in-fact because the plaintiffs became aware of
    a discriminatory condition that affected them and were thereafter deterred from patronizing the

27  hotels.  *Id.* at 1101.  Unlike the plaintiffs in *CREE*, here, plaintiff does not sufficiently allege that

28  he encountered or has become aware of barriers to his accessibility at the Hotel.

1   and that he "is deterred from visiting the Hotel based on his knowledge that the Hotel is not ADA

2   and Unruh compliant" (Compl. at ¶¶ 11, 12)—are sufficient to establish his standing to pursue

3   injunctive relief under the ADA. (Doc. No. 10 at 6–8.) Plaintiff is incorrect.

4       With respect to a plaintiff's intent to return to the Hotel, "courts have examined factors

5   such as (1) the proximity of the place of public accommodation to plaintiff's residence, (2)

6   plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to

7   return, and (4) the plaintiff's frequency of travel near defendant." *Harris v. Del Taco, Inc.*, 396 F.

8   Supp. 2d 1107, 1113 (C.D. Cal. 2005) (internal quotation marks and citation omitted). A

9   plaintiff's generalized intent to return to a noncompliant facility is "simply not enough" to confer

10  standing to seek injunctive relief because "such 'some day' intentions—without any description

11  of concrete plans, or indeed even any specification of when the some day will be—do not support

12  a finding of the 'actual or imminent' injury that [Supreme Court] cases require." *Lujan*, 504 U.S.

13  at 564; *see also Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1167 (C.D. Cal. 2005)

14  ("Generalized plans to return are insufficient to confer standing in an action for injunctive

15  relief.").

16      Plaintiff contends that the factors outlined above need not be alleged in his complaint

17  because they are only to be considered by a court addressing a factual attack to jurisdiction and

18  not, as here, a facial attack. (Doc. No. 10 at 6–7.) Citing to the Ninth Circuit's decision in

19  *Wilson v. Kayo Oil Company*, 563 F.3d 979 (9th Cir. 2009), plaintiff contends that minimal

20  allegations of intent to return are sufficient to survive a motion to dismiss for lack of subject

21  matter jurisdiction. (Doc. No. 10 at 6–7.) The court is not persuaded by plaintiff's argument.

22  First, the court in *Kayo* did not hold that these noted factors may not be applied in the context of a

23  facial challenge to jurisdiction; it only held that, because the plaintiff-appellant there presented

24  "minimal allegations" that he was deterred from visiting a public accommodation on account of

25  accessibility barriers, he had "survive[d] [the] facial attack on standing." 563 F.3d at 980. In

26  other words, the holding in *Kayo* has no effect on whether the factors outlined in *Harris* may be

27  considered in assessing a facial attack to jurisdiction, especially because the court in *Kayo* was

28  not even analyzing the "intent to return" method of establishing a real and immediate threat of

8

1    repeated injury.  Second, other district courts have applied these factors to address facial

2    challenges to jurisdiction in assessing complaints alleging violations of the ADA that plaintiff

3    Strojnik has filed in his other cases.  *See, e.g.*, *Strojnik v. Pasadena Robles Acquisition, LLC*,

4    2:19-cv-02067-AB-PJW, (Doc. No. 23 at 4) (C.D. Cal. Aug. 14, 2019) (applying the factors

5    outlined in *Harris* to the defendant's facial challenge to jurisdiction); *Strojnik v. Orangewood*

6    *LLC*, 8:19-cv-00946-DFS-GJS, (Doc. No. 18 at 5) (C.D. Cal. Aug. 8, 2019) (same).

7           Having addressed plaintiff's arguments to the contrary, the court will now apply the

8    *Harris* factors to determine whether his complaint in this case plausibly alleges that he intends to

9    return to the subject Hotel.  Although the complaint alleges that plaintiff intends to visit the Hotel

10    once it is ADA-complaint, this, as discussed, is "simply not enough."  *Lujan*, 504 U.S. at 564.

11    Defendant points out that consideration of the *Harris* factors compels the conclusion that the

12    complaint does not show a genuine intent on plaintiff's part to return to the Hotel.  Namely,

13    defendant notes that Plaintiff—who resides in Maricopa County, Arizona (Compl. at 1)—is

14    located approximately 565 miles away from the Hotel; he has not alleged that he previously

15    visited the Hotel; he has not alleged a definite intent to return; and he has not alleged that he

16    frequently travels near the Hotel.  (Doc. No. 8-1 at 13–16).  Based on consideration of these

17    factors, the court concludes that the complaint does not plausibly allege that plaintiff intends to

18    return to the Hotel.

19           Similarly, the court finds that plaintiff's complaint does not plausibly allege that he is

20    deterred from returning to the Hotel.  "[A]n ADA plaintiff can show a likelihood of future

21    injury . . . when discriminatory architectural barriers deter him from returning to a noncompliant

22    accommodation."  *Chapman*, 631 F.3d at 950.  However, "deterrence cannot merely be

23    conjectural or hypothetical."  *Vogel v. Salazar*, No. SACV 14-00853-CJC, 2014 WL 5427531, at

24    *2 (C.D. Cal. Oct. 24, 2014).  Here, plaintiff merely alleges that he "is deterred from visiting the

25    Hotel based on Plaintiff's knowledge that the Hotel is not ADA and Unruh compliant . . . ."

26    (Compl. at ¶ 11.)  As discussed above, however, plaintiff has failed to allege that any feature at

27    the Hotel is in fact non–compliant with the ADA.  Moreover, plaintiff's conclusory allegations

28    with respect to deterrence "are insufficient to establish standing. . . .  Plaintiff does not allege or

1    provide any facts that he actually would return to the [Hotel] if it were ADA compliant." *Vogel*,

2    2014 WL 5427531, at *2.  For example, plaintiff has not alleged that he visits Visalia often or that

3    he will be in Visalia again anytime soon.  "Plaintiff's conclusory statements that he is deterred

4    from visiting [the Hotel] are insufficient to demonstrate that he would [stay at the Hotel] if it were

5    accessible.  As a result, he lacks standing to pursue his claims." *Feezor v. Sears, Roebuck & Co.*,

6    608 F. App'x 476, 477 (9th Cir. 2015).[3]

7        Because the complaint fails to allege an injury-in-fact and fails to adequately allege that

8    plaintiff has standing to seek injunctive relief under the ADA, the court concludes that it does not

9    have subject matter jurisdiction over plaintiff's sole federal claim.  Accordingly, the court will

10    dismiss plaintiff's first cause of action for lack of subject matter jurisdiction.

11    **B.    The Court Will Not Exercise Supplemental Jurisdiction Over Plaintiff's Remaining**

12    **State Law Claims.**

13        Once all federal claims have been dismissed from a case, whether to retain jurisdiction

14    over any remaining state law claims is left to the discretion of the district court.  *See* 28 U.S.C.

15    § 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997); *Moore v. Kayport*

16    *Package Exp., Inc.*, 885 F.2d 531, 537 (9th Cir. 1989).  Generally, if federal claims are dismissed

17    prior to trial, state law claims should be remanded to state court "both as a matter of comity and

18    to promote justice between the parties, by procuring for them a surer-footed reading of applicable

19    law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ.*

20    *v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are

21    eliminated before trial, the balance of factors to be considered . . . will point toward declining to

22    exercise jurisdiction over the remaining state-law claims."); *Acri*, 114 F.3d at 1000.  Accordingly,

23    the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims

24    and will instead dismiss them without prejudice to their re-filing in state court.

25    /////

26    /////

27    _____

28    [3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

10

1    **C.      Defendant's 12(b)(6) Motion to Dismiss and Plaintiff's Motions to Strike Have Been**

2    **Rendered Moot.**

3    As noted at the outset, defendant's motion to dismiss asserts two grounds for dismissal:

4    lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and failure to state a claim pursuant

5    to Rule 12(b)(6).  However, having concluded that the court lacks subject matter jurisdiction over

6    plaintiff's ADA claim, and having declined to exercise supplemental jurisdiction over plaintiff's

7    remaining state law claims, defendant's motion to dismiss brought pursuant to Rule 12(b)(6)  has

8    been rendered moot and the court will not address the arguments made with respect to that aspect

9    of the motion substantively.  Similarly, plaintiff's motions to strike "5 irrelevant exhibits" that

10   defense counsel attached to the pending motion (Doc. Nos. 11, 12) have also been rendered moot

11   by the fact that the court has concluded it lacks subject matter jurisdiction over this action.

12   Accordingly, plaintiff's motions to strike will be denied.

13   **D.      Leave to Amend Will be Granted.**

14   The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to

15   amend pleadings] when justice so requires."  Fed. R. Civ. P. 15(a).  However, leave to amend

16   need not be granted when the amendment:  (1) prejudices the opposing party; (2) is sought in bad

17   faith; (3) produces an undue delay in litigation; or (4) is futile.  *See AmerisourceBergen Corp. v.*

18   *Dialysist W. Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757

19   (9th Cir. 1999)).  Here, the court will grant plaintiff leave to amend because, at the November 19,

20   2019 hearing on the pending motions, he indicated to the court that he could allege additional

21   facts that could possibly cure the deficiencies outlined above.

22   The court notes, however, that while plaintiff is appearing in this action *pro se*, he is a

23   lawyer and a frequent ADA litigator.  Several district courts have dismissed complaints similar to

24   the one before this court filed by plaintiff after finding that he did not properly allege standing to

25   invoke the court's jurisdiction in those cases.  Plaintiff is therefore well aware of the applicable

26   Ninth Circuit law governing standing to assert an ADA claim and, in any event, has been made

27   well aware of those standards in this order.  The court therefore warns plaintiff that, as required

28   by Federal Rule of Civil Procedure 11, any claims presented in any second amended complaint

1    that he may elect to file in this action must be warranted by existing law or by a nonfrivolous

2    argument for extending or modifying that law and that any factual allegations must be made in a

3    good faith belief as to evidentiary support therefor. "If . . . the court determines that Rule 11(b)

4    has been violated, the court may impose an appropriate sanction on [plaintiff] . . . ." Fed. R. Civ.

5    P. 11(c)(1); *see also Baker v. Cottrell, Inc.*, No. 1:16-cv-00840-DAD-SAB, 2017 WL 4574186, at

6    *5 (E.D. Cal. Oct. 13, 2017) ("Federal Rule of Civil Procedure 11 sanctions are justified if a party

7    or their attorney submits a pleading to the court which is submitted for an improper purpose, is

8    frivolous, has no evidentiary support or is not warranted by the evidence.").

9                                                      **CONCLUSION**

10            For the reasons set forth above,

11            1.      Defendant's motion to dismiss (Doc. No. 8) is granted with leave to amend;

12            2.      Plaintiff's motions to strike (Doc. Nos. 11, 12) are denied as having been rendered

13                    moot; and

14            3.      Any second amended complaint that plaintiff elects to file in this action shall be

15                    filed within fourteen (14) days after the issuance of this order.

16    IT IS SO ORDERED.

17    Dated:   **November 20, 2019**

18                                                           UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 45

1

2

3

4

5

6

7

**O**
**JS-6**

8

9

# United States District Court
# Central District of California

10

11  PETER STROJNIK, SR.,

12            Plaintiff,

13     v.

14  FOUR SISTERS INNS, INC., d/b/a
    CHANNEL ROAD INN,
15

16            Defendant.

17

Case № 2:19-CV-02991-ODW (JEMx)

**ORDER GRANTING
MOTION TO DISMISS [6]**

18                    **I.        INTRODUCTION**

19        This matter comes before the Court on Defendant Four Sisters Inns, Inc., d/b/a

20  Channel Road Inn ("Defendant') Motion to Dismiss ("Motion").   (Mot. to Dismiss

21  ("Mot."), ECF No. 6.)  Plaintiff opposes the Motion.  (Opp'n to Mot. ("Opp'n"), ECF

22  No. 9.)  For the reasons that follow, the Court **GRANTS** Defendant's Motion.[1]

23                 **II.        FACTUAL BACKGROUND**

24        Peter Strojnik ("Plaintiff") is legally disabled due to a "right-sided neural

25  foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal

26  cancer, and a degenerative right knee."  (Compl. ¶ 3, ECF No. 1.)   Due to his

27

28  ─────────────
    [1] Having considered the papers filed in connection with the Motion, the Court deemed the matter
    appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1   disability, "Plaintiff requires an [American with Disabilities Act ('ADA')] compliant
2   lodging facility particularly applicable to his mobility, both ambulatory and
3   wheelchair assisted." (Compl. ¶ 14.)

4       Defendant owns or leases a hotel located at 95065 219 West Channell Road
5   Santa Monica, California 90402 ("Hotel"). (Compl. ¶ 5.) Plaintiff alleges he intended
6   to visit the Santa Monica area on an unspecified date, and reviewed third-party hotel
7   booking websites and Defendant's first-party website to find lodging. (Compl. ¶¶ 15,
8   19.) Plaintiff alleges that the websites "failed to identify and describe mobility related
9   accessibility features and guest rooms offered through its reservations service in
10  enough detail to reasonably permit Plaintiff to assess independently whether
11  Defendant's Hotel meets his accessibility needs." (Compl. ¶¶ 17,19.) Plaintiff also
12  alleges that the websites "failed to make reservations for accessible guest rooms
13  available in the same manner as individuals who do not need accessible rooms."
14  (Compl. ¶¶ 18, 20.)

15      Plaintiff submits an Addendum that includes photographs from the websites,
16  which Plaintiff alleges discloses architectural barriers at the Hotel.  (Compl. ¶ 22
17  (citing Addendum A).)  For each of the alleged barriers, Plaintiff states:

18      **The manner in which the barriers denied Plaintiff full and equal use
19      of access, and which deter Plaintiff from visiting the hotel:** Barrier
20      denied Plaintiff full and equal access by failing to identify and
        describe accessible features in the hotel and guest rooms in enough detail to
21      reasonably permit Plaintiff to assess independently whether the hotel or
22      guest room meet his accessibility needs.

23  (Compl., Addendum A at 11–33) (emphasis in original).  Plaintiff alleges that "the
24  ADA violations described in Addendum A relate to Plaintiff's disability and interfere
25  with Plaintiff's full and complete enjoyment of the Hotel."  (Compl. ¶ 24.)  As a
26  result, Plaintiff did not book a room at Defendant's hotel and booked a room
27  elsewhere.  (Compl. ¶ 25.)  Plaintiff alleges he is deterred from visiting the Hotel
28  because the Hotel is not ADA or State Law compliant, but intends to visit the Hotel at

1    a "specific time" after Defendant cures the alleged ADA violations.  (Compl. ¶¶ 11,

2    12.)

3        Plaintiff brings this action against Defendant asserting claims for violation of

4    the ADA, the Unruh Civil Rights Act, the California Disabled Persons Act, and for

5    negligence.  (*See* Compl. ¶ 1.)  Defendant moves to dismiss for lack of standing and

6    failure to state a claim.  (Mot. 1–2.)

## III.    LEGAL STANDARD

8        Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a defendant to seek

9    dismissal of a complaint for lack of subject matter jurisdiction.  A defendant may

10   bring a Rule 12(b)(1) motion to dismiss based on a lack of standing.  *See White v. Lee*,

11   227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing . . . pertain[s] to a federal

12   court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion

13   to dismiss under [Rule] 12(b)(1), not Rule 12(b)(6).").  "A Rule 12(b)(1) jurisdictional

14   attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

15   (9th Cir. 2004) (citing *White*, 227 F.3d at 1242).  A facial attack is based on the

16   challenger's assertion that allegations in the complaint are "insufficient on their face

17   to invoke federal jurisdiction."  *Id.*  A factual attack disputes the validity of allegations

18   that, if true, would invoke federal jurisdiction.  *Id.*

19       Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on

20   which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a

21   judge must accept as true all of the factual allegations contained in the complaint."

22   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  However, a court is "not

23   bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft*

24   *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

25   555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

26   'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in

27   original).  A complaint must "state a claim to relief that is plausible on its face."

28   *Twombly*, 550 U.S. at 570.  This means that the complaint must plead "factual content

1    that allows the court to draw the reasonable inference that the defendant is liable for

2    the misconduct alleged." *Iqbal*, 556 U.S. at 678.   There must be "sufficient

3    allegations of underlying facts to give fair notice and to enable the opposing party to

4    defend itself effectively . . . [and] factual allegations that are taken as true must

5    plausibly suggest an entitlement to relief, such that it is not unfair to require the

6    opposing party to be subjected to the expense of discovery and continued litigation."

7    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

8        The determination of whether a complaint satisfies the plausibility standard is a

9    "context-specific task that requires the reviewing court to draw on its judicial

10   experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded

11   facts do not permit the court to infer more than the mere possibility of misconduct, the

12   complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

13   relief.'" *Id.* (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

14                          **IV.     DISCUSSION**

15       Defendant moves to dismiss Plaintiff's complaint for lack of standing and

16   failure to state a claim. (Mot. 1–2.) "[T]o satisfy Article III's standing requirements,

17   a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and

18   particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

19   injury is fairly traceable to the challenged action of the defendant; and (3) it is likely,

20   as opposed to merely speculative, that the injury will be redressed by a favorable

21   decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

22   167, 180–81 (2000) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

23       To satisfy standing under the ADA, a plaintiff must demonstrate that he has

24   suffered an "injury-in-fact coupled with an intent to return," or alternatively is

25   deterred from returning to the premises. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631

26   F.3d 939, 944, 949–50 (9th Cir. 2011).

27

28

1  **A.    Injury-In-Fact**

2      An injury in fact must be concrete and particularized, and actual or imminent.

3  *Friends of the Earth*, 528 U.S. at 180.  A plaintiff "lacks standing . . . if the barriers he

4  seeks to enjoin do not pose a real and immediate threat to him due to his particular

5  disability."  *Chapman*, 631 F.3d at 953.  An injury is particularized when it affects the

6  plaintiff "in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

7      Here, Plaintiff alleges that, due to his disability, he "requires an ADA compliant

8  lodging facility particularly applicable to his mobility, both ambulatory and

9  wheelchair assisted." (Compl. ¶ 14.)  Despite alleging that the websites lack sufficient

10 detail to allow Plaintiff to "assess independently whether Defendant's Hotel meets his

11 accessibility needs" (Compl. ¶¶ 17, 19), Plaintiff concludes that the website

12 photographs show ADA-violations (*see* Compl. ¶¶ 22, 24, Addendum A).  Addendum

13 A contains (as in other cases filed by Plaintiff[2]) a series of dark, grainy photographs

14 with captions of purported barriers.   These captions include: "[a]pparently

15 inaccessible breakfast bar"; "[i]naccessible route with no apparent signage to

16 accessible route"; "[i]naccessible spa tub"; and "[i]naccessible bathroom."  (*See*

17 Compl., Addendum A at 17–33.)

18     Plaintiff alleges broadly that "[t]he ADA violations described in Addendum A

19 relate to Plaintiff's disability and interfere with Plaintiff's full and complete

20 enjoyment of the Hotel." (Compl. ¶ 24.)  However, Plaintiff does not state facts

21 showing how the purported violations affect him or interfere with his mobility needs,

22 and the captions in the Addendum are bare legal conclusions cast in the form of

23 factual allegations.  *See Pasadena Robles*, No. 2:19–cv–02067–AB–PJW, (Doc. No.

24 23 at 4 n.1) (finding photos captioned as ADA violations to be legal conclusions, not

25

26 [2] *See, e.g.*, *Strojnik v. Hotel Circle GL Holdings* ("*Hotel Circle*"), No. 1:19-cv-01194-DAD (EPGx),
   2019 WL 6212084, at *3 (E.D. Cal. Nov. 21, 2019); *Strojnik v. 1315 Orange LLC* ("*1315 Orange*"),
27 No. 19-CV-1991-LAB (JLB), 2019 WL 5535766, at *2 (S.D. Cal. Oct. 25, 2019); *Strojnik v.
   Pasadena Robles Acquisition, LLC* ("*Pasadena Robles*"), No. 2:19–cv–02067–AB–PJW, (Doc. No.
28 23 at 4 n.1) (C.D. Cal. Aug. 14, 2019).

1    factual allegations, and disregarding them accordingly). Thus, "the addendum does

2    not identify any barriers that would affect Strojnik, deny him equal access, or deter

3    him from staying at the hotel." *1315 Orange*, 2019 WL 5535766, at *2.

4        Plaintiff's legal conclusion that these alleged barriers "relate to [his] disability"

5    does not explain *how* the purported barriers violate the ADA, relate to his particular

6    disability, or interfere with his use or enjoyment of the Hotel. (*See* Compl. ¶ 24.)

7    This is insufficient to satisfy the injury-in-fact requirement. *See Spokeo, Inc. v.*

8    *Robins*, 136 S. Ct. 1540, 1549 (2016) (a plaintiff cannot "allege a bare procedural

9    violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement

10    of Article III"); *Chapman*, 631 F.3d at 953 ("An ADA plaintiff . . . lacks standing . . .

11    if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to

12    his particular disability."). Therefore, Plaintiff has failed to sufficiently allege an

13    injury that is concrete and particularized.[3]

14    **B.**     **Intent to Return**

15        A plaintiff establishes standing under the ADA by demonstrating an injury in

16    fact coupled with an intent to return. *Chapman*, 631 F.3d at 944. An intent to return

17    may satisfy the actual or imminent injury prong if the "plaintiff demonstrates an intent

18    to return to the geographic area where the accommodation is located and a desire to

19    visit the accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge &*

20    *Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) (citing *Pickern v. Holiday Quality Foods*

21    *Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)). A general intent to return to a public

22    accommodation is "insufficient to confer standing in an action for injunctive relief."

23    *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) (citing *Lujan*,

24    504 U.S. at 564). Accordingly, a plaintiff "lacks standing if he is indifferent to

25    returning . . . or if his alleged intent to return is not genuine." *Chapman*, 631 F.3d at

26    953.

27

28  

---

[3] As Plaintiff fails to sufficiently allege an injury that is concrete and particularized, the Court does not reach the question of whether that alleged injury is also actual or imminent.

1    Courts generally look to four factors to determine whether a plaintiff has
2    pleaded an intent to return: "(1) the proximity of the place of public accommodation to
3    plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the
4    definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel
5    near defendant." *Antonio v. Yi*, No. 2:14-CV-04323-SVW (ASx), 2015 WL 13603781,
6    at *2 (C.D. Cal. Mar. 4, 2015) (collecting cases).

7    Regarding the first factor, generally, if the plaintiff resides over one hundred
8    miles away from the place of public accommodation, "the distance subverts a
9    professed intent to return." *Id.* (citing *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F.
10   Supp. 2d 1208, 1217 (S.D. Cal. 2007)).   However, this factor is "less relevant when
11   applied to hotels, because it is generally the purpose of hotels to provide a place to
12   stay away from someone's residence."   *See Strojnik v. Orangewood LLC*
13   ("*Orangewood*"), 8:19-cv-00946-DFS-GJS, (Doc. No. 34 at 11) (C.D. Cal. Aug. 8,
14   2019). Accordingly, this factor is less relevant because the place of accommodation at
15   issue is a hotel.

16   Plaintiff does not allege that he previously visited the Hotel, so the second
17   factor does not support an intent to return. *See Antonio*, 2015 WL 13603781, at *2
18   ("There is no evidence that Plaintiff ever visited [the defendant's business], which
19   suggests Plaintiff lacked the requisite intent to return.").   As for the third factor,
20   Plaintiff alleges he "intends to visit Defendant's Hotel at a specific time when the
21   Defendant's noncompliant Hotel becomes fully compliant with ADAAG." (Compl.
22   ¶ 12.) Plaintiff does not indicate when he planned to visit the Hotel for the trip at
23   issue, let alone when he might plan to return, other than some "specific time" in the
24   future. "Such 'some day' intentions—without any description of concrete plans, or
25   indeed even any specification of when the some day will be—do not support a
26   finding" of an intent to return. *Lujan*, 504 U.S. at 564 (discussing when an intent to
27   return can demonstrate actual or imminent injury sufficient for standing).

28

1       Finally, Plaintiff alleges that "he intended to visit the Santa Monica area" and
2  "spend the night there." (Compl. ¶¶ 15, 29.) He argues that, although he resides in
3  Arizona, he "often and regularly" visits California. (Opp'n 3.) Yet he does not
4  contend that any of his "regular" visits to California are to the Santa Monica area.
5  Therefore, this factor does not support an intent to return to Defendant's Hotel.

6       Considering the factors above, Plaintiff has not alleged an intent to return and
7  thus has not established standing.

8  **C.**    **Deterrence**

9       A plaintiff may alternatively establish an "injury-in-fact" by demonstrating
10  deterrence from returning to the premises due to a defendant's failure to comply with
11  the ADA. *Chapman*, 631 F.3d at 944; *Pickern*, 293 F.3d at 1138. To demonstrate
12  deterrence, a plaintiff must allege "actual knowledge of illegal barriers at a public
13  accommodation to which he or she desires access." *Pickern*, 293 F.3d at 1135.
14  "[O]nce a plaintiff has actually become aware of discriminatory conditions existing at
15  a public accommodation, and is thereby deterred from visiting or patronizing that
16  accommodation, the plaintiff has suffered an injury." *Id.* at 1136–37. "But a
17  plaintiff's claimed deterrence cannot be merely 'conjectural or hypothetical.'"
18  *Pasadena Robles*, 2:19-cv-02067-AB (PJWx), (Doc. No. 23 at 7) (quoting *Vogel v.*
19  *Salazar*, SACV 14-00853-CJC, 2014 WL 5427531, at *2 (C.D. Cal. Oct. 24, 2014)).
20  "A plaintiff must allege facts to show that he would return if the establishment were
21  ADA-compliant." *Id.*

22       Here, Plaintiff alleges that, based on his review of the websites, he could not
23  assess independently whether Defendant's Hotel met his accessibility needs. (Compl.
24  ¶¶ 17,19.) Plaintiff alleges that he was consequently deterred from visiting the Hotel
25  based on his "knowledge that the Hotel is not ADA or State Law compliant as such
26  compliance relates to Plaintiff's disability." (Compl. ¶ 11.) Plaintiff's independent
27  conclusion that the Hotel is not ADA-compliant, based solely on his own review of
28  website photographs, is merely conjectural and does not demonstrate *actual*

1  *knowledge* of illegal barriers.  *See Vogel*, 2014 WL 5427531, at *2.  Further, as
2  discussed above, Plaintiff does not allege how any feature at the Hotel is non-
3  compliant with the ADA or how it relates to his disability so as to deter him from
4  staying at the Hotel.  *See Chapman*, 631 F.3d at 955 (discussing that a plaintiff must
5  identify how each of the alleged barriers "deter him from visiting . . . the [place of
6  accommodation] due to his disability").

7      Further, Plaintiff's conclusory allegation that he "intends to visit Defendant's
8  Hotel at a specific time when Defendant's noncompliant Hotel becomes fully
9  compliant" is insufficient to establish standing.  (Compl. ¶ 12.)  "Plaintiff does not
10  allege or provide any facts that he actually would return to the [Hotel] if it were ADA
11  compliant."  *Hotel Circle*, 2019 WL 6212084, at *5 (quoting *Vogel*, 2014 WL
12  5427531, at *2).  Plaintiff has not alleged that he visits the Santa Monica area often or
13  will go to the Santa Monica area again.  "Plaintiff's conclusory statements that he is
14  deterred from visiting [the Hotel] are insufficient to demonstrate that he would [stay at
15  the Hotel] if it were accessible.  As a result, he lacks standing to pursue his claims."
16  *Id.* (quoting *Feezor v. Sears, Roebuck & Co.*, 608 F. App'x 476, 477 (9th Cir. 2015)).
17  Thus, any alleged deterrence is unsupported.

18      As the complaint fails to allege standing under the ADA, the Court finds that it
19  lacks subject matter jurisdiction over Plaintiff's federal claim.  Accordingly, the Court
20  **DISMISSES** Plaintiff's first cause of action for lack of subject matter jurisdiction.
21  **D.    Supplemental Jurisdiction**
22      A district court "'may decline to exercise supplemental jurisdiction' if it 'has
23  dismissed all claims over which it has original jurisdiction.'"  *Sanford v.*
24  *MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C.
25  § 1367(c)(3)).  As the Court has dismissed Plaintiff's sole federal claim, the Court
26  declines to exercise supplemental jurisdiction over Plaintiff's state law claims and
27  they are **DISMISSED**.
28

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's complaint.   (ECF No. 6).   At the conclusion of Plaintiff's Opposition, Plaintiff requests leave to amend "to the extent that the allegations in the complaint inadvertently omit sufficient jurisdictional allegations."   (Opp'n 10.) However, Plaintiff argues that the complaint already includes facts sufficient to establish subject matter jurisdiction, which the Court finds insufficient, and Plaintiff fails to suggest what more he would add in amendment. (*See* Opp'n 3, 8–9.) As such, the Court finds amendment would be futile, and the case is **DISMISSED** without leave to amend.

**IT IS SO ORDERED.**

December 9, 2019

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

EXHIBIT 46

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK, SR.,<br>Plaintiff,<br><br>v.<br><br>ORANGEWOOD LLC d/b/a<br>DOUBLETREE SUITES BY<br>HILTON ANAHEIM RESORT<br>CONVENTION CENTER,<br>Defendant. | CV 19-00946-DSF-(JCx)<br><br>Order GRANTING<br>Defendant's Motion to Dismiss<br>(Dkt. 27) |

Defendant Orangewood LLC, d/b/a DoubleTree Suites by Hilton Anaheim Resort Convention Center, moves to dismiss Plaintiff Peter Strojnik's Complaint in its entirety. Dkt. 27 (Mot.). Plaintiff opposes the Motion. Dkt. 28 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I.  Factual and Procedural Background

Plaintiff, appearing *pro se*, is a resident of Maricopa County, Arizona. Dkt. 19 (First Am. Compl. (FAC)) ¶ 3. Plaintiff alleges that he has severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer, and renal cancer, and a degenerative right knee. Id. Plaintiff's physical impairments substantially limit his major life activities. Id. ¶ 5. Plaintiff walks with difficulty and pain and requires mobility

accessible features.  <u>Id.</u>  At lodging facilities, Plaintiff requires ADA compliance "particularly applicable to his mobility, both ambulatory and wheelchair assisted." <u>Id.</u> ¶ 21.

Defendant owns, operates, or leases a lodging facility located at 2085 S. Harbor Blvd., Anaheim, California, 92802 (the DoubleTree Hotel). <u>Id.</u> ¶ 4. Plaintiff has visited the Disneyland area at least 20 times, and believes that he has stayed at the DoubleTree Hotel several times.  <u>Id.</u> ¶¶ 27-28.  Plaintiff alleges that he intended to visit the Disneyland area in mid-March and prefers to stay at Hilton properties because he and Mrs. Strojnik are members of their rewards program. <u>Id.</u> at ¶¶ 22-23.

Prior to his anticipated trip, Plaintiff visited third-party hotel booking websites (Third-Party Websites) and Defendant's website (DoubleTree Website).  <u>Id.</u> ¶¶ 31, 36.  Plaintiff alleges that the Third-Party Websites disclosed general availability and a description of the DoubleTree Hotel, but both the Third-Party Websites and the DoubleTree Website "failed to identify and describe mobility related accessibility features and guest rooms offered through its reservation service in enough detail to reasonably permit Plaintiff to assess independently whether [the DoubleTree Hotel] [met] his accessibility needs." <u>Id.</u> ¶¶ 32-33, 36. Plaintiff also alleges that the DoubleTree Hotel charges a premium for accessible rooms, and that both the DoubleTree Website and Third-Party Websites failed to make reservations for accessible guest rooms in the same manner as guest rooms without accessibility features.  <u>Id.</u> ¶¶ 34-35, 37.

Plaintiff visited the DoubleTree Hotel on or about March 14 or 15, 2019, and encountered architectural barriers to accessibility that were not noted online that interfered with his full and equal enjoyment of the facility on account of his disabilities, including no marked passenger drop off zone, accessible parking not closest to entry, inaccessible concierge counter, inaccessible lobby bar,

inaccessible gift shop counter and aisles, improperly configured check in counter, doors weighing more than five pounds to open, and doors taking less than five seconds to close. Id. ¶ 38 & Addendum A at 23-34.[1]  As a result of the above, Plaintiff declined to book a room at the DoubleTree Hotel, and stayed at a nearby Marriott.  Id. ¶ 42.  Plaintiff is deterred from patronizing the DoubleTree Hotel as a result of these barriers.  See id. ¶ 18. Plaintiff intends to visit the DoubleTree Hotel at a "specific time" when Defendant's alleged ADA violations are remedied.  Id. ¶ 19.

Plaintiff filed a complaint on May 28, 2019.  Dkt. 2 (Compl). On August 8, 2019, the Court dismissed Plaintiff's complaint with leave to amend.  Dkt. 18.  On August 28, 2019, Plaintiff filed the FAC.

## II.  Legal Standard

The plaintiff bears the burden of establishing subject matter jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.  A Rule 12(b)(1) jurisdictional challenge can be facial or factual.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial challenge, the moving party

---

[1] As Defendant points out, the original complaint alleges that the photos from Addendum A were available online, Compl. ¶¶ 22-23, while the FAC claims that Plaintiff personally visited the DoubleTree Hotel and the barriers depicted in Addendum A were "not noted online, but in person," FAC ¶ 38. However, in the Ninth Circuit, even if "two pleadings [a]re irreconcilably at odds with each other, this would not, by itself, establish that the later pleading is a sham." PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 858 (9th Cir. 2007).  The mechanism for challenging irreconcilable pleadings is Rule 11, not Rule 12.  Id. at 860.

asserts that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. Id. "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The court accepts the allegations in the complaint as true, and the plaintiff need not present evidence outside the pleadings. Id.

A factual jurisdictional challenge occurs when the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air, 373 F.3d at 1039. Where the moving party makes a factual challenge by presenting affidavits or other evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Wolfe, 392 F.3d at 362 (quoting Safe Air, 373 F.3d at 1039). In resolving the jurisdictional issue, the court does not accept the allegations in the complaint as true. Safe Air, 373 F.3d at 1039. "[The court] may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial," Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987), and it may resolve the merits of the jurisdictional issue even though material facts in the case are disputed, Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  Discussion

## A.  Americans with Disabilities Act (First Cause of Action)

Defendant moves to dismiss Plaintiff's First Cause of Action under the Americans with Disabilities Act (ADA) on the grounds that Plaintiff lacks Article III standing.

As the party invoking jurisdiction, Plaintiff bears the burden of pleading standing. Lujan v. Defenders of Wildlife, 504 U.S. 555,

561 (1992).  For Plaintiff to allege Article III standing, he must sufficiently plead an (i) injury-in-fact, (ii) that is causally connected to the Defendant, and (iii) likely to be redressed by a favorable decision.  Id. at 560-61.  An injury-in-fact must be: (a) actual or imminent, not conjectural or hypothetical, and (b) concrete and particularized.  Id. at 560.  Because injunctive relief is the only remedy to individuals under Title III of the ADA, Plaintiff must also show he faces a "real and immediate threat of repeated injury" to establish an injury-in-fact for purposes of standing.  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (quoting Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)).  The Ninth Circuit has held that there are two ways in which an ADA plaintiff may establish standing to sue for injunctive relief: the plaintiff can either demonstrate "deterrence" or "injury-in-fact coupled with an intent to return to a noncompliant facility."  Id. at 944.[2]

1. **Plaintiff's Injuries Are Not Concrete And Particularized**

   a. <u>Websites</u>[3]

First, Plaintiff alleges that neither the Third-Party Websites nor the DoubleTree Website described the accessible features in enough detail to allow Plaintiff to assess whether the DoubleTree

---

[2] As Ninth Circuit precedent makes clear, Plaintiff can pursue injunctive relief even if he did not actually visit the Doubletree Hotel and even if he is motivated by his desire to test ADA compliance.  See Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr., 867 F.3d 1093, 1099, 1102 (9th Cir. 2017) (CREEC).

[3] The Ninth Circuit has recently held that the ADA applies to websites that "impede[] access to the goods and services of . . . places of public accommodation."  Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905 (9th Cir. 2019), cert. denied, No. 18-1539, 2019 WL 4921438 (U.S. Oct. 7, 2019).

Hotel met his accessibility needs.  FAC ¶¶ 33, 36.[4]  In his
amended complaint, Plaintiff added allegations listing the
accessible features he allegedly needs to be available on a hotel
reservation website.  Id. ¶ 7.  However, there are still no
allegations containing "further factual enhancement" to support
these "naked assertions."  See Iqbal, 556 U.S. at 678 (quoting
Twombly, 550 U.S. at 557).  In other words, Plaintiff has not tied
the information he alleges he needs to his particular disabilities.
Plaintiff must plead how each barrier affected him because of his
disability.  Chapman, 631 F.3d at 954.  Plaintiff's allegations fail
to meet that standard.

Next, Plaintiff alleges that both the Third-Party Websites
and the DoubleTree Website failed to make available accessible
guest rooms in the same manner as non-accessible rooms, and
that the Third-Party Websites charge more for accessible rooms.
FAC ¶¶ 34-35, 37.[5]  However, Plaintiff does not allege facts
plausibly showing that he requires an accessible guest room,
beyond the conclusory statement that he needs one.  See FAC
¶ 8(j).  Nor does he allege in what way booking an accessible room
is different from booking a non-accessible room on the Third-Party

---

[4] 28 C.F.R. § 36.302(e)(1)(ii) require a hotel to:

> Identify and describe accessible features in the hotels and guest
> rooms offered through its reservations service in enough detail
> to reasonably permit individuals with disabilities to assess
> independently whether a given hotel or guest room meets his or
> her accessibility needs.

[5] 28 C.F.R. § 36.302(e)(1)(i) requires hotels to:

> Modify its policies, practices, or procedures to ensure that
> individuals with disabilities can make reservations for
> accessible guest rooms during the same hours and in the same
> manner as individuals who do not need accessible rooms.

Websites or the DoubleTree Hotel Website, or how any such difference relates to his disability.  To the extent Plaintiff bases this allegation on the purported "inadequate dispersion" of accessible rooms, FAC ¶¶ 9-10 & Addendum A at 17, or purported premium charge for accessible rooms, id. ¶ 35, Plaintiff does not plead how such barriers relate to his disability, or any facts to support an injury because of those barriers.  Listing procedural violations without connecting them to any particular harm is insufficient to plead standing.  Spokeo, Inc. v. Robbins, 136 S. Ct. 1540, 1550 (2016).

> b.   In-person visit

Plaintiff asserts that when he visited the DoubleTree Hotel he "personally encountered architectural barriers to accessibility which interfered with his full and equal enjoyment of the facility on account of his disabilities described above."  FAC ¶ 38. Addendum A purportedly documents the "personally encountered architectural barriers." Id.  Under each "personal barrier encounter[]," the FAC alleges that the barrier "denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meet his accessibility needs." Id., Addendum A at 21-34.  Given that Plaintiff alleged he was present at the hotel when he took these photos, this allegation makes no sense. The alleged barriers Plaintiff personally encountered either did or did not interfere with Plaintiff's full and equal enjoyment "on account of his particular disability."  See Chapman, 631 F.3d at 947 (Plaintiff cannot merely identify barriers not associated with his particular disability to satisfy Article III standing). Addendum A "simply identifies alleged ADA . . . violations without connecting the alleged violations to [Plaintiff's] disability, or indicating whether or not he encountered any one of them in such

a way as to impair his full and equal enjoyment of the [Hotel]."
See id. at 954.  Plaintiff has not alleged sufficient facts to support
standing.

### 2.    Plaintiff's Injuries Are Not Actual or Imminent

#### a.    Deterrence

To demonstrate deterrence, a plaintiff must allege "actual
knowledge of illegal barriers at a public accommodation to which
he or she desires access" and that "a defendant's failure to comply
with the ADA deters her from making use of the defendant's
facility."  CREEC, 867 F.3d at 1098.  Plaintiff alleges that he is
deterred from visiting the DoubleTree Hotel because the hotel is
not ADA complaint "as such compliance related to Plaintiff's
disability."  FAC ¶ 18.  However, Plaintiff has not alleged how the
DoubleTree Hotel's alleged non-compliance with the ADA is
related to his disability, and therefore why its non-compliance
deters him from staying at the hotel.  See Chapman, 631 F.3d at
955 (Plaintiff must identify how each of the alleged barriers "deter
him from visiting the Store due to his disability.").

Further, where "the public accommodation being sued is far
from the plaintiff's home," the Ninth Circuit has found an "actual
or imminent injury sufficient to establish standing where a
plaintiff demonstrates an intent to return to the geographic area
where the accommodation is located and a desire to visit the
accommodation if it were made accessible."  D'Lil v. Best W.
Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008).  In
determining whether a plaintiff has alleged an intent to return to
the geographic area, the Ninth Circuit has considered "the
regularity with which [the plaintiff] visited the city."  Id.
Although Plaintiff alleges he "traveled and lodged in the
Disneyland area at least 20 times in the past," FAC ¶ 27, he has

not alleged any facts showing an intent to continue regular visits. [6] This is insufficient. See, e.g., D'Lil, 538 F.3d at 1037 (plaintiff had visited the area "approximately 1-3 times per year" for more than a decade including "before, during, and after her stay" at the defendant property); see also Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1040 (9th Cir. 2008) (plaintiff "plans to visit Anaheim at least once a year on his annual trips to Disneyland"); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1135 (9th Cir. 2002) (plaintiff visits his grandmother who lives in the area almost weekly).

Second, a desire to stay at the specific challenged hotel can be shown by explaining a preference for that hotel. See, e.g., D'Lil, 538 F.3d at 1038 (plaintiff had a "preference for staying at the Best Western Encina" because of "the hotel's proximity to downtown, its accessibility from the freeway, and its amenities, including lush gardening and fresh country linen quilts"); Doran, 524 F.3d at 1040 (plaintiff visited the store "on ten to twenty prior occasions" and "the store is conveniently located near his favorite fast food restaurant in Anaheim"); Pickern, 293 F.3d 1133 at 1135 (plaintiff "patronized a number of Holiday stores," "is a regular customer of the Holiday store in his hometown," and "look[s] first to Holiday Foods grocery stores" when he needs groceries). While Plaintiff alleges that he "prefers to stay at Hilton properties because he and [his ex-wife] are members of the Hilton Honors

---

[6] Plaintiff also asserts in his declaration that he "returned to the Anaheim area on September 21, 2019 booking a room at the Holiday Express Suites in Santa Ana, 8 miles away." Dkt. 28-1 (Strojnik Decl.) ¶ 41. However, because standing is determined at the time the lawsuit is filed, "Plaintiff cannot simply manufacture jurisdiction where it does not exist by alleging newfound plans to visit [Anaheim]." See Brooke v. Choice Hotels Int'l, Inc., No. 3:16-CV-00310-GPC-JMA, 2016 WL 2594070, at *3 n.3 (S.D. Cal. May 5, 2016).

Rewards Program,"[7] id. ¶ 23, there are no allegations as to this particular Hilton property, as opposed to others in the "Disneyland area." And, during his last two visits to the Disneyland area, Plaintiff stayed at a Marriott, FAC ¶ 42, and a Holiday Inn, Strojnik Decl. ¶ 41. This is insufficient to show that Plaintiff is deterred from staying at the DoubleTree Hotel.

### b.   Intent-to-Return

To demonstrate an intent to return, courts often consider four factors: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." Antonio v. Yi, No. 2:14-CV-04323-SVW-AS, 2015 WL 13603781, at *2 (C.D. Cal. Mar. 4, 2015).

The first factor is less relevant when applied to hotels, because it is generally the purpose of hotels to provide a place to stay away from someone's residence. Applying the second factor, Plaintiff alleges "his belief that he stayed at [the DoubleTree Hotel] several times previously," FAC ¶ 28, but apparently does not actually remember ever doing so.[8] Because Plaintiff does not know that he stayed at the DoubleTree Hotel, this factor does not demonstrate an intent to return. Third, Plaintiff alleges that "he intends to travel to the Disneyland area . . . and intends to stay at the [DoubleTree Hotel]" after the Hotel is "fully and completely

---

[7] Apparently, only Plaintiff's ex-wife is a member of the Hilton Honors Rewards Program. Dkt. 27-3 (Nielson Decl.) ¶ 4; Strojnik Decl. ¶ 30.

[8] Defendant submitted a declaration showing that Plaintiff had not stayed at the DoubleTree Hotel in the last five years under his name. Nielson Decl. ¶ 3. However, it is possible Plaintiff stayed at the DoubleTree Hotel more than five years ago or that, given that Plaintiff alleges he traveled with his wife, reservations were made under her name.

ADA complaint," FAC ¶ 24; see also id. ¶ 29 (Plaintiff has a "definite plan to return to the Disneyland area and intends to stay at the [DoubleTree Hotel] once the Hotel confirms its ADA compliance"). However, "[g]eneral statements regarding Plaintiff's intent to travel to an area . . . are insufficient to allege an 'actual and imminent' injury." Brooke, 2016 WL 2594070, at *3. Such speculative, "some day" intentions of visiting a facility will not support standing. Lujan, 504 U.S. at 564. Finally, Plaintiff alleges that he "travels to California often" and has "traveled and lodged in the Disneyland area at least 20 times in the past." FAC ¶¶ 25, 27. However, as discussed above, Plaintiff "provides no indication that his visits are regular" or "whether he has a reason for recurrent returns" to the area. See Antonio, 2015 WL 13603781, at *2. Therefore, Plaintiff has not sufficiently alleged an intent to return.

### 3.   Causal Connection

Plaintiff must also allege that his injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560. Plaintiff has not alleged any facts showing that information allegedly not being available on the Third-Party Websites is "fairly traceable" to Defendant.[9] Therefore, for this additional reason Plaintiff has no standing to

---

[9] The Department of Justice's guidance regarding 2010 revisions to the ADAAG states that a hotel "will not be responsible" if a "third party fails to provide the information or rooms to people with disabilities" so long as the hotel "makes available such rooms and information to [the] third-party reservation provider." 28 C.F.R. § Pt. 36, App. A. Such guidance is "'entitled to substantial deference' and 'will be disregarded only if plainly erroneous or inconsistent with the regulation.'" Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1069 (9th Cir. 2015) (quoting Miller v. California Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008)).

assert claims based on the purported injuries caused by Third-Party Websites.

Plaintiff's First Cause of Action under the ADA is dismissed with leave to amend.

## B.    State Law Causes of Action

"[I]f the federal claim [is] dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication." Herman Family Revocable Tr. v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001) (alterations in original) (quoting 16 Moore's Federal Practice § 106.66[1]). Because the Court is dismissing Plaintiff's sole federal claim for lack of subject matter jurisdiction, the Court declines to address Plaintiff's state law claims at this time.

## IV.    Conclusion

Plaintiff's First Cause of Action is DISMISSED with leave to amend. An amended complaint may be filed and served no later than November 15, 2019. Failure to file by that date will waive the right to do so. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.

Date: October 21, 2019

_____
Dale S. Fischer
United States District Judge

13

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on December 20, 2019, I electronically filed the above document

3  with the Clerk of the Court using CM/ECF which will send electronic notification of such

4  filing to all registered counsel.

5

6                                          By:   */s/ Eric Kennedy*
                                                 Eric Kennedy
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            6

28  **DEFENDANT'S SUPPLEMENTAL REQUEST FOR**      Case No. 4:19-cv-03983-DMR
    **JUDICIAL NOTICE IN SUPPORT OF MOTION FOR**
    **ORDER DECLARING PLAINTIFF A VEXATIOUS**
    **LITIGANT AND MOTION TO DISMISS**