UNITED STATES DISTRICT COURT

**ORIGINAL**

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable DONNA M. RYU, Magistrate Judge

PETER STROJNICK (SR.),      )      **Motions Hearing**
                            )
        Plaintiff,          )
                            )
 vs.                        )      NO. C 19-03983DMR
                            )
IA LODGING NAPA FIRST LLC   )
dba ANDAZ NAPA,             )      Pages 1 - 21
                            )
        Defendant.          )      Oakland, California
_____)      Thursday, October 24, 2019


<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>


APPEARANCES:

For Plaintiff            Peter Strojnik, Sr. (pro se)
(telephonically):        7847 N. Central Avenue
                         Phoenix, Arizona  85020



For Defendant:           Buchalter PC
                         1000 Wilshire Boulevard, Suite 1500
                         Los Angeles, California  90017-1730
                    BY:  ERIC KENNEDY, ATTORNEY AT LAW



Reported By:        Raynee H. Mercado, CSR No. 8258


    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
1    Thursday, October 24, 2019                          1:45 p.m.

2                     P R O C E E D I N G S

3            THE CLERK:  Lastly, calling civil case C-19-3983 DMR,

4    Peter Strojnik versus IA Lodging Napa First LLC.

5        Please state your appearances, counsel.

6            MR. STROJNIK:  Good morning (sic), Your Honor.  This

7    is Peter Strojnik.

8            THE COURT:  Good afternoon, Mr. Strojnik.

9            MR. STROJNIK:  Good afternoon.

10           MR. KENNEDY:  Good afternoon, Your Honor.  Eric

11   Kennedy for defendants.

12           THE COURT:  Good afternoon.

13       Okay.  We're here on several motions.  First of all, the

14   motion for summary judgment is denied without prejudice.

15   We're -- it's premature.  We're not even out of the pleadings

16   yet, so -- too early to consider anything like that.

17       I also have the motion to dismiss and the motion to

18   declare Mr. Strojnik a vexatious litigant.

19       I want to start with the motion to dismiss.

20       In general, Mr. Strojnik, what I would say is that is your

21   complaint is pretty vague.  And as I'm sure you know, as --

22   because you're an attorney, your declaration -- I can't

23   consider it, so to the extent that you in your opposition

24   included a declaration that has new facts, it's not part of

25   the operative complaint so I cannot and will not consider
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1    them.

2        I also want to know because it was a little strange, that

3    your declarations are not signed under penalty of perjury, and

4    they must be signed under penalty of perjury going forward.

5    Okay?

6            **MR. STROJNIK:**  Yes, ma'am.

7            **THE COURT:**  Okay.  Now, I -- I find that your

8    complaint in general is way too vague for me to -- to really

9    constitute adequate pleading to determine whether there's

10   standing.

11       So for example, under Ninth Circuit law, you've got to

12   show injury in fact with the intent to return or deterrence

13   because of noncompliant features.

14       I could not tell from your complaint basically things like

15   what were the dates of your proposed travel or the dates you

16   accessed the website.  What were the mobility-related

17   accessibility failures.  What did you actually encounter?

18   What barriers actually relate to your disability.

19       Who took these pictures?  Are there pictures of things

20   that you actually encountered?

21       All of the -- what were the violations?  You didn't have a

22   single citation to the ADA statute or any of its regulations

23   so that I couldn't understand what the alleged violation was.

24       I also was unclear on your -- the sufficiency of your

25   allegations with respect to intent to return because merely

1    intent to return some day isn't going to be enough.

2        So I will issue an opinion on the motion to dismiss with

3    leave -- and I'll give leave to amendment because he did

4    indicate through this unsworn declaration that there may be

5    facts that he can add in to make this a viable complaint.

6        But -- but I -- as it stands, I think it's a -- it's too

7    vague to sufficiently state standing and other aspects of the

8    complaint.  I couldn't completely understand it.

9        Mr. Strojnik, if you want to make any argument, I'll hear

10   it.

11       **MR. STROJNIK:**  Yes, Your Honor.  Thank you, Your

12   Honor.  By the way, thank you for letting me appear by

13   telephone.

14       Your Honor, this is a facial attack on Article III

15   jurisdiction.  This issue has been addressed and resolved by

16   the Ninth Circuit Court of Appeals in Rosen v. Carroll

17   (phonetic) Oil Company, where the court said that all you need

18   to do is make minimal allegations.  For example, intent to

19   return.

20       And the second thing, no -- and the reason why I think

21   that in the Ninth circuit Court of appeals so indicate is

22   because if you -- you're repeating standard under Rule 9B,

23   there are three elements that can be alleged generally.

24   Documents have to be alleged specifically.  And the first one

25   is intent.  The second one is knowledge.  And the third one is

1    a state of mind.

2        Now, I clearly alleged intent.  So in my opinion, I

3    could -- I could be wrong, but in my opinion, that is a good

4    allegation.

5            **THE COURT:**  Okay.  That's about the intent to return?

6            **MR. STROJNIK:**  Yes.

7            **THE COURT:**  All right.  Anything else?

8            **MR. STROJNIK:**  Well, the second issue is the

9    knowledge of actual barriers.  In response to your question,

10   you know, who took those photos, I did because I actually go

11   to these places and knowledge --

12           **THE COURT:**  Well, there's nothing in your complaint

13   that suggests that.  So that's why I'm saying your complaint

14   is inadequate.

15           **MR. STROJNIK:**  Okay.

16           **THE COURT:**  What you tell me on the phone or in a

17   unsworn declaration is not anything that I can consider, and I

18   think you know that.

19           **MR. STROJNIK:**  Yeah, I don't agree with you.  I just

20   want to -- I just want to point out my general view of -- of

21   pleading and -- and as -- I'm often -- I'm wrong way too

22   often, and I -- I'm -- very well could be wrong here.

23       But the third point I wanted to say was I clearly alleged

24   deterrence, which is one of the ways of establishing ADA

25   standard.  Now, deterrence, Your Honor, in my opinion cutting

```
 1    out --

 2            THE COURT:  I can't hear.  Mr. Strojnik, it's very

 3    hard to hear you, and we do have a court reporter here.  So

 4    I'm sorry.

 5            MR. STROJNIK:  I'm sorry.

 6            THE COURT:  When I -- when I allow a telephonic

 7    appearance, the problem is that we are not looking at each

 8    other so you can't necessarily see when I'm trying to

 9    interrupt you to indicate a problem.

10            MR. STROJNIK:  Yes.

11            THE COURT:  Are you on a speaker phone?

12            MR. STROJNIK:  Yes, I -- I was until now.

13            THE COURT:  Okay.  That's better.  And --

14            MR. STROJNIK:  Okay.

15            THE COURT:  I apologize that I may be interrupting

16    you to let you know we're have problems hearing you or just to

17    interrupt you to ask a question.  Okay?

18            MR. STROJNIK:  Yeah, sure.  Sure.  Absolutely.

19       So is there a question?

20            THE COURT:  Well, you were talking about deterrence

21    and urging that it -- that's a intent standard and therefore

22    should be pretty minimal.

23            MR. STROJNIK:  Well, actually I was arguing that Rule

24    9B says that the state of mind can be -- can be alleged

25    generally as well.  And my view is that deterrence, to be
```

 1    deterred is -- is a state of mind.  But having said all that,

 2    I don't see a particularly great opposition to your proposal

 3    to dismiss with -- with leave to amend.  I can certainly

 4    amend.  And I welcome to Your -- Your -- Your Honor's opinion

 5    of that.

 6              THE COURT:  Okay.

 7              MR. STROJNIK:  So that's fine.

 8              THE COURT:  Okay.  Well, I -- you know, I am a little

 9    bit perplexed given what happened in -- you know, moving now

10    to the motion for vexatious litigant declaration.  In light of

11    what happened in Arizona where you have pretty big litigation

12    and state bar findings about the lack of standing and

13    infirmities with, you know, hundreds of complaints, it was

14    troubling to me that you submitted an unsworn declaration with

15    more facts in your opposition to the motion to dismiss in this

16    case because I'm guessing that with that kind of history in

17    Arizona, you would know that you'd have to be more clear in

18    your pleadings in your cases going forward.

19        Can you explain --

20              MR. STROJNIK:  Well, Your Honor, I -- I'm sorry?

21              THE COURT:  Can you explain why you didn't provide

22    more facts, simple things like dates, and what exactly were

23    the barriers that you encountered, all the things that you put

24    in your unsworn complaint.

25        Why weren't those originally in your pleading?

1    **MR. STROJNIK:**  Well, Your Honor, all those matters

2    are set forth in addendum A to the complaint.  It's got a

3    date.  It's got the photos.  It's got a description of what

4    the violation is.  And then the major complaint is actually

5    incorporated into the complaint --

6        **THE COURT:**  Well, it doesn't -- no, it's not.

7    There's some, you know, unexplained photos, unexplained places

8    that are not tied to what your individual disabilities are.

9    It has a statement about what -- you know, something like

10    inaccessibility counter.  It doesn't talk about, well, are you

11    in a wheelchair?  How do you experience that barrier?  What

12    regulation or statute does it violate?

13      It's not enough to do it the way that you did.

14        **MR. STROJNIK:**  Okay.

15        **THE COURT:**  But my point to you is you have a

16    declaration where you provide more facts.  And I'm a little

17    concerned, given your history, that it's -- you know, why

18    weren't those in the original complaint?

19        **MR. STROJNIK:**  Well, because that is a complaint that

20    I have used for a long, long time.  And it says that (sic) --

21    pass muster in most cases.

22                    (Simultaneous colloquy.)

23        **THE COURT:**  It didn't and -- apparently it didn't

24    pass muster in about a thousand cases in Arizona, is my

25    understanding of the record.

1    **MR. STROJNIK:**  Well, actually, let me just explain

2  that record to you, if I may.

3    In Arizona, the state court judge did not -- was not --

4  over the Delaine (phonetic) case and Pittman (phonetic) case.

5  And he didn't accept the finding of those two cases.

6    It took the Creek case for the state court judge to

7  realize that he was wrong in his decision.  And that's when

8  the Attorney General came actually begging me to dismiss all

9  cases and -- and dismiss all the pending motion in those

10  cases.

11    But the fact that there were so many cases filed is not

12  determinative because we have a brand-new, very clear

13  determination as to what constitutes standing under Creek.

14  Creek is very clear.  It's very permissive.  Actually, when

15  Creek came out in 2017, I thought they were talking to

16  Arizona.  I really believe that, because everything they said

17  goes directly to what's happening in the state courts cases in

18  Arizona.

19    Now, you talk about -- I mean, you mentioned my history.

20  Well, let me -- let me just tell you.  All the cases I filed

21  in Arizona, all the money ever received in those cases was

22  given to a 501c3 charitable organization.

23      **THE COURT:**  Okay.  Let me stop you there.

24      **MR. STROJNIK:**  Yes.

25      **THE COURT:**  Let's move to the motion for --

1      Well, Mr. Kennedy, I don't necessarily need argument on

2  the motion to dismiss.  Is there any -- but I don't want to

3  preclude from you highlighting anything if you need me to hear

4  it.

5          **MR. KENNEDY:**  I don't have anything to add, Your

6  Honor.

7          **THE COURT:**  Okay.  Let's move to the motion to

8  declare Mr. Strojnik a vexatious litigant here in the Northern

9  District of California.

10     So, you know, I -- most of what Mr. Kennedy did here was

11  rely on the record in Arizona.  And, you know, what happened

12  in Arizona is obviously very troubling.  It was very serious

13  to --

14     Hold on one moment.  I'm just flipping through my papers

15  here.

16              (Pause in the proceedings.)

17          **THE COURT:**  Yeah, I mean, very serious to have what

18  happened in the consolidation of cases as well as the state

19  bar proceedings, the investigation, and the fact that

20  Mr. Strojnik has been disbarred in the State of Arizona

21  relating to his practices in the ADA cases.  That is a very

22  concerning, troubling backdrop against which Mr. Kennedy's

23  motion is filed.

24     And my job here is to develop an adequate record to

25  understand whether Mr. Strojnik is a vexatious litigant here

1  in the Northern District of California.  And I don't think I

2  have a sufficient record.  But what I'd like to do is develop

3  the record a bit to understand more about what's going on.

4  So what I'm inclined to do on that is I'm not going to --

5  I need more information before I rule on that motion.

6  Mr. Strojnik, I'll issue an order with these things so

7  that you understand exactly what I'm going to ask you to do

8  but I'm going to have you submit some information to me via

9  filing, and it has to be in a sworn declaration, so facts that

10  you attest to under penalty of perjury.

11  And it will include the following:  I want you to identify

12  by case number all of the complaints that you have filed in

13  the Northern District of California where you are the

14  plaintiff, so where you are acting pro se.

15  I also want you to separately identify all complaints

16  filed in this district where you are acting as the attorney

17  for somebody, 'cause I know you have some of those cases as

18  well.

19  **MR. STROJNIK:**  I'm not an attorney, Your Honor, in

20  California.

21  **THE COURT:**  You're -- I thought you were barred here

22  in California.  You are a member of the California bar, are

23  you not?

24  **MR. STROJNIK:**  No.  No, I'm not.

25  **THE COURT:**  Oh.

```
 1          MR. KENNEDY:  He may be --

 2          MR. STROJNIK:  That never have.

 3          MR. KENNEDY:  Maybe that's the son you're anything

 4    of, Your Honor.

 5          THE COURT:  Oh, okay.  All right.

 6       Okay.  So I guess I was confused.  I looked up on the Cal

 7    bar site, so that's not you.  That's -- so all cases in which

 8    you have filed a complaint pro se, I guess.  That's --

 9       And am I right that's all you've done here in the Northern

10    District is file pro se complaints?

11          MR. STROJNIK:  That is correct.

12          THE COURT:  Okay.

13       So identify all of those by case number.  For each of

14    those, I want you to provide facts under penalty of perjury

15    that explain the dates for when the conduct occurred in each

16    of those cases.  And --

17          MR. STROJNIK:  Okay.  Your Honor, I have -- I usually

18    prepare a due diligence report that has those dates.

19       Would that be sufficient?

20          THE COURT:  No.  I want under penalty of perjury the

21    dates.  I'm mean, I'm glad you have the information so it

22    should be easy to compile, but -- and it has to be -- if

23    there's multiple dates, then give them multiple dates and

24    explain what -- you know, what the dates -- what conduct the

25    date is attached to.
```

1      MR. STROJNIK:  Okay.

2      THE COURT:  In addition, I want to understand your

3  process for drafting complaints, so you said to me a few

4  minutes ago you have this standard complaint.  Is it just a

5  boiler plate?  Or is it something that you try to tailor to

6  the facts of a given situation?

7      I'd like you to explain whether anybody assists you in

8  preparing your complaints.

9      I'm going to ask you to -- to state whether you personally

10  review every complaint before you file it to ensure its

11  accuracy.

12      I'll ask you to attest to whether you take the photographs

13  that are attached to your complaints yourself.  And if not,

14  then who takes the photographs.  I'm going to ask you to tell

15  me under penalty of perjury how many ADA cases you have

16  brought both in this district and also separately in

17  California.

18      For each of those categories, I want you to indicate how

19  many were dismissed voluntarily for the -- you know the in

20  California and also more particularly in this district.

21      And for each of those two categories, I want you to tell

22  me how many were settled, including the total settlement

23  amount of all cases and the average settlement amount for

24  all -- for all cases, so you'll have some numbers for all of

25  California and some number for just this district.

```
 1        I want to know if any --

 2            MR. STROJNIK:  You mean, the state -- you mean, the

 3     state court?

 4            THE COURT:  Any -- any cases.  So state --

 5            MR. STROJNIK:  Okay.

 6            THE COURT:  Well, are you filing in both state and

 7     federal court?

 8            MR. STROJNIK:  Not currently.  I did file some early

 9     on, probably year ago.  But state court is very difficult for

10     me to deal with.

11            THE COURT:  Okay.  So let's stick to federal court

12     because that's -- that's what -- I mean, I'm -- that's

13     primarily what I'm concerned about.

14        So -- and I'll lay this out, as I said.  So want to

15     understand that better.

16        I'm going to want to know whether you've tried any on the

17     merits.

18        I'm going to ask you to explain under penalty of perjury

19     whether any of your ADA complaints that you filed in federal

20     court in California have been initially dismissed for lack of

21     standing for any of the claims.

22            MR. STROJNIK:  Okay.

23            THE COURT:  Okay?

24        I also --

25            MR. STROJNIK:  Oh, yeah.
```

```
 1              THE COURT:  This is a little off -- so those are the

 2    things that I want to know.  I'll give you -- I was going to

 3    give you a month to provide that information so you have

 4    plenty of time.

 5        So I'll just give you a deadline of -- hold on -- I'll

 6    give you until -- I'll give you to the end of November,

 7    November 30th, to file that.

 8              MR. STROJNIK:  Oh, that's -- yeah, that's reasonable.

 9              THE COURT:  Okay.

10              MR. STROJNIK:  And, Your Honor, some of my settlement

11    agreements are confidential.

12              THE COURT:  I --

13              MR. STROJNIK:  Would it be okay with the court if I

14    just average -- average it out --

15              THE COURT:  Yeah.

16              MR. STROJNIK:  -- or how do you want me to handle it?

17              THE COURT:  No, that's why I didn't want to have

18    individual ones.  What I want is -- let's say we're talking

19    about California.  What's the total --

20              MR. STROJNIK:  Okay.

21              THE COURT:  -- sum of all California settlements in

22    federal court?  And what's the average of those?  Okay?

23        And I'll --

24              MR. STROJNIK:  Okay.

25              THE COURT:  -- also need the number of cases so I can
```

1   do the math.

2           **MR. STROJNIK:**  Yeah.

3           **THE COURT:**  So we can figure that out, but no, you

4   don't have to state the individual settlement in any

5   particular case because I was concerned that that would

6   violate some kind of confidentiality.

7           **MR. STROJNIK:**  I think that's reasonable.

8           **THE COURT:**  Okay?

9       So I'll lay that out in an order.

10      And then I did want to just raise -- I was a little

11  confused about this.  In your -- the declaration you submitted

12  in opposition to Mr. Kennedy's motion, you talk about how you

13  and Mrs. Strojnik go to -- you know, go to the wine country

14  couple times a year to stock up on wine.  And --

15          **MR. STROJNIK:**  Right.

16          **THE COURT:**  But then in the motion that you filed for

17  telephonic appearance, you state that you're single.  Those

18  things might be not in contradiction.  I don't know.  I don't

19  want to assume, but I was confused about that.

20          **MR. STROJNIK:**  I just tell you right now.

21  Mrs. Strojnik and I are divorced.  But Mrs. Strojnik and I are

22  not enemies.  So Mrs. Strojnik and I continue to travel

23  together.

24          **THE COURT:**  Okay.  Then that's fine.  I thought there

25  might be a reasonable explanation that was not inconsistent.

1   It's just I was, you know, concerned about some of what I was

2   seeing and in particular this, you know, declaration purposely

3   not being signed under penalty of perjury, so I just wanted to

4   check in and make sure.

5                  (Simultaneous colloquy.)

6        **THE COURT:**  But now you've explained that.  Okay.

7      So that's what I'm going to do, is I'll order some more

8   information so I have a better understanding of what's going

9   on in our district with Mr. Strojnik's practices, and I'll

10   make a decision after that.

11      Mr. Kennedy?

12        **MR. KENNEDY:**  Yeah, Your Honor.  Just briefly.  We

13   share some of your concern about some of the things that have

14   been said procedurally and factually and would like the

15   opportunity to respond to whatever Mr. Strojnik files in terms

16   of his declaration.

17        **THE COURT:**  Well, I'm not allowing him to offer any

18   argument.  I'm just allowing him to provide facts.  If I need

19   further argument, I will allow you to -- either I'll have you

20   back for a hearing or order additional briefing.

21      But I'm not -- you know, it -- just because he's going to

22   be supplying facts doesn't -- you know, of course I'd give you

23   an opportunity if it were argument.  But that's not what's

24   going to go on here.

25        **MR. KENNEDY:**  I appreciate that, Your Honor.

```
 1        And to the extent that the facts are -- need

 2   clarification, how would we respond to that?

 3        THE COURT:  Well, these are facts that I'm asking

 4   for.  You didn't even ask for these, so if I think I need

 5   clarification, I will ask for it.

 6        MR. KENNEDY:  Thank you, Your Honor.

 7        THE COURT:  But this is really to fill out my record,

 8   my understanding, and -- and so that I can fulfill my

 9   obligation on the legal analysis.

10     Okay?

11        MR. KENNEDY:  Thank you.

12        THE COURT:  All right.  Thank you very much.

13        MR. KENNEDY:  Thank you, Your Honor.

14        MR. STROJNIK:  Your Honor, may I -- may I -- Two more

15   things.

16     Your Honor, the -- the standards for vexatious litigant is

17   filing of frivolous or harassing claims.  I believe in my

18   response to the motion for harassing or for vexatious litigant

19   designation, I did ask the court to allow me to issue three

20   discovery requests.

21        The first one is produce any ruling or judgment by any

22   court finding that any claim that I had ever found is

23   frivolous or harassing.  For me, that's very important because

24   in my opinion, there -- there isn't one.

25        And the second one was produce those -- those orders.
```

1    And I think that the -- the third was actually what

2    started off with, which was please admit that you have no such

3    proof of any frivolous or harassing nature of lawsuits.

4        That's -- I'm sorry.  I'm sorry.  Go ahead.

5        **THE COURT:**  Well, those are sort of conclusory

6    statements.  And really what I'm getting at is to develop a

7    factual record.  It may not be -- you know, you may be

8    exonerated at least on -- in this case.

9        But, you know, looking at the *Molski* opinion here in -- in

10   the Ninth Circuit, some of the things that the court was

11   looking at was not whether somebody had filed necessarily a,

12   you know, frivolous or harassing in the manner that I think

13   you're suggesting, but that -- but the court was looking at

14   not just extensive history of litigation but whether there was

15   indicia of an intent to basically harass defendants into

16   agreeing to cash settlements, whether there were complaints

17   that were so textually and factually similar to suggest that

18   they weren't really based on fact.

19       I mean, those are the kinds of things that can constitute

20   frivolous or harassing behavior.

21       So I'm going to, you know, give you an opportunity fill

22   out the factual record so I can understand better what's going

23   on here, and I'll make a ruling.

24       **MR. STROJNIK:**  I think that's wonderful.

25       But the second issue I wanted to bring up is you -- you

1    seem to have a concern about my status with the bar.  And if I

2    can just --

3         **THE COURT:**  I don't -- I don't have any concern with

4    the status of the bar.  You've cleared up that you're not a

5    member of the California State Bar.  And I found a Strojnik

6    online, but that's not you, and I understand that.

7         I also understand that you have been disbarred by the

8    State of Arizona Bar, and the -- you know, the record -- the

9    only record I need is the official documents.  But I -- you

10   know, I don't need further argument on that.

11        So I don't think I need more on that, Mr. Strojnik.

12        **MR. STROJNIK:**  Well, I feel sort of at a disadvantage

13   because there -- because there seems to be a feeling in the

14   courtroom today that having resigned from the state bar and

15   voluntarily being disbarred because one believes that a state

16   bar is acting improperly, that somehow that's a bad thing.

17        **THE COURT:**  Well, you --

18        **MR. STROJNIK:**  And I just want to point out --

19        **THE COURT:**  Well, you have --

20        **MR. STROJNIK:**  That's a wonderful thing.

21        **THE COURT:**  Well, whatever you think, you have in

22   your papers.  You explained your view of what happened in

23   Arizona, and that's fine.  I've considered that argument.

24        And whether it's --

25        **MR. STROJNIK:**  Okay.

```
 1              (Simultaneous colloquy.)

 2         THE COURT:  -- you know, voluntary or not voluntary,

 3    is part of the record.  Okay?

 4         MR. STROJNIK:  Okay.  Well, I appreciate that, and

 5    I'll be looking forward toward a minute entry.

 6         THE COURT:  Yes.  I will either in an order or

 7    minute -- minute order lay out all the questions that I asked

 8    you to respond to.  Okay?

 9         MR. STROJNIK:  And I'll do the next declaration under

10    the penalty of perjury.  I apologize I didn't do the first

11    one.

12         THE COURT:  Okay.  Very good.

13         MR. STROJNIK:  No intent.  I just forgot.

14         THE COURT:  Okay.

15         MR. STROJNIK:  All right.  Well, thank you very much.

16         THE COURT:  Thank you.

17         MR. STROJNIK:  Bye.

18         MR. KENNEDY:  Thank you, Your Honor.

19           (Proceedings were concluded at 2:10 P.M.)

20                       --o0o--

21

22

23

24

25
```

CERTIFICATE OF REPORTER


       I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.

I further certify that I am neither counsel for, related to,

nor employed by any of the parties to the action in which this

hearing was taken, and further that I am not financially nor

otherwise interested in the outcome of the action.


Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Monday, November 25, 2019