Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PETER STROJNIK,<br><br>                                    Plaintiff,<br><br>            vs.<br><br>IA LODGING NAPA FIRST LLC., DBA ANDAZ NAPA<br><br><br><br>                                    Defendant. | Case No: 4:19-cv-03983-DMR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S SECOND MOTION TO DISMISS [51]** |

## INTRODUCTION

On August 8, 2019, Defendant filed a virtually identical Motion to Dismiss [7] to the one presently before the Court [51].  In the interim, the Court has issued its Order [49] identifying the deficiencies in Plaintiff's Complaint [1] followed by Plaintiff's FAC [50] which remediated and ameliorated each and every deficiency noted by the Court.

The current Motion to Dismiss is clearly designed to vexatiously and unreasonably multiply the proceeding. Imposition of sanctions pursuant to  28 U.S.C. §1927 are appropriate.

Plaintiff, an ADA tester, has noted the emergence of dangerous pattern in the evolution in ADA civil rights  cases.  Some defense advocates pepper the Courts with vexatious motions as a furtive reconnaissance mission to determine whether the memorable observation by the Honorable Judge Melinda Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014) apply here. In *Gilkerson,*

Judge Harmon displayed the courage to state what civil rights litigants know from experience:

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile**. *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.' " *Betancourt v. Federated Dept. Stores,* 732 F.Supp. 2d 693, 701 (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

ADA defendants' strategy is dangerous. ADA defendants are aware of a significant social undercurrent of the hostile skepticism toward ADA plaintiffs. By continuous filing of baseless, scurrilous and irrelevant documents, Defendant in this case is simply attempting to awaken a potential skepticism in this Honorable Court.

By seeking to arouse cynicism, Defendant artfully attempts to create an intolerable level of distrust between ADA plaintiffs and the Court. If the district court becomes swayed even most slightly, the Defendant benefits but Plaintiff suffers irremediable prejudice. The creation of uncertainty and mutual distrust is Defendant's end game.

The judiciary is the last and the only branch of the government still universally trusted by the public. Defendant's attempts to sow distrust is, on the case level, designed to benefit Defendant and prejudice Plaintiff. On the grander scale it seeks to diminish the trust in the judiciary to that of the executive and legislative.

This must never happen. Defendant should be sanctioned.

### CASE HISTORY

On February 25, 2020, the Court issued its Memorandum Decision and Order Granting Defendant's Motion to Dismiss (with leave to amend) [49]. Because the Order contains a sanctions warning, it is necessary to review the order for clarity of this First Amended Complaint.

The Court found that Plaintiff failed to specify which provisions of the ADAAG Defendant violated, thus failing to  establish standing. With respect to the allegations of injury in fact, the Court stated:

### III. MOTION TO DISMISS

Andaz Napa moves to dismiss Strojnik's ADA claim on the basis that he failed to adequately plead that he has standing to sue under Article III of the U.S. Constitution. Because injunctive relief is the only relief available to private ADA plaintiffs, a plaintiff alleging ADA violations must establish standing to pursue injunctive relief. Standing for injunctive relief requires a plaintiff to establish a "real and immediate threat of repeated injury." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). Ninth Circuit caselaw establishes that an ADA plaintiff may establish standing "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011). Andaz Napa asserts that Strojnik has failed to establish either an injury-in-fact coupled with an intent to return or, alternatively, that he was deterred from visiting the Hotel because of the allegedly noncompliant features.

#### A. Actual Encounters

An ADA plaintiff may establish standing if he encountered a noncompliant barrier related to his disability and that there is "a sufficient likelihood that he will again be wronged in a similar way." *See Chapman*, 631 F.3d at 948 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

##### 1. Injury-in-Fact

As an initial matter, Strojnik's bare-bones complaint lacks specific details about the injuries Andaz Napa allegedly caused him. Although he alleges that he "intended to visit California Wine Country," he does not state the dates he intended to travel or the purpose of the trip. *See* Comp. ¶ 15. He also does not give the date he accessed Andaz Napa's website, or from what location, or any other details corroborating his allegations. He does not describe what "mobility related accessibility" features he tried and failed to identify on Andaz Napa's website. *See* Compl. ¶ 19.

Additionally, in order to suffer an injury-in-fact arising from an actual encounter with a barrier, an ADA plaintiff must establish that the barrier relates to his disability. *Chapman*, 631 F.3d at 947 n. 4 ("[A] plaintiff's standing to claim an ADA violation is necessarily linked to the nature of his disability."). Strojnik's allegations relate mainly to the lack of information regarding accessibility features on Andaz Napa's website, but he does not explain which accessibility features are required to accommodate his disability or allege that those specific features were not described on the website. Further, although Strojnik attaches pictures to his complaint that purport to be architectural features within Andaz Napa, he does not allege that he personally took those pictures. His sparse complaint does not allege that he visited the Hotel, that he encountered any barriers at the Hotel, or that any alleged barriers at the Hotel relate to his disability. He also does not identify how any of the architectural features violate the ADA, and only inserts generic captions

3

such as "[i]naccessible check in counter." *See* Compl. at 15. Although Strojnik alleges that he "walks with difficulty" and "requires compliant mobility accessible features at places of public accommodation," he does not specify which features of the Hotel are a barrier to him. Notably, Strojnik appears to concede that the allegations in his complaint are inadequate, as he provides a declaration that provides "specific facts clarifying jurisdictional allegations in the complaint." Opp. at 3-4, *see* Strojnik Decl. ¶¶ 25-34. In his declaration, he asserts that he "visited Andaz" and "noted that Andaz was not suitable for his needs and documented notable ADA violations through photography." Strojnik Decl. ¶¶ 30-31. Strojnik does not explain why he did not plead these "specific facts" in his complaint. Nor did he offer to amend the complaint to add such facts.

Finally, although Strojnik is a frequent ADA litigant, his complaint does not cite any statutes, regulations, or caselaw that support his theories of injury. For example, he alleges that third-party booking websites failed to identify accessibility features within Andaz Napa, but it is not clear whether he is alleging claims against Andaz Napa based on the information on the third party sites, and if so, on what basis.

In sum, the generic descriptions in the complaint are too vague to assess whether and how Strojnik was injured by Andaz Napa.

### 2. Intent to Return

Even if Strojnik adequately alleged that encountered barriers at the Hotel, he would also have to establish "a sufficient likelihood that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111; *see also Chapman*, 631 F.3d at 949 ("Article III . . . requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties."). "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564.

Andaz Napa argues that Strojnik's single statement that he "intends to visit Defendant's Hotel at a specific time when the Defendant's noncompliant Hotel becomes fully compliant" is insufficient to confer standing. It points out that Strojnik's residence in Arizona is over 700 miles from the Hotel; that Strojnik does not allege that he had ever visited the Hotel in the past; that he has not alleged a concrete plan to visit the Hotel in the future; and that he did not proffer any reason as to why he would patronage the Hotel in the future, such as frequent travel in the area or "specific ties" to the property. *Cf. Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008) (holding that a plaintiff adequately established an intent to return when he "alleged that he had visited the [defendant] store on ten to twenty prior occasions, that he is currently deterred from visiting the store because of its accessibility barriers, that the store is conveniently located near his favorite fast food restaurant in Anaheim, and that he plans to visit Anaheim at least once a year on his annual trips to Disneyland"); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135-38 (9th Cir. 2002) (plaintiff established an "actual or imminent injury for the purposes of standing" where he had visited the defendant's store in the past, stated that he prefers to shop there, noted that the store is close to where

4

his grandmother lives, and alleged that he would like to visit the store when he visits her).

In his declaration, Strojnik asserts that he and Mrs. Strojnik "travel to Napa . . . between once and twice per year to stock up on California wines and spirits" and that he "visited Andaz to determine if it would be suitable for [his] mobility needs upon his return to Napa." Strojnik Decl. ¶¶ 25-30. However, the complaint itself does not allege any specific facts relating to Strojnik's intent to return to the Hotel.

Accordingly, Strojnik has not pleaded that he encountered barriers at the Hotel and is likely to be injured by the same barriers in the future.

**B. Deterrence**

As an alternative to establishing an actual encounter with a barrier, an ADA plaintiff may establish standing by pleading that he was deterred from visiting the facility in the first place. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). However, even under a deterrence theory, a plaintiff must allege "actual knowledge of a barrier" and an intent to visit a facility once it is ADA compliant. *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("*CREEC*").

For the reasons examined above, Strojnik has not pleaded that he was deterred from visiting the Hotel. First, he has not alleged actual knowledge of barriers related to his disability that deterred him from patronizing the Hotel. The photographs attached to his complaint have generic and vague descriptions that do not explain either why the identified features are not ADA compliant or why they are related to his disability. Second, as described above, Strojnik has not adequately alleged that he intends to visit the Hotel once it remedies the purported violations. In his declaration, he provides additional details regarding his connection to Napa and his reasons for returning to the area; however, none of these facts appear in his complaint.

In sum, Strojnik has failed to plead facts sufficient to establish Article III standing.

Therefore, in compliance with the Order, Plaintiff submitted the First Amended Complaint on February 25, 2020 [50].

**MEMORANDUM**

FAC complies with the Decision [49] as follows:

**1. Allegations of specific violations of ADAAG are well pled in FAC.**

*See Enhanced Standing Allegations Conforming to Order Dkt.* 49, FAC at ¶¶ 13-15.

5

Plaintiff is unclear what other information is required to properly plead ADA standing. *See also*, e.g., Judge John Mendez post *CREEC* Decision in *Johnson v. Alhambra and O Associates,* (6/24/19 U.S. Dist. E.D. California at [15]) where he stated:

### B. Legal Standard

Article III standing is a prerequisite to suit in the federal courts. *Chapman v. Pier 1 Imports (U.S.), Inc.,* 631 F.3d 939, 946 (9th Cir. 2011). Because it implicates the court's subject matter jurisdiction, a defendant may challenge standing at any time. *Id.* see also Fed. R. Civ. Proc. 12(b)(1). Moreover, "[t]he federal courts are under an independent obligation to examine their own jurisdiction." United *States v. Hays,* 515 U.S. 737, 742 (1995).

The standing inquiry requires a plaintiff to show (1) he suffered an "injury in fact; (2) there is a causal connection between that injury and the defendant's conduct; and (3) a favorable decision would likely redress the injury. *Civil Rights Educ. & Enforce. Ctr. v. Hosp. Properties Trust* ("CREEC"), 867 F.3d 1093, 1098 (9th Cir. 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). When a plaintiff seeks injunctive relief, he must also "allege 'continuing, present adverse effects' stemming from the defendant's actions." *Id.* (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). Federal courts must "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the act." *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1039-40 (9th Cir. 2008) (internal quotations omitted).

Unlike challenges to a complaint for failure to state a claim, challenges to constitutional standing fall under Federal Rule of Civil Procedure 12(b)(1). Accordingly, a plaintiff's statement of subject-matter jurisdiction is not governed by the strict pleading standard of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007). *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011). To be sure, "this is not to say that a plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Id.* at 1068 (internal quotations omitted). But each element of standing need only "be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id.* (quoting *Defenders of Wildlife,* 504 U.S. at 561). Accordingly, the Court must, at this stage, accept as true all material allegations of the complaint and construe those allegations in favor of the complaining party. *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975).

### C. Analysis

1. Americans with Disabilities Act Defendants correctly do not challenge whether Plaintiff sufficiently alleged injury in fact, causation, and redressability. A person with a disability suffers an injury in fact under the ADA "when [he] encounters an accessibility barrier [that] interferes with [his] full and equal enjoyment of the facility. Chapman, 631 F.3d at 947. The complaint clearly sets out barriers Plaintiff

encountered during his visits to Alhambra Mail. Compl. ¶¶ 17-31. Defendants, owners of Alhambra Mail, caused Plaintiff's injury by maintaining a purportedly inaccessible facility. Compl. ¶¶ 2-10, 14, 17-31. And injunctive relief would redress the injury Plaintiff now claims. Defendants solely maintain that Plaintiff failed to allege a genuine likelihood of future harm. Mot. at 2-7. But as Plaintiff correctly contends, CREEC, 867 F.3d at 1099-1101 forecloses this argument.

ADA plaintiffs may demonstrate a likelihood of future harm in one of two ways. They may either show (1) injury in fact coupled with an intent to return to the offending facility; or (2) deterrence from visiting or returning to the facility because of the ADA violation(s). *Id.* at 1098-99. Here, Plaintiff argues that he has shown a likelihood of future harm because Alhambra Mail's ADA violations deter him from returning. Plf.'s Opp'n to Defs.' Mot. ("Opp'n") at 7-10, ECF No. 12.

Allegations of deterrence must be more than hypothetical. Doran, 524 F.3d at 1039; Johnson v. Overlook at Blue Ravine, LLC, ("Blue Ravine"), No. 10-cv-02387-JAM-DAD at *3-4 (E.D. Cal. July 20, 2012). But ADA plaintiffs are not required to be "bona fide patrons." CREEC, 867 F.3d at 1101. Plaintiffs may show a likelihood of future harm even if the sole reason for visiting or returning to an establishment is to assess ADA compliance. *Id.* Furthermore, an ADA plaintiff need not engage in a "futile gesture to establish Title III standing if she is on notice that the establishment does not intend to comply with the ADA" CREEC, 867 F.3d at 1101. Rather, once a plaintiff "has actually become aware of discriminatory conditions existing at a public accommodation . . . . [t]he injury continues so long as equivalent access is denied." *Id.*

Defendants' motion relies primarily on Blue Ravine, 2012 WL 2993890 at *3-4. As a preliminary matter, the plaintiff in Blue Ravine, 2012 WL 2993890 at *1 lost on a motion for summary judgment-a stage of litigation that imposes a far greater burden on a plaintiff than the motion-to-dismiss stage. Moreover, Blue Ravine, 2012 WL 2993890 at *3-4 preceded CREEC, 867 F.3d at 1102, a case where the Ninth Circuit held, as a matter of first impression, that a plaintiff suing under Title III of the ADA could claim tester standing.

The Court agrees with Defendants that Plaintiff's tester status, alone, is not enough to confer standing. See Reply at 3. Likewise, the Court agrees an ADA plaintiff's claimed deterrence must be genuine. Mot. at 6. But Defendants' motion makes clear that they construe "genuine" as "unrelated to litigation purposes." See Reply at 3 ("If anything, Plaintiff's new clarification of his intent further undermines the sincerity of any so-called intent [to return].") This position is irreconcilable with the governing law. See CREEC, 867 F.3d at 1101. Defendants' repeated efforts to call attention to Plaintiff's motives plainly ignore CREEC's holding that an ADA plaintiff's motivations are irrelevant to the standing inquiry. *Id.*

The Court finds no basis for distinguishing Plaintiff's claims of deterrence from those in CREEC, 867 F.3d at 1099-1102. The plaintiffs in CREEC, 867 F.3d at 1099-1101 had never been to the defendant hotels and lacked concrete plans to visit.

7

Nevertheless, the Ninth Circuit found that an absence of concrete plans did not defeat standing. *Id.* at 1100-01. Indeed, the Court found that requiring concrete plans to visit a purportedly inaccessible facility paid short shrift to the settled rule that "a plaintiff need not engage in a futile gesture to establish Title III standing." CREEC, 867 F.3d at 1101 (internal quotation omitted). If anything, a lack of concrete plans is even less concerning here. In CREEC, 867 F.3d at 1098-99 the plaintiffs were suing a real estate investment trust for ADA violations at the trust's hotels. People generally plan ahead when booking hotel rooms-plans that can often be corroborated with other evidence of a person's intended whereabouts. But the odds that someone will drop off a package when planned are only as good as their memory that day. Contrary to what Defendants suggest, Plaintiff did not need to plead corroborating information to bolster his allegation that he is deterred from returning to Alhambra Mail because of the existing barriers. See Compl. ¶ 38.

With these considerations in mind, the Court finds Plaintiff adequately alleged deterrence. Defendants' motion to dismiss Plaintiff's ADA claim for lack of subject-matter jurisdiction is DENIED.

Judge Mendez's analysis is incorporated herein in its entirety. Exhibit 2. The legal analyses in similar denials of motions to dismiss, Exhibits 3 and 4, are incorporated.

### 2. Plaintiff's FAC established the relationship between his disabilities and the barriers at Defendant's Hotel

In its decision, [49] the Court indicated that Plaintiff's original complaint fails to particularize how his disabilities relate to the encountered barriers. This critique is factually enhanced in ¶ 13 of the FAC where Plaintiff makes the following disclosure:

**RELATION BETWEEN PLAINTIFF'S ADA DISABILITY AND MAJOR LIFE ACTIVITIES**

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | X | X | X | Major Bodily Function (normal cell growth, genitourinary, bladder, reproductive) | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Renal Cancer | X | X | X | Major Bodily Function (normal cell growth) | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) |

| | | | | | (d)(1)(viii)<br>(d)(2)((iii)(F)<br>(e)(1)(2)<br>(f)(1) |
|---|---|---|---|---|---|
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | X | X | X | Walking, standing, sitting, bending, sleeping, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Degenerative Right Knee | X | X | X | Walking, standing, sitting, bending, sleeping, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists To Reach And Twist | X | X | X | Performing manual asks, sleeping, reaching, lifting, writing, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(e)(1)(2)<br>(f)(1) |
| Pleurisy | X | X | X | Performing manual asks, sleeping, walking, reaching, lifting, writing, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d))1)(v)<br>(d))1)(vi)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| As Described in Dr. Lee's 8/1/18 Report | X | X | X | Exhibit 1 | (c)(1)(i)<br>(e)(1)(2)<br>(f)(1) |

And in ¶ 15, Plaintiff connects the barriers to accessibility alleged in table ¶13. It is unclear what other allegation may be necessary. Plaintiff suggests that in *CREEC* the 9th Circuit Court of Appeals held the following at 867 F.3d 1093, 1099 (9th Cir. 2017).:

> The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations

have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs," as we must at this preliminary stage, we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. **Their harm is "concrete and particularized," and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical."** (Emphasis supplied)

### 3. Intent to return are sufficiently alleged in FAC[1].

_____

[1] Defendant implicitly urges the Court to adopt the four-factor test articulated in *Harris v. Del Taco, Inc.,* 396 F. Supp. 2d 1107, 1111 (C.D. Cal. 2005) (citing *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 n.10 (C.D. Cal. 2005)), to determine whether Plaintiff has established sufficiently his likelihood of returning to the Hotel. ECF No. 9 at 7-8. Those four factors are: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Harris,* 396 F. Supp. 2d at 1111 (quoting *Molski*, 359 F. Supp. 2d at 947 n.10) (internal quotation marks omitted). Since this test was first articulated fifteen years ago, however, the Ninth Circuit has not adopted it despite having confronted the same or similar issue repeatedly in *Doran*, 524 F.3d 1034, *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) ("*Best Western*"), *Chapman*, 631 F.3d 939, and more recently in *Ervine*, 753 F.3d 862. Instead,  the Ninth Circuit in those cases consistently opted to apply the tried-and-true method of analogizing the facts before it with those in *Pickern* and/or *Doran* to determine whether a plaintiff had established imminent future injury.

On multiple other occasions, some district judges in California and the Ninth Circuit have either implicitly or explicitly declined to follow the four-factor test. In *Rocca v. Jalidat, Inc.*, 2017 WL 10562626, at *4 (C.D. Cal. Sept. 13, 2017), the district judge found the test to be too "stringent." *Rocca*, 2017 WL 10562626, at *4. The Court agrees as *Pickern* and *Doran* never espoused such a stringent test. About two years ago in *CREEC*, the Ninth Circuit held that "concrete travel plans [alone] would be sufficient to show that a disabled plaintiff intends to visit a facility," disregarding three factors of the four-factor test. *CREEC*, 867 F.3d at 1100. Also in *Wilson v. Kayo Oil Co.*, 535 F. Supp. 2d 1063, 1067 (S.D. Cal. 2007), a district court applied the four-factor test and found that the plaintiff had failed to establish imminent future injury. But on appeal, the Ninth Circuit disregarded the four-factor test and reversed the district court in finding that there was imminent future injury. *Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009). Most recently in *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 874 (S.D. Cal. 2019), a district court recognized the four-factor test but did not apply it. Rather, the *Brooke* court analogized the facts alleged with the facts discussed in *Best Western* to conclude that there was sufficient likelihood of imminent future injury. This Court agrees with *Rocca* and *Brooke*. Following the

1    The Court's decision then evaluated Plaintiff's allegation of his intent to return as

2 inadequate. Plaintiff resolves this issue by thorough disclosure of his travel plans in ¶

3 21(a)-(f).

4    Obviously, it is a fundamental rule of pleading that ".. intent, knowledge, and other

5 conditions of a person's mind may be alleged generally". FRCP 9(b).

6     Further, as Judge Mendez noted, "[t]he Court finds no basis for distinguishing

7 Plaintiff's claims of deterrence from those in CREEC, 867 F.3d at 1099-1102. The

8 plaintiffs in CREEC, 867 F.3d at 1099-1101 had never been to the defendant hotels

9 and lacked concrete plans to visit". *See* supra.

10    To be certain, before traveling to lodge at Defendant's Hotel, Plaintiff will

11 require a confirmatory representation that the Hotel is suitable for his disability needs.

12    Intent to return are adequately alleged.

### CONCLUSION AND PRAYER FOR RELIEF

13    Defendant's second motion to dismiss is groundless. Even though disability

14 discrimination falls in the same category as discrimination based on the basis of sex, color,

15 national origin, religion or age, *see* 42 U.S.C. § 12102(a), the treatment of disabled

16 individuals by some is evocative of the memorable observation by the Honorable Judge

17 Melinda Harmon, *see* supra. Defendant's second motion to dismiss is surreptitiously

18 designed to awaken the Court's non-existent ableist bias and reduce the discourse to a

19 gutter level of ableism. This is a direct attack on the Court's integrity.  It is designed to

20 wedge distrust between the only remaining branch of the government still enjoying the

21 highest levels of honor and trust, and the citizenry.  Sanctions are appropriate.

22    RESPECTFULLY DATED this 16th day of March 2020.

23                              **PETER STROJNIK**

24

25                              _____
                                            Plaintiff

26  THE FOREGOING ECF filed as indicated.

27  _____

28  mandatory authorities of the Ninth Circuit, as opposed to the persuasive authorities of
*Harris* and *Molski*, the Court here has applied the analogy method in the above analysis
rather than the four-factor test.

11